UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                  :

ESPIRITU SANTO HOLDINGS, LP,             :

                    Petitioner,                      :

     -against-                          :     No. 1:19 Civ. 3930 (CM)

L1BERO PARTNERS, LP,                  :

    and                                :

ESPIRITU SANTO TECHNOLOGIES, LLC,  :

                    Respondents.               :
------------------------------------------------------------x

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION AND <u>TEMPORARY RESTRAINING ORDER IN AID OF ARBITRATION</u>**

HOGAN LOVELLS US LLP
390 Madison Avenue
New York, New York 10017

600 Brickell Avenue, Suite 2700
Miami, Florida 33131

*Attorneys for Petitioner*
*Espiritu Santo Holdings, LP*

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| INTRODUCTION | | 1 |
| BACKGROUND | | 1 |
| ARGUMENT | | 3 |
| I. | This Court Is Not Obligated to Recognize or Enforce the Mexican Orders. | 3 |
| | A. Comity Does Not Require Automatic Deference. | 3 |
| | B. The Foreign Country Money Judgment Act Supports Non-Recognition. | 6 |
| II. | The Partners Agreement's Exclusive Jurisdiction Clause Divests the Mexican Court of Jurisdiction. | 7 |
| CONCLUSION | | 9 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Banco Nacional De Mexico, S.A. v. Societe Generale*,
    34 A.D.3d 124 (1st Dep't 2006) ........................................................................... 4, 5

*Brodsky v. Match.com LLC*,
    No. 09 Civ. 5328, 2009 WL 3490277 (S.D.N.Y. Oct. 28, 2009) ............................. 6

*China Trade & Dev. Corp. v. M.V. Choong Yong*,
    837 F.2d 33 (2d Cir. 1987) .......................................................................................... 8

*Cunard S.S. Co. Ltd. v. Salen Reefer Servs. AB*,
    773 F.2d 452 (2d Cir. 1985) ................................................................................... 4, 6

*Farrell Lines Inc. v. Columbus Cello-Poly Corp.*,
    32 F. Supp. 2d 118 (S.D.N.Y. 1997) .......................................................................... 7

*Int'l Fashion Prods. v. Calvin Klein, Inc.*,
    No. 95 Civ. 0982, 1995 WL 92321 (S.D.N.Y. Mar. 7, 1995) ............................... 7, 8

*Maersk, Inc. v. Neewra, Inc.*,
    05 Civ. 4356, 2010 WL 2836134 (S.D.N.Y. July 9, 2010) .................................. 3, 5

*Mexico Infrastructure Fin., LLC v. Corp. of Hamilton*,
    No. 17-CV-6424, 2019 WL 1206690 (S.D.N.Y. Mar. 14, 2019) ............................ 4

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Tech., Inc.*,
    369 F.3d 645 (2d Cir. 2004) ................................................................................... 8, 9

*Pilkington Bros. P.L.C. v. AFG Indus. Inc.*,
    581 F. Supp. 1039 (D. Del. 1984) .............................................................................. 4

*Yukos Capital S.A.R.L. v. OAO Samaraneftegaz*,
    963 F. Supp. 2d 289 (S.D.N.Y. 2013) ....................................................................... 3

**Statutes**

Foreign Country Money Judgment Act .................................................................................. 6

N.Y. C.P.L.R. § 5304 ................................................................................................................ 6

Petitioner Espiritu Santo Holdings, LP ("ES Holdings") submits this supplemental memorandum in support of its Emergency Petition for Injunctive Relief in Aid of Arbitration (the "Petition") [ECF No. 1].

