# EXHIBIT 1

j522espC

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   ESPIRITU SANTO HOLDINGS, LP,

 4              Petitioner,                New York, N.Y.

 5         v.                              19 Civ. 3930(CM)

 6   LIBERO PARTNERS, LP AND
     ESPIRITU SANTO TECHNOLOGIES,
 7   LLC,

 8              Respondents.

 9   ------------------------------x        Hearing

10                                          May 2, 2019
                                            12:05 p.m.
11
     Before:
12
                     HON. COLLEEN MCMAHON,
13
                                            District Judge
14

15
                            APPEARANCES
16

17   HOGAN LOVELLS US LLP
          Attorneys for Plaintiff
18   BY:  DAVID DUNN
          MARK R. CHESKIN
19        BENJAMIN FLEMING

20

21

22

23

24

25
```

1     (Case called)

2     THE COURT: 19 Civ. 3930, Espiritu Santo Holdings v.
3  Libero Partners.

4     Your appearances.

5     MR. DUNN: David Dunn, Hogan Lovells, on behalf of the
6  petitioner. With me is my partner from Miami, Mark Cheskin,
7  who is in the process of applying for admission *pro hac vice*;
8  and my associate Ben Fleming.

9     THE COURT: All right. Have a seat.

10    The court has been, this morning, handed an
11 application for the entry of a temporary restraining order and
12 preliminary injunction in aid of an arbitration that has
13 already been noticed pursuant to a contract between the
14 petitioner and the respondents. I have also been given an -- I
15 won't say the word "you" -- e-mail that was received in
16 response to notice that was given to the respondents about this
17 hearing.

18    Now, I am actually, unfortunately, not unfamiliar with
19 disputes that end up in the Mexican courts before they end up
20 in United States Courts which, of course, are ultimately
21 supposed to be resolved by arbitration. And I have a feeling
22 that what is going to happen here is going to be a series of
23 dueling orders that will prove unenforceable here and there and
24 you are going to waste a lot of time.

25    But as I read your papers, you want me to issue a

1  temporary restraining order and a preliminary injunction that
2  will, quote, restore the status quo, and I can't do that
3  because the status quo includes orders of a Mexican court which
4  I can't undo.  I have no power to undo an order of a Mexican
5  court.  You know that.
6         MR. DUNN:  We --
7         THE COURT:  You do know that, don't you?
8         MR. DUNN:  Your Honor, of course we know that you do
9  not have the power to undo an order of the Mexican court.
10        THE COURT:  Correct.  And right now there is an order
11 of a Mexican court that bars you from being here, is that not
12 correct?  Or at least I am told there is.  You don't know that
13 there is, but there may be.
14        MR. DUNN:  Based on what we have seen in the
15 attachments to the e-mail I received yesterday, there is an
16 order of the Mexican court with respect to the commencement of
17 arbitration that I know several things about, your Honor.
18        THE COURT:  Okay.
19        MR. DUNN:  One --
20        THE COURT:  It postdates the commencement of the
21 arbitration.
22        MR. DUNN:  Well, notice -- notice -- I know --
23        THE COURT:  You didn't get notice.
24        MR. DUNN:  It was supposedly issued on April 24 --
25        THE COURT:  Right.

1    MR. DUNN:  -- but nobody seems to claim that we got
2 notice or service.
3    THE COURT:  And the arbitration was commenced on?
4    MR. DUNN:  Yesterday.
5    THE COURT:  Yesterday, okay.
6    MR. DUNN:  Yesterday morning, before we brought the
7 application --
8    THE COURT:  Okay.
9    MR. DUNN:  -- before we prepared the application and
10 before we gave the notice to the other parties.
11    I also know -- we are not asking the court -- we are
12 asking the court to restore the status quo, but only in two
13 very specific ways, your Honor, and I think you do have the
14 power to do those things, because all of the parties before you
15 are either Canadian entities with American principal places of
16 business or American entities.  We are proceeding pursuant to a
17 Delaware partnership agreement that specifically says disputes,
18 (a) will be resolved in arbitration and (b) there is an
19 exclusive irrevocable --
20    THE COURT:  I saw that.  I have seen it all.  I have
21 seen it all.
22    MR. DUNN:  Okay.  So I think you have the power to do
