# EXHIBIT 1

## RESOLUCIONES UNÁNIMES DE LOS SOCIOS DE
## SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V.

6 de diciembre de 2017

Con fundamento en la cláusula Décima Octava de los estatutos sociales de SERVICIOS DIGITALES LUSAD, S. de R.L. de C.V. (la "Sociedad"), los suscritos L1BRE HOLDING, LLC, representada en este acto por Santiago León Aveleyra ("L1bre Holding") y L1BRE, LLC, representada en este acto por Eduardo Zayas Dueñas ("L1bre" y en conjunto con L1bre Holding, los "Socios"), en nuestro carácter de socios únicos de la Sociedad, en forma unánime y fuera de asamblea general de socios, adoptamos las resoluciones que a continuación se señalan (las "Resoluciones").

## R E S O L U C I O N E S

PRIMERA.    Reforma de estatutos de la Sociedad..

1.1    Se reforma, en su parte conducente, la cláusula Vigésima de los estatutos sociales de la Sociedad, para quedar redactada, a partir de esta fecha, en los términos siguientes:

[…]

*"VIGÉSIMA.- La administración de la sociedad será encomendada a un Consejo de Gerentes, integrado por 4 (cuatro) miembros, los cuales podrán o no ser socios de la Sociedad. Los miembros del Consejo de Gerentes serán designados por periodos de un año a partir de la fecha de su nombramiento o ratificación, según sea el caso, y podrán ser reelectos por periodos sucesivos y continuar en sus respectivos encargos hasta que sus sucesores entren en funciones, en el entendido que el cargo de consejero tendrá una duración indefinida, hasta que la asamblea de socios determine lo contrario, pero en todo caso deberán permanecer en sus respectivos encargos, hasta que sus sucesores entren en funciones.*

1.2    Se aprueba la reforma a la cláusula Vigésima Primera de los estatutos sociales de la Sociedad, para quedar redactada, a partir de esta fecha en los términos siguientes:

[…]



*"VIGÉSIMA PRIMERA.- El Presidente del Consejo de Gerentes será electo por la Asamblea de Socios. Asimismo, el Consejo de Gerentes de la Sociedad podrá designar a un secretario, quien deberá ser independiente a los socios de la Sociedad y a sus consejeros, y quien no será miembro del Consejo de Gerentes. El secretario deberá cumplir, respecto de los Socios, los Consejeros de la Sociedad y esta última, con los requisitos de independencia establecidos por el artículo 26 de la Ley del Mercado de Valores (o el que lo sustituya de tiempo en tiempo durante la vigencia de la Sociedad), y por lo tanto no formará parte del Consejo de Gerentes, ni tendrá derecho de voto, quedando en consecuencia sus funciones limitadas a: (i) asistir a la Asamblea de Socios y a las sesiones del Consejo de Gerentes con el fin de levantar el acta respectiva; (ii) preparar y mantener el Libro de Actas de Asambleas de Socios, el Libro de Sesiones del Consejo de Gerentes, el Libro de Registro de Socios y el Libro de Variaciones de Capital y de las transmisiones de dichas partes sociales y/o de los aumentos o disminuciones que se realicen respecto del capital social de la Sociedad, de ser el caso; (iii) emitir certificados relacionados con dichos registros corporativos; y (iv) convocar a las asambleas de socios y/o a las sesiones del consejo de gerentes de la Sociedad, de así considerarlo oportuno."*

1.3    Se aprueba la reforma a la cláusula Vigésima Segunda de los estatutos sociales de la Sociedad, para quedar como sigue:

[…]

*"VIGÉSIMA SEGUNDA.- El Consejo de Gerentes se reunirá cuando menos 4 (cuatro) veces por año, cuando sea convocado por su Presidente, el Secretario de la Sociedad o cualesquiera dos de sus miembros, mediante convocatoria notificada por escrito a cada uno de los miembros del Consejo de Gerentes, incluyendo suplentes, y entregada mediante servicio de mensajería internacional reconocido, con acuse de recibo, cuando menos cinco días antes de la fecha de la reunión o bien, mediante correo electrónico con acuse de recibo. No se necesitará convocatoria previa cuando todos los miembros del Consejo de Gerentes estén presentes en la reunión. Las convocatorias deberán indicar la fecha, hora y lugar de la reunión respectiva, y se deberán incluir a la misma, además, el Orden del Día, la información y los documentos que se discutirán durante la reunión, y deberá estar firmada por la(s) parte (s) que convoque(n) a la reunión."*

1.4 Se aprueba la reforma a la cláusula Vigésima Cuarta de los estatutos sociales de la Sociedad, para quedar como sigue:

[…]

*"VIGÉSIMA CUARTA.- Para que las sesiones del Consejo de Gerentes se consideren legalmente instaladas en virtud de primera o ulterior convocatoria será necesaria la presencia de, por lo menos, 3 (tres) de los miembros propietarios o sus respectivos suplentes, si se hubieren designado, y los acuerdos deberán adoptarse por el voto de la mayoría de los miembros del Consejo de Gerentes presentes en la sesión, sean éstos propietarios o suplentes. Lo anterior con excepción de los asuntos que se enlistan a continuación los cuales serán considerados como un "asunto fundamental" para los cuales se requerirá la presencia en primera o en ulteriores convocatorias, de la totalidad de los miembros del Consejo de Gerentes de la Sociedad y su voto unánime:*

*(a) Modificación a los estatutos de la Sociedad o a los documentos de constitución o estatutos de cualquiera de las Afiliadas de la Sociedad.*

*(b) Incremento o disminución del capital social registrado de la Sociedad y la expedición de unidades, partes sociales o acciones que representen dicho capital social, ya sea con derechos de voto, sin derecho de voto o con derechos limitados; siempre y cuando cualquier incremento al capital social no tenga un efecto de dilución entre los socios de la Sociedad. Cualquier disminución de capital deberá hacerse bajo el principio de pari-passu para mantener y conservar los porcentajes de participación entre los Socios en las mismas proporciones.* 

*(c) La terminación, liquidación o disolución de la Sociedad o de cualquiera de sus afiliadas.*

*(d) Prenda, hipoteca o cualquier gravamen real que verse sobre los activos materiales de la Sociedad o cualquiera de sus afiliadas para financiar o por otras razones; y/o prenda, gravamen o transmisión por cualquier medio de las partes sociales representativas del capital social de la Sociedad o que representen el capital social de cualquiera de sus afiliadas (o de los derechos de la misma).*

*(e) Fusión, consolidación o escisión con cualquier otra entidad o reorganización de la Sociedad o cualquiera de sus afiliadas, división de la Sociedad o cambio en la estructura corporativa de la Sociedad o de cualquiera de sus afiliadas.*

*(f) Cualquier ajuste al porcentaje de participación de cada socio en la Sociedad y en cualquiera de sus afiliadas.*

*(g) La suscripción por parte de la Sociedad o por parte de cualquiera de sus Afiliadas de una sociedad, joint venture u otros acuerdos de coinversión o de distribución de ganancias con un tercero; y/o la aceptación o admisión de socios adicionales a la Sociedad o a sus Afiliadas, directamente o indirectamente.*

(h) Tomar en préstamo o prestar garantías de cualquier naturaleza a un tercero por la Sociedad o por cualquiera de sus Afiliadas, excepto (i) por préstamos intercompañía, y/o (ii) por los préstamos y financiamientos aprobados por el plan de negocios y/o el presupuesto anual de la Sociedad aprobado en forma unánime por el Consejo de Gerentes.

(i) El plan de negocios anual de la Sociedad y/o el presupuesto anual y cualquier modificación y derivaciones de los mismos.

(j) La designación y remoción de los auditores externos para la auditoría de los estados financieros de la Sociedad o de cualquiera de sus afiliadas y la fijación de sus compensaciones y honorarios.

(k) Planes para el reparto de dividendos o plantes para absorber pérdidas por cada año fiscal diferente a aquellos aprobados en el plan de negocios anual y/o el presupuesto anual o la modificación de las políticas de reparto de dividendos de la Sociedad o de sus afiliadas.

(l) Cualquier transacción o serie de transacciones, incluyendo sin limitar, la adquisición, disposición, gravamen, garantía y/o venta de los activos materiales e inversiones de la Sociedad o en cualquiera de sus afiliadas, que no estén previstas en el plan de negocios anual y/o el presupuesto anual por el año en el que tales transacciones tengan lugar, o tales transacciones son diferentes en valor o en sustancia a aquellas expresadas en el plan de negocios anual o el presupuesto anual y el valor agregado de cada transacción o series de transacciones exceda USD$150,000.00 (ciento cincuenta mil dólares 00/100, moneda de curso legal en los Estados Unidos de América) o su equivalente en otras monedas.

(m) El otorgamiento de poderes por la Sociedad o cualquiera de sus afiliadas y el ejercicio y ejecución de cualesquiera actos de las mismas para actos de dominio o para la suscripción de títulos de crédito o valores de cualquier naturaleza (o para avalarlos o aceptarlos), hasta el punto en que dichos actos tengan un valor individual o conjunto en un solo acto o sucesión de actos de USD$25,000.00 (veinticinco mil dólares 00/100, moneda de curso legal en los Estados Unidos de América) o más, excepto por (i) la suscripción de títulos de crédito en el curso ordinario del negocio de la Sociedad o de sus afiliadas, y (ii) para los actos aprobados en el plan de negocios o en el presupuesto anual en cuyos casos tales poderes podrán ser ejercitados individualmente por un representante A o un representante B, indistintamente. 



(n) La modificación a cualquier préstamo intercompañía y/o los pagarés que los documenten.

