# EXHIBIT 4

CONTRATO DE PRESTACION DE SERVICIOS PROFESIONALES DE FECHA 22 DE DICIEMBRE DE 2017, QUE CELEBRAN POR UNA PARTE SERVICIOS ADMINISTRATIVOS LUSAD, S. DE R.L. DE C.V., REPRESENTADA POR LOS SRES. JOSÉ ANTONIO ÁLVAREZ TAMAYO Y FRANCISCO JOSÉ FLORES MELÉNDEZ (A QUIEN EN LOS SUCESIVO SE LE DENOMINARÁ "EL CONTRATANTE") Y, POR OTRA PARTE, KICHINK SERVICIOS, S.A. DE C.V. REPRESENTADA POR EL SR. CLAUDIO DEL CONDE _____ (A QUIEN EN LO SUCESIVO SE LE DENOMINARA "EL CONSULTOR"), AL TENOR DE LAS SIGUIENTES DECLARACIONES Y CLÁUSULAS:

### DECLARACIONES

I.   Declara EL CONTRATANTE:

a)   Que es una sociedad válidamente constituida y existente conforme a las leyes de los Estados Unidos Mexicanos y que su representante cuenta con las facultades suficientes para obligarla en términos de este contrato.

b)   Que es su voluntad contratar al CONSULTOR a efecto de que le preste los servicios que se describen en el Anexo "A" del presente Contrato (en lo sucesivo "los Servicios").

II.   Declara EL CONSULTOR que:

a)   Que es una persona moral constituida conforme a las leyes de los Estados Unidos Mexicanos, con plena capacidad en el ejercicio de sus derechos y que su representante cuenta con las facultades suficientes para obligarla en términos del presente contrato.

b)   Que es su voluntad celebrar el presente Contrato con EL CONTRATANTE para la prestación de los Servicios.

En virtud de las Declaraciones que anteceden, las Partes de este Contrato convienen en otorgar las siguientes:

### CLAUSULAS

**PRIMERA.**   **OBJETO**

**1.1.**   El objeto del presente Contrato es que EL CONSULTOR desarrolle para EL CONTRATANTE el desarrollo de software, programas de computación, aplicaciones y sistemas informáticos cuyas funciones y características se detallan en el Anexo "A" de este contrato. Todo lo anterior, conforme a los términos y condiciones estipulados en este Contrato.

**SEGUNDA.**   **CONTRAPRESTACION**

**2.1.**   Como contraprestación por los Servicios a que se refiere el Anexo "A" del presente Contrato, EL CONTRATANTE pagará a EL CONSULTOR la cantidad que se detalla en el documento que se adjunta al presente Contrato como Anexo"B", que forma parte integrante del mismo (la "Contraprestación"). El pago de la Contraprestación se llevará a cabo de conformidad con lo especificado en dicho Anexo "B".
Por su parte, EL CONSULTOR podrá subcontratar todo o parte de los Servicios que sean necesarios, a su juicio, para desarrollar el software, programas de computación, aplicaciones y sistemas informáticos que se describen en el Anexo "A" de este Contrato.

2

**2.2.** Previo al pago de la Contraprestación, EL CONSULTOR deberá entregar a EL CONTRATANTE una factura que cumpla con las disposiciones fiscales aplicables, señalando la Contraprestación por el período cubierto por la factura correspondiente, calculada en los términos y condiciones señalados en el Anexo "B" de este Contrato.

**TERCERA. IMPUESTOS**

**3.1.** Todos los impuestos que resulten de la prestación de los Servicios serán pagados por la parte que corresponda, de conformidad con las leyes fiscales aplicables.

**CUARTA. PRESTACIÓN DEL SERVICIO**

**4.1.** En la prestación de los Servicios, EL CONSULTOR se obliga a cumplir con las leyes, reglamentos, circulares o cualquier otro ordenamiento legal de carácter federal, estatal o municipal aplicable para cualquier actividad derivada o relacionada con la prestación de los Servicios.

**4.2.** EL CONSULTOR y EL CONTRATANTE aceptan que nada en el contenido del presente Contrato pretende o tiene la intención de establecer alguna obligación de exclusividad entre EL CONTRATANTE y EL CONSULTOR, por lo que no existe obligación de exclusividad alguna entre ambas Partes.

**QUINTA. VIGENCIA; TERMINACION**

**5.1.** El presente Contrato tendrá una vigencia indefinida, a partir de la fecha establecida en el proemio del mismo y hasta en tanto se concluya la prestación de los Servicios.

