# EXHIBIT 6

**CONTRATO DE PRESTACIÓN DE SERVICIOS** QUE CELEBRAN POR UNA PARTE **SERVICIOS ADMINISTRATIVOS LUSAD, S. DE R.L. de C.V.,** REPRESENTADA EN ESTE ACTO POR LOS SRES. JOSÉ ANTONIO ÁLVAREZ TAMAYO Y FRANCISCO JOSÉ FLORES MELÉNDEZ, A QUIEN EN LO SUCESIVO SE DENOMINARA**"EL CLIENTE",** Y POR LA OTRA PARTE **CUBEICE CONSULTORES DE NEGOCIOS, S.C.,** REPRESENTADA EN ESTE ACTO POR VICTOR MANUEL MENDOZA FERREIRA, A QUIEN EN LO SUCESIVO SE LE DENOMINARA **"EL PRESTADOR",** AL TENOR DE LAS SIGUIENTES DECLARACIONES Y CLÁUSULAS:

## DECLARACIONES

### I.   DECLARA EL CLIENTE, A TRAVÉS DE SU REPRESENTANTE LEGAL:

1.   Que es una sociedad mercantil constituida de conformidad con las leyes mexicanas bajo la denominación de Lusad Servicios Administrativos, S. De R.L. de C.V., según escritura pública número 81,090 de fecha 8 de febrero de 2017, ante la fe del notario público Roberto Garzón Jiménez, titular de la Notaría Pública número 242, de México, D.F.

2.   Que tiene como objeto principal la prestación y/o contratación de todo tipo de servicios consultivos, de supervisión, administrativos, técnicos y laborales, por cuenta propia o de terceros.

3.   Que su representante legal tiene las facultades suficientes para suscribir el presente Contrato y obligarse en los términos del mismo tal y como consta en la escritura número 85,216 de fecha 22 de diciembre de 2016, otorgada ante la fe del notario público número 242, Lic. Roberto Garzón Jiménez, el cual no ha sido ni revocado ni limitado.

4.   Que tiene su domicilio en Montes Urales 455, 7º piso, Lomas de Chapulteec, Ciudad de México, 11000  y su Registro Federal de Contribuyentes es SAL170208UW2.

5.   Que es su voluntad suscribir el presente Contrato y obligarse de conformidad con sus términos.

### II. DECLARA "EL PRESTADOR", A TRAVÉS DE SU REPRESENTANTE LEGAL:

A.   Que es una sociedad mercantil debidamente constituida conforme a las leyes de la República Mexicana, mediante Escritura Pública No. 40,944 de fecha 30 de mayo de 2012 otorgada ante la fe del Lic. Francisco I. Hugues Vélez y Guillermo Oliver Bucio Notarios Públicos Nos. 212 y 246 respectivamente con ejercicio en el Distrito Federal, e inscrita bajo el folio mercantil número 101057 asiento No. 1 en el Registro Público de la Propiedad y del Comercio de la ciudad de México, D. F.

B.   Que su representante cuenta con la capacidad legal suficiente para celebrar el presente Contrato, lo que acredita mediante Escritura Pública No. 40,944 de fecha 30 de mayo de 2012 otorgada ante la fe del Lic. Francisco I. Hugues Vélez y Guillermo Oliver Bucio Notarios Públicos Nos. 212 y 246 respectivamente con ejercicio en el Distrito Federal, e inscrita bajo el folio mercantil número 101057 asiento No. 1 en el Registro Público de la Propiedad y del Comercio de la ciudad de México, D. F.

C.   Que tiene su domicilio en Camino al Desierto de los Leones 67, despacho 303, Col. San Ángel, C.P 01000, México, D.F. mismo que se señala para los fines y efectos legales de este Contrato.




1

D.      Que con motivo de este Contrato de Prestación de Servicios que celebrará con **"EL CLIENTE"**, manifiesta su conformidad de manera voluntaria, sin estar bajo presión alguna física o moral que la obligue, para celebrar un convenio de confidencialidad, comprometiéndose por ende a abstenerse de utilizar durante su relación contractual y desde antes de iniciarse la misma, la Información Confidencial que le sea otorgada por **"EL CLIENTE"**.

E.      Que está inscrito en el Registro Federal de Contribuyentes bajo el No. CCN120530UI2

F.      Que su objeto social es consultoría y/o asesoría de negocios

**II.      DECLARAN LAS PARTES:**

**"EL CLIENTE"** y **"EL PRESTADOR"** manifiestan su deseo para obligarse al cumplimiento de las obligaciones y derechos contraídos mediante la celebración de este contrato, cuyo objeto se especifica en las cláusulas del mismo.

## C L A U S U L A S

**PRIMERA.- OBJETO.-** El objeto del presente contrato es establecer la prestación de servicios con base en la propuesta realizada a **"EL CLIENTE"** por solicitud del mismo, que de manera enunciativa mas no limitativa se describe y señala en el <u>Anexo "A"</u> del presente, mismo que debidamente firmado por las partes, forma parte integral del mismo (en lo sucesivo, **"LOS SERVICIOS"**).

Para la realización del presente contrato, "**EL PRESTADOR**" se compromete a prestar **"LOS SERVICIOS"** con los más altos estándares de calidad, honradez y disciplina en los términos pactados por las partes de acuerdo con sus necesidades y **"EL CLIENTE"** a su vez se obliga al pago de la contraprestación pactada con base en el presente acuerdo.

**"EL PRESTADOR"** se obliga a emplear todos sus recursos y conocimientos para la adecuada prestación de **"LOS SERVICIOS",** así como a mantenerse actualizado en los temas propios de dichos servicios.

Para la ejecución de **"LOS SERVICIOS"**, **"EL PRESTADOR"** podrá asignar a personal bajo su cargo para la ejecución y fines del presente contrato, el cual podrá intervenir de manera directa o por medio de cualquiera de sus filiales y/o subsidiarias, según lo considere conveniente, siendo " **EL PRESTADOR**" el único responsable ante **"EL CLIENTE",** ante las autoridades y ante terceros de las obligación laborales y de seguridad social generadas para con su dependientes y que deriven en forma directa o indirecta del presente contrato. 

