UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ESPIRITU SANTO HOLDINGS, LP,**<br><br>Petitioner,<br><br>-against-<br><br>**L1BERO PARTNERS, LP,**<br><br>and<br><br>**ESPIRITU SANTO TECHNOLOGIES, LLC**<br><br>Respondents. | Civil Action No. 19-cv-03930 |

### DECLARACIÓN DE LAURA AYALA CONTRERAS

Yo, Laura Ayala Contreras, declaro, bajo protesta de decir verdad, de conformidad con 28 U.S.C. § 1746, que lo siguiente es verdadero y correcto:

1. Manifiesto que cuando ocurrieron los hechos expuestos en esta declaración, fungía como Analista de Tesorería de la empresa Lusad Servicios, S. de R.L. de C.V. (la cual entiendo es una subsidiaria de Servicios Digitales Lusad, S. de R.L. de C.V. ("**Lusad**"). Tengo conocimiento personal y directo de los hechos y circunstancias expuestos en esta Declaración, y respecto a aquellas afirmaciones de las que no tengo conocimiento personal, declaro con base en información y creencia tras una investigación de buena fe. Presento esta declaración como soporte adicional del escrito de las Demandadas en oposición a la Solicitud de Emergencia de ES Holdings de Medida Cautelar y Orden de Restricción Temporal en Pro de Arbitraje.

2. El 18 de diciembre 2018, siendo aproximadamente las 14:00 horas, me encontraba en el séptimo piso de la oficina de Lusad, específicamente en el lugar que me asignaron para trabajar. La oficina estaba prácticamente vacía porque el personal de la empresa

estaba en reunión. De pronto entró el Sr. Eduardo Herrera, quien era empleado de la misma empresa, y se dirigió a la oficina del Sr. Horacio Alamilla, el Contralor de la empresa, con una mochila y me preguntó que donde estaban todos. Le respondí que estaban en una reunión. Poco después de haber entrado a la oficina del Sr. Alamilla salió el Sr. Herrera y se dirigió al lugar que estaba a mi izquierda, siendo el de la Sra. Nancy Larios, Gerente de Contabilidad de la empresa. Vi al Sr. Herrera agarrar la computadora de la Sra. Larios. Le pregunté al Sr. Herrera por qué estaba tomando la computadora de la Sra. Larios y sólo me contesto que se llevaría la computadora. Acto seguido, el Sr. Herrera se dirigió con aparente urgencia hacia el elevador, el cual se encontraba a aproximadamente dos metros de distancia. En ese momento le dije al Sr. Herrera que la Sra. Larios se encontraba en el sexto piso y que antes de llevarse la computadora le informara. El Sr. Herrera hizo caso omiso.

3. De inmediato, me dirigí a solicitar ayuda al personal que estuviere más próximo, acercándome al Sr. Francisco Flores, quien es el Director Legal de la empresa, a quien le comenté que el Sr. Herrera se había metido a la oficina del Sr. Alamilla con una mochila y que le había visto llevarse el equipo de la Sra. Nancy Larios. En ese momento nos dirigimos al elevador, pero ya no estaba el Sr. Herrera. Le informé de lo sucedido a los compañeros de trabajo y al Sr. Alamilla quien me pidió que verificara si estaba su computadora y cuando fui a la oficina me percaté que su computadora ya no estaba, por lo que manifiesto que la única persona que entró en la oficina del Sr. Alamilla fue el mismo Sr. Herrera, quien llevaba una mochila por lo que considero que es la única persona que pudo haberse llevado la computadora del Sr. Alamilla, así como lo hizo con la computadora de la Sra. Larios.

4. Posteriormente, tengo conocimiento que el Sr. Flores bajó por las escaleras a intentar encontrar al Sr. Herrera pero no lo pudo alcanzar. También tengo conocimiento que las

llaves del vehículo del Sr. Herrera se descubrieron en las oficinas. Asimismo, tengo conocimiento que se quedó en el edificio (en el piso 1 del estacionamiento) el vehículo de Eduardo Herrera, camioneta Toyota, color blanco, placas PWR-271-A.

5. He revisado un video captado por medio de las cámaras de seguridad de las escaleras del edificio que muestra al Sr. Herrera saliendo de manera apresurada del edificio ese mismo día 18 de diciembre de 2018 (a aproximadamente las 14:00 horas) cargando objetos negros, que parecen ser las computadoras. Las imágenes que se reproducen en el **Anexo 1** fueron captadas por las cámaras de seguridad.

