UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ESPIRITU SANTO HOLDINGS, LP,**<br><br>        Petitioner,<br><br> -against-<br><br>**L1BERO PARTNERS, LP,**<br><br> and<br><br>**ESPIRITU SANTO TECHNOLOGIES, LLC**<br><br>        Respondents. | Civil Action No. 19-cv-03930 |

**RESPONDENTS' OBJECTIONS TO PETITIONER'S PROPOSED ORDER**

Pursuant to this Court's Memorandum Decision and Order Granting In Part and Denying In Part Petitioner ESH's Motion for Preliminary Injunction in Aid of Arbitration (ECF No. 33), Respondents L1bero Partners, LP ("L1bero Partners") and Espiritu Santo Technologies, LLC ("ES Technologies") (collectively, "Respondents") hereby submit the following comments and objections to Petitioner Espiritu Santo Holdings, LP's ("ES Holdings") Proposed Preliminary Injunction in Aid of Arbitration ("Petitioner's Proposed Order") (ECF No. 36). Respondents also submit herewith an alternative Proposed Form of Order that Respondents believe more closely follows the relief granted by the Court.[1]

Respondents object to Petitioner's Proposed Order because it extends far beyond the relief discussed by the Court as being suitable to prevent the irreparable harm found by the Court. In fact, Petitioner's Proposed Order goes well beyond the relief Petitioner sought in its

---

[1] These comments on and objections to the Proposed Order are without prejudice to Respondents' right to appeal any and all aspects of the Court's May 14, 209 Memorandum Decision and Order (the "Decision"), or any further order that may be entered in this matter.

motion that the Court specifically *denied*. In effect, Petitioner seeks an order imposing a wide range of requirements and prohibitions on Respondents' conduct as to which there has been no analysis—much less demonstration—of potential irreparable harm to Petitioner or any of the other elements required to support preliminary injunctive relief. This is improper. *See, e.g, Empresas Cablevision, S.A.B. de C.V. v. JPMorgan Chase Bank, N.A.*, 381 F. App'x 117, 118 (2d Cir. 2010) (Summary Order) ("We conclude that the injunction as issued by the district court fails that test [i.e. the narrow tailoring required by *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 119 (2d Cir.2009)] insofar as it impairs the ability of JPMorgan to take actions apparently unrelated to the potential irreparable injury to Cablevision."); *CF 135 Flat LLC v. Triadou SPV N.A.*, 15-CV-5345(AJN), 2016 WL 5945912, at *8-9 (S.D.N.Y. June 24, 2016) ("Movants have not demonstrated that [they] are entitled to the requested preliminary injunction on the basis of the alleged irreparable harm."). Essentially, Petitioners seek to obtain in this narrow, preliminary proceeding the relief that will be decided in the arbitration. This is also improper. *See, e.g., Triebwasser & Katz v. Am. Tel. & Tel. Co.*, 535 F.2d 1356, 1360 (2d Cir. 1976) (reversing district court order where "[t]he injunction granted below would in effect give the plaintiffs substantially the ultimate relief they seek . . . before there has been any trial of the issues . . ."); *Diversified Mortg. In'rs v. U.S. Life Ins. Co. of New York*, 544 F.2d 571, 576 (2d Cir. 1976) (explaining that a preliminary injunction should not be used as a device for "deciding questions of contract breach" and also "should not grant relief properly awarded only in a final judgment").

The starting and ending point of the analysis is the Decision. As the Court stated, after analyzing the irreparable harm issue, "The question is whether the irreparable harm Petitioner is suffering is the sort of harm that would lead to the entry of some sort of injunctive relief *in aid of*

*arbitration.*" Decision at 47 (emphasis in original).  The court then considered three forms of relief sought by Petitioner, concluding that:

- The injunctive relief requested by Petitioners related to Respondents' efforts to secure the Monterrey concession would not address the irreparable harm found by the Court (*id.* at 47-48);

- The Court was "not prepared to enter" the anti-suit injunction requested by Petitioners (*id.* at 48-52); and

- The appropriate relief here would be "an order that actually touches upon the irreparable harm that the Court has identified and that Petitioner has proved: ***an order that would prevent Respondent and any entity or individual associated with it from acting to compromise Petitioner's interest in the Mexico City concession***, which was originally awarded to Petitioner." *Id.* at 52 (emphasis added).