## INTRODUCTION

On May 2, 2019, ES Holdings filed its Petition with this Court, seeking a temporary restraining order and preliminary injunction against L1bero Partners, LP ("L1bero Partners") and Espiritu Santo Technologies, LLC ("ES Technologies" and, together with L1bero Partners, "Respondents"). That day, the Court entered a temporary restraining order against Respondents. During the hearing on that application, the Court stated: "You might consider the need to brief the impact of any Mexican order . . . . I think you need to pay attention to that in your briefing." Tr. of May 2, 2019 Hr'g, attached as Exhibit 1, p. 11. ES Holdings submits this supplemental memorandum to address that specific issue – the impact of Mexican court *ex parte* orders obtained by Respondents on this Court's ability to grant the relief requested in the Petition – and more precisely, whether and to what extent this Court is bound by such orders.

In short, the *ex parte* Mexican court orders do not impact this Court's ability to grant the relief requested in the Petition. This Court need not recognize the interim Mexican orders and is not bound by them. Further, because the forum selection clause in the Partners Agreement provides for exclusive jurisdiction within this District, the Court may and should continue to enjoin Respondents from taking any further steps in any Mexican court or anywhere in the world that would interfere with or divest or derogate the Court's jurisdiction over this dispute.

## BACKGROUND

The background to the parties' dispute is described in the Petition. We set forth here the facts relevant to this supplemental memorandum.

On February 21, 2019, the Superior Court of Justice of Mexico City issued an *ex parte* temporary injunction, purportedly barring Santiago León Aveleyra ("León") and Eduardo Zayas Dueñas ("Zayas") of ES Holdings, from making any decisions or otherwise acting on behalf of Servicios Digitales Lusad, S. de R.L. de C.V. ("Lusad"), an entity ultimately owned and controlled by ES Technologies, an entity in which ES Holdings ultimately maintains a 50% ownership under the express terms of the December 6, 2017 partnership agreement executed by ES Holdings and Respondents (the "Partners Agreement"). The February 21, 2019 order, with a translation, was attached to the León Declaration, submitted with the Petition, as Exhibit 5.

On April 24, 2019, the same Mexican court apparently issued a second *ex parte* temporary restraining order, ostensibly to prevent the commencement of arbitration proceedings that were expressly contemplated in § 12 of the Partners Agreement. ES Holdings only learned of the existence of that interim order *after* it commenced arbitration proceedings against Respondents. As set forth in the Second Declaration of David Dunn, after ES Holdings informed Respondents on May 1, 2019 about the impending filing of the Petition and request for emergency relief:

1. Respondents transmitted to ES Holdings' counsel several photographs of a limited number of pages of that purported interim order. *See* Second Dunn Decl. ¶ 5.

2. With the transmission of those pages ES Holdings also received a threatening message from Fabio Covarrubias, on behalf of L1bero Partners, which purported to provide "formal notice" to Hogan Lovells "to refrain from making further filings in breach of the Mexican Court Order." *See* Second Dunn Decl. ¶ 4 & Ex. 2. Mr. Covarrubias' message stated: "If our request is ignored, we will seek criminal, civil and/or commercial liability pursuant to applicable law." *Id.*

3. To this day, Respondents have failed to provide ES Holdings (or its counsel) a complete copy of the interim order dated April 24, 2019 or the civil complaint purportedly filed along with the interim request. And certainly, Respondents have failed to formally serve ES Holdings with that order.

Both Mexican orders were entered in certain Mexican civil proceeding that Respondents initiated or directed to be initiated in contravention of the Partners Agreement, which states that in any action for a "pre-arbitral injunction, pre-arbitral attachment or other temporary or interim order in aid of arbitration proceedings . . . each of the Partners hereto irrevocably and unconditionally . . . submit to the exclusive jurisdiction and venue of the United States District Court for the Southern District of New York." Leon Decl., Ex. 1 (Partners Agreement) § 12(c). Respondents ignored this bargained-for exclusive jurisdiction provision by initiating the Mexican civil proceedings. Moreover, the Mexican court entered the orders *ex parte*, with no advance notice whatsoever to Petitioner, and without providing for any prompt mechanism for notice even after issuance.