23 the two things we are asking you to do, which are to say don't
24 use their intellectual property and don't compete with them in
25 violation of the partnership agreement and tell the

1   arbitration --

2          THE COURT:  I will say that I think you have been
3   snookered, and this is what I have been through before, because
4   there is like an order of a Mexican court from several months
5   ago throwing your clients out of this Delaware partnership, in
6   effect.  I find that -- I guess I could say I find that
7   extraordinary, because I have been there before, but there is
8   such an order and I can't undo that order.

9          MR. DUNN:  No, but the arbitration can decide what the
10  effect and consequences of that order are.

11         THE COURT:  Correct.

12         MR. DUNN:  And what you can do --

13         THE COURT:  The one thing I'm not going to do is
14  decide the ultimate dispute in this case.

15         MR. DUNN:  We are not asking you to do that.  We have
16  a very simple problem, and we tailored the request to your
17  Honor narrowly in light of the original Mexican order and
18  notwithstanding that we weren't aware of the second Mexican
19  order about the arbitration.  All we are asking you to do in
20  terms of restoring the status quo is say don't compete and
21  don't use the intellectual property.  Those don't -- I don't
22  think the Mexican orders affect that.

23         THE COURT:  I have to tell you, if I were you, I would
24  have added a third paragraph which said "and don't take any
25  steps anywhere in the world to interfere with the exclusive

1   jurisdiction of the United States District Court for the
2   Southern District of New York to decide this pre-arbitral
3   issue."
4           MR. DUNN:  Well, I think --
5           THE COURT:  And if I add that, even though you didn't
6   ask for it, I think it belongs there.
7           MR. DUNN:  Well, we would be happy to have that, and I
8   think that is something that we contemplated in light of what
9   we saw last night, your Honor.  We were not aware of the, what
10  I would describe as the second set of Mexican court orders
11  until literally 7:00 last night, and then I had to read them
12  until my pidgin Spanish.  And I apologize to the court, by the
13  way --
14          THE COURT:  I have pidgin Spanish, too.  I read some
15  of it.
16          MR. DUNN:  Okay.  So I apologize to the court for not
17  providing translations, but we wanted to get the application on
18  file before you.  We will provide translations to the excerpts
19  that were provided as attached to the e-mail I received last
20  night.  But on the basis of that e-mail, I would agree with you
21  that the order you suggested is an appropriate third addition
22  to the requested relief, not to interfere with or take steps to
23  derogate your jurisdiction, as agreed to by the parties in the
24  partners agreement.  So I think that is appropriate, and we are
25  trying to be careful about not asking you to take steps that

1  have the effect of interfering with Mexican court jurisdiction,
2  whatever that is, but that do vindicate our right to
3  arbitration and do vindicate our rights to preliminary
4  injunctive relief in this case as bargained for by the parties.
5
6           THE COURT:  What is the section of the partnership
7  agreement that is the arbitration clause with the
8  pre-arbitration?
9           MR. DUNN:  12(c) of the partners agreement, your
10 Honor.
11          THE COURT:  And it is exclusive jurisdiction, right?
12          MR. DUNN:  It is exclusive jurisdiction, yes.  It says
13 that "the parties irrevocably and unconditionally submit to the
14 exclusive jurisdiction and venue of this court."
15          THE COURT:  And the title of your partnership
16 agreement is?
17          MR. DUNN:  It is called the Espiritu Santo
18 Technologies LLC Partners Agreement.
19          THE COURT:  Espiritu Santo.
20          MR. DUNN:  Espiritu Santo.
21          THE COURT:  Espiritu.
22          MR. DUNN:  Espiritu.
23          THE COURT:  I read Spanish, but I speak it
24 beautifully.  Espiritu, Holy Spirit.
25          MR. DUNN:  Yes, Holy Spirit.  Exactly.  My problem,

1  your Honor, is I can read it, but my accent is dreadful.
2            THE COURT:  Okay.  No.  I have a great accent.
3            Espiritu Santo Holdings LP.
4            MR. DUNN:  LLC.
5            THE COURT:  It says LP in the caption of the case.