(o) La modificación a la Concesión, expedida en favor de la Sociedad con fecha 17 de junio de 2016 por la Secretaría de Movilidad de la Ciudad de México para la sustitución, instalación y mantenimiento de taxímetros, con geo-localización de transporte público individual de pasajeros en la Ciudad de México, así como el desarrollo, operación y explotación de una aplicación móvil para la contratación remota de viajes de taxi; así como su terminación, suspensión, cesión, gravamen, renuncia, rescisión o abandono por cualquier medio.

(p) La aceptación, otorgamiento, modificación o renuncia de cualquier concesión, permiso temporal o autorización administrativa del cual sea titular (o llegue a ser titular) la Sociedad.

(q) La aprobación del paquete de compensaciones de los funcionarios de la Sociedad y/o la contratación por parte de la Sociedad o de sus Afiliadas, de cualquier empleo, servicios o acuerdos similares son Personas con una compensación anual superior a USD$250,000.00 (doscientos cincuenta mil dólares 00/100, moneda de curso legal en los Estados Unidos de América) y el otorgamiento de cualquier compensación o

*beneficios excepto para aquellos actos aprobados en el Plan de Negocios anual o el Presupuesto Anual.*

(r) *La ejecución de cualquier acuerdo, acto u operación por la Sociedad o sus afiliadas con una parte relacionada, a la Sociedad o a sus socios directos o indirectos (incluyendo mandantes), o a cualquier director, todos los cuales deberán estar bajo condiciones de mercado.*

(s) *La quiebra, insolvencia y reorganización (incluyendo el concurso mercantil) o la presentación de peticiones en ese sentido, por la Sociedad o cualquiera de sus Afiliadas.*

(t) *La incorporación por la Sociedad o sus Afiliadas de cualquier afiliada directa o indirecta o vehículo de inversión o vehículo con personalidad jurídica o no, y/o la apertura o prosecución por la Sociedad o por cualquiera de sus Afiliadas de una nueva línea de negocio o inversión no prevista en el plan de negocios anual y/o en el presupuesto anual.*

(u) *El ejercicio de cualesquiera derechos de voto o corporativos expedidos por las afiliadas y la designación de cualquier apoderado o representante autorizado para votar y aprobar cualquiera de los actos y/o asuntos descritos en los párrafos (a) a (s) de las presentes por cada una de las afiliadas, de ser el caso.*

SEGUNDA. Designación de los Miembros del Consejo de Gerentes de la Sociedad.

2.1  Se aprueba la renuncia de los miembros actuales del Consejo de Gerentes de la Sociedad, agradeciéndoles el desempeño de su encargo, ratificando desde ahora y para todos los efectos a que haya lugar, les gestiones que han venido realizando en la Sociedad y otorgándoles la liberación de responsabilidad y el finiquito más amplio que en derecho proceda, por el desempeño de sus cargos.

2.2  Se aprueba, la designación de los señores Fabio Massimo Covarribias Piffer, Santiago León Aveleyra y Eduardo Zayas Dueñas como miembros propietarios del Consejo de Gerentes de la Sociedad..

2.3  Se aprueba la designación por parte de los Socios de Rodrigo Núñez Sarrapy como Secretario no Miembro del Consejo de Gerentes de la Sociedad, sin formar parte del mismo.




2.5  Se aprueba la designación de los señores Horacio Alamilla Medina y José Luis Valera Muñoz, como integrantes del Consejo de Vigilancia de la Sociedad.

2.6  Con base en lo anterior, el Consejo de Gerentes y el Consejo de Vigilancia de la Sociedad, queda integrado, a partir de esta fecha y en forma respectiva, de la siguiente forma:

## CONSEJO DE GERENTES

| MIEMBRO PROPIETARIO | MIEMBROS SUPLENTES | CARGO |
|---|---|---|
| Santiago León Aveleyra | | PRESIDENTE |
| Fabio Massimo Covarribias Piffer | Francisco José Flores Meléndez | CONSEJERO |
| Eduardo Zayas Dueñas | | CONSEJERO |
| Julio Alejandro Belmont Garibay | Oscar Jesús Saitz Zazueta | CONSEJERO |
| Rodrigo Núñez Sarrapy | | SECRETARIO NO MIEMBRO DEL CONSEJO |

## CONSEJO DE VIGILANCIA

| MIEMBRO PROPIETARIO | CARGO |
|---|---|
| Horacio Alamilla Medina | CONSEJERO |
| José Luis Valera Muñoz | CONSEJERO |

**TERCERA.** <u>Revocación y otorgamiento de poderes.</u>

**3.1** Se aprueba revocar todos y cada uno de los poderes otorgados por la Sociedad con anterioridad a la fecha de las presentes Resoluciones, en específico, pero sin limitar, aquellos que se otorgaron en favor del señor Claudio del Conde, mediante la escritura pública 82,434, de fecha 1 de junio de 2017, otorgada ante la fe del licenciado Marco Antonio Aguirre, Notario Público 229 de la Ciudad de México.



**3.2** Se resuelve otorgar en favor de los señores ***FABIO MASSIMO COVARRUBIAS PIFFER Y EDUARDO ZAYAS DUEÑAS*** , *los siguientes poderes y facultades:*

**I.   PARA SER EJERCIDOS EN FORMA INDIVIDUAL:**

**a)   PODER GENERAL PARA PLEITOS Y COBRANZAS.-** De conformidad con el primer párrafo del Artículo Dos Mil Quinientos Cincuenta y Cuatro del Código Civil para el Distrito Federal y de sus correlativos de todos y cada uno de los Códigos Civiles de los demás Estados de los Estados Unidos Mexicanos, con todas las facultades generales e incluyendo aquellos poderes que requieran cláusula especial de acuerdo a la Ley, entre las que de una manera enunciativa pero no limitativa se citan las siguientes: Ejercitar toda clase de derechos y acciones ante cualquier autoridad de la Federación, de los Estados, del Distrito Federal y de los Municipios, ya sea en jurisdicción voluntaria, contenciosa o mixta y se trate de autoridades civiles, judiciales, administrativas o bien del trabajo, sean éstas  Juntas de Conciliación o Tribunales de Arbitraje, locales o federales; contestar demandas, oponer excepciones y reconvenciones; someterse a cualquier jurisdicción; articular y absolver posiciones; recusar magistrados, jueces, secretarios, peritos y demás personas recusables en derecho; comprometer en árbitros; transigir; recibir pagos; desistirse de lo principal, de sus incidentes, de cualquier recurso

5

y del amparo, el que podrá promover cuantas veces lo estime conveniente; rendir toda clase de pruebas; reconocer firmas y documentos, objetar éstos y redargüirlos de falsos; asistir a juntas, diligencias y almonedas; hacer posturas, pujas y mejoras y obtener para la Sociedad adjudicación de toda clase de bienes; formular acusaciones, denuncias y querellas; otorgar el perdón y constituirse en parte en causas criminales o coadyuvante del Ministerio Público, causas en la cuales podrá ejercitar las más amplias facultades que el caso requiera. Asimismo, podrá representar a la Sociedad en los términos de los artículos once, cuarenta seis, cuarenta y siente, ciento treinta y cuatro, tres romano, quinientos veintitrés, seiscientos noventa y dos, fracciones primera, segunda y tercera, setecientos ochenta y seis, ochocientos setenta y tres, ochocientos setenta y cuatro, ochocientos setenta y seis, ochocientos ochenta y tres, ochocientos ochenta y cuatro y demás relativos de la Ley Federal del Trabajo. En ningún caso se entenderá conferida la facultad para hacer cesión de bienes o de derechos a nombre de la Sociedad.

**b)   PODER GENERAL PARA ACTOS DE ADMINISTRACIÓN.-** De conformidad con lo establecido en el segundo párrafo del artículo dos mil quinientos cincuenta y cuatro del Código Civil para el Distrito Federal y sus correlativos de los Códigos Civiles de los Estados de los Estados Unidos Mexicanos.

**c)   PODER GENERAL PARA PLEITOS Y COBRANZAS Y PARA ACTOS DE ADMINISTRACIÓN EN MATERIA LABORAL.-** De conformidad con los dos primeros párrafos del artículo 2,554 (dos mil quinientos cincuenta y cuatro) del Código Civil para el Distrito Federal y disposiciones correlativas de las legislaciones de las demás entidades federativas así como el Código Civil Federal, con todas las facultades generales y especiales que requieran cláusula especial de conformidad con el artículo 2,587 (dos mil quinientos ochenta y siete) del Código Civil para el Distrito Federal y disposiciones correlativas de las legislaciones de las demás entidades federativas así como el Código Civil Federal, entre las que de una manera enunciativa, pero no limitativa, se citan las siguientes: ser representantes legales de la Sociedad, teniendo incluso la representación laboral de la misma, pudiendo ejercer toda clase de derechos y acciones ante cualesquiera autoridades de la federación, de los estados, del Distrito Federal y de los municipios, ya sea en jurisdicción voluntaria, contenciosa o mixta y se trate de autoridades civiles, penales, mercantiles, judiciales, fiscales, administrativas o bien del trabajo o de cualquier otro tipo que pudiera haber, sean éstas juntas de conciliación o tribunales de arbitraje, locales y federales; contestar demandas, oponer excepciones y reconvenciones;  someterse a cualquier jurisdicción; articular y absolver posiciones; recusar magistrados, jueces, secretarios, peritos y demás personas recusables en derecho; desistirse de lo  principal, de sus incidentes, de cualquier recurso y del amparo, el que podrán promover cuantas veces lo estimen conveniente; rendir toda clase de pruebas; reconocer firmas y documentos y objetar éstos; asistir a juntas, diligencias y almonedas; hacer posturas, pujas y mejoras y obtener para la sociedad mandante adjudicación de toda clase de bienes y, por cualquier título, hacer cesión de derechos y bienes; comprometer en árbitros; formular acusaciones, denuncias y querellas; otorgar el perdón y constituirse en parte en causas criminales o coadyuvante del ministerio público, causas en las cuales podrán ejercer las más amplias facultades que el caso requiera.