**5.2.** No obstante lo anterior, el presente Contrato podrá darse por terminado: (i) por previo mutuo acuerdo por escrito entre las Partes o, (ii) conforme a una notificación por escrito ("Notificación de Incumplimiento") a la otra Parte, entregada y recibida por la otra Parte con por lo menos 30 (treinta) día naturales de anticipación a la fecha que se desee surta efectos la terminación, en caso de que cualquiera de las Partes incumpla cualquiera de sus obligaciones bajo el presente Contrato y no remedie dicho incumplimiento en el plazo otorgado en la Notificación de Incumplimiento de treinta días naturales.
En el caso de terminación anticipada, todos los servicios prestados, serán efectivamente pagados hasta la fecha de terminación, en un plazo de hasta tres meses.

**SEXTA.     CASO FORTUITO; FUERZA MAYOR**

**6.1.** En caso de que el cumplimiento del presente Contrato o cualquier obligación derivada del mismo por el CONSULTOR le resultare imposible o se viera retrasado con motivo de o como consecuencia de cualquier Ley, caso fortuito o fuerza mayor, incluyéndose actos tales como huelga u otros disturbios laborales, guerra, sea ésta declarada o no, sabotaje y cualesquiera otra causa o causas que no puedan ser controladas por ninguna de las Partes, no se considerará que dicha Parte incumplió las obligaciones asumidas por ésta bajo el presente Contrato por dichas razones.



3

**SEPTIMA.**         **RELACIONES LABORALES**

**7.1.** El presente Contrato no pretende constituir, ni ninguna de sus Cláusulas y disposiciones pretenden constituir una relación de representante o mandatario, patrón o empleado, inversionista o socio entre EL CONTRATANTE y EL CONSULTOR. Ninguna de las Partes tendrá la facultad de representar u obligar a la otra Parte de manera alguna y cada parte será responsable exclusivamente de sus propios actos.

**7.2.** Las Partes expresamente acuerdan que la celebración de este Contrato bajo ningún concepto crea una relación laboral entre EL CONTRATANTE y EL CONSULTOR, en virtud de lo cual, las Partes se librarán de cualquier obligación o reclamación de naturaleza laboral o fiscal relacionado con lo anterior.

**OCTAVA.**         **CONFIDENCIALIDAD**

**8.1.** EL CONSULTOR deberá abstenerse de usar para beneficio propio o de revelar a terceros, excepto para dar cumplimiento a sus obligaciones de conformidad con este Contrato, toda aquella información relacionada con EL CONTRATANTE y que pueda ser considerada como información confidencial o secreto industrial o comercial, incluyendo, de manera enunciativa, registros contables, cifras, estudios, métodos y técnicas de investigación, , operaciones, y finanzas referentes a EL CONTRATANTE a la cual tenga acceso por motivo de su la prestación de los Servicios de EL CONTRATANTE. EL CONSULTOR expresamente acepta que la obligación de confidencialidad arriba señalada subsistirá aun cuando este Contrato se termine por cualquier causa, por un plazo mínimo de 1 (un) año contado a partir de dicha terminación.

**8.2.** La información confidencial a que se refiere el párrafo que antecede permanecerá como propiedad exclusiva de EL CONTRATANTE, por lo que una vez terminado este Contrato por cualquier causa, EL CONSULTOR deberá devolver inmediatamente a EL CONTRATANTE toda aquella documentación y materiales que contengan dicha información confidencial.

**NOVENA.**         **PROPIEDAD DE LOS SERVICIOS**

**9.1.** EL CONTRATANTE reconoce y acepta que cualquier desarrollo de propiedad intelectual, los cuales enunciativa pero no limitativamente podrán ser informes, manuales, aplicaciones, programas, software, etc., creados con la información, recursos materiales o económicos de EL CONTRATANTE, así como los datos y resultados obtenidos por el uso de dicho software por parte de cualquier usuario final, incluyendo en este caso los correos electrónicos correspondientes y toda información escrita por los usuarios, serán propiedad de EL CONTRATANTE

**DÉCIMA.**         **NOTIFICACIONES**

**10.1.** Todas las notificaciones entre las Partes del presente Contrato surtirán sus efectos plenos a partir de la fecha de su recibo. Las notificaciones por escrito deberán entregarse directamente a cualquiera de las Partes personalmente. Para todo lo relacionado con el presente Contrato, las partes señalan como sus , direcciones y funcionarios, los siguientes:

**EL CONTRATANTE:**                **EL CONSULTOR:**

Montes Urales 455, 7° piso
Col. Lomas de Chapultepec
11000, México, D.F.