**SEGUNDA.- DOMICILIO. -** La prestación de servicios se realizará tanto en el domicilio principal de **"EL CLIENTE"** así como en el domicilio principal de **"EL PRESTADOR".**

**TERCERA.- CONTRAPRESTACIÓN. -** La contraprestación que **"EL CLIENTE"** pagará a **"EL PRESTADOR"** por los servicios objeto del presente contrato serán los señalados en el <u>Anexo "B"</u> del presente contrato, expidiendo y entregando previamente el Comprobante Fiscal Digital correspondiente *(Archivo XML y PDF).* 

**CUARTA. - OBLIGACIONES DE "EL PRESTADOR":**

a) Realizar la prestación de servicios objeto de este contrato con los más altos estándares de calidad, honradez y disciplina necesarios para cumplir con los objetivos pactados por las partes y empleando personal capacitado en la materia.

b) Mantener la confidencialidad de la información que **"EL CLIENTE"** proporcione con la finalidad de cumplir con **"LOS SERVICIOS"** en términos de la Cláusula Décima del presente contrato.

c) Entregar a **"EL CLIENTE"** el Comprobante Fiscal Digital correspondiente *(Archivo XML y PDF)*, por los servicios profesionales conforme a lo estipulado en el calendario contenido presente contrato en su Anexo "B". El pago de los servicios será mediate depósito bancario a la cuenta que indique **EL PRESTADOR,** debiendo solventar los servicios mensualmente, tomando como fecha de referencia el día siguiente de la firma del presente contrato de servicios.

**QUINTA.- OBLIGACIONES DE "EL CLIENTE":**

a) Proporcionar toda la información necesaria que solicite **"EL PRESTADOR"** en tiempo y forma a fin de que **"EL PRESTADOR"** pueda llevar a cabo **"LOS SERVICIOS"** por los cuales es contratado.

b) Pagar los servicios profesionales respectivos por concepto de **"LOS SERVICIOS"** conforme a lo estipulado en el presente contrato y explícitamente reflejados en el presente contrato en su Anexo "B".

**SEXTA.- SUPERVISIÓN.- "EL CLIENTE"** a través de sus representantes y/o coordinadores, tendrá en todo tiempo, el derecho de supervisar y vigilar el desarrollo de **"LOS SERVICIOS"** que de conformidad con lo dispuesto en el presente contrato y sus anexos, le serán prestados por **"EL PRESTADOR"**, así como dar a **"EL PRESTADOR"**, las instrucciones que estime pertinentes para la ejecución de dichos trabajos.

**SÉPTIMA.- RELACIÓN LABORAL.-** Cada una de las partes celebra el presente contrato actuando como empresa establecida que cuenta con los elementos propios y suficientes para cumplir las obligaciones que adquiere y, en tal virtud, en términos de los artículos 8, 10, 13 y 20 de la Ley Federal del Trabajo, cada una de ellas reconoce y acepta la calidad de patrón y será responsable del cumplimiento de las obligaciones que surjan con motivo de esta calidad y le resulten de conformidad con la legislación laboral y de seguridad social aplicable.



Ambas partes responden frente a sus respectivos empleados, trabajadores, sindicato(s) o dependientes, a quienes se les paga y pagará su salario, cuotas y demás prestaciones, ordenándoles a los anteriores de manera directa la ejecución de cualquier trabajo, maniobra y labor relacionada con el cumplimiento del presente contrato.

En virtud de lo estipulado, no existe relación de subordinación laboral alguna entre ambas partes y los miembros mencionados en el párrafo anterior, por lo que las partes se obligan a mantener, indemnizar y a sacar en paz y a salvo a la otra en contra de cualquier responsabilidad ya sea de carácter legal, laboral o administrativa pudiendo ser cualquier conflicto, reclamación, queja, demanda o problema de cualquier naturaleza que se le hiciere por parte de algún empleado, trabajador, sindicato(s), funcionario, prestador de servicios, ex empleado, ex trabajador, ex funcionario o ex prestador de servicios de la contraparte a terceros contratados por ésta, así como en contra de cualquier reclamación de parte de alguna autoridad derivada del cumplimiento o



3

incumplimiento de obligaciones patronales o de seguridad social a cargo de cada una de ellas, obligándose a resarcirle de los daños y prejuicios que se le ocasionen, así como pagar los gastos y costas, judiciales y extrajudiciales  que la parte afectada se vea obligada a erogar con  motivo de los procedimientos citados.

Las partes convienen en que no adquirirán ninguna obligación de carácter laboral con su contraparte ni para con los trabajadores que el mismo contrate/subcontrate, para la realización de los servicios, objeto del presente contrato, por lo que a la contraparte no se le considerará como el patrón ni aún como patrón sustituto o solidario por lo que mutuamente se eximen de cualquier responsabilidad de carácter civil, fiscal, laboral, de seguridad social u otra especie, que en su caso pudiera llegar a generarse a causa de la otra.

**OCTAVA.- RELACIÓN ENTRE LAS PARTES.-** Queda entendido y aceptado que cada una de las partes es jurídicamente independiente y que ninguna de las partes es, ni será considerado como socia, fiduciario o representante de la otra. Ninguna de las partes actuará por si, ni se presentará con ningún carácter, ni directa, ni tácitamente respecto de la otra parte, ni asumirá ninguna responsabilidad, ni se obligará por cuenta o a nombre de la otra parte.

**NOVENA.- PROPIEDAD INDUSTRIAL E INTELECTUAL.- "EL PRESTADOR"** está de acuerdo en que la información que reciba de **"EL CLIENTE"** es y seguirá siendo propiedad de este último, incluida la de sus empresas afiliadas, proveedores y clientes; y se obliga a usar dicha información únicamente de la manera y para los propósitos autorizados en este  contrato; y que este instrumento no otorga, de manera expresa o implícita, ningún derecho intelectual o de propiedad industrial o de cualquier tipo, incluyendo en forma enunciativa, mas no limitativa, licencia de uso o de algún tipo, respecto de la información confidencial, por lo que **"EL PRESTADOR"** de manera expresa renuncia a cualquier derecho o titularidad sobre la misma o al cobro de contraprestación alguna.

Para efectos de lo anterior, **"Propiedad Intelectual"** incluye todas las marcas registradas y/o usadas en México o en el extranjero por las partes, así como todo derecho sobre invenciones (patentadas o no), diseños industriales, modelos de utilidad, información confidencial, nombres comerciales, avisos comerciales, reservas de derechos, nombres de dominio, así como todo tipo de derechos patrimoniales sobre obras y creaciones protegidas por derechos de autor y demás formas de propiedad industrial o intelectual reconocida o que lleguen a reconocer las leyes correspondientes; de igual manera aplica la Convención de París para la Protección de la Propiedad Intelectual en lo conducente.