Declaro que lo anterior, bajo pena de perjurio bajo las leyes de los Estados Unidos de América, es correcto y verdadero, según lo que me consta.

Suscrita el 10 de mayo 2019

_____
Laura Ayala Contreras

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ESPIRITU SANTO HOLDINGS, LP,

                        Petitioner,

-against-

L1BERO PARTNERS, LP,

and

ESPIRITU SANTO TECHNOLOGIES, LLC

                        Respondents.

Civil Action No. 19-cv-03930

### **DECLARATION OF LAURA AYALA CONTRERAS**

I, Laura Ayala Contreras, hereby declare under oath, pursuant to 28 USC § 1746, that the following is true and correct:

1. When the events given in this declaration occurred, I worked as a Treasury Analyst of Lusad Servicios, S. de R.L. de C.V. (which I understand is a subsidiary of Servicios Digitales Lusad, S. de R.L. de C.V. ("**Lusad**")). I have personal and direct knowledge of the facts and circumstances set forth in this Declaration and, and with respect to any affirmations of which I do not have personal knowledge, I declare based on information and belief following a good faith investigation. I submit this statement in further support of Respondents' opposition to ES Holdings' Emergency Motion for Preliminary Injunction and Temporary Restraining Order In Aid of Arbitration.

2. On December 18, 2018, at approximately 2:00 PM, I was on the seventh floor of the Lusad office, specifically where I was assigned to work. The office was practically empty

-2-

because the personnel of the company were in a meeting. Suddenly Mr. Eduardo Herrera, a company employee, came in and went to the office of Mr. Horacio Alamilla, the company's Controller, with a backpack and asked me where everyone was. I answered that they were in a meeting. A little while after having entered Mr. Alamilla's office, Mr. Herrera came out and went to the workstation to my left, which was that of Mrs. Nancy Larios, the company's Accounting Manager. I saw Mr. Herrera grab the computer of Mrs. Larios. I asked Mr. Herrera why he was taking her computer, and he only answered that he was taking the computer. Mr. Herrera immediately went quickly towards the elevator, which was about two meters away. I then told Mr. Herrera that Mrs. Larios was on the sixth floor, and that before he took the computer, he should inform her. Mr. Herrera paid no attention.

       3.     I immediately went to ask for help from the nearest person, approaching Mr. Francisco Flores, who is the Legal Director of the company, and told him that Mr. Herrera had gone into Mr. Alamilla's office with a backpack, and that I had seen him take the computer belonging to Mrs. Nancy Larios. We then went to the elevator, but Mr. Herrera was gone. I told my coworkers what had happened and also Mr. Alamilla, who asked me to see whether his computer was there. When I went to his office, I saw that his computer was not there, and I told him that the only person who had gone into Mr. Alamilla's office was Mr. Herrera, who was carrying a backpack, and that I believe he is the only person who could have taken Mr. Alamilla's computer, just as he did with the computer of Mrs. Larios.

       4.     Later, I learned that Mr. Flores went down the stairs to try to find Mr. Herrera, but he could not catch up to him. I also know that keys to Mr. Herrera's vehicle were found in the

-3-

office. Also, I know that the vehicle of Eduardo Herrera, a white Toyota pickup/SUV, license plates PWR-271-A, was left in the building (on the first level parking area).

5. I have seen a video taken by security cameras of the building stairway showing Mr. Herrera quickly leaving the building that day, December 18, 2018 (at approximately 2:00 PM), carrying black objects that look like the computers. The images shown in **Annex 1** were taken by the security cameras.

I declare under penalty of perjury according to the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Signed on May 10, 2019

_____[signature]_____
Laura Ayala Contreras

# LIONBRIDGE

STATE OF NEW YORK      )
                       )
                       )   ss
                       )
COUNTY OF NEW YORK     )

## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Spanish into English of the attached Laura Ayala Declaration.

Laura Musich, Managing Editor
Lionbridge

Sworn to and subscribed before me
this 12th day of May, 20 19.

ETHAN WIN LY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01LY6323702
Qualified in New York County
My Commission Expires 04-27-2023

259 W 30th Street, 11th Floor  New York, NY 10001  +1.212.631.7432