Accordingly, the Court stated that the injunction in aid of arbitration that should issue is "one that bars Respondent, its principals and their privies (including their subsidiaries, agents, officers, directors, *etc.*) from taking any steps to eliminate the interest of ESH in any business ventures anywhere in the world that are affiliated with, derived from, or use the trademarks, software, and other trade secrets associated with the L1bre group." Decision at 53.  Respondents have attempted in their Proposed Order to reflect this ruling, and nothing more.

Notwithstanding the Court's clear—and limited—grant of relief, Petitioner's Proposed Order would prevent Respondents from "taking ***any actions***, without the express written consent of Petitioner . . . [to] ***use*** (a) the L1bre trade name or associated trademarks, (b) the L1bre digital taximeter technology and related software, or (c) other trade secrets associated with the L1bre business ***until further order of this Court*** or the International Court of Arbitration of the International Chamber of Commerce (the 'ICC Arbitration')." Petitioner's Proposed Order at 2.  This provision alone would grant Petitioner relief beyond that requested—***and rejected by the Court***—concerning the bidding for the Monterrey concession.  *See* Decision at 47-48; *see also*

*id.* at 43-45.  Clearly, if Petitioner's initial narrower requested relief was not supported by the Court's finding of irreparable harm, there can be no basis for this broader request.

Petitioner also proposes other types of relief that are directed, if at all, at other alleged "harms" that are not within the irreparable harm found by the Court and that are, if at all, issues that should be decided within the arbitration and not by this Court, on this record.  For example, Petitioner's request that Respondents be barred from preventing any "Petitioner-appointed directors of any company governed directly or indirectly by the Partners Agreement, including without limitation, . . . Lusad, . . . L1bre Jalisco, and/or L1bre Nuevo León, from accessing all corporate, financial and accounting information and documents . . ." Petitioner's Proposed Order at 3.  This relief was never requested in the Petition, never argued by the parties, and is not supported by the Court's conclusion concerning irreparable harm.  In particular, there has been no showing that the proposed relief would be at all consistent with Mexican law, which governs at least some of the entities at issue (as the Court recognized, Decision at 51), or with pending orders of the Mexican courts, as to which the Court specifically refused to enter relief.

Likewise, Petitioner's request that the Court bar Respondents from "[i]ssuing directives or making determinations . . . that concern or relate to the Mexico City [concession], [the] Nuevo Leon concession[], or any other concession" (Petitioner's Proposed Order 3) seeks to recapture the relief the Court already expressly denied (*see* Decision at 47-48).  In addition to the Court's refusal to enjoin activity related to Nuevo León, as discussed above, the Court also expressly ***rejected*** injunctive relief concerning the Mexico City concession, stating that:

> [T]he contention that Respondent/Covarrubias is talking to Semovi and trying to oust Petitioner from the Mexico City concession is, at this point, pure speculation on León's part.  I concede that he has good reason to be fearful, but ***that is no substitute for proof*** in a court of law.

Decision at 52 (emphasis added).

Respondents also object to the Proposed Order to the extent that it purports to enjoin Respondents from "[t]aking any action anywhere in the world (including any action in a Mexican court) to alter in any manner the corporate status, identity of directors, shareholding interest, or other ownership, managerial, or control rights of any company contemplated by the Partners Agreement". Petitioner's Proposed Order 2. The scope of this requested relief would be akin to an anti-suit injunction, in that it would prevent L1bre Holding LLC ("L1bre Holding") and Servicios Digitales Lusad, S. de R.L. de C.V. ("Lusad") from continuing to prosecute the various actions that are currently pending in the Mexican courts, even though the Court expressly declined to enter such an injunction. Decision at 48-52.