## ARGUMENT

### I. This Court Is Not Obligated to Recognize or Enforce the Mexican Orders.

#### A. Comity Does Not Require Automatic Deference.

This Court has discretion to decline to recognize either or both of the Mexican court orders. At the outset, the recognition of decisions and judgments of foreign courts "is not a matter of obligation, but comity." *Yukos Capital S.A.R.L. v. OAO Samaraneftegaz*, 963 F. Supp. 2d 289, 295 (S.D.N.Y. 2013). Although "the decision to grant comity is a matter within a court's discretion[,] . . . deference to a foreign adjudication as a matter of comity is by no means automatic." *Maersk, Inc. v. Neewra, Inc.*, 05 Civ. 4356, 2010 WL 2836134, at *10-11 (S.D.N.Y. July 9, 2010) (McMahon, J.) (holding that a foreign court ruling which does not constitute a

"decision on the merits" is not entitled to deference); *see also Cunard S.S. Co. Ltd. v. Salen Reefer Servs. AB*, 773 F.2d 452, 457 (2d Cir. 1985) ("[C]omity does not achieve the force of an imperative or obligation."); *Mexico Infrastructure Fin., LLC v. Corp. of Hamilton*, No. 17-CV-6424, 2019 WL 1206690, at *4 (S.D.N.Y. Mar. 14, 2019) ("United States courts may choose to give res judicata effect to foreign judgments on the basis of comity, but are not obliged to do so." (internal quotation and citation omitted)); *Pilkington Bros. P.L.C. v. AFG Indus. Inc.*, 581 F. Supp. 1039, 1045 (D. Del. 1984) (holding that an interim injunction issued by an English court in aid of arbitration was not entitled to recognition as an arbitral award and stating that "[a] generally recognized rule of international comity states that an American court will only recognize a final and valid judgment").

Comity is "normally not extended by New York courts to non-final, non-merits orders." *Banco Nacional De Mexico, S.A. v. Societe Generale*, 34 A.D.3d 124, 131 (1st Dep't 2006). In *Banco Nacional*, the defendant issued a letter of credit to a non-party beneficiary, which provided that "any dispute arising herefrom shall be resolved exclusively before the courts of the United States of America with seat in Manhattan, New York City, State of New York." *Id.* at 125. Two days after the plaintiff sought reimbursement from the defendant pursuant to the beneficiary's demand for payment under the terms of the letter of credit, an action was commenced in two Mexican courts, and each Mexican court issued an *ex parte* injunctive order purporting to stay payment on the letter of credit. *Id.* at 127. The plaintiff subsequently sued in New York state court, seeking reimbursement plus interest, but the defendant asserted that the Mexican injunctions prevented any payments under the letter of credit. *Id.* The trial court determined that "the doctrine of comity applied and therefore the injunctions of Mexican courts staying payment on the Letter 'must' be recognized." *Id.* at 130.

4

The First Department reversed. In no uncertain terms, the court held that "there is no basis for the [trial] court to recognize the Mexican injunctions because they are non-final, ex parte orders of Mexican courts." *Id.* at 131. In addition, the appellate court found the application of Mexican law was erroneous due to the "explicit choice of law clause that established New York law as the exclusive governing law and forum." *Id.* at 130.

Similarly, in *Maersk*, this Court declined to extend comity to criminal and civil proceedings in Kuwaiti courts. 2010 WL 2836134, at *15. In reaching this decision, the Court stated that "[t]he decision to grant comity is a matter within a court's discretion," and found that it was incumbent upon the party seeking this Court's recognition of the foreign proceedings to demonstrate that "comity should be extended" to such proceedings. *Id.* at *10. The Court determined that deference was not warranted because the defendant in that action was not afforded "the opportunity for a full and fair trial on the merits." *Id.* at *13. In fact, there was no discovery, no testimony under oath by any witness, and the matter was not tried before a jury. *Id.* The Court thus found that the judicial proceedings "d[id] not accord with fundamental standards of procedural fairness, making deference unwarranted." *Id.* Still, and "most important," the foreign court's ruling "d[id] not constitute a decision on the merits." *Id.* at *14.