6            MR. DUNN:  The partnership agreement is LLC.
7            THE COURT:  LLC Partnership Agreement.
8            MR. DUNN:  Partners agreement.
9            THE COURT:  Partners Agreement.  Dated?
10           MR. DUNN:  December 6, 2017.
11           THE COURT:  I want to make sure that we absolutely
12  identify this.
13           So I am entering your TRO --
14           MR. DUNN:  Thank you.
15           THE COURT:  -- which, of course, is not binding on the
16  Mexican court.  Just like they don't bind me, I don't bind
17  them.  I have to recognize their judgment, they have to
18  recognize mine, but it's a big mess.  But the parties to this
19  agreement have clearly submitted to the jurisdiction of this
20  court for a singular purpose, that purpose being whether or not
21  there shall issue an injunction in aid of arbitration.  The
22  petitioner has a contractual right to come to this court for
23  that purpose, and it is a derogation of the contract for the
24  other parties to the contract to attempt to interfere with the
25  petitioner's right to come to this court or with the court's

j522espC

1  jurisdiction. So in addition to subparagraph 1 and 2, I am
2  adding such other and further relief as I deem just and proper,
3  and that is subparagraph 3, and that subparagraph will say,
4  "taking any further steps" -- I can't undo what's been done --
5  "in any Mexican court or otherwise anywhere in the world to
6  interfere with or divest or derogate the jurisdiction of the
7  United States District Court for the Southern District of New
8  York to decide the issue of pre-arbitral injunctive relief as
9  provided for in paragraph 12(c) of the Espiritu Santo Holdings
10 LLC Partners Agreement, dated December 6, 2017."
11          MR. FLEMING: Your Honor, it is Espiritu Santo
12 Technologies LLC Agreement, not Holdings.
13          THE COURT: Okay, Technology. We want to get this
14 right.
15          MR. DUNN: Unfortunately Espiritu Santo Holdings is
16 one of the parties --
17          THE COURT: Is one of the parties.
18          MR. DUNN: -- to the Technologies LLC agreement. I
19 love these agreements where the parties are so creative in
20 naming their parties.
21          THE COURT: I do think you should post some security.
22          MR. DUNN: 200,000?
23          THE COURT: No, 50.
24          MR. DUNN: 50, okay.
25          THE COURT: 50 by the end of the day tomorrow.

j522espC

1    And the hearing on the PI will be May 13, 2019 at 11
2    a.m. They can show up or not if they choose, but they clearly
3    chose to not show up this morning and that was a deliberate
4    choice.
5    Okay. Service on or before -- you are going to get
6    these out today anyway, right? So let's make it May 2, 2019,
7    by 8 p.m. tonight, which is EST, which will be 5:00 in Mexico.
8    This is good, and I have signed this, and we will make some
9    copies of that.
10   We are all in kind of an awkward position because of
11   the actions that have been taken by the Mexican court, and we
12   will do the best we can to navigate them. Okay?
13   MR. DUNN: I appreciate that, your Honor.
14   On the service issue, I assume that service by tonight
15   by e-mail and --
16   THE COURT: E-mail and overnight courier.
17   MR. DUNN: -- and dispatched by overnight courier will
18   be satisfactory.
19   THE COURT: Yes. That is what it says in the order.
20   MR. DUNN: Great.
21   THE COURT: Okay?
22   MR. DUNN: Thank you very much, your Honor, and thank
23   you for hearing us on such short notice.
24   Do you want us to file translations to the attachments
25   to the e-mail?

j522espC

1         THE COURT:  Yeah, when you get around to it.
2         MR. DUNN:  Thank you.
3         THE COURT:  Any of the Mexican judgments or
4 interlocutory orders, to -- I mean, I can do it, but it takes
5 so much more time.
6         MR. DUNN:  I'm in the same position.  I empathize.
7         THE COURT:  All right.
8         MR. DUNN:  Thank you.
9         THE COURT:  Thank you.
10         You might consider the need to brief the impact of any
11 Mexican order on -- you know, it is one thing to blithely say
12 they contracted for it.  There happen to be orders.  I think
13 you need to pay attention to that in your briefing.
14         MR. DUNN:  I am aware of that, your Honor.
15         THE COURT:  I know you are aware of it.
16         MR. DUNN:  Thank you.
17                         oOo