El apoderado tendrá facultades para representar legalmente a la Sociedad teniendo incluso la representación patronal de la misma en los términos de los artículos 11 (once), 46 (cuarenta y seis), 47 (cuarenta y siete), 134 (ciento treinta y cuatro) fracción III, 523 (quinientos veintitrés), 692 (seiscientos noventa y dos) fracciones I, II y III, 786 (setecientos ochenta y seis), 787 (setecientos ochenta y siete), 873 (ochocientos setenta y tres), 874 (ochocientos setenta y cuatro), 876 (ochocientos setenta y seis), 880 (ochocientos ochenta), 883 (ochocientos ochenta y tres), 884 (ochocientos ochenta y cuatro) y demás relativos de la Ley Federal del Trabajo. Los representantes legales patronales y apoderados generales podrán, de manera enunciativa y no limitativa, actuar ante o frente al o los sindicatos con los cuales existen celebrados contratos colectivos de trabajo y para todos los efectos de conflictos colectivos; podrán actuar ante o frente a los trabajadores personalmente considerados y para todos los efectos de conflictos individuales; en general para todos los asuntos obrero patronales y para ejercitarse ante cualesquiera de las autoridades del trabajo y servicios sociales a que se refiere el artículo

6

523 (quinientos veintitrés) de la Ley Federal del Trabajo; podrán asimismo comparecer ante las juntas de conciliación y arbitraje, ya sean locales o federales; en consecuencia, llevarán la representación patronal para efectos del artículo 11 (once), 46 (cuarenta y seis) y 47 (cuarenta y siete) de dicha ley, y también la representación legal de la empresa para los efectos de acreditar la personalidad y la capacidad en juicio o fuera de ellos, en los términos del artículo 692 (seiscientos noventa y dos) fracciones II y III de dicha ley; podrán comparecer al deshago de la prueba confesional, en los términos de los artículos 787 (setecientos ochenta y siete) y 788 (setecientos ochenta y ocho) de la Ley Federal del Trabajo, con facultades para articular y absolver posiciones y desahogar la prueba confesional en todas sus partes; podrán señalar domicilios convencionales para recibir notificaciones, en los términos del artículo 876 (ochocientos setenta y seis) de dicha ley; podrán comparecer con toda la representación legal bastante y suficiente, para acudir a la audiencia a que se refiere el artículo 873 (ochocientos setenta y tres) de la Ley Federal del Trabajo en sus tres fases de conciliación, de demanda y excepciones y de ofrecimiento y admisión de pruebas, en los términos de los artículos 875 (ochocientos setenta y cinco), 876 (ochocientos setenta y seis) fracciones I y VI, 877 (ochocientos setenta y siete), 878 (ochocientos setenta y ocho) 879 (ochocientos setenta y nueve) y 880 (ochocientos ochenta) de la Ley Federal del Trabajo; también podrán acudir a la audiencia de desahogo de pruebas, en los términos de los artículos 873 (ochocientos setenta y tres) y 874 (ochocientos setenta y cuatro) de la misma ley; asimismo se les confieren facultades para proponer arreglos conciliatorios, celebrar transacciones, tomar toda clase de decisiones, negociar y suscribir convenios laborales; al mismo tiempo podrán actuar como representantes de la empresa en su calidad de administradores, respecto y para toda clase de juicios o procedimientos de trabajo que se tramiten ante cualesquiera autoridades. Podrán celebrar contratos de trabajo y rescindirlos y para tales efectos, los mandatarios gozarán de todas las facultades de MANDATARIOS GENERALES PARA PLEITOS Y COBRANZAS Y ACTOS DE ADMINISTRACIÓN, en la forma que ha quedado descrito y en los términos de los dos primeros párrafos del artículo 2,554 (dos mil quinientos cincuenta y cuatro) y del artículo 2,587 (dos mil quinientos ochenta y siete) del Código Civil Federal.

## II.   PARA SER EJERCIDOS EN FORMA MANCOMUNADA POR LOS SEÑORES FABIO MASSIMO COVARRUBIAS PIFFER, COMO FIRMA "A" Y POR EL SEÑOR EDUARDO ZAYAS DUEÑAS, COMO FIRMA "B":

a)   **PODER GENERAL PARA ACTOS DE DOMINIO.-** Los apoderados tendrán todas las facultades de dueño, tanto en lo relativo a los bienes de la poderdante como para hacer toda clase de gestiones a fin de defenderlos, en los términos del tercer párrafo del artículo dos mil quinientos cincuenta y cuatro del Código Civil Federal y su correlativo de los Códigos Civiles para los Estados de la República.




b)   **PODER GENERAL PARA OTORGAR Y SUSCRIBIR TODA CLASE DE TÍTULOS DE CRÉDITO.-** En los términos del Artículo Noveno de la Ley General de Títulos y Operaciones de Crédito, pero únicamente para ser ejercido en forma mancomunada, en caso de tratarse de operaciones no incluidas dentro del plan de negocios o presupuesto anual de la Sociedad, aprobado por el Consejo de Gerentes para el ejercicio social de que se trate, o de operaciones que se encuentren fuera del curso normal de las operaciones de la sociedad y que en lo individual o conjuntamente(incluyendo una sucesión de actos vinculados o conexos entre sí por cualquier razón, entre otros por identidad entre las partes contratantes), superen un importe de USD$25,000.00 (veinticinco mil dólares 00/100, Moneda de Curso Legal de los Estados Unidos de América). Fuera del supuesto anterior, este poder podrá ser ejercido en forma individual.

c)   **PODER ESPECIAL.-** Para otorgar avales en nombre de la Sociedad.

d)   **PODER ESPECIAL.-** Para constituir a la sociedad como fiadora, obligada solidaria, o en cualquier forma garantizar las obligaciones a cargo de la sociedad o de terceros, personas físicas o morales en forma onerosa o gratuita pudiendo aceptar o constituir garantías reales o personales.

7

**III.    PARA SER EJERCITADO EN FORMA INDIVIDUAL, POR EL SEÑOR FABIO MASSIMO COVARRUBIAS PIFFER, COMO FIRMA "A":**

**a)**     **PODER ESPECIAL.-** Para abrir y cancelar cuentas bancarias a nombre de la Sociedad así como para hacer depósitos y girar contra ellas y designar personas que giren en contra de las mismas.

Lo anterior en el entendido que, en caso de tratarse de operaciones no incluidas dentro del plan de negocios o presupuesto anual de la Sociedad, aprobado por el Consejo de Gerentes para el ejercicio social de que se trate, o de operaciones que se encuentren fuera del curso normal de las operaciones de la sociedad y que en lo individual o conjuntamente(incluyendo una sucesión de actos vinculados o conexos entre sí por cualquier razón, entre otros por identidad entre las partes contratantes), superen un importe de USD$25,000.00 (veinticinco mil dólares 00/100, Moneda de Curso Legal de los Estados Unidos de América), la firma del apoderado mencionado deberá concurrir con la firma de un Apoderado con Firma"B".

**3.3** En favor de los señores ***JOSÉ ANTONIO ÁLVAREZ TAMAYO, ALEJANDRO OLVERA MARTÍNEZ, HORACIO ALAMILLA MEDINA, FRANCISCO JOSÉ FLORES MELÉNDEZ Y JUAN CARLOS SILVA MÁRQUEZ;*** *(cada uno un "Apoderado firma "A") los siguientes poderes y facultades:*

**I.    PARA SER EJERCIDOS EN FORMA INDIVIDUAL:**

**a)**    **PODER GENERAL PARA PLEITOS Y COBRANZAS.-** De conformidad con el primer párrafo del Artículo Dos Mil Quinientos Cincuenta y Cuatro del Código Civil para el Distrito Federal y de sus correlativos de todos y cada uno de los Códigos Civiles de los demás Estados de los Estados Unidos Mexicanos, con todas las facultades generales e incluyendo aquellos poderes que requieran cláusula especial de acuerdo a la Ley (pero sin incluir la facultad para hacer cesión de bienes), entre las que de una manera enunciativa pero no limitativa se citan las siguientes: Ejercitar toda clase de derechos y acciones ante cualquier autoridad de la Federación, de los Estados, del Distrito Federal y de los Municipios, ya sea en jurisdicción voluntaria, contenciosa o mixta y se trate de autoridades civiles, judiciales, administrativas o bien del trabajo, sean éstas Juntas de Conciliación o Tribunales de Arbitraje, locales o federales; contestar demandas, oponer excepciones y reconvenciones; someterse a cualquier jurisdicción; articular y absolver posiciones; recusar magistrados, jueces, secretarios, peritos y demás personas recusables en derecho; comprometer en árbitros; transigir; recibir pagos; desistirse de lo principal, de sus incidentes, de cualquier recurso o del amparo, el que podrá promover cuantas veces lo estime conveniente; rendir toda clase de pruebas; reconocer firmas y documentos, objetar éstos y redargüirlos de falsos; asistir a juntas, diligencias y almonedas; hacer posturas, pujas y mejoras y obtener para la Sociedad adjudicación de toda clase de bienes; formular acusaciones, denuncias y querellas; otorgar el perdón y constituirse en parte en causas criminales o coadyuvante del Ministerio Público, causas en la cuales podrá ejercitar las más amplias facultades que el caso requiera. Asimismo, podrá representar a la Sociedad en los términos de los artículos once, cuarenta seis, cuarenta y siente, ciento treinta y cuatro, tres romano, quinientos veintitrés, seiscientos noventa y dos, fracciones primera, segunda y tercera, setecientos ochenta y seis, ochocientos setenta y tres, ochocientos setenta y cuatro, ochocientos setenta y seis, ochocientos ochenta y tres, ochocientos ochenta y cuatro y demás relativos de la Ley Federal del Trabajo. En ningún caso se entenderá conferida la facultad para hacer cesión de bienes o de derechos a nombre de la Sociedad.