4

Tel:1721-2468
email: jalavarezt@l1bre.com

Tel: _____
email: cdelconde@kichink.com

### DÉCIMO PRIMERA.    CESION

**11.1.** Tanto EL CONSULTOR como EL CONTRATANTE podrán, en cualquier momento, ceder, transferir o enajenar de cualquier forma sus derechos y obligaciones establecidos en el presente Contrato, en parte o en su totalidad, a cualquier individuo o entidad, dando aviso de dicha cesión a la contraparte.

### DÉCIMO SEGUNDA.    MODIFICACIONES

**12.1.** Las Partes están de acuerdo en que cualesquiera modificaciones al presente Contrato incluyendo sus Anexos, así como cualesquiera convenios o acuerdos entre éstas en relación con el mismo, se realicen por escrito firmado por todas las Partes.

### DÉCIMO TERCERA.    CONTRATO SUPERVINIENTE

**13.1.** El presente Contrato sustituye y deja sin efectos cualesquiera contratos, convenios, cartas de oferta, propuestas, cartas de entendimiento o acuerdos previos convenidos entre las Partes en relación con la materia del mismo, ya sean éstos orales o escritos. Las Partes, asimismo, convienen en que este Contrato constituirá el acuerdo íntegro habido entre las Partes en relación con la materia del mismo.

### DÉCIMO CUARTA.    RENUNCIA

**14.1.** Ninguna renuncia, abstención o incumplimiento por cualquier Parte en el presente Contrato de su derecho para hacer valer cualquier disposición prevista en el mismo, se considerará como una renuncia o impedimento para que dicha parte pueda ejercitar su derecho para hacer valer dicha disposición posteriormente o para hacer valer cualquier otra disposición prevista en el presente Contrato.

### DÉCIMO QUINTA.    ENCABEZADOS

**15.1.** Los encabezados utilizados en el clausulado del presente Contrato son únicamente para referencia y no limitarán o afectarán en forma alguna los términos y condiciones o las disposiciones previstas en el mismo.



5

**DÉCIMO SEXTA.**    **LEY APLICABLE; JURISDICCIÓN**

**16.1.** Las Partes convienen en que cualquier controversia, disputa, diferencia o reclamación entre ellos ocasionada por la interpretación, cumplimiento o ejecución del presente Contrato será resuelta y decidida en definitiva de conformidad con las leyes de México, Distrito Federal. Asimismo, las Partes se someten a la competencia de los Tribunales del Distrito Federal, renunciando a cualquier otra jurisdicción que les pudiere corresponder de acuerdo con sus domicilios presentes o futuros.

Leído que fue el presente Contrato por las Partes, las mismas manifestaron su conformidad con el mismo y lo firmaron en dos copias para constancia.

| Servicios Administrativos Lusad, S. de R.L. de C.V.<br><br>Por:<br>Nombre:<br>Cargo: | Kichink Servicios, S.A. de C.V.<br><br>Por:<br>Nombre:<br>Cargo: |
|---|---|

6

Anexo "A"

Descripción de los Servicios a realizar por EL CONSULTOR y apoyo a ser proporcionado por el CONTRATANTE

El desarrollo de un programa y software que constituyan la plataforma tecnológica a través de la cual se opere y administre un sistema de taxímetros digitales que, computando los factores de tiempo y distancia, determinen las tarifas a pagar por usuarios de los servicios de taxi en los cuales se instalen dichos taxímetros digitales.

Esta plataforma se integrará por los siguientes módulos:

a) Módulo Taxímetro Digital. Consiste en la aplicación que permite mantener a todos los taxis conectados en tiempo real mediante el cálculo de tarifa por medio de GPS 2 metros y que garantice un cálculo exacto de tarifas autorizadas computando tiempo y distancia del viaje realizado. Este módulo incluye (i) un mapa interactivo con ruteo inteligente para ingresar dirección de destino y seguimiento de ruta incluyendo el tiempo estimado de arribo al destino y (ii) un botón de pánico conectado al centro de atención de policía en forma inmediata, permitiendo dar seguimiento en vivo de la unidad de que se trate mediante el dispositivo realiza grabaciones de video dentro de la unidad.
b) Módulo "hailing app". Es la aplicación móvil que los usuarios del sistema de transporte podrán descargar y que le permitirá al usuario (i) solicitar un taxi a través de la aplicación indicando dirección de origen y destino y tipo de taxi que se solicita, (ii) pagar el viaje mediante tarjeta de crédito o débito y (iii) consultar historial de viajes y guardar direcciones frecuentes para acceso rápido
c) Módulo backend. Es el cerebro de todo el desarrollo que permite hacer tres funciones. (i) almacenamiento de bases de datos; conexión lógica vía microservicios y seguridad del sistema.
d) Módulo management software. Consiste en las herramientas que cubren las labores administrativas de instalación, monitoreo, administración y mantenimiento de las unidades de taxi que operan con el taxímetro digital. Tiene dos grupos específicos de herramientas: (i) Facilities, que es una aplicación web que permite hacer el registro de taxista, taxi y tabletas asignadas a éstos, conectándose con los sistemas de información de las autoridades correspondientes para validar datos y activar las funciones avanzadas del sistema; (ii) Consola de administración, que consiste en un desarrollo web que permite hacer consultas en tiempo real al sistema para obtener información sobre la flotila de taxis con tabletas instaladas.

Adicionalmente al desarrollo del software, el CONSULTOR proporcionará al personal clave de mantenimiento que sea designado por el CONTRATANTE, la capacitación necesaria para el correcto uso del software de que se trata.



7

### Anexo "B"

Contraprestación

La Contraprestación estipulada en la Cláusula Segunda de este Contrato, se integrará de la siguiente manera:

| SERVICIOS PRESTADOS EN: | IMPORTE |
|---|---|
| 2017 | USD |
| NOVIEMBRE | $ 180,000.00 |
| DICIEMBRE | $ 180,000.00 |
| 2018 | |
| ENERO | $ 150,000.00 |
| FEBRERO | $ 138,000.00 |
| MARZO | $ 155,000.00 |
| ABRIL | $ 147,000.00 |
| MAYO | $ 131,000.00 |
| JUNIO | $ 91,000.00 |
| JULIO | $ 91,000.00 |
| AGOSTO | $ 91,000.00 |
| SEPTIEMBRE | $ 91,000.00 |
| OCTUBRE | $ 91,000.00 |
| NOVIEMBRE | $ 91,000.00 |
| DICIEMBRE | $ 91,000.00 |
| MESES SUBSECUENTES | $ 91,000.00 |







CARTA DE ACEPTACIÓN DE LOS SERVICIOS:

**KICHINK SERVICIOS, S. A. DE C. V.**
**CLAUDIO DEL CONDE**

ANTECEDENTES:

Derivado de la presentación que Kichink Servicios, S. A. de C. V., representada por CLAUDIO DEL CONDE, hiciera a la Dirección General de SERVICIOS ADMINISTRATIVOS LUSAD, S. DE R. L. DE C. V., sobre los proyectos que en la siguiente tabla se describen con nombre y costo de cada uno de ellos:

| NOMBRE DEL PROYECTO | COSTO MENSUAL USD | DURACIÓN | INICIO |
|---|---|---|---|
| **SHARED BRAIN** | $ 92,000.00 | 6 MESES | abr-18 |
| **DRIVER APP** | $ 108,000.00 | 6 MESES | abr-18 |
| **MEDIA TABLET** | $ 66,000.00 | 6 MESES | abr-18 |
| **WAR ROOM** | | | |
| | $ 30,000.00 | Inicial | mar-18 |
| | $ 28,000.00 | 3 meses | mar-18 |
| | $ 24,000.00 | 1 mes | jul-18 |
| | $ 21,000.00 | 2 meses | ago-18 |
| | $ 20,000.00 | 3meses | oct-18 |

me permito confirmar a usted que SERVICIOS ADMINISTRATIVOS LUSAD, está de acuerdo en dicha propuesta, requiriéndose que para la mayor optimización del desarrollo de dichos proyectos Kichink se sume en colaboración con personal de Tecnología de la Empresa Servicios Administrativos Lusad, y que Kichink reconozca ampliamente que el personal referido a la operación y puesta en marcha del "WAR ROOM", no tendrá en





ningún momento relación laboral con SERVICIOS ADMINISTRATIVOS LUSAD, S. DE R. L. DE C. V., y obligándose KICHINK SERVICIOS, S. A. DE C. V., a sacar en paz y a salvo a SERVICIOS ADMINISTRATIVOS LUSAD, S. DE R. L. DE C. V. en el caso de que hubiera alguna controversia laboral.