"EL PRESTADOR" reconoce que toda la información que reciba del "CLIENTE" constituye un secreto industrial del "CLIENTE", en los términos del artículo 82 de la Ley de la Propiedad Industrial y, por lo tanto, quedarán sujetos a lo establecido por los artículos 82, 83, 84, 85, 86 y 86-Bis-I de dicho ordenamiento legal, aceptando desde este momento ambas partes, que la violación o incumplimiento de lo dispuesto en la presente cláusula podrá actualizar los supuestos contemplados en las fracciones IV, V o VI del artículo 223 de la multicitada ley.  En caso de existir alguna duda en cuanto a si **"LA INFORMACIÓN"** es un secreto industrial, esta deberá ser tratada como confidencial y por ende estará sujeta a laobligación de confidencialidad prevista en la Cláusula Décima siguiente.

**DÉCIMA.- CONFIDENCIALIDAD.-**  Para los efectos de este Cláusula, ambas partes acuerdan que se entiende como **"Información Confidencial"** toda la información escrita, oral, gráfica o contenida en medios escritos, electrónicos o electromagnéticos conocidos o que en un futuro se llegaran a conocer, que se proporcionen y/o revelen las partes mutuamente, o entre sus empleados, empleados de sus filiales o subsidiarias, que incluye de manera enunciativa más no limitativa la información técnica, financiera y comercial que se refiera y/o relacione a los nombres de clientes o



4

socios potenciales, propuestas de negocios, estrategias de negocios, estructura organizacional/administrativa, estados financieros, costos, ventas, operaciones, precios de productos, consumidores, composición de la sociedad y de la corporación reportes, planes, presupuestos, proyecciones de mercado, datos, formulas, mecanismos, patrones, métodos, técnicas procesos de análisis, procesos de elaboración, documentos de trabajo, compilaciones, comparaciones, estudios, sistemas, marcas y nombres comerciales, patentes, derechos de autor, secretos industriales, mejoras tecnológicas, diseños industriales u otro concepto similar o cualquier otro derecho de propiedad intelectual o industrial registrado y/o reconocidos a favor del titular y/o cualquiera de sus empresas filiales, o cualquier otro(s) documento(s), que en lo sucesivo se denominada "**LA INFORMACIÓN**".

"**LAS PARTES**" acuerdan que el alcance de la presente Cláusula es la protección de "**LA INFORMACIÓN**" que se revele mutuamente entre las partes. Por lo tanto, salvo lo expresamente establecido en este Convenio y en las leyes aplicables vigentes, ninguna de las partes podrá divulgar o revelar a algún tercero, en parte o en su totalidad "**LA INFORMACIÓN**" propiedad de la otra parte, proporcionada directa o indirectamente por la propietaria de "**LA INFORMACION**" o por sus factores, sus dependientes, sus subsidiarias o sus filiales, sin el consentimiento previo y por escrito de la parte propietaria de "**LA INFORMACIÓN**", por lo que las partes se obligan expresamente en este acto a no divulgar, ni en lo presente ni en lo futuro, directa o indirectamente, "**LA INFORMACIÓN**" propiedad de la otra parte que esta le proporcione o que llegare a conocer. La obligación de confidencialidad prevista en la presete cláusula, permanecerá en vigor por un plazo de 3 aos posteriores a la fecha de terminación del presente Contrato.

**DÉCIMA PRIMERA.- PROCEDIMIENTO PARA PRESERVAR LA CONFIDENCIALIDAD DE LA "INFORMACIÓN CONFIDENCIAL".** Las Partes deberán salvaguardar la **"INFORMACIÓN CONFIDENCIAL"** de acuerdo con las siguientes medidas de seguridad:

- Deberán procurar la correcta protección de la **"INFORMACIÓN CONFIDENCIAL"** preservando así su confidencialidad y evitando que se encuentre al alcance de personas que no deban acceder a la misma.
- Cada una de Las Partes nombrará un coordinador respecto de la recepción y custodia de la **"INFORMACIÓN CONFIDENCIAL"**. Para estos efectos, se nombra como coordinador a Xavier Leroux Llano, de parte de **"EL PRESTADOR"** y a José Antonio Álvarez Tamayo por parte de **"EL CLIENTE"**.

**DÉCIMA SEGUNDA.- PROTECCION DE DATOS PERSONALES.-** En caso de que la **"INFORMACIÓN CONFIDENCIAL"** incluya Datos Personales y/o Datos Personales Sensibles en los términos del Artículo 3 Fracción V y VI de la Ley Federal de Protección de Datos Personales en Posesión de los Particulares (LFPDPPP) y de los Avisos de Privacidad emitidos por **"EL CLIENTE"** a personas físicas (en lo sucesivo los "Titulares") con motivo de la relación entre **"EL CLIENTE"** y estos últimos y en específico, de la finalidad prevista en los Avisos de Privacidad correspondientes, mismos que se adjuntarán al presente contrato como anexos sucesivos, **"EL PRESTADOR"** se encontrará obligado a respetar los términos y condiciones previstos en los Avisos de Privacidad y dados a conocer por **"EL CLIENTE"** a los Titulares de los Datos Personales y/o Datos Personales Sensibles.

Cada parte se obliga a adoptar las medidas, mecanismos y procedimientos necesarios para la protección de los Datos Personales y/o Datos Personales Sensibles de los Titulares, así como a velar y responder por el tratamiento de los mismos en términos de lo convenido en este instrumento y en apego a la LFPDPPP.



5

**DÉCIMA TERCERA. - MODIFICACIONES**

Las partes acuerdan que cualquier modificación que se haga al presente contrato deberá realizarse previo acuerdo por escrito entre las mismas, por lo que cualquier modificación que se realice incumpliendo lo estipulado en la presente cláusula no surtirá efecto alguno.

Para efectos de lo anterior, si las partes llegan a acordar alguna modificación sobre las condiciones estipuladas en el presente, se realizará mediante un Addendum o Convenio Modificatorio mismo que pasará a formar parte integral del presente contrato.

**DÉCIMA CUARTA.- CAUSAS DE RESCISIÓN.-** Serán motivo para dar por rescindido el presente contrato, en forma inmediata y sin necesidad de declaración judicial y mediando solamente un comunicado por escrito, los siguientes supuestos:

a) La falsedad de las manifestaciones indicada en el capítulo de Declaraciones por cualquiera de las partes.

b) La resolución o mandamiento de autoridad administrativa o judicial que así lo ordene.

c) La disolución de **"EL PRESTADOR"**.

d) El concurso mercantil o quiebra de **"EL PRESTADOR"**.