In addition, the language of Petitioner's Proposed Order is improperly vague under Fed. R. Civ. P. 65(d) insofar as it refers to "any company contemplated or governed directly or indirectly by the Partners Agreement," actions that are "in violation of the Partners Agreements," and "any action inconsistent with the findings and determinations of the Court as set forth in the Memorandum Decision." Rule 65(d)(1)(C) specifically provides: "Every order granting an injunction and every restraining order must . . . state its terms specifically; and . . . describe in reasonable detail—*and not by referring to the complaint or other document*—the act or acts restrained or required." If there is any reasonable room for disagreement about the obligations imposed by the order, it cannot be granted. *Int'l Longshoremen's Ass'n*, 389 U.S. 64, 76 (1967) (holding that Rule 65 "requir[es] that a federal court frame its orders so that those who must obey them will know what the court intends to require and what it means to forbid"); *Rosen v. Siegel*, 106 F.3d 28, 32 (2d Cir. 1997) (explaining that the "rule against broad, vague injunctions is designed to prevent uncertainty and confusion on the part of those to whom the injunction is directed, and to be sure that the appellate court knows precisely what it is reviewing") (internal

quotation marks and citation omitted); *DeWitt Stern Group, Inc. v. Eisenberg*, 2013 WL 5815512, at *4 (S.D.N.Y. Oct. 29, 2013) ("[T]he clarity of the order must be such that it enables the enjoined party to ascertain from the four corners of the order precisely what acts are forbidden.") (internal quotation marks and citation omitted).

Respondents also respectfully submit that the relief granted by this Court in aid of arbitration should only extend until an arbitral tribunal has been constituted, at which point any continuation of interim relief will become a matter for the tribunal to decide. Respondents accordingly propose that the Court's preliminary injunctive relief expire on the earlier of (a) a decision by the arbitral tribunal on an application by Petitioner for provisional remedies; or (b) ten days after the arbitral tribunal in the ICC Arbitration has been constituted, in the event that Petitioner declines to seek provisional remedies from the arbitral tribunal within that period. In this regard, Respondents note that (i) the Partners Agreement expressly provides that "the arbitral tribunal, or the emergency arbitrator to the extent provided by the Rules, shall have full authority to grant provisional remedies" (León Decl. Ex. 1, §12(c)); (ii) Petitioner expressly sought preliminary injunctive relief from this Court on the ground that "[t]he ICC tribunal will not even be fully consummated for at least 60 days, and therefore will not be able to rule on these issues before Respondents take irreversible action in violation of the Partners Agreement" (ECF No. 18 at 21); and (iii) Petitioner stated that it "will make the same requests of the ICC tribunal that hears the ICC Arbitration, as soon as it is consummated." (ECF No. 1 ¶ 7). *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dutton*, 844 F.2d 726, 728 (10th Cir. 1988) (holding that "the open-ended preliminary injunction entered by the district court was improper" and that "[u]pon remand, the district court shall modify the preliminary injunction to expire when the issue of preserving the status quo is presented to and considered by the arbitration panel").

Finally, pursuant to Fed. R. Civ. P. 65(c), the Court is required to consider and make a finding concerning the bond to be posted by Petitioner in connection with the preliminary injunctive relief. Respondents respectfully submit that Petitioner should be required to post security in the amount of USD $1 million against possible harm or damage to Respondents arising out of this relief. Given the unrebutted testimony that the Monterrey concession could generate EBITDA of $50 million per year, and the evidence of Mr. Covarubbias' investment in L1bre of $30 million and loans of an additional $18 million, and the risk that Petitioner may use the Court's order to interfere with efforts to win that concession resulting in financial harm, Respondents believe that this represents an appropriate amount in the event that Petitioner's claims are ultimately rejected in the arbitration.

Dated: May 16, 2019
      New York, New York

**REED SMITH LLP**

By: /s/ Steven Cooper
    Steven Cooper
    SCooper@reedsmith.com
    John B. Webb
    JWebb@reedsmith.com
    Colin A. Underwood
    CUnderwood@reedsmith.com
    Jonathan P. Gordon
    Jonathan.Gordon@reedsmith.com
    John P. Kennedy
    JKennedy@reedsmith.com

599 Lexington Avenue
New York, New York 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450

*Attorneys for Respondents L1bero Partners, LP and Espiritu Santo Technologies, LLC*