As in *Banco Nacional* and *Maersk*, neither Mexican order rendered a decision on the merits. The interim orders are non-final, *ex parte* orders, each of which issued without notice or any opportunity to take discovery or to question or cross examine witnesses under oath. Indeed, Petitioner does not even have a copy of the entire April 24 Order. As this Court made clear in *Maersk*, Respondents bear the burden of proof to establish that comity should be extended to the Mexican court orders, and they have to date made no attempt to do so. Accordingly, the same result as in *Banco Nacional* and *Maersk* should follow here because the Mexican interim orders

5

are "non-final, ex parte orders of Mexican courts," which are not entitled to deference or recognition by this Court.

Further, the Court may only grant comity to a decision or judgment of a foreign court "if it is shown that the foreign court is a court of competent jurisdiction, and that the laws and public policy of the forum state and the rights of its residents will not be violated." *Cunard*, 773 F.2d at 457. Here, recognition of the Mexican orders would also violate New York's well-established public policy of enforcing contractual forum selection clauses. *See, e.g.*, *Brodsky v. Match.com LLC*, No. 09 Civ. 5328, 2009 WL 3490277, at *4 (S.D.N.Y. Oct. 28, 2009) ("New York has a strong public policy of *enforcing* forum selection clauses so that parties are able to rely on the terms of the contract they make."). In addition to not being a decision on the merits, comity should not be extended to the Mexican court orders because doing so would contravene this well-established public policy.

### B. The Foreign Country Money Judgment Act Supports Non-Recognition.

The Foreign Country Money Judgment Act (the "Act") provides both mandatory and permissive grounds for non-recognition of a foreign judgment that is for money only. *See* N.Y. C.P.L.R. § 5304. This Act, of course, has no direct application here, where the ruling at issue is injunctive, and not for money. But it is nevertheless instructive, because under the Act, a foreign judgment "is not conclusive if: (1) the judgment was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law; [or] (2) the foreign court did not have personal jurisdiction over the defendant." *Id.* at § 5304(a). In addition, a foreign judgment "need not be recognized" if, among other grounds, "the defendant in the proceedings in the foreign court did not receive notice of the proceedings in sufficient time to enable him to defend; . . . [or] the proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be settled

6

otherwise than by proceedings in that court . . . ." *Id.* at § 5304(b).

These statutory proscriptions – though not directly applicable – support denial of comity here. The interim orders suffer several defects, each of which would be grounds for non-recognition under the Act if money judgments instead of equitable orders were at issue. The interim orders were both entered *ex parte*, without a mechanism or requirement for service or notice. Such lack of notice is contrary to the requirements of due process. The interim orders also were the product of a civil proceeding that Respondents initiated or directed to be initiated in Mexico in direct contravention of the exclusive jurisdiction clause in the Partners Agreement. Accordingly, grounds for non-recognition under the Act apply here, providing further bases for this Court not to recognize the interim orders.

## II. The Partners Agreement's Exclusive Jurisdiction Clause Divests the Mexican Court of Jurisdiction.

A mandatory forum selection clause providing for exclusive jurisdiction may serve to oust or divest any other court from asserting jurisdiction. *See Int'l Fashion Prods. v. Calvin Klein, Inc.*, No. 95 Civ. 0982, 1995 WL 92321, at *1 (S.D.N.Y. Mar. 7, 1995) (enjoining proceedings in the Netherlands where a forum selection clause in the underlying agreement specified New York "as the only appropriate forum"); *see also Farrell Lines Inc. v. Columbus Cello-Poly Corp.*, 32 F. Supp. 2d 118, 131 (S.D.N.Y. 1997) (enjoining an Italian lawsuit where the contract between the parties contained a mandatory forum selection clause providing that any suits shall be brought in the Southern District of New York). In *International Fashion Products*, for example, the parties entered into an agreement providing that "any judicial proceedings in connection with the agreement shall be brought in New York." 1995 WL 92321, at *1. After Calvin Klein, Inc. terminated that agreement, International Fashion Products ("IFP") sued in the Netherlands, seeking injunctive relief that would require Calvin Klein to continue operating

under the agreement. *Id.* Calvin Klein then moved for a preliminary injunction in this Court to prevent IFP from prosecuting the Netherlands action; the court granted Calvin Klein's request, holding that the case "should be prosecuted [in New York] rather than in the Netherlands" because the "forum selection clause in the agreement underlying this action clearly specifies New York as the only appropriate forum." *Id.* at *2.