8

**b)**      **PODER GENERAL PARA PLEITOS Y COBRANZAS Y PARA ACTOS DE ADMINISTRACIÓN EN MATERIA LABORAL.-** De conformidad con los dos primeros párrafos del artículo 2,554 (dos mil quinientos cincuenta y cuatro) del Código Civil para el Distrito Federal y disposiciones correlativas de las legislaciones de las demás entidades federativas así como el Código Civil Federal, con todas las facultades generales y especiales que requieran cláusula especial de conformidad con el artículo 2,587 (dos mil quinientos ochenta y siete) del Código Civil para el Distrito Federal y disposiciones correlativas de las legislaciones de las demás entidades federativas así como el Código Civil Federal (pero sin incluir la facultad para hacer cesión de bienes), entre las que de una manera enunciativa, pero no limitativa, se citan las siguientes: ser representantes legales de la Sociedad, teniendo incluso la representación laboral de la misma, pudiendo ejercer toda clase de derechos y acciones ante cualesquiera autoridades de la federación, de los estados, del Distrito Federal y de los municipios, ya sea en jurisdicción voluntaria, contenciosa o mixta y se trate de autoridades civiles, penales, mercantiles, judiciales, fiscales, administrativas o bien del trabajo o de cualquier otro tipo que pudiera haber, sean éstas juntas de conciliación o tribunales de arbitraje, locales y federales; contestar demandas, oponer excepciones y reconvenciones; someterse a cualquier jurisdicción; articular y absolver posiciones; recusar magistrados, jueces, secretarios, peritos y demás personas recusables en derecho; desistirse de lo principal, de sus incidentes, de cualquier recurso y del amparo, el que podrán promover cuantas veces lo estimen conveniente; rendir toda clase de pruebas; reconocer firmas y documentos y objetar éstos; asistir a juntas, diligencias y almonedas; hacer posturas, pujas y mejoras y obtener para la sociedad mandante adjudicación de toda clase de bienes y, por cualquier título, hacer cesión de derechos y bienes; comprometer en árbitros; formular acusaciones, denuncias y querellas; otorgar el perdón y constituirse en parte en causas criminales o coadyuvante del ministerio público, causas en las cuales podrán ejercer las más amplias facultades que el caso requiera.

El apoderado tendrá facultades para representar legalmente a la Sociedad teniendo incluso la representación patronal de la misma en los términos de los artículos 11 (once), 46 (cuarenta y seis), 47 (cuarenta y siete), 134 (ciento treinta y cuatro) fracción III, 523 (quinientos veintitrés), 692 (seiscientos noventa y dos) fracciones I, II y III, 786 (setecientos ochenta y seis), 787 (setecientos ochenta y siete), 873 (ochocientos setenta y tres), 874 (ochocientos setenta y cuatro), 876 (ochocientos setenta y seis), 880 (ochocientos ochenta), 883 (ochocientos ochenta y tres), 884 (ochocientos ochenta y cuatro) y demás relativos de la Ley Federal del Trabajo. Los representantes legales patronales y apoderados generales podrán, de manera enunciativa y no limitativa, actuar ante o frente al o los sindicatos con los cuales existen celebrados contratos colectivos de trabajo y para todos los efectos de conflictos colectivos; podrán actuar ante o frente a los trabajadores personalmente considerados y para todos los efectos de conflictos individuales; en general para todos los asuntos obrero patronales y para ejercitarse ante cualesquiera de las autoridades del trabajo y servicios sociales a que se refiere el artículo 523 (quinientos veintitrés) de la Ley Federal del Trabajo; podrán asimismo comparecer ante las juntas de conciliación y arbitraje, ya sean locales o federales; en consecuencia, llevarán la representación patronal para efectos del artículo 11 (once), 46 (cuarenta y seis) y 47 (cuarenta y siete) de dicha ley, y también la representación legal de la empresa para los efectos de acreditar la personalidad y la capacidad en juicio o fuera de ellos, en los términos del artículo 692 (seiscientos noventa y dos) fracciones II y III de dicha ley; podrán comparecer al deshago de la prueba confesional, en los términos de los artículos 787 (setecientos ochenta y siete) y 788 (setecientos ochenta y ocho) de la Ley Federal del Trabajo, con facultades para articular y absolver posiciones y desahogar la prueba confesional en todas sus partes; podrán señalar domicilios convencionales para recibir notificaciones, en los términos del artículo 876 (ochocientos setenta y seis) de dicha ley; podrán comparecer con toda la representación legal bastante y suficiente, para acudir a

la audiencia a que se refiere el artículo 873 (ochocientos setenta y tres) de la Ley Federal del Trabajo en sus tres fases de conciliación, de demanda y excepciones y de ofrecimiento y admisión de pruebas, en los términos de los artículos 875 (ochocientos setenta y cinco), 876 (ochocientos setenta y seis) fracciones I y VI, 877 (ochocientos setenta y siete), 878 (ochocientos setenta y ocho) 879 (ochocientos setenta y nueve) y 880 (ochocientos ochenta) de la Ley Federal del Trabajo; también podrán acudir a la audiencia de desahogo de pruebas, en los términos de los artículos 873 (ochocientos setenta y tres) y 874 (ochocientos setenta y cuatro) de la misma ley; asimismo se les confieren facultades para proponer arreglos conciliatorios, celebrar transacciones, tomar toda clase de decisiones, negociar y suscribir convenios laborales; al mismo tiempo podrán actuar como representantes de la empresa en su calidad de administradores, respecto y para toda clase de juicios o procedimientos de trabajo que se tramiten ante cualesquiera autoridades.    Podrán celebrar contratos de trabajo y rescindirlos y para tales efectos, los mandatarios gozarán de todas las facultades de MANDATARIOS GENERALES PARA PLEITOS Y COBRANZAS Y ACTOS DE ADMINISTRACIÓN, en la forma que ha quedado descrito y en los términos de los dos primeros párrafos del artículo 2,554 (dos mil quinientos cincuenta y cuatro) y del artículo 2,587 (dos mil quinientos ochenta y siete) del Código Civil Federal.

**c)    PODER GENERAL PARA ACTOS DE ADMINISTRACIÓN EN MATERIA FISCAL.-** de comercio exterior y de seguridad social, con todas las facultades generales y especiales que requieran cláusula especial conforme a la Ley (pero sin incluir la facultad para hacer cesión de bienes), de conformidad con los dos primeros párrafos del artículo dos mil quinientos cincuenta y cuatro del Código Civil para el Distrito Federal y de los artículos correlativos de los Códigos Civiles de los Estados de la República Mexicana.

Dentro de dichas materias se entenderá comprendido, de manera enunciativa y no limitativa, todo lo relacionado con: i) impuestos, derechos, contribuciones de mejoras; ii) productos y aprovechamientos; iii) la entrada, salida y permanencia de mercancías de territorio nacional bajo cualquiera de los regímenes y modalidades previstos por la legislación aduanera y, en general, por todas las disposiciones jurídicas aplicables en materia de comercio exterior, y iv) aportaciones de seguridad social y en general con todo lo relacionado con las disposiciones jurídicas aplicables en materia de seguridad social.



Consecuentemente, el poder podrá ejercerse ante toda clase de autoridades fiscales, ya sean federales, estatales o municipales, así como ante organismos descentralizados y personas de derecho público que tengan el carácter de autoridad en las materias a que se refiere este poder. De manera enunciativa y no limitativa, los apoderados podrán ejercer sus facultades, ante; i) la Secretaría de Hacienda y Crédito Público, el Servicio de Administración Tributaria de la Secretaría de Hacienda y Crédito Público y las autoridades fiscales de los Estados de la Federación y de sus Municipios; ii) Cualquier dependencia o entidad de la administración pública federal o de las entidades federativas, encargada directa o indirectamente de cualquier asunto relacionado con las materias a que se refiere este poder, iii) el Instituto Mexicano del Seguro Social (IMSS), el Instituto del Fondo Nacional de la Vivienda para los Trabajadores (INFONAVIT).



Los apoderados podrán realizar o asumir todas las conductas activas o pasivas relacionadas con el cumplimiento de obligaciones y el ejercicio de derechos en las materias antes descritas, tanto de carácter sustantivo como adjetivo, en el ámbito administrativo como en el jurisdiccional (sin que por ello se tenga comprendida la facultad de enajenar, ceder, transferir ni en cualquier otra forma disponer o comprometer los bienes de la sociedad poderdante). Entre las conductas activas o pasivas que podrán realizar o asumir, los apoderados podrán,

10

de manera enunciativa y no limitativa: i) formular, promover, presentar, tramitar, gestionar, recibir y firmar todo tipo de declaraciones, manifestaciones, solicitudes, avisos, promociones, peticiones, oficios, consultas, notificaciones y en general, toda clase de documentos públicos y privados, ii) Recibir, pero no cobrar, los cheques o instrumentos de pago que se emitan a favor de la sociedad como devolución de pagos indebidos o cantidades que resulten como saldos a favor derivados de conceptos relacionados con la materias descritas; iii) realizar todos los actos relacionados con el ejercicio de las facultades de las autoridades para comprobar el cumplimiento de las obligaciones de la sociedad en las materias a que se refiere este poder, iv) recibir, atender  y desahogar requerimientos, inspecciones, visitas domiciliarias y toda clase revisiones realizadas por las autoridades para comprobar el cumplimiento de las obligaciones de la sociedad en las referidas materias, iv) Realizar todos los actos necesarios para demostrar el cumplimiento de las obligaciones de la sociedad en las materias a que se refiere este poder y ejercer todos los derechos de defensa legalmente permitidos.