Por su parte, SERVICIOS ADMINISTRATIVOS LUSAD, S. DE R. L. DE C. V., estará dispuesto a colaborar para proporcionar accesos a dicho personal de operación y brindará todas las facilidades a su alcance para el buen desempeño de sus actividades.

Ciudad de México, Febrero 23 de 2018.

POR:
**SERVICIOS ADMINISTRATIVOS LUSAD, S. DE R. L. DE C.V.**

By _____

POR:
**KICHINK SERVICIOS, S. A. DE C.V.**

By _____

PROFESSIONAL SERVICE AGREEMENT, DATED DECEMBER 22, 2017, ENTERED BY AND BETWEEN, ON THE ONE HAND, SERVICIOS ADMINISTRATIVOS LUSAD, S. DE R. L. DE C.V., REPRESENTED BY MESSRS. JOSE ANTONIO ÁLVAREZ TAMAYO AND FRANCISCO JOSÉ FLORES MELÉNDEZ (HEREINAFTER REFERRED TO AS THE "CONTRACTING PARTY") AND, ON THE OTHER HAND, KICHINK SERVICIOS, S.A. DE CV, REPRESENTED BY MR. CLAUDIO DEL CONDE (HEREINAFTER REFERRED TO AS THE "CONSULTANT"), UNDER THE FOLLOWING STATEMENTS AND CLAUSES:

## STATEMENTS

I.      THE CONTRACTING PARTY states:

a)      That it is a company duly organized and existing under the laws of the United Mexican States and that its representative possesses sufficient legal capacity to bind it under the terms of this Agreement.

b)      That it desires to hire the CONSULTANT for the purpose of having said CONSULTANT render it the services described in Addendum "A" of the present Agreement (hereinafter the "Services").

II.     THE CONSULTANT states:

a)      That it is a fictitious person duly organized under the laws of the United Mexican States, with full capacity in the exercise of its rights and that its representative possesses sufficient legal capacity to bind it under the terms of the present Agreement.

b)      That it desires to enter the present Agreement with THE CONTRACTING PARTY for the purpose of rendering the Services.

In accordance with the Statements set forth above, the Parties to this Agreement agree to grant the following:

## CLAUSES

**FIRST.          PURPOSE**

1.1. The purpose of the present Agreement is for THE CONSULTANT to provide THE CONTRACTING PARTY with software, computer program, application and computer system development services, whose functions and characteristics are detailed in Addendum "A" of this Agreement. All of the above, in agreement with the terms and conditions set forth herein.

**SECOND.        CONSIDERATION**

2.1. In consideration for the Services set forth in Addendum "A" of the present Agreement, THE CONTRACTING PARTY shall pay THE CONSULTANT the amount set forth in the document attached to the present Agreement as Addendum "B", which is an integral part of this instrument (the "Consideration"). Payment of the Consideration shall be made as specified in such Addendum "B".
On the other hand, THE CONSULTANT may subcontract the entirety or part of any Services deemed necessary, in accordance with its exclusive criteria, to develop the software, computer programs, applications and computer systems described in Addendum "A" of this Agreement.

[Three sets of initials or three signatures appear in the lower right corner of this page.]

2

**2.2.** Prior to the payment of the Consideration, THE CONSULTANT shall deliver to THE CONTRACTING PARTY an invoice fulfilling any applicable fiscal provisions, stating the Consideration for the term covered by the corresponding invoice, calculated under the terms and conditions set forth in Addendum "B" of this Agreement.

**THIRD.**      **TAXES**

**3.1.** Any taxes resulting from the rendering of the services shall be paid by the corresponding party, in accordance with any applicable fiscal laws.

**FOURTH.**     **SERVICE RENDERING**

**4.1.** During the Service rendering, THE CONSULTANT undertakes to fulfill all laws, regulations, circulars or any other applicable Federal, State or Municipal statute for any activities derived from or related with the Service rendering.

**4.2.**   THE CONSULTANT and THE CONTRACTING PARTY agree that nothing contained herein is seeks or intends to establish any obligation of exclusivity between THE CONTRACTING PARTY and THE CONSULTANT, and therefore there shall be no obligation of exclusivity between both parties.