**DÉCIMA QUINTA.- IMPUESTOS Y CONTRIBUCIONES**

Las partes se obliga a pagar en la proporción que a cada una de ellas les corresponda de acuerdo con la ley, los impuestos y demás contribuciones que se generen o pudieran originarse durante la vigencia del presente Contrato.

**DÉCIMA SEXTA.- CONFLICTOS DE INTERÉS.-** En todos los casos, las Partes y el personal de éstas que esté destinado a la prestación de **"LOS SERVICIOS"**, deberá cumplir con las normas éticas y políticas sobre conflictos de interés en su relación con la otra Parte, por lo que las Partes se obligan a evitar situaciones en las que se antepongan o parezca que se anteponen intereses personales frente a los intereses de la otra Parte.

Asimismo, las Partes se obligan a no permitir el ofrecimiento de incentivos o regalos a empleados y funcionarios de la otra Parte o de cualquier entidad gubernamental, ya sea del poder ejecutivo, legislativo o judicial, a fin de obtener con ello beneficios para ella misma, la otra Parte y/o sus subcontratistas, de ser este el caso.

**DÉCIMA SÉPTIMA.- VIGENCIA.-** El presente Contrato tendrá una vigencia de 12 meses, y surtirá sus efectos plenamente a partir de la fecha de su firma. Dicho plazo podrá ser renovado por plazos iguales, siempre que las partes expresen su consentimiento por escrito en un instrumento aparte.

**DÉCIMA OCTAVA.- CESIONES.- "EL PRESTADOR"** no podrá ceder, gravar o traspasar en todo o en parte los derechos y las obligaciones a su cargo consignadas en este instrumento salvo previo consentimiento por escrito de **"EL CLIENTE"**.

**DÉCIMA NOVENA.- INDEPENDENCIA.-** En el caso de que cualquier disposición del contrato sea considerada inválida o no pudiera cumplirse, tal hecho no será causa para interpretar que cualquier otra disposición del presente contrato es inválida o imposible de cumplir, por lo que todas las demás disposiciones permanecerán en plena fuerza y efecto.

6

**VIGÉSIMA.- TÍTULOS DE LAS CLÁUSULAS.-** Las partes acuerdan que los títulos que se le han dado a las cláusulas de este instrumento en nada acontecen en su alcance y/o contenido por lo tanto el título de las mismas es meramente informativo.

**VIGÉSIMA PRIMERA.- ACUERDO TOTAL.-** El presente contrato y sus anexos constituyen el acuerdo total entre las partes, y deja sin efecto cualquier otra negociación o comunicación sostenida entre ellas, ya sea verbal o escrita.

**VIGÉSIMA SEGUNDA.- DOMICILIOS**.- Cualquier notificación de una parte a la otra, deberá enviarse por escrito a las siguientes direcciones:

• **"EL PRESTADOR"**: Camino al Desierto de los Leones 67, despacho 303, Col. San Ángel, C.P. 01000, México, D.F.

• **"EL CLIENTE": Montes Urales 455, 7º piso, Lomas de Chapultepec, Ciudad de México, CP. 11000.**

**VIGÉSIMA TERCERA.- LEGISLACIÓN APLICABLE Y JURISDICCIÓN.-** Las partes se someten expresamente al fuero de los Tribunales competentes de la Ciudad de México, renunciando desde ahora a cualquier fuero que por razón de sus domicilios presentes o futuros pudiera corresponderles.

Leído que fue el presente contrato y enteradas las partes de su contenido, alcance y fuerza legal, lo firman por duplicado de común acuerdo en la Ciudad de México, CDMX, a los 14 días de febrero de 2018.

**"EL PRESTADOR"**                                    **"EL CLIENTE"**

**CUBEICE CONSULTORES DE NEGOCIOS, S.C.**      **SERVICIOS ADMINISTARTIVOS LUSAD, S. DE R.L.**
Víctor Manuel Mendoza Ferreira                **DE C.V.**
                                              **José Antonio Álvarez Tamayo y Francisco José**
                                              **Flores Meléndez**

Xavier Leroux Llano                           José Antonio Álvarez Tamayo
Coordinador de la información de **"EL PRESTADOR"**    Coordinador de la Información de **"EL CLIENTE"**



# Anexo A: Propuesta

*Este documento es para el uso exclusivo de su destinatario original. Queda terminantemente prohibida la reproducción total o parcial o divulgación de su contenido a cualquier otra persona sin el consentimiento previo por escrito de qbic.*



| **Para:** | Fabio M. Covarrubias P. |
|---|---|
| | José Antonio Álvarez Tamayo |
| | L1BRE |
| **De:** | Guillermo Fernández del Busto, Xavier Leroux, Víctor Mendoza |
| | qbic |
| **Fecha:** | 8 de febrero de 2018 |

# Arranque de operaciones de L1BRE
*Propuesta económica*

Estimados Fabio y José Antonio,

Con base en nuestra con José Antonio del día de ayer, les enviamos nuestra propuesta actualizada para apoyar a L1BRE en su arranque de operaciones. Junto a este documento anexamos nuestra propuesta técnica, que describe los objetivos y alcance de los trabajos en detalle.

A continuación, resumimos los objetivos, equipo, duración y honorarios propuestos para el esfuerzo.

## OBJETIVOS DEL PROYECTO

El objetivo general del proyecto es lograr un escalamiento del modelo de negocio y de operación de L1BRE, para cumplir con sus metas de instalación de taxímetros en la CDMX y de rentabilidad del negocio.

Sus objetivos específicos son:

- Escalar el modelo de operación, iniciando en febrero de 2018, para instalar los dispositivos en el parque de la CDMX en un año

  - Diagnosticar los resultados del piloto, optimizar el modelo de operación de los centros de instalación y cuantificar su capacidad

  - Documentar los procesos y procedimientos dentro de los centros de instalación y generar métricas de desempeño estandarizadas



1

- − Generar un plan de escalamiento de recursos (p.ej., centros, personal, sistemas, inventarios) para instalar los dispositivos en el parque de la CDMX en un año
- − Dar seguimiento y mejorar/corregir la ejecución del escalamiento, incluyendo apertura de centros e instalación de dispositivos

- Asegurar que el modelo de negocio y de cobro alinea incentivos entre L1BRE y los taxistas

## EQUIPO Y DURACIÓN

El equipo de qbic estará conformado por:

- Un grupo de liderazgo dedicado a tiempo parcial, integrado por Guillermo Fernández del Busto y Xavier Leroux, ambos socios de qbic.