Outside the context of forum selection clauses, federal courts in this Circuit have recognized their authority to enjoin a party from pursuing or maintaining suit in a foreign country. *See Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Tech., Inc.*, 369 F.3d 645, 652 (2d Cir. 2004) ("It is beyond question that a federal court may enjoin a party before it from pursuing litigation in a foreign forum."); *see also China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 35 (2d Cir. 1987). In *Paramedics*, the Second Circuit affirmed the district court's order granting an "anti-suit injunction," which effectively dismissed an action that the appellant brought in a Brazilian court. 369 F.3d at 649-51. The Court considered "whether the foreign action threatens the jurisdiction or the strong public policies of the enjoining forum," and determined that the action filed in Brazil "was a tactic to evade arbitration," which was in contravention of the "federal policy favoring the liberal enforcement of arbitration clauses." *Id.* at 654.

The Partners Agreement contains an exclusive jurisdiction clause, under which the parties "irrevocably and unconditionally" agreed that any "pre-arbitral injunction . . . or other temporary or interim order in aid of arbitration proceedings" would be commenced in "the exclusive jurisdiction and venue of the United States District Court for the Southern District of New York." The limited pages that ES Holdings has received from the April 24, 2019 interim order, however, purport to bar commencement of arbitration proceedings, which directly contravenes

8

the federal policy favoring the liberal enforcement of arbitration clauses.  As such, this Court has the ability to enjoin further pursuit of the Mexican civil proceedings, which would undermine both this Court's jurisdiction (as conferred by the parties' contract) and the plain obligation in the Partners Agreement to submit disputes to final and binding arbitration.[1]

## **CONCLUSION**

For the foregoing reasons, and in addition to those in ES Holdings' memorandum of law in support of its Petition, ES Holdings respectfully requests that the Court enter an order preliminarily enjoining L1bero Partners and ES Technologies under the terms of this Court's May 2, 2019 Order to Show Cause [ECF No. 3].

---

[1] The Second Circuit has recognized the sensitivity of divesting another court of its jurisdiction: "Principles of comity weigh heavily in the decision to impose a foreign anti-suit injunction; while such an injunction in terms is leveled against the party bringing the suit, it nonetheless 'effectively restricts the jurisdiction of the court of a foreign sovereign.'" *Paramedics*, 369 F.3d at 654-55 (quoting *China Trade*, 837 F.2d at 35).  Indeed, the anti-suit injunction is an "extreme measure" in which courts "must reconcile the protection of their own jurisdiction with respect for the foreign forum." *Id.* at 655.  Here, such an extreme measure is warranted for the reasons described in this supplemental memorandum.

May 9, 2019
New York, New York

                HOGAN LOVELLS US LLP

                <u>/s/ David Dunn /</u>

                David Dunn
                Benjamin A. Fleming
                390 Madison Avenue
                New York, New York 10017
                Tel. (212) 918-3000
                Fax (212) 918-3100
                david.dunn@hoganlovells.com
                benjamin.fleming@hoganlovells.com

                Richard C. Lorenzo (*pro hac vice* pending)
                Mark R. Cheskin (*pro hac vice* pending)
                600 Brickell Avenue, Suite 2700
                Miami, FL 33131
                Tel. (305) 459-6500
                Fax (305) 459-6550
                richard.lorenzo@hoganlovells.com
                mark.cheskin@hoganlovells.com

                *Attorneys for Petitioner*
                *ESPIRITU SANTO HOLDINGS, LP*