## II. PARA SER EJERCIDOS EN FORMA MANCOMUNADA POR CUALESQUIERA DOS DE LOS APODERADOS:

a) **PODER GENERAL PARA ACTOS DE ADMINISTRACIÓN.-** De conformidad con lo establecido en el segundo párrafo del artículo dos mil quinientos cincuenta y cuatro del Código Civil para el Distrito Federal y sus correlativos de los Códigos Civiles de los Estados de los Estados Unidos Mexicanos.

b) **PODER GENERAL PARA OTORGAR Y SUSCRIBIR TODA CLASE DE TÍTULOS DE CRÉDITO.-** En los términos del Artículo Noveno de la Ley General de Títulos y Operaciones de Crédito, siepre y cuando se trate de operaciones incluidas en el plan anual de negocios o del presupuesto anual de la sociedad, aprobado por el Consejo de Gerentes para el ejercicio social de que se trate. En caso de tratarse de operaciones no incluidas dentro del plan de negocios o presupuesto anual de la Sociedad, aprobado por el Consejo de Gerentes para el ejercicio social de que se trate, o de operaciones que se encuentren fuera del curso normal de las operaciones de la sociedad y que en lo individual o conjuntamente(incluyendo una sucesión de actos vinculados o conexos entre sí por cualquier razón, entre otros por identidad entre las partes contratantes), superen un importe de USD\$25,000.00 (veinticinco mil dólares 00/100, Moneda de Curso Legal de los Estados Unidos de América), la firma mancomunada de los apoderados como Firma "A" deberá concurrir con la firma de un Apoderado con  Firma"B". 

**3.4** En favor del señor **_ALEJANDRO OLVERA MARTÍNEZ_**, en forma individual como Firma "A":

a)     **PODER ESPECIAL.-** Para abrir y cancelar cuentas bancarias a nombre de la Sociedad así como para hacer depósitos y girar contra ellas y designar personas que giren en contra de las mismas.

Lo anterior en el entendido que, en caso de tratarse de operaciones no incluidas dentro del plan de negocios o presupuesto anual de la Sociedad, aprobado por el Consejo de Gerentes para el ejercicio social de que se trate, o de operaciones que se encuentren fuera del curso normal de las operaciones de la sociedad y que en lo individual o conjuntamente(incluyendo una sucesión de actos vinculados o conexos entre sí por cualquier razón, entre otros por identidad entre las partes contratantes), superen un importe de USD\$25,000.00 (veinticinco mil dólares 00/100, Moneda de Curso Legal de los Estados Unidos de América), la firma del apoderado mencionado deberá concurrir con la firma de un Apoderado con Firma"B".

**3.5**     PARA SER EJERCIDOS INDIVIDUAL O MANCOMUNADAMENTE POR LOS APPODERADOS MENCIONADOS EN LAS RESOLUCIONES 3.2 Y 3.3 ANTERIORES, SEGÚN LAS REGLAS DE EJERCICIO ESTABLECIDAS EN CADA CASO DEPENDIENDO EL TIPO DE PODER DE QUE SE TRATE:

**a)**     Facultad para sustituir sus poderes, reservándose su ejercicio, así como facultad para otorgar poderes generales, limitados o especiales, pudiendo ser éstos a su vez con o sin facultades de sustitución y otorgamiento de poderes, sin que el apoderado a quien se le otorguen dichas facultades de sustitución o para conferir poderes pueda otorgar a su vez dichas facultades.

**b)**     Facultades para revocar poderes.

**LIMITACIÓN:** Los poderes otorgados en las resoluciones 3.2, 3.3, 3.4 y 3.5, requerirán para su ejercicio, de la previa autorización por escrito del Consejo de Gerentes de la Sociedad, cuando dicho ejercicio implique la realización de un "asunto fundamental", en términos de lo estipulado en la cláusula vigésima cuarta de los estatutos sociales de la Sociedad.

CUARTA.     Delegados.

Se autoriza indistintamente a los señores Santiago León Aveleyra, Eduardo Zayas Dueñas, Fabio Covarrubias Piffer, Rodrigo Núñez Sarrapy, Francisco José Flores Menéndez, Jorge Cervantes Trejo, Erika Olguín Valencia, César Octavio Cantoral Cárdenas, Luis Ernesto Brieño Jiménez y Pamela López Suárez para que, en forma conjunta o separada, como delegados de las presentes Resoluciones, comparezcan ante el notario público de su elección, a fin de solicitar y otorgar la protocolización de la presente acta, obtener su registro de ser el caso; así como para expedir las copias simples o certificadas, ya sea en su integridad o en lo conducente, que de la presente acta les fueren solicitadas.

LOS SOCIOS

L1BRE HOLDING, LLC                          L1BRE LLC


Por: Santiago León Aveleyra                 Por: Eduardo Zayas Dueñas
Su: Representante                           Su: Representante

12

### UNANIMOUS RESOLUTIONS OF THE SHAREHOLDERS OF
### SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V.

December 6, 2017

Based on Clause Eighteen of the corporate bylaws of SERVICIOS DIGITALES LUSAD, S. de R.L. de C.V. (the "Company"), the undersigned L1BRE (sic) HOLDING, LLC, represented herein by Santiago León Aveleyra ("L1bre Holding") and L1BRE (sic), LLC, represented herein by Eduardo Zayas Dueñas ("L1bre," and together with L1bre Holding, the "Shareholders"), in our capacity as the Company's sole shareholders, we unanimously adopt, outside of a general shareholders' meeting, the resolutions indicated below (the "Resolutions").

### R E S O L U T I O N S

FIRST.   Modification of the Company bylaws.

1.1   Clause Twenty of the Company bylaws is modified in its relevant part so that, as of this date, it reads as follows:

[…]

*"TWENTY. Administration of the company shall be turned over to a Board of Directors, composed of 4 (four) members who may or may not be shareholders of the Company. The members of the Board of Directors shall be appointed for one-year periods as of the date of their appointment or approval, as the case may be, and can be reelected for successive periods to continue in their respective positions until their successors take over their functions, with the understanding that the position of board member shall have an indefinite term until the shareholders' meeting determines otherwise, but shall in any case remain in their respective positions until their successors take over their functions.*

1.2   Modification of Clause Twenty-One of the Company bylaws is hereby approved so that, as of this date, it reads as follows:

[…]




*"TWENTY-ONE. The President of the Board of Directors shall be elected by the Shareholders' Meeting. Moreover, the Company's Board of Directors can appoint a secretary, who must be independent from the Company's shareholders and directors, and who shall not be a member of the Board of Directors. Vis-à-vis the Shareholders, Directors, and the Company, the secretary must meet the requirements for independence set forth in Article 26 of the Stock Market Act (or that which may replace it from time to time during the lifetime of the Company), and thus shall not be part of the Board of Directors, nor have a right to vote; his/her functions shall be limited to: (i) attend the Shareholders' Meeting and the sessions of the Board of Directors in order to draft the respective minutes; (ii) prepare and maintain the Minute Books of the Shareholders' Meetings, the Board of Directors' Sessions Book, the Shareholders' Registry Book, and the Capital Stock Variations Book, and of the transmissions de of said company shares and/or the increases or decreases that are made regarding the Company's share capital, if applicable; (iii) issue certificates regarding said corporate registries; and (iv) call shareholders' meetings and/or sessions of the Company's board of directors, if deemed appropriate."*

1.3   Modification of Clause Twenty-Two of the Company bylaws is hereby approved so that it reads as follows:

[…]

*"TWENTY-TWO. The Board of Directors shall meet at least 4 (four) times per year, when called by its President, the Company Secretary, or any two of its members, through a call for a meeting issued in writing to each member of the Board of Directors, including alternates, and delivered through a recognized international courier service with acknowledgment of receipt at least five days before the date of the meeting, or via e-mail with acknowledgment of receipt. A prior call for a meeting shall not be necessary when all the members of the Board of Directors are present at the meeting. The calls for a meeting must include the date, time, and place of the respective meeting, and must also include the Agenda, information and documents that shall be discussed during the meeting, and must be signed by the party or parties that call for the meeting."*

1.4 Modification of Clause Twenty-Four of the Company bylaws is hereby approved so that it reads as follows:

[…]

*"TWENTY-FOUR. In order for the Board of Directors' sessions to be considered legally held pursuant to the first or subsequent call for a meeting, the presence of at least 3 (three) of the owner members or their respective alternates, if they have been appointed, shall be necessary, and the agreements must be adopted by the vote of a majority of the members of Board of Directors present at the session, whether owners or alternates. The above is with the exception of the issues that are listed below, which shall be considered as a "fundamental issue" for which the presence, and the unanimous vote, of all the members of the Company's Board of Directors shall be required at the first or subsequent call for meetings:*

*(a) Modification to the Company bylaws or to the incorporation documents or bylaws of any of the Company's Affiliates.*

*(b) Increase or decrease in the Company's registered company capital and the issue of units, shares, or stock that represent said company capital, whether with or without voting rights, or with limited rights; as long as any increase to the company capital does not result in dilution among the Company's shareholders. Any reduction of capital must be done under the pari-passu principle to maintain and keep the ownership percentages among the Shareholders in the same proportions* 

*(c) The termination, liquidation, or dissolution of the Company or any of its affiliates.*

*(d) Loan, mortgage, or any real-estate lien that covers the material assets of the Company or any of its affiliates for financing or for other reasons; and/or loan, lien, or conveyance by any means of the representative shares of the Company's capital, or which represents the company capital of any of its affiliates (or of the rights of [the Company]).* 

*(e) Merger, consolidation, or scission with any other entity, or reorganization of the Company or any of its affiliates; division of the Company or change in its structure or of any of its affiliates.*

*(f) Any adjustment to the ownership percentage of any shareholder in the Company and in any of its affiliates.*

*(g) The underwriting by the Company or by any of its Affiliates of a company, joint venture, or other co-investment agreements or earnings distribution with a third party; and/or acceptance or admission of additional shareholders to the Company or its Affiliates, directly or indirectly.*