**FIFTH.**      **EFFECTIVE TERM; TERMINATION**

**5.1.** The present Agreement shall be effective indefinitely, as of the date first set forth in its preamble and up to the conclusion of the Service rendering.

**5.2.** Notwithstanding the above, the present Agreement may be terminated: (i) by mutual written agreement between the Parties, or (ii) pursuant to a written notice ("Notice of Default") to the other Party, delivered and received by the other Party at least 30 (thirty) calendar days before the desired date of termination, if either of the Parties fails to fulfill any of its obligations under the present Agreement and does not repair such default within the term granted in the thirty calendar day Notice of Default.
In the event of an early termination, every service rendered shall be effectively paid up to the date of termination within a term of up to three months.

**SIXTH.**      **ACT OF GOD; FORCE MAJEURE**

**6.1.** Should fulfillment of this Agreement or of any obligation resulting from same by the CONSULTANT become impossible or delayed as a result or due to any Law, act of God or event of force majeure, such as a strike or labor related disturbance, war, either declared or undeclared, sabotage or any other cause or causes which are beyond the control of either of the Parties, such Party shall not be considered to be in default of the obligations assumed by said Party under the present Agreement, for such reasons.

[Three sets of initials or three signatures appear in the lower right corner of this page.]

3

**SEVENTH.**     **LABOR RELATIONS**

7.1.     The present Agreement does not intend to create, nor do any of its Clauses and provisions intend to create, a representative or principal, employer or employee, investor or shareholder relationship between THE CONTRACTING PARTY and THE CONSULTANT. Neither of the Parties shall be empowered to represent or bind the other Party in any way, and each of the Parties shall be exclusively responsible for its own actions.

7.2.     The Parties expressly agree that entering this Agreement shall under no circumstances create a labor relationship between THE CONTRACTING PARTY and THE CONSULTANT, and therefore, the Parties hereby discharge each other of all labor or fiscal related obligations or claims connected to the above.

**EIGHTH.**     **CONFIDENTIALITY**

**8.1.**     Except for the purpose of fulfilling its obligations hereunder, THE CONSULTANT shall refrain from using for its benefit or disclosing to third parties any information connected with THE CONTRACTING PARTY or which might be considered confidential information or a trade or business secret, including but not limited to accounting records, amounts, studies, research methods and techniques, operations and finances referring to THE CONTRACTING PARTY, which THE CONSULTANT may gain access to as a result of the Service rendering. THE CONSULTANT expressly agrees that the above confidentiality provision shall survive the termination of this Agreement for any reason, for a term of at least 1 (one) year as of the date of such termination.

**8.2.**     The confidential information mentioned in the above paragraph shall remain THE CONTRACTING PARTY'S exclusive property, and therefore, once this Agreement is terminated for any reason, THE CONSULTANT shall immediately return to THE CONTRACTING PARTY any documents and materials containing such confidential information.

**NINTH.**     **OWNERSHIP OF THE SERVICES**

**9.1.** THE CONTRACTING PARTY acknowledges and agrees that any developed intellectual property, which can include but is not limited to any reports, manuals, applications, programs, software, etc., created with THE CONTRACTING PARTY'S information, material or financial resources, as well as any data and results obtained by the use of such software by any end user, including in this case any corresponding e-mails and any information written by the users, shall remain the property of THE CONTRACTING PARTY.

**TENTH.**     **NOTIFICATIONS**

**10.1.** Any notifications between the Parties of this Agreement shall be considered fully effective as of the date of receipt. Written notices shall be delivered directly and personally to either of the Parties. For the purposes of the present Agreement, the Parties set forth
the following addresses and officers:

**THE CONTRACTING PARTY:**                              **THE CONSULTANT:**

Montes Urales 455, 7° piso
Col. Lomas de Chapultepec
11000, Mexico, D.F.

[Three sets of initials or three signatures appear in the lower right corner of this page.]

4

Telephone:1721-2468  
email: jalavarezt@l1bre.com

Telephone:_____  
email: cdelconde@kichink.com

**ELEVENTH.** **ASSIGNMENT**

**11.1.** Both THE CONSULTANT and THE CONTRACTING PARTY may, at any time and in any way, assign, transfer or dispose of their rights and obligations set forth under the present Agreement, in their entirety or in part, to any individual or entity, by notifying the other Party of such assignment.

**TWELFTH.** **AMENDMENTS**

**12.1.** The Parties agree that any amendments to the present Agreement, including its Addenda, as well as any covenant or agreement between such Parties in relationship to the same, must be made in writing and be signed by all the Parties.