- Un equipo dedicado a tiempo completo, integrado por 3 ó 4 consultores trabajando a tiempo completo por la duración del proyecto

El calendario del proyecto incluye optimizar el modelo de operación de los centros y cuantificar su capacidad, documentar sus procesos y procedimientos e iniciar la apertura y funcionamiento de centros de instalación en los primeros 3 meses del proyecto. Posteriormente, proponemos una etapa de seguimiento y mejora/corrección de las operaciones que abarcará los meses 4 a 12 del esfuerzo.

## HONORARIOS DE qbic

Los honorarios de qbic por la realización de los trabajos descritos arriba son de 95,000 USD por mes (Noventa y cinco mil dólares americanos por mes). Estos honorarios no incluyen I.V.A. ni gastos por viajes y viáticos fuera de la Cd. de México, cuyo reembolso a qbic acordaríamos con ustedes antes de realizarse.

<p align="center">* * *</p>

Sería un motivo de gran entusiasmo para nosotros a L1BRE en esta etapa crítica para sus operaciones y rentabilidad. Les agradecemos de antemano la confianza depositada en un nosotros para colaborar con ustedes.





# Anexo B: Preliminar



**Entregables en los primeros 4 meses del proyecto**

*Este documento es para el uso exclusivo de su destinatario original. Queda terminantemente prohibida la reproducción total o parcial o divulgación de su contenido a cualquier otra persona sin el consentimiento previo por escrito de qbic.*

# Anexo B: Entregables en los primeros 4 meses del proyecto

## Calendario preliminar del esfuerzo

| Fecha | Entregable | Honorarios Antes de I.V.A. |
|---|---|---|
| Al concluir el mes 1 del proyecto | Modelo óptimo de operación de los centros de instalación y cuantificación de su capacidad | 95,000 USD (Noventa y cinco mil dólares de EUA) |
| Al concluir el mes 2 del proyecto | Documentación de los procesos y procedimientos dentro de los centros de instalación, incluyendo métricas de desempeño estandarizadas | 95,000 USD (Noventa y cinco mil dólares de EUA) |
| Al concluir el mes 3 del proyecto | Plan de escalamiento, incluyendo las aperturas de nuevos centros de instalación y las metas de instalación a nivel mensual | 95,000 USD (Noventa y cinco mil dólares de EUA) |
| Al concluir el mes 4 el proyecto | Reporte de seguimiento a las aperturas de nuevos centros de instalación, las metas de instalación y las acciones críticas para corregir y mejorar el desempeño del sistema | 95,000 USD (Noventa y cinco mil dólares de EUA) |



**SERVICE PROVISION CONTRACT** SIGNED BETWEEN ON ONE SIDE **LUSAD ADMINISTRATIVE SERVICES, S. DE R.L. DE C.V.,** REPRESENTED IN THIS ACTION BY MESSRS. JOSÉ ANTONIO ÁLVAREZ TAMAYO AND FRANCISCO JOSÉ FLORES MELÉNDEZ, HENCEFORTH **"THE CLIENT"** AND ON THE OTHER **CUBEICE [qbic] BUSINESS CONSULTANTS, S.C.,** REPRESENTED IN THIS ACTION BY VICTOR MANUEL MENDOZA FERREIRA, HENCEFORTH **"THE PROVIDER"**, IN ACCORDANCE WITH THE FOLLOWING DECLARATIONS AND CLAUSES:

## DECLARATIONS

## I.   THE CLIENT DECLARES, THROUGH ITS LEGAL REPRESENTATIVE:

1.   That it is a commercial company established in accordance with Mexican law under the name of Lusad Administrative Services S. De R.L. de C.V., according to public record number 81,090 dated February 8, 2017, sworn before notary public Roberto Garzón Jiménez, bearer of Notary Public number 242 in Mexico City, D.F.

2.   That its primary business purpose is the provision and/or contracting of all types of consulting, management, administrative, technical and labor services, on its own account or that of third parties.

3.   That its legal representative has the proper authority to enter into this Contract under the terms of the same and as stated in document number 85,216 dated December 22, 2016, granted and sworn before notary public number 242, Mr. Roberto Garzón Jiménez, which has not been revoked or limited.

4.   That its domicile is at Montes Urales 455, 7th floor, Lomas de Chapultepec, Mexico City, 11000 and its Federal Tax Registration is SAL170208UW2.

5.   That it is its wish to enter into this contract and commit to its terms.

## II.   "THE PROVIDER" DECLARES, THROUGH ITS LEGAL REPRESENTATIVE:

A.   That it is a commercial company duly established in accordance with the laws of the Mexican Republic, through Public Record No. 40,944 dated May 30, 2012, granted and sworn before Messrs. Francisco I. Hughes Vélez and Guillermo Oliver Bucio, Notaries Public No. 212 and 246, respectively, assigned to the Federal District, and entered under business record number 101057 entry No. 1 in the Public Property and Business Registry of Mexico City, D.F.

B.   That its representative has the proper legal authority to sign this contract, accredited through Public Record No. 40,944 dated May 30, 2012, granted and sworn before Messrs. Francisco I. Hughes Vélez and Guillermo Oliver Bucio, Notaries Public No. 212 and 246, respectively, assigned to the Federal District, and entered under business record number 101057 entry No. 1 in the Public Property and Business Registry of Mexico City, D.F. 

C.   That its domicile is at Camino al Desierto de los Leones 67, suite 303, Col. San Ángel, C.P. 01000 Mexico City, D.F., as indicated for the legal purposes and effects of this Contract.

D.   That for the purposes of this Service Provision Contract entered into with **"THE CLIENT"**, it declares its agreement voluntarily, without any physical or moral pressure whatsoever to comply, to sign a confidentiality agreement, thus committing to abstain from using the Confidential information provided by **"THE CLIENT"** during its contractual relationship and from before the initiation of the same. 

E.   That it is enrolled in the Federal Tax Registry under No. CCN120530UI2.

F.   That its company purpose is business consulting and/or advisement.

1

## II.     THE PARTIES DECLARE:

**"THE CLIENT"** and **"THE PROVIDER"** express their desire to commit to the fulfillment of the rights and obligations contracted through the signing of this contract, whose specific objective is specified in the clauses of the same.