(h) *To borrow or provide collateral of any kind to a third party by the Company or any of its Affiliates, except (i) for intercompany loans, and/or (ii) for loans and financing approved by the Company's business plan and/or annual budget unanimously approved by the Board of Directors.*

(i) *The Company's annual business plan and/or annual budget and any modification and results thereof.*

(j) *The appointment and removal of outside auditors for the auditing of the financial statements of the Company or any of its affiliates, and the setting of their payments and fees.*

(k) *Plans for dividend distribution or plans to absorb losses for each fiscal year other than those approved in the annual business plan and/or annual budget, or modification of the dividend distribution policies of the Company or its affiliates.*

(l) *Any transaction or series of transactions, including without limitation the acquisition, disposition, lien, warranty, and/or sale of the material assets and investments of the Company or any of its affiliates that are not stipulated in the annual business plan and/or annual budget for the year in which such transactions take place, or such transactions are different in value or substance from those indicated in the annual business plan and/or annual budget, and the aggregate value of each transaction or series of transactions exceeds US$150,000.00 (one hundred fifty thousand US dollars) or its equivalent in other currency.*

(m) *The granting of powers by the Company or any of its affiliates, and the exercise and execution of any acts of [the Company or its affiliates] for acts of ownership, or for underwriting debt securities or securities of any kind (or to assess or accept them), to the point that said acts have an individual or collective value, in a single act or series of acts, of US$25,000.00 (twenty-five thousand US dollars) or more, except for (i) the signing of credit instruments in the Company's or its affiliates' ordinary course of business, and (ii) for acts approved in the annual business plan and/or annual budget, in which case such powers shall be exercised individually by either an A representative or B representative.*





(n) *The modification of any intercompany loan and/or the promissory notes that document them.*

(o) *The modification of the Concession dated June 17, 2016, issued to the Company by the Mexico City Mobility Authority for the replacement, installation, and maintenance of taxi meters, with geo-location for individual public transportation of passengers in Mexico City, as well as the development, operation, and use of a mobile application for the remote purchase of taxi rides; as well as its termination, suspension, assignment, encumbrance, waiver, cancellation, or withdrawal by any means.*

(p) *The acceptance, granting, modification, or waiver of any concession, temporary permit, or administrative authorization that the Company owns (or comes to own).*

(q) *The approval of the compensation package for the Company's employees and/or the hiring by the Company or its Affiliates of any employee, services, or similar agreements with Persons with annual compensation more than US$250,000.00 (two hundred fifty thousand US dollars) and the granting of any compensation or*

*benefits, except for those acts approved in the Annual Business Plan or the Annual Budget.*

(r) *The execution of any agreement, act, or operation by the Company or its affiliates with a party directly or indirectly related to the Company or its shareholders (including attorneys-in-fact), or to any director, all of which must be under market conditions.*

(s) *The bankruptcy, insolvency, and reorganization (including commercial bankruptcy), or the filing of applications for the same, by the Company or any of its Affiliates.*

(t) *The incorporation by the Company or its Affiliates of any direct or indirect affiliate, investment vehicle, or vehicle with or without corporate existence, and/or the opening or pursuit by the Company or any of its Affiliates of a new line of business or investment not specified in the annual business plan and/or annual budget.*

(u) *The exercise of any voting or corporate rights issued by the affiliates and the appointment of any attorney-in-fact or authorized representative to vote and approve any of the acts and/or matters described in paragraphs (a) to (s) herein by each of the affiliates, if applicable.*

SECOND. <u>Appointment of the Members of the Company's Board of Directors</u>.

2.1 The resignation of the current members of the Company's Board of Directors is hereby approved, thanking them for performing their duties, endorsing thus far and for all purposes the actions that they have taken at the Company, and granting them release from liability and the broadest termination allowable in law for performing their duties.

2.2 The appointment of Fabio Massimo Covarribias Piffer, Santiago León Aveleyra, and Eduardo Zayas Dueñas as owner members of the Company's Board of Directors is hereby approved. 

2.3 The appointment by the Shareholders (sic) of Rodrigo Núñez Sarrapy as Non-Member Secretary of the Company's Board of Directors, without his joining the same, is hereby approved. 

2.5 (sic) The appointment of Horacio Alamilla Medina and José Luis Valera Muñoz as members of the Company's Oversight Council is hereby approved.

2.6 Based on the foregoing, the Board of Directors and the Company's Oversight Council is composed as follows as of this date:

4

BOARD OF DIRECTORS

| MEMBER OWNER | ALTERNATE MEMBERS | TITLE |
|---|---|---|
| Santiago León Aveleyra | Francisco José Flores Meléndez | CEO |
| Fabio Massimo Covarribias Piffer | | OFFICER |
| Eduardo Zayas Dueñas | | |
| Julio Alejandro Belmont Garibay | Oscar Jesús Saitz Zazueta | OFFICER |
| Rodrigo Núñez Sarrapy | | SECRETARY, NONMEMBER OF THE BOARD |

OVERSIGHT BOARD

| MEMBER-OWNER | TITLE |
|---|---|
| Horacio Alamilla Medina | OFFICER |
| José Luis Valera Muñoz | OFFICER |

**THIRD.** <u>Revocation and granting of powers</u>.

3.1 The revocation of each and every one of the powers granted by the Company before the date of these Resolutions is hereby approved, including without limitation those granted to Claudio del Conde, through public document 82,434 dated June 1, 2017, granted before Marco Antonio Aguirre, Mexico City Notary Public 229.



3.2 It is hereby resolved to grant ***FABIO MASSIMO COVARRUBIAS PIFFER and EDUARDO ZAYAS DUEÑAS*** *the following powers and authorities:*

**I.      TO BE EXERCISED INDIVIDUALLY:**

**a)      GENERAL POWER FOR LAWSUITS AND COLLECTIONS.** In accordance with the first paragraph of Article two thousand five hundred fifty-four of the Civil Code for the Federal District and its successive provisions in each and every one of the Civil Codes of the other States of the United Mexican States, with all the general powers and the special ones that require a special clause according to Law, which include, without limitation, the following: Exercise all types of rights and actions before any authority of the Mexican government, the states, the Federal District, and the municipalities, whether in contentious, non-contentious, or mixed proceedings, covering civil, criminal, mercantile, judicial, tax, administrative, labor, or any other type of authorities, whether local or federal conflict-resolution or arbitration panels; reply to lawsuits, oppose objections and counterclaims; submit to any jurisdiction; make depositions and answer interrogatories; challenge judges, secretaries, experts, and other persons that can be challenged in law; withdraw from the main lawsuit, its incidental suits, any appeal

5

and *amparo* suit, which they can file as often as they deem appropriate; produce all types of evidence; acknowledge signatures and documents, object to them, and challenge them as false; attend meetings, proceedings, and auctions; make bids and improvements, and obtain for the authorizing company an award for all types of assets; draft complaints; grant a pardon and be a party to criminal cases or an assistant prosecutor, cases for which they can exercise the broadest authorities the case may require. In addition, [the attorney-in-fact] can represent the Company in terms of Articles eleven; forty-six; forty-seven; one hundred thirty-four, Roman numeral three; five hundred twenty-three; six hundred ninety-two, first, second, and third subparagraphs; seven hundred eighty-six; eight hundred seventy-three; eight hundred seventy-four; eight hundred seventy-six; eight hundred eighty-three; eight hundred eighty-four; and other related Articles of the Federal Labor Act. In no case shall the authority to assign assets or rights on behalf of the Company be understood to be conferred.

**b)      GENERAL POWER FOR ADMINISTRATIVE ACTIONS.** In accordance with the provisions of the second paragraph of Article two thousand five hundred fifty-four of the Civil Code for the Federal District and their counterparts in the Civil Codes of the States of the United Mexican States.

**c)      GENERAL POWER FOR LAWSUITS AND COLLECTIONS AND FOR ADMINISTRATIVE ACTIONS IN LABOR MATTERS.** In accordance with the first two paragraphs of Article 2554 (two thousand five hundred fifty-four) of the Civil Code for the Federal District and successive provisions of the laws of the other Mexican states, as well as the Federal Civil Code, with all the general authorities and special ones that require a special clause, according to Article 2587 (two thousand five hundred eighty-seven) of the Civil Code for the Federal District, its successive provisions of the laws of the other Mexican states and the Federal Civil Code, which include, without limitation, the following: to be legal representatives of the Company, including labor-related representation of the same, being able to exercise all types of rights and actions before any authorities of the Mexican government, the states, the Federal District, and the municipalities, whether in contentious, non-contentious, or mixed proceedings, and covers civil, criminal, mercantile, judicial, tax, administrative, labor, or any other type of possible authorities, whether local or federal conflict-resolution or arbitration panels; to reply to lawsuits, oppose objections and counterclaims; to submit to any jurisdiction; to make depositions and answer interrogatories; to challenge judges, secretaries, experts, and other persons that can be challenged in law; to withdraw from the main lawsuit, its incidental suits, any appeal, and *amparo* suit, which they can file as often as they deem appropriate; produce all types of evidence; acknowledge signatures and documents and challenge them; attend meetings, proceedings, and auctions; make bids and improvements, and obtain for the authorizing company an award for all types of assets and, for any reason, assign rights and assets; to compromise in arbitrations; to draft complaints; to issue a pardon and be a party to criminal cases or an assistant prosecutor, cases for which they can exercise the broadest authorities the case may require. 