**THIRTEENTH.** **SURVIVAL OF THE AGREEMENT**

**13.1.** The present Agreement supersedes and voids any other prior oral or written agreement, covenant, offer letter, proposal, letter of understanding or contract between the Parties regarding the subject of this instrument. In addition, the Parties agree that this Agreement shall constitute the entire understanding between the Parties in regards to the subject of the same.

**FOURTEENTH.** **WAIVER**

**14.1.** No waiver, forbearance or failure by either Party of the present Agreement to exercise its right to enforce any provision set forth in this instrument shall be considered a waiver nor prevent such Party from exercising its right to enforce such provision at a later time or enforce any other provision set forth in the present Agreement.

**FIFTEENTH.** **HEADINGS**

**15.1.** All headings used for the clauses of the present Agreement are only for purposes of reference and shall not limit or in any way affect the terms and conditions or provisions set forth herein.

[Three sets of initials or three signatures appear in the lower right corner of this page.]

5

SIXTEENTH.     **APPLICABLE LAW; JURISDICTION**

**16.1.** The Parties agree that any and all controversies, disputes, disagreements or claims between them resulting from the interpretation, fulfillment or execution of the present Agreement shall be settled and decided in accordance with the laws of Mexico, Federal District. In addition, the Parties hereby submit to the jurisdiction of the Courts of the Federal District, hereby waiving any rights they may have to other jurisdictions as a result of their current or future addresses.

Having read the present Agreement, the Parties state their acceptance of same and execute it on two counterparts in witness whereof.

| **Servicios Administrativos Lusad, S. de R. L. de C.V.**<br>[SIGNATURE]<br><br>By:<br>Name:<br>Title: | **Kichink Servicios, S.A. de C. V.**<br>[SIGNATURE]<br><br>By:<br>Name:<br>Title: |
|---|---|

6

**Addendum "A"**

Description of the Services to be rendered by THE CONSULTANT, and support to be provided by THE CONTRACTING PARTY

Development of a program and software constituting the technological platform used to operate and manage a digital taximeter system which, by calculating the time and distance factors, will determine the rates to be paid by the users of the taxi services where such digital taximeters are installed.

This platform shall include the following modules:

a) Digital Taximeter. This is the application that allows all the taxis to be connected in real time by calculating the rate by means of GPS 2 meters and guaranteeing a precise calculation of authorized rates by computing the time and distance of the trip. This module includes (i) an interactive map with intelligent routing to enter the destination address and route follow-up, including estimated time of arrival to destination and (ii) a panic button with immediate connection to the police service center, thus allowing live following of the unit in question by means of a device making video recordings within the unit.
b) "Hailing app" module. This is the mobile application that the users of the transportation system can download, which allows the user to (i) request a taxi using the application by indicating the pick-up and destination addresses and type of taxi requested, (ii) pay for the trip using a credit or debit card, and (iii) consult trip history and save frequent addresses for quick access purposes.
c) Back-end module. This is the brain of the whole development which allows the performance of three functions. (i) storage of databases; intelligent connection by means of micro-services and system security.
d) Software management module. This includes the tools that perform administrative tasks such as installation, monitoring, management and maintenance of taxi units operating with the digital taximeter. It contains two specific groups of tools: (i) Facilities, a web application which allows taxi driver registration, as well as the registration of the assigned taxi and tablet by connecting to the information systems of the appropriate authorities in order to validate data and activate the systems advanced functions; (ii) Administration dashboard, which is a web development that allows system consultation in real time to obtain information about the taxi fleet with installed tablets.

In addition to software development, the CONSULTANT shall provide any training required for the correct use of the software in question to key maintenance personnel designated by the CONTRACTING PARTY.

[Three sets of initials or three signatures appear in the lower right corner of this page.]

7

**Addendum "B"**

Consideration

The Consideration set forth in the Second Clause of this Agreement shall be structures as follows:

| SERVICES RENDERED IN: | AMOUNT |
|---|---|
| **2017** | **IN USD** |
| NOVEMBER | $ 180,000.00 |
| DECEMBER | $ 180,000.00 |
| **2018** | |
| JANUARY | $ 150,000.00 |
| FEBRUARY | $ 138,000.00 |
| MARCH | $ 155,000.00 |
| APRIL | $ 147,000.00 |
| MAY | $ 131,000.00 |
| JUNE | $ 91,000.00 |
| JULY | $ 91,000.00 |
| AUGUST | $ 91,000.00 |
| SEPTEMBER | $ 91,000.00 |
| OCTOBER | $ 91,000.00 |
| NOVEMBER | $ 91,000.00 |
| DECEMBER | $ 91,000.00 |
| SUBSEQUENT MONTHS | $ 91,000.00 |

[Three sets of initials or three signatures appear in the middle right corner of this page.]