### CLAUSES

**FIRST. – PURPOSE: -** The purpose of this contract is to establish the provision of services based on a proposal created for **"THE CLIENT"** at the request of the same, which is expressly but without limitation described and indicated in <u>Appendix "A"</u> of this document, also duly signed by the parties, and forms an integral part of the same (henceforth **"THE SERVICES"**).

To carry out this contract, **"THE PROVIDER"** commits to provide **"THE SERVICES"** with the highest standards of quality, honor and discipline under the terms agreed to by the parties according to their needs and **"THE CLIENT"**, in turn, commits to paying the compensation agreed to based on this agreement.

**"THE PROVIDER"** commits to using all its resources and knowledge for the proper provision of **"THE SERVICES"**, as well as staying up to date on the subject matter itself related to such services.

For the execution of  **"THE SERVICES"**,  **"THE PROVIDER"** may assign personnel under its direction for the execution and for the purposes of this contract, who may intervene directly or through any of its affiliates or subsidiaries, as deemed convenient, with **"THE PROVIDER"** being solely responsible toward **"THE CLIENT"**, the authorities and third parties for the labor obligations and social security accrued for its employees and derived directly or indirectly from this contract.

**SECOND. – DOMICILE: -** The services will be provided both at the main domicile of **"THE CLIENT"** as well as the main domicile of **"THE PROVIDER"**.

**THIRD. – COMPENSATION: -** The compensation that **"THE CLIENT"** will pay to **"THE PROVIDER"** for the services covered under this contract will be indicated in <u>Appendix "B"</u> of this contract, having issued and previously delivered the corresponding Digital Tax Receipt *(XML and PDF File)*.

**FOURTH. – OBLIGATIONS OF "THE PROVIDER":**

a)   To provide the services covered under this contract with the highest standards of quality, honor and discipline necessary to meet the objectives agreed to by the parties and using personnel qualified in the subject matter.

b)   To maintain the confidentiality of the information that **"THE CLIENT"** provides for the purposes of fulfilling **"THE SERVICES"** under the terms of the Tenth Clause of this contract.

c)   To deliver the corresponding Digital Tax Receipt *(XML and PDF File)* to **"THE CLIENT"** for the professional services as stipulated in the schedule contained in <u>Appendix "B"</u> of this contract. The payment for services shall be via direct bank deposit into the account indicated by **THE PROVIDER**, and the services must be settled monthly, using as the reference date the day following the signing of this contract.



**FIFTH. -  OBLIGATIONS OF "THE CLIENT":**

a)   To provide all necessary information that **"THE PROVIDER"** requests on time and in the form that will enable **"THE PROVIDER"** to perform **"THE SERVICES"** as stipulated in this contract and as explicitly referred to in <u>Appendix "B"</u> of this contract.



2

   b)   To pay for the respective professional services covered under **"THE SERVICES"** as stipulated in this contract and as explicitly referred to in <u>Appendix "B"</u> of this contract.

**SIXTH. – SUPERVISION. – "THE CLIENT"**, through its representatives and/or coordinators, shall at all times have the right to supervise and oversee the performance of **"THE SERVICES"** that in accordance with the dispositions of this contract and its appendices will be provided by **"THE PROVIDER"**, as well as give **"THE PROVIDER"** instructions it deems pertinent for the execution of such work.

**SEVENTH.- LABOR RELATIONSHIP: -** Each of the parties signs this contract acting as an established company that has its own and sufficient elements to fulfill the obligations it takes on, and in that sense, under the terms of articles 8, 10, 13 and 20 of the Federal Labor Law, each recognizes and accepts the role of employer and shall be responsible for the fulfillment of the obligations arising from this role and in accordance with the applicable labor and social security laws.

Both parties are responsible for their respective employees, workers, labor union(s) or dependents to whom they pay and will pay their salary, premiums and other benefits, directly ordering the above to perform any work, tasks and labor related to the fulfillment of this contract.

By virtue of this stipulation, there is no labor subordination relationship whatsoever between the parties and the members mentioned in the paragraph above, so the parties commit to maintaining, indemnifying and leaving the other in peace and free of any responsibility whether of a legal, labor or administrative nature, for any conflict, claim, complaint, demand or problem of any kind brought by any employee, worker, labor union(s), officer, service provider, ex-employee, ex-worker, ex-officer or ex-service provider of the counterpart hired by them, as well as any claim on the part of any authority deriving from the fulfillment or non-compliance with the employer or social security obligations under the charge of each of them, committing to compensate for damages and harm that may be incurred, as well as to pay the legal and extra-judicial expenses and costs that the affected party is required to pay as a result of the procedures mentioned.

The parties agree that they assume no labor obligation towards their counterpart, nor for the workers each itself contracts/subcontracts for the performance of the services covered under this contract, so the counterpart shall not consider itself as the employer or even substitute or joint employer, therefore they mutually exempt each other from any responsibility of a civil, tax, labor or social security nature, or any other nature, that may arise and be caused by the other party.

**EIGHTH. – RELATIONSHIP BETWEEN THE PARTIES. –** It is understood that each of the parties is legally independent and that neither of the parties is, nor shall be considered, an associate, trustee or representative of the other. Neither of the parties will act on its own, or present itself in any way, directly or tacitly, as the other party, nor assume any responsibility or obligate itself on the account of or in the name of the other party.

**NINTH. – INDUSTRIAL AND INTELLECTUAL PROPERTY. – "THE PROVIDER"** agrees that the information it receives from **THE CLIENT"** is and will remain the property of the latter, including its affiliate companies, providers and clients; and it commits to use this information only in the way and for the purposes authorized in this contract; and that this document does not grant, explicitly or implicitly, any intellectual or industrial property rights whatsoever, including in express form, but not limited to usage licenses of any kind with respect to the confidential information, so **"THE PROVIDER"** expressly renounces any right or title to the same or to charging compensation of any kind.

For the purposes of the above, **"Intellectual Property"** includes all trademarks registered and/or used in Mexico and abroad by the parties, as well as any rights to inventions (patented or not), industrial designs, utility models, confidential information, business names, business notices, reserved rights, domain names, as well as any type of patrimonial rights over works and creations protected by authorship rights and other





3

forms of industrial or intellectual property recognized or to be recognized by the corresponding laws; Similarly, the Paris Convention for the Protection of Intellectual Property applies wherever pertinent.