The attorney-in-fact shall have the authority to legally represent the Company, including ownership representation of the same, under the terms of Articles 11 (eleven), 46 (forty-six), 47 (forty-seven), 134 (one hundred thirty-four) Section III, 523 (five hundred twenty-three), 692 (six hundred ninety-two) Sections I, II, and III, 786 (seven hundred eighty-six), 787 (seven hundred eighty-seven), 873 (eight hundred seventy-three), 874 (eight hundred seventy-four), 876 (eight hundred seventy-six), 880 (eight hundred eighty), 883 (eight hundred eighty-three), 884 (eight hundred eighty-four) and other related articles of the Federal Labor Act. The powers of the employer's legal representatives and the general attorneys-in-fact include but are not limited to the following: act before or against the union(s) with whom collective labor agreements exist, and for all purposes of collective disputes; act before or against workers considered as individuals and for all purposes of individual disputes; in general, for all worker-employer matters, and to be exercised before any of the labor and social service authorities to which Article

523 (five hundred twenty-three) of the Federal Labor Act refers; they can also appear before conflict-resolution and arbitration panels, whether local or federal; therefore, they shall bear employer representation for the purposes of Articles 11 (eleven), 46 (forty-six), and 47 (forty-seven) of said Act, and also the legal representation of the company for the purposes of verifying the identity and standing in or out of court, under the terms of Article 692 (six hundred ninety-two), Sections II and III of said Act; they can appear for the taking oral evidence from the parties, under the terms of Articles 787 (seven hundred eighty-seven) and 788 (seven hundred eighty-eight) of the Federal Labor Act, with the authority to make depositions and answer interrogatories and take oral evidence from all the parties; they can indicate home addresses to receive notices, under the terms of Article 876 (eight hundred seventy-six) of said Act; they can, with full and sufficient legal representation, appear at the hearing to which Article 873 (eight hundred seventy-three) of the Federal Labor Act in its three phases of settlement, claim and objections, and filing and admission of evidence under the terms of Articles 875 (eight hundred seventy-five); 876 (eight hundred seventy-six), Sections I and VI; 877 (eight hundred seventy-seven); 878 (eight hundred seventy-eight); 879 (eight hundred seventy-nine); and 880 (eight hundred eighty) of the Federal Labor Act; they can also appear at the evidence examination hearing under the terms of Article 873 (eight hundred seventy-three) and 874 (eight hundred seventy-four) of the same Act; it also confers authorities to propose settlement agreements, sign transactions, make all types of decisions, negotiate and sign labor agreements; they can also act as company representatives in their capacity as administrators, regarding and for all types of lawsuits or labor proceedings that may be brought before any authorities. They can sign and terminate labor contracts, and for such purposes the attorneys-in-fact shall have all the authorities of GENERAL ATTORNEYS-IN-FACT FOR LAWSUITS AND COLLECTIONS AND ADMINISTRATIVE ACTIONS, as described in and under the terms of the first two paragraphs of Article 2554 (two thousand five hundred fifty-four) and Article 2587 (two thousand five hundred eighty-seven) of the Federal Civil Code.

**II.   TO BE EXERCISED JOINTLY BY FABIO MASSIMO COVARRUBIAS PIFFER, AS SIGNATURE "A," AND EDUARDO ZAYAS DUEÑAS, AS SIGNATURE "B":**

a)   **GENERAL POWER FOR ACTS OF OWNERSHIP.** The attorneys-in fact shall have all the authorities of an owner, both in regard to the assets of the grantor of this document as well as to take all types of action in order to defend them, under the terms of the third paragraph of Article two thousand five hundred fifty-four of the Federal Civil Code and its counterpart in the Civil Codes for the States of the [Mexican] Republic.



b)   **GENERAL POWER TO ISSUE AND UNDERWRITE ALL TYPES OF CREDIT SECURITIES.** Under the terms of Article Nine of the Securities and Credit Transactions Act, but only to be exercised jointly in case the matter involves transactions not included within the Company's business plan or annual budget approved by the Board of Directors for the fiscal year at issue, or transactions outside the company's normal course of business, and which separately or jointly (including a series of actions tied or connected to each other for any reason; among others, because the contracting parties are one and the same) are above an amount of US$25,000.00 (twenty-five thousand US dollars). Outside of the case above, this power can be exercised individually.

c)   **SPECIAL POWER.** To issue guarantees on behalf of the Company.

d)   **SPECIAL POWER.** To establish the company as guarantor, joint and several obligor, or in any way guarantee the liabilities owed by the company or third parties, individual persons or legal entities, through payment or free of charge, being able to accept or grant security interests or personal guaranties.

**III.     TO BE EXERCISED INDIVIDUALLY BY FABIO MASSIMO COVARRUBIAS PIFFER, AS SIGNATURE "A":**

a)     **SPECIAL POWER.** To open and close bank accounts on behalf of the Company, as well as to make deposits and draw on them, and to designate persons who may draw on them.

The foregoing is with the understanding that, in case the matter involves transactions not included within the Company's business plan or annual budget approved by the Board of Directors for the fiscal year at issue, or transactions outside the company's normal course of business, which separately or jointly (including a series of actions tied or connected to each other for any reason; among others, because the contracting parties are one and the same) are above an amount of US$25,000.00 (twenty-five thousand US dollars), the signature of the above-mentioned attorney-in-fact must be the same as an Attorney-in-Fact with Signature "B."

3.3 To ***JOSÉ ANTONIO ÁLVAREZ TAMAYO, ALEJANDRO OLVERA MARTÍNEZ, HORACIO ALAMILLA MEDINA, FRANCISCO JOSÉ FLORES MELÉNDEZ, and JUAN CARLOS SILVA MÁRQUEZ*** *(each an <u>Attorney-in-Fact Signature "A"</u>), the following powers and authorities:*

**I.     TO BE EXERCISED INDIVIDUALLY:**

a)     **GENERAL POWER FOR LAWSUITS AND COLLECTIONS.** In accordance with the first paragraph of Article two thousand five hundred fifty-four of the Civil Code for the Federal District and its counterparts in each and every one of the Civil Codes of the other States of the United Mexican States, with all the general authorities and the special ones that require a special clause according to Law (but without including the authority to assign assets), which include, without limitation, the following: Exercise all types of rights and actions before any authority of the Mexican government, the states, the Federal District, and the Municipalities, whether in contentious, non-contentious, or mixed proceedings involving civil, judicial, administrative, or labor authorities, whether local or federal conflict-resolution or arbitration panels; reply to lawsuits, oppose objections and counterclaims; submit to any jurisdiction; make depositions and answer interrogatories; challenge judges, secretaries, experts, and other persons that can be challenged in law; withdraw from the main lawsuit, its incidental suits, any appeal and *amparo* suit, which they can file as often as they deem appropriate; produce all types of evidence; acknowledge signatures and documents, object to them, and challenge them as false; attend meetings, proceedings, and auctions; make bids and improvements, and obtain for the authorizing company an award for all types of assets; draft complaints; grant a pardon and be a party to criminal cases or an assistant prosecutor, cases for which they can exercise the broadest authorities the case may require. In addition, [the attorney-in-fact] can represent the Company in terms of Articles eleven; forty-six; forty-seven; one hundred thirty-four, Roman numeral three; five hundred twenty-three; six hundred ninety-two, first, second, and third subparagraphs; seven hundred eighty-six; eight hundred seventy-three; eight hundred seventy-four; eight hundred seventy-six; eight hundred eighty-three; eight hundred eighty-four; and other related Articles of the Federal Labor Act. In no case shall the authority to assign assets or rights on behalf of the Company be understood to be conferred.




**b)** **GENERAL POWER FOR LAWSUITS AND COLLECTIONS AND FOR ADMINISTRATIVE ACTIONS IN LABOR MATTERS.** In accordance with the first two paragraphs of Article 2554 (two thousand five hundred fifty-four) of the Civil Code for the Federal District and successive provisions of the laws of the other Mexican states, as well as the Federal Civil Code, with all the general authorities and special ones that require a special clause, according to Article 2587 (two thousand five hundred eighty-seven) of the Civil Code for the Federal District, its successive provisions of the laws of the other Mexican states and the Federal Civil Code (but without including the authority to assign assets), which include, without limitation, the following: to be legal representatives of the Company, including labor-related representation of the same, being able to exercise all types of rights and actions before any authorities of the Mexican government, the states, the Federal District, and the municipalities, whether in contentious, non-contentious, or mixed proceedings, and covers civil, criminal, mercantile, judicial, tax, administrative, labor, or any other type of possible authorities, whether local or federal conflict-resolution or arbitration panels; to reply to lawsuits, oppose objections and counterclaims; to submit to any jurisdiction; to make depositions and answer interrogatories; to challenge judges, secretaries, experts, and other persons that can be challenged in law; to withdraw from the main lawsuit, its incidental suits, any appeal, and *amparo* suit, which they can file as often as they deem appropriate; produce all types of evidence; acknowledge signatures and documents and challenge them; attend meetings, proceedings, and auctions; make bids and improvements, and obtain for the authorizing company an award for all types of assets and, for any reason, assign rights and assets; to compromise in arbitrations; to draft complaints; to issue a pardon and be a party to criminal cases or an assistant prosecutor, cases for which they can exercise the broadest authorities the case may require.