SERVICE ACCEPTANCE LETTER:

**KICHINK SERVICIOS, S. A. DE C. V. CLAUDIO DEL CONDE**

BACKGROUND:

Resulting from the Kichink Servicios, S. A. de C. V., represented by Mr. CLAUDIO DEL CONDE, presentation made to the office of the General Director of SERVICIOS ADMINISTRATIVOS LUSAD, S. DE R. L. DE C. V. on the projects described in the following table by name and cost of each:

| PROJECT NAME | MONTHLY COST US DOLLARS | TERM | STARTING |
|---|---|---|---|
| **SHARED BRAIN** | $ 92,000.00 | 6 MONTHS | April -18 |
| **DRIVER APP** | $ 108,000.00 | 6 MONTHS | April -18 |
| **MEDIA TABLET** | $ 66,000.00 | 6 MONTHS | April -18 |
| **WAR ROOM** | | | |
| | $ 30,000.00 | Initial | March - 18 |
| | $ 28,000.00 | 3 months | March - 18 |
| | $ 24,000.00 | 1 month | July -18 |
| | $ 21,000.00 | 2 months | Aug. -18 |
| | $ 20,000.00 | 3 months | Oct. -18 |

I am pleased to confirm that SERVICIOS ADMINISTRATIVOS LUSAD has accepted this proposal. The optimization of such projects shall require Kichink to cooperate with technical personnel from the Company Servicios Administrativos Lusad, and Kichink shall broadly acknowledge that the aforementioned personnel required for the operation and kickoff of the "WAR ROOM" shall not have an employment relationship

[Three sets of initials or three signatures appear in the lower right margin of this page.]

 

with SERVICIOS ADMINISTRATIVOS LUSAD, S. DE R. L. DE C. V. at any time, and therefore KICHINK SERVICIOS, S. A. DE C. V. shall undertake to release SERVICIOS ADMINISTRATIVOS LUSAD, S. DE R. L. DE C. V. in the event of any labor related controversy.

On the other hand, SERVICIOS ADMINISTRATIVOS LUSAD, S. DE R. L. DE C. V. shall be willing to collaborate by providing access to said operations personnel and shall provide any support available to it for the proper performance of its activities.

City of Mexico, February 23, 2018.

BY:                                                                                             BY:
**SERVICIOS ADMINISTRATIVOS**                                   **KICHINK SERVICIOS, S. A. DE C.V.**
**LUSAD, S. DE R. L. DE C.V.**

By _____[SIGNATURE]_____                      By: _____[SIGNATURE]_____

THE STATE OF TEXAS }
}
COUNTY OF HARRIS }

## AFFIDAVIT OF ACCURACY

BEFORE ME, the undersigned authority, on this day personally appeared Ana Cristina Didoné, who, by oath and by presentation of identification, is personally known to me to be the person subscribing her name below and, after being by me duly sworn according to law, upon her oath deposes and says in due form of law that to the best of her knowledge, information and belief:

1. "My name is Ana Cristina Didoné and I am over the age of twenty-one years and competent to make this affidavit.

2. I speak, read, and write fluently in both the English and Spanish languages.

3. I have been a certified sworn translator since 1988 with a M.A. in Legal Translations from the University of Salvador, Argentina. I am certified by the Argentine Association of Sworn Public Translators to translate from English into Spanish and Spanish into English. I am also certified by the American Translators Association for English to Spanish translations. I hold a degree in Executive Business Management from Rice University.

I hereby certify that the Spanish to English translation attached hereto: "Kichink Contract" is a true, correct, fair, accurate and complete English translation to the best of my ability, of the original document in Spanish.

_____
ANA CRISTINA DIDONE, MA
Certified by American Translators Association

Sworn to before me this May 12, 2019

_____
Notary Public in and for the State of Texas
My commission expires: 5-19-21

TODD FEDER
Notary Public, State of Texas
Comm. Expires 05-19-2021
Notary ID 129411929

Certified Translations.713.444.5964