"THE PROVIDER" recognizes that all information it receives from the "CLIENT" constitutes an industrial secret of the "CLIENT", under the terms of article 82 of the Industrial Property Law and, as such, remains subject to the stipulations of articles 82, 83, 84, 85, 86 and 86-Bis-I of that legal ordinance, both parties henceforth accepting that the violation or non-compliance with the provisions of this clause can update the assumptions made in sections IV, V or VI of article 223 of the often cited law. Should there be any doubt about whether or not **"THE INFORMATION"** is confidential, it must be treated as confidential and is therefore subject to the obligation of confidentiality provided in the Tenth Clause below.

**TENTH. – CONFIDENTIALITY. –** For the purposes of this clause, both parties agree that **"Confidential Information"** is understood as all written, oral, and graphic information or information contained in written, electronic or electromagnetic media known or to be known in the future, mutually provided and/or revealed by the parties, or among their employees, employees of their affiliates or subsidiaries, including in an express manner but not limited to technical, financial or business information that refers to or relates to the names of clients or potential associates, business proposals, business strategies, organizational/administrative structure, financial status, costs, sales, operations, product prices, consumers, the composition of the company or of company reports, plans, proposals, market forecasts, data, formulas, mechanisms, patterns, methods, technical analysis processes, processing processes, work documents, compilations, comparisons, studies, systems, trademarks and business names, patents, authorship rights, industrial secrets, technological improvements, industrial designs or any similar concept or any other intellectual or industrial property right registered and/or recognized for the owner and/or any of its affiliated companies, or any other document(s) that are henceforth called **"THE INFORMATION"**.

**"THE PARTIES"** agree that the scope of this Clause is the protection of **"THE INFORMATION"** mutually revealed between the parties, Therefore, unless expressly established in this Agreement and by the applicable laws in force, neither of the parties may divulge or reveal **"THE INFORMATION"** that is the property of the other party to a third party, in whole or in part, provided directly or indirectly by the owner of **"THE INFORMATION"** or any of its agents, employees, subsidiaries or affiliates, without the prior written consent of the party owning **"THE INFORMATION",** so the parties expressly commit in this action to not divulge, in the present or in the future, directly or indirectly, **"THE INFORMATION"** owned by the other party which is provided to or that may become known by it. The confidentiality obligation provided in this clause remains in force for a term of 3 years following the termination date of this Contract.

**ELEVENTH. – PROCEDURE FOR MAINTAINING THE CONFIDENTIALITY OF THE CONFIDENTIAL "INFORMATION".** The parties must safeguard the **"CONFIDENTIAL INFORMATION"** in accordance with the following security measures:

- They must acquire the correct protection for the **"CONFIDENTIAL INFORMATION"**, thereby preserving its confidentiality and preventing it from being found by persons who should not have access to it.
- Each of the Parties will name a coordinator for the receipt and custody of the **"CONFIDENTIAL INFORMATION"**. For these purposes, Xavier Leroux Llano is named as the coordinator for **"THE PROVIDER"** and José Antonio Álvarez Tamayo for **"THE CLIENT"** .



**TWELFTH. – PROTECTION OF PERSONAL DATA. –** If the **"CONFIDENTIAL INFORMATION"** includes Personal Data and/or Sensitive Personal Data under the terms of Article 3, Sections V and VI of the Federal Law for the Protection of Personal Data in the Possession of Private Citizens (LFPDPPP) and the Privacy Notices issued by **"THE CLIENT"** to natural persons (henceforth the "Owners") for the purposes of the relationship between **"THE CLIENT"** and the latter and specifically, for the purposes provided in the corresponding Privacy Notices which are attached to this contract as successive appendices, **"THE**



4

**PROVIDER"** is obligated to respect the terms and conditions provided in the Privacy Notices and data released by **"THE CLIENT"** to the Owners of the Personal Data and/or Sensitive Personal Data.

Each party commits to adopting the measures, mechanisms and procedures necessary for the protection of Personal Data and/or Sensitive Personal Data of the Owners, as well as enforcing and abiding by the treatment of the same under the terms of what is agreed to in this document and adhering to the LFPDPPP.

### THIRTEENTH. – AMENDMENTS

The parties agree that any amendment made to this contract must be done with prior written agreement between the same, so any amendment made in non-compliance with this stipulation will have no effect whatsoever.

For the purposes of the above, if the parties reach an agreement on any amendment to the conditions stipulated in this document, it will be made via an Addendum or Amendment Agreement which will become an integral part of this contract.

### FOURTEENTH. – CAUSES FOR RESCISSION. – Reasons for rescinding this contract, immediately and without the need for a judicial ruling and requiring only a written notice, include the following situations:

a) The falsehood of any of the statements made in the Declarations chapter by either of the parties.

b) A ruling or mandate from governmental or legal authorities who so order.

c) The dissolution of **"THE PROVIDER"**

d) The receivership or bankruptcy of **"THE PROVIDER".**

### FIFTEENTH. – TAXES AND CONTRIBUTIONS

The parties commit to paying the taxes and other contributions generated or that may arise during the validity of this Contract in the proportion that corresponds to each one under the law.

### SIXTEENTH. – CONFLICTS OF INTEREST. – In all cases, the Parties and their personnel who are designated to provide **"THE SERVICES"** must comply with the ethical and political standards around conflicts of interest in their relationship with the other Party, so the Parties commit to avoiding situations in which they place or appear to place personal interests above the interests of the other Party.

Likewise, the Parties commit to not allow the offering of incentives or gifts to the other Party's employees or officers or to any governmental entity, whether in the executive, legislative or judicial branch, in order to obtain benefits for itself, the other Party and/or its subcontractors, as applicable.



### SEVENTEENTH. – VALIDITY TERM. – This contract shall have a validity term of 12 months and will be in full effect as of the signing date. This term may be renewed for equal periods, provided the parties express their written agreement in a separate document.

### EIGHTEENTH. – CESSION. – **"THE PROVIDER"** may not cede, encumber or transfer in whole or in part the rights and obligations under its charge assigned in this document except with prior written consent of **"THE CLIENT"** ,



### NINETEENTH. – INDEPENDENCE. – If any provision in the contract is considered invalid or cannot be fulfilled, that fact is not a reason to interpret that any other provision of this contract is invalid or impossible to fulfill, so all other provisions remain in full force and effect.

**TWENTIETH. – TITLES OF THE CLAUSES. –** The parties agree that the titles given to the clauses in this document do nothing in terms of the scope and/or content, so the titles are therefore merely informational.

**TWENTY-FIRST. – COMPLETE AGREEMENT. –** This contract and its appendices constitute the complete agreement between the parties, and leaves any other negotiations or communications undertaken between them, whether verbal or in writing, without any effect.