The attorney-in-fact shall have the authority to legally represent the Company, including ownership representation of the same, under the terms of Articles 11 (eleven), 46 (forty-six), 47 (forty-seven), 134 (one hundred thirty-four) Section III, 523 (five hundred twenty-three), 692 (six hundred ninety-two), Sections II and III, 786 (seven hundred eighty-six), 787 (seven hundred eighty-seven), 873 (eight hundred seventy-three), 874 (eight hundred seventy-four), 876 (eight hundred seventy-six), 880 (eight hundred eighty),  883 (eight hundred eighty-three), 884 (eight hundred eighty-four), and other related Articles of the Federal Labor Act. The powers of the employer's legal representatives and the general attorneys-in-fact include but are not limited to the following: act before or against the union(s) with whom collective labor agreements exist, and for all purposes of collective disputes; act before or against workers considered as individuals and for all purposes of individual disputes; in general, for all worker-employer matters, and to be exercised before any of the labor and social service authorities to which Article 523 (five hundred twenty-three) of the Federal Labor Act refers; appear before conflict-resolution and arbitration panels, whether local or federal; therefore, they shall bear employer representation for the purposes of Articles 11 (eleven), 46 (forty-six), and 47 (forty-seven) of said Act, and also the legal representation of the company for the purposes of verifying the identity and standing in or out of court, under the terms of Article 692 (six hundred ninety-two), Sections II and III of said Act; they can appear for the taking oral evidence from the parties, under the terms of Articles 787 (seven hundred eighty-seven) and 788 (seven hundred eighty-eight) of the Federal Labor Act, with the authority to make depositions and answer interrogatories and take oral evidence from all the parties; they can indicate home addresses to receive notices, under the terms of Article 876 (eight hundred seventy-six) of said Act; they can appear, with full and sufficient legal representation, at




the hearing to which Article 873 (eight hundred seventy-three) of the Federal Labor Act refers in its three phases of settlement, claim and objections, and filing and admission of evidence under the terms of Articles 875 (eight hundred seventy-five); 876 (eight hundred seventy-six), Sections I and VI; 877 (eight hundred seventy-seven); 878 (eight hundred seventy-eight); 879 (eight hundred seventy-nine); and 880 (eight hundred eighty) of the Federal Labor Act; they can also appear at the evidence examination hearing under the terms of Article 873 (eight hundred seventy-three) and 874 (eight hundred seventy-four) of the same Act; it also confers authorities to propose settlement agreements, sign transactions, make all types of decisions, negotiate and sign labor agreements; they can also act as company representatives in their capacity as administrators, regarding and for all types of lawsuits or labor proceedings that may be brought before any authorities.  They can sign and terminate labor contracts, and for such purposes the attorneys-in-fact shall have all the authorities of GENERAL ATTORNEYS-IN-FACT FOR LAWSUITS AND COLLECTIONS AND ADMINISTRATIVE ACTIONS, as described in and under the terms of the first two paragraphs of Article 2554 (two thousand five hundred fifty-four) and Article 2587 (two thousand five hundred eighty-seven) of the Federal Civil Code.

**c) GENERAL POWER FOR ADMINISTRATIVE ACTIONS IN TAX MATTERS.** for (sic) foreign trade and social security, with all the general and special authorities that may require a special clause according to the Law (but without including the ability to make an assignment of assets), according to the first two paragraphs of Article two thousand five hundred fifty-four of the Civil Code for the Federal District and their successive articles in the Civil Codes of the States of the Mexican Republic.

These matters shall be understood to include, without limitation, everything regarding: i) taxes, duties, taxes for improvements; ii) products and uses; iii) the entry, exit, and remaining of merchandise from the national territory under any of the regimens and systems indicated by customs law and, in general, by the applicable legal provisions on foreign trade matters; and iv) social security contributions and, in general, everything related to the applicable legal provisions on social security matters.

Therefore, the power can be exercised before all types of tax authorities, whether federal, state, or municipal, as well as decentralized agencies and entities under public law that have authority in the subjects to which this power refers. The attorneys-in-fact can exercise their authorities before the following, without limitation: i) the Department of the Treasury and Public Credit, the Tax Administration Service of the Department of the Treasury and Public Credit, and the tax authorities of the Mexican States and their Municipalities; ii) Any agency or entity of the federal public administration or the states directly or indirectly in charge of an matter related to the subjects to which this power refers; iii) the Mexican Social Security Institute (IMSS), the National Fund for Workers' Housing (INFONAVIT).




The attorneys-in-fact can carry out or take on all active or passive behaviors related to meeting obligations and the exercise of rights described above, both substantive and descriptive, in both the administrative and jurisdictional sphere (<u>without including the authority to convey, assign, transfer, or in any other way dispose of or commit the assets of the company issuing this power of attorney</u>). The active or passive behavior that the attorneys-in-face can exercise or take on include

but are not limited to the following: i) draft, file, present, process, manage, receive, and sign all types of statements, affidavits, requests, notices, promotions, requests, official letters, consultations, notifications and, in general, all types of public and private documents; ii) receive, but not pay, checks or payment instruments issued to the company as a return of undue payments or balances resulting from issues related to the matters described; iii) perform all acts related to the exercise of the authorities' capacities to verify compliance with the company's obligations in matters to which this power of attorney refers; iv) receive, see to, and present requests, inspections, headquarters visits, and all types of reviews conducted by the authorities to verify compliance with the company's obligations in said matters; iv) perform all acts necessary to prove compliance with the company's obligations in matters to which this power of attorney refers and exercise all legally permitted rights of defense.

**II.   TO BE EXERCISED JOINTLY BY ANY TWO OF THE ATTORNEYS-IN-FACT:**

a)      **GENERAL POWER FOR ADMINISTRATIVE ACTIONS.** In accordance with the provisions of the second paragraph of Article two thousand five hundred fifty-four of the Civil Code for the Federal District and their successive articles in the Civil Codes of the States of the United Mexican States.

b)      **GENERAL POWER TO ISSUE AND UNDERWRITE ALL TYPES OF CREDIT SECURITIES.** Under the terms of Article Nine of the Securities and Credit Transactions Act, as long as the matter involves transactions included within the Company's annual business plan or annual budget approved by the Board of Directors for the fiscal year at issue. In case the matter involves transactions not included within the Company's business plan or annual budget approved by the Board of Directors for the fiscal year at issue, or transactions outside the company's normal course of business, which separately or jointly (including a series of actions tied or connected to each other for any reason; among others, because the contracting parties are one and the same) are above an amount of US$25,000.00 (twenty-five thousand US dollars), the joint signature of the attorneys-in-fact as Signature "A" must be the same as the signature of an Attorney-in-Fact with Signature "B."  

**3.4** To ***ALEJANDRO OLVERA MARTÍNEZ,*** individually as Signature "A":

a)      **SPECIAL POWER.** To open and close bank accounts on behalf of the Company, as well as to make deposits and draw on them, and to designate persons who may draw on them.

The foregoing is with the understanding that, in case the matter involves transactions not included within the Company's business plan or annual budget approved by the Board of Directors for the fiscal year at issue, or transactions outside the company's normal course of business, which separately or jointly (including a series of actions tied or connected to each other for any reason; among others, because the contracting parties are one and the same) are above an amount of US$25,000.00 (twenty-five thousand US dollars), the signature of the above-mentioned attorney-in-fact must be the same as an Attorney-in-Fact with Signature "B."

**3.5** TO BE EXERCISED INDIVIDUALLY OR JOINTLY BY THE ATTORNEYS-IN-FACT MENTIONED IN RESOLUTIONS 3.2 AND 3.3 ABOVE, ACCORDING TO THE RULES OF EXERCISE ESTABLISHED IN EACH CASE, DEPENDING ON THE TYPE OF POWER CONCERNED:

a)       Authority to substitute their powers, reserving their exercise, as well as a authority to grant general, limited, or special powers; the latter can be with or without the authority to substitute and grant powers, unless the attorney-in-fact to whom said authority to substitute or grant powers is given can in turn grant said authorities.

b)       Authority to withdraw powers.

**LIMITATION:** The powers granted in Resolutions 3.2, 3.3, 3.4, and 3.5 shall require for their exercise the prior written authorization of the Company's Board of Directors, when such exercise implies the conducting of a "fundamental issue" under the stipulations in Clause Twenty-Four of the Company's bylaws.

FOURTH.   Appointees.

Santiago León Aveleyra, Eduardo Zayas Dueñas, Fabio Covarrubias Piffer, Rodrigo Núñez Sarrapy, Francisco José Flores Menéndez, Jorge Cervantes Trejo, Erika Olguín Valencia, César Octavio Cantoral Cárdenas, Luis Ernesto Brieño Jiménez, and Pamela López Suárez are hereby jointly or severally authorized, as appointees of these Resolutions, to appear before the notary public of their choice in order to request and grant the notary recording of these minutes, obtain their registration if needed, and to issue plain or certified copies, whether in their entirety or in relevant part, that may be requested of these minutes.

THE SHAREHOLDERS

L1BRE HOLDING, LLC                    L1BRE LLC

Por:

By: Santiago León Aveleyra            By: Eduardo Zayas Dueñas
    Its: Representative                    Its: Representative

12

| | |
|---|---|
| **THE STATE OF TEXAS** | } |
| | } |
| **COUNTY OF  HARRIS** | } |

### AFFIDAVIT OF ACCURACY

BEFORE ME, the undersigned authority, on this day personally appeared <u>Ana Cristina Didoné</u>, who, by oath and by presentation of identification, is personally known to me to be the person subscribing her name below and, after being by me duly sworn according to law, upon her oath deposes and says in due form of law that to the best of her knowledge, information and belief:

1.  "My name is Ana Cristina Didoné and I am over the age of twenty-one years and competent to make this affidavit.

2.  I speak, read, and write fluently in both the English and Spanish languages.

3.  I have been a certified sworn translator since 1988 with a M.A. in Legal Translations from the University of Salvador, Argentina. I am certified by the Argentine Association of Sworn Public Translators to translate from English into Spanish and Spanish into English. I am also certified by the American Translators Association for English to Spanish translations.  I hold a degree in Executive Business Management from Rice University.

I hereby certify that the Spanish to English translation attached hereto: "December 6, 2017 Unanimous Resolutions of Servicios Digitales Lusad S. de R.L. de C..V Partners" is a true, correct, fair, accurate and complete English translation to the best of my ability, of the original document in Spanish.

_____
ANA CRISTINA DIDONE, MA
Certified by American Translators Association

Sworn to before me this May 12, 2019

_____
Notary Public in and for the State of Texas
My commission expires: _____

TODD FEDER
Notary Public, State of Texas
Comm. Expires 05-19-2021
Notary ID 129411929