**TWENTY-SECOND. – DOMICILES. –** Any notification from one party to the other must be sent in writing to the following addresses:

- **"THE PROVIDER" :** Camino al Desierto de los Leones 67, suite 303, Col. San Ángel, C.P. 01000, Mexico City, D.F.

- **"THE CLIENT" : Montes Urales 455, 7th floor, Lomas de Chapultepec, Mexico City, C.P. 11000.**

**TWENTY-THIRD. – APPLICABLE LAWS AND JURISDICTION. –** The parties expressly submit to the forum of the competent Courts of Mexico City, henceforth renouncing any other forum that may correspond due to their current or future domiciles.

Having read this contract and with the parties being aware of its content, scope and legal power, they sign it in duplicate in common agreement in Mexico City, CDMX, on February 14, 2018.

<div style="display:flex; justify-content:space-around;">

**"THE PROVIDER"**         **"THE CLIENT"**

</div>

| **CUBEICE BUSINESS CONSULTANTS, S.C.** | **LUSAD ADMINISTRATIVE SERVICES, S. DE R..L. DE C.V.** |
|---|---|
| Victor Manuel Mendoza Ferreira | **José Antonio Álvarez Tamayo and Francisco José Flores Meléndez** |

| Xavier Leroux Llano | José Antonio Álvarez Tamayo |
|---|---|
| Information Coordinator for **"THE PROVIDER"** | Information Coordinator for **"THE CLIENT"** |

6



# Appendix A: Proposal



*This document is for the exclusive use of its original addressee. Any total or partial reproduction or divulgence of its content to any other person without prior written consent from qbic is strictly forbidden.*

7



**To:**     Fabio M. Covarrubias P.
            José Antonio Álvarez Tamayo
            L1BRE

**From:**   Guillermo Fernández del Busto, Xavier Leroux, Victor Mendoza
            qbic

**Date:**   February 8, 2018

# Start of L1BRE operations
*Economic proposal*

Dear Fabio and José Antonio,

Based on our […] with José Antonio yesterday, we are sending you our updated proposal to support L1BRE in starting operations. Together with this document we are attaching our technical proposal which describes the objectives and scope of the work in detail.

 We will then summarize the objectives, team, duration and fees proposed for the undertaking.

**OBJECTIVES OF THE PROJECT**

The general objective of the project is to achieve an escalation of the L1BRE business and operations model to meet its goals for the installation of taximeters in Mexico City and the profitability of the business.

Its specific objectives are:

- To escalate the operations model, starting in February 2018, to install the devices in the Mexico City fleet in one year.

    — To diagnose the results of the driver, optimize the business model in the installation centers and quantify their capacity.

    — To document the processes and procedures within the installation centers and create standardized performance metrics.

8

— To create a plan for increasing resources (e.g. centers, personnel, systems, inventory) for installing the devices in the Mexico City fleet in one year.

— To follow up on and improve/correct the execution of the escalation, including opening centers and installing devices.

- To ensure that the business and collection model aligns incentives between L1BRE and the taxi drivers.

**TEAM AND DURATION**

The qbic team will be composed of:

- A leadership group dedicated part-time, made up of Guillermo Fernández del Busto and Xavier Leroux, both qbic associates.

- A full-time dedicated team made up of 3 or 4 consultants working full-time for the duration of the project.

The project schedule includes optimizing the operations model of the centers and quantifying their capacity, documenting their processes and procedures and initiating the opening and operation of installation centers in the first 3 months of the project. Afterward, we propose a stage of follow-up and improvement/correction of the operations that will encompass months 4 to 12 of the undertaking.

**qbic FEES**

qbic's fees for carrying out the work described above are US$ 95,000 per month (Ninety-five thousand US dollars per month). These fees do not include V.A.T. or expenses for travel outside of Mexico City, whose reimbursement to qbic we would agree to with you before doing so.

*** 

L1BRE would be very exciting to us at this critical stage in its operations and profitability. We thank you in advance for the confidence invested in us to collaborate with you.





# Appendix B: Preliminary

**Deliverables in the first 4 months of the project**

*This document is for the exclusive use of its original addressee. Any total or partial reproduction or divulgence of its content to any other person without prior written consent from qbic is strictly forbidden.*

10

# Appendix B: Deliverables in the first 4 months of the project

## Preliminary schedule of the undertaking

| Date | Deliverable | Fees Before V.A.T. |
|------|-------------|--------------------|
| To complete in month 1 of the project | Optimal operations model of the installation centers and quantification of their capacity | US$ 95,000 (Ninety-five thousand US dollars) |
| To complete in month 2 of the project | Documentation of the processes and procedures within the installation centers, including standardized performance metrics | US$ 95,000 (Ninety-five thousand US dollars) |
| To complete in month 3 of the project | Escalation plan, including the opening of new installation centers and installation goals at a monthly level | US$ 95,000 (Ninety-five thousand US dollars) |
| To complete in month 4 of the project | Follow-up reporting on the opening of new installation centers, installation goals and critical actions for correcting and improving the performance of the system | US$ 95,000 (Ninety-five thousand US dollars) |



**THE STATE OF TEXAS**  }
          }
**COUNTY OF HARRIS**  }

## AFFIDAVIT OF ACCURACY

BEFORE ME, the undersigned authority, on this day personally appeared <u>Ana Cristina Didoné</u>, who, by oath and by presentation of identification, is personally known to me to be the person subscribing her name below and, after being by me duly sworn according to law, upon her oath deposes and says in due form of law that to the best of her knowledge, information and belief:

1. "My name is Ana Cristina Didoné and I am over the age of twenty-one years and competent to make this affidavit.

2. I speak, read, and write fluently in both the English and Spanish languages.

3. I have been a certified sworn translator since 1988 with a M.A. in Legal Translations from the University of Salvador, Argentina. I am certified by the Argentine Association of Sworn Public Translators to translate from English into Spanish and Spanish into English. I am also certified by the American Translators Association for English to Spanish translations. I hold a degree in Executive Business Management from Rice University.

I hereby certify that the Spanish to English translation attached hereto: "Cubeice Contract" is a true, correct, fair, accurate and complete English translation to the best of my ability, of the original document in Spanish.

> TODD FEDER
> Notary Public, State of Texas
> Comm. Expires 05-19-2021
> Notary ID 129411929

ANA CRISTINA DIDONE, MA
Certified by American Translators Association

Sworn to before me this May 12, 2019

Notary Public in and for the State of Texas
My commission expires: _____5-19-21_____