UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
:
ESPIRITU SANTO HOLDINGS, LP,                             :
:
                Petitioner,     :
:
    -against-                                             :  No. 19 Civ. 3930 (CM)
:
L1BERO PARTNERS, LP,                                     :
:
    and                                                   :
:
ESPIRITU SANTO TECHNOLOGIES, LLC                         :
:
                Respondents.    :
:
-----------------------------------------------------------------x

## SECOND DECLARATION OF SANTIAGO LEÓN AVELEYRA

I, Santiago León Aveleyra, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct:

1.      With Eduardo Zayas Dueñas, I represent and manage Espiritu Santo Holdings, LP ("ES Holdings") on behalf of a close group of investors. ES Holdings, in turn, is a 50% owner of Espiritu Santo Technologies, LLC ("ES Technologies"). L1bero Partners, LP ("L1bero Partners") owns the remaining 50% of ES Technologies, pursuant to the Partners Agreement dated December 6, 2017, between ES Holdings and L1bero Partners. Ricardo Salinas Pliego and Fabio Covarrubias Piffer each hold a 50% interest in L1bero Partners. As I describe below, Mr. Salinas and Mr. Covarrubias, through their appointed representatives in ES Technologies, have taken a series of actions that have continued to exclude ES Holdings from the joint management and control of ES Technologies and its affiliated entities.



2. ES Technologies is the 100% indirect of owner of Servicios Digitales Lusad, S. de R.L. de C.V. ("Lusad"), which holds a concession for the substitution, installation, and maintenance of new taximeters and related application technology in taxi cabs operating in Mexico City.

3. I provided a chart of the corporate structure of the L1bre business in paragraph 10 of my first Declaration submitted to this Court. A copy of the chart is attached as Exhibit A.

4. On May 14, 2019, this Court entered an order granting in part ES Holdings' Petition for Preliminary Injunction in Aid of Arbitration (the "Order."). On May 16, 2019, this Court entered the resulting Preliminary Injunction (collectively, with the Order, the "Injunction"). Despite the plain and clear terms of the Injunction, L1bero Partners continues to (i) deny ES Holdings full access to ES Technologies and its affiliated entities' (collectively, the "L1bre Group") books and records, (ii) fail to provide ES Holdings with joint control of the L1bre Group, (iii) deny ES Holdings access to the L1bre Group's offices, and (iv) pursue actions in Mexican courts that seek to undermine and nullify ES Holdings' joint control of the L1bre Group.



5. Even though ES Holdings, through counsel, has made repeated requests for access to the L1bre Group's corporate and financial books and records, these requests have been obstructed, denied or ignored. As examples, L1bero Partners refuses to provide *any* bank records, court records resulting from any actions initiated by L1bero Partners on behalf of any L1bre Group entity, or lists of corporate and legal actions taken by the L1bre Group, just to identify a few of the more significant issues. L1bero Partners has even refused to allow ES Holdings' representatives entry into the L1bre Group's Mexico City offices.

6. ES Holdings' joint control of the L1bre Group is more important than ever, given

that Mr. Covarrubias – the Chief Executive Officer of the L1bre Group and representative of L1bero Partners – and Mr. Salinas are currently enmeshed in a separate, significant corruption scandal. As widely reported in the Mexico media, the scandal involves Grupo Fertinal ("Fertinal"), a Mexican company in which Mr. Covarrubias owned a significant interest. According to numerous media accounts, the Mexican and United States governments have made the accusation that Mr. Covarrubias' $600 million sale of Fertinal to Petroleos Mexicanos ("PEMEX"), Mexico's state-owned petroleum company, was the product of corruption at the highest levels of the Mexican government. *See, e.g.*, *Government's Overpayment for Fertilizer Plants Under the Microscope*, Mexico News Daily (June 20, 2019) ("According to a sworn statement by a witness made to investigators at the U.S. Department of Justice, Peña Nieto received a bribe from Fertinal's majority shareholder Fabio Massimo Covarrubias in exchange for approving the overpayment."). In short, the allegation is that PEMEX grossly overpaid for the acquisition of Fertinal and that Mr. Covarrubias and Mr. Salinas bribed high-ranking Mexican officials to approve the overpayment.



7. ES Holdings had no interest in Fertinal and played no role in the sale of Fertinal to PEMEX. Mr. Covarrubias' and Mr. Salinas' very public involvement in these matters underscore the importance that they not continue to act on behalf of the L1bre Group without the joint control and participation of ES Holdings, required by this Court's Injunction to effectuate the Partners Agreement.

A.  **Libero Partners Has Denied ES Holdings Unrestricted and Unfettered Access to L1bre Group's Books and Records.**

8. Although ES Holdings should not have been required to request access to information relating to the L1bre Group, we nevertheless made a formal request, through counsel, for "access to all information relevant to the legal, business, and financial operations and management" of the L1bre Group. *See* May 17, 2019 letter from R. Lorenzo to S. Cooper, attached as Exhibit B. Because Reed Smith LLP represented L1bero Partners during the U.S. District Court proceedings, ES Holdings addressed its request to that firm. Reed Smith responded by letter, stating that "we do not presently represent [L1bero Partners], nor do we have any relationship at all with any of the other L1bre entities." *See* May 20, 2019 letter from C. Underwood to R. Lorenzo, attached as Exhibit C. ES Holdings then made this same request to Francisco Flores, in-house counsel for L1bero Partners and/or Lusad. *See* May 21, 2019 letter from R. Lorenzo to F. Flores, attached as Exhibit D.



9. In response, Mr. Flores sent an email to Mr. Lorenzo, stating that, prior to gaining any access to the L1bre Group, ES Holdings must provide "a written confirmation issued by either the Board of Managers of [ES Holdings] or a duly appointed legal representative of [ES Holdings], confirming the names and email addresses of the persons authorized by [ES Holdings] to access such information and records on behalf of the company." An excerpt of the May 22, 2019 email from Mr. Flores to Mr. Lorenzo is copied below and attached as Exhibit E:

> From: Francisco Flores <fflores@l1bre.com>
> Sent: Wednesday, May 22, 2019 8:50 PM
> To: Lorenzo, Richard
> Cc: cunderwood@reedsmith.com; fcovarrubias@l1bre.com; munez@nsa.com.mx; halamillam@l1bre.com; ccantoral@cancar.law; Cheskin, Mark R.; Dunn, David; FRivero@reedsmith.com
> Subject: Re: 1:19-cv-03930-CM Espiritu Santo Holdings, LP v. L1bero Partners, LP
> Attachments: EXHIBIT F.pdf; EXHIBIT C.pdf; EXHIBIT D.pdf; EXHIBIT G.pdf; EXHIBIT B.pdf; EXHIBIT E.pdf; EXHIBIT A.pdf; NOI.pdf; OFICIO_L1BERO_SE.pdf; Acuse SE Abril 16.pdf; 19 RFC LNL190214CU0 140319.pdf; ESC 14420 Acta Constitutiva L1bre Nuevo Leon.pdf
>
> Dear Mr. Lorenzo:
>
> I refer to your letter dated May 21, 2019.
>
> In connection with same, please find attached the following documents:
>
> 1. Copy of the Notice of Intent (NOI) filed before the Economy Ministry of México on March 29, 2019, a copy of the initial response issued by the Economy Ministry on April 5, 2019 and the follow-up letter to same, filed on April 16, 2019. Since this last date, there has been no further communication between the parties. This, in response to Section 1 of your letter.
>
> 2. Copy of the documents filed before the Transportation Agency of the State of Nuevo León, requesting the
>
> 1. For purposes of granting access to the financial books and records of Espíritu Santo Technologies, L1bre Holding, L1bre LLC, Servicios Digitales Lusad, Servicios Administrativos Lusad, Lusad Servicios and L1bre Nuevo León (the L1bre Entities), <u>I will appreciate it if you can provide us with a written confirmation issued by either the Board of Managers of Espíritu Santo Holdings LP (ESH) or a duly appointed legal representative of ESH, confirming the names and e-mail addresses of the persons authorized by ESH to access such information and records on behalf of this Company</u>. We ask for this confirmation directly from ESH, since the May 16th, 2019 Preliminary Injunction orders that "<u>the directors</u> appointed by Petitioner to the Board of any company governed directly or indirectly by the Partners Agreement, including without limitation, ES Technologies and the members of the L1bre Group, <u>shall have unrestricted and unfettered access</u>..." (emphasis added). Upon receipt of such written
>
> on the Oracle Netsuite Platform and gain access to the the aforementioned financial books and records. After this, if the authorized representatives of ESH need to conduct a review of working documents and other support documentation, we would kindly ask to be provided with a specific and itemized list of the documents and support information to be reviewed, so that same may be compiled and then set a specific date and place to conduct their review.



10. Although I believed that Mr. Flores' demand was a delay tactic, ES Holdings agreed to provide the information requested as evidenced by a May 23, 2019 email from R. Lorenzo to F. Flores, attached as Exhibit F and shown below:

5

> | From: | Lorenzo, Richard |
> |---|---|
> | Sent: | Thursday, May 23, 2019 8:32 AM |
> | To: | fflores@l1bre.com |
> | Cc: | Dunn, David; Cheskin, Mark R.; FRivero@reedsmith.com; ccarmona@cancar.law; fcovarrubias@l1bre.com; halamillam@l1bre.com; cunderwood@reedsmith.com |
> | Subject: | FW: 1:19-cv-03930-CM Espiritu Santo Holdings, LP v. L1bero Partners, LP |
>
> Dear Mr. Flores, thank you for your email, though we dispute various of the assertions set forth therein.
>
> You are well aware that Hogan Lovells represents ES Holdings. Our client has requested that the documents concerning the L1bre Group be made available to ES Holdings' counsel, which include Hogan Lovells. <u>Your refusal to provide ES Holdings' counsel access to these documents lacks merit and your demand for a "certification" appears to be nothing more than an attempt to delay providing the requested documents and obstruct compliance with the New York court's Order. Notwithstanding, we will provide the certificate so immediate access is provided.</u>
>
> Further, our client requests immediate access to all counsel for the L1bre Group, including King & Spalding, who appear to be representing L1bre Holding and ES Technologies with regard to the NAFTA Notice of Intent. Please advise when meetings and/or telephone conferences with Mexican and US counsel for the L1bre Group can be confirmed. In addition, we request all communications exchanged between the L1bre Group and its outside counsel from 1 December 2018 to the present. Finally, we request all communications between the L1bre Group and L1bero Partners, its counsel, directors and/or representatives from 1 December 2018 to the present. Please advise when these documents will be made available by no later than close of business Friday, 24 May 2019.
>
> Please be further advised that nothing herein shall be deemed a waiver of any right or remedy ES Holdings may have, including to seek redress before the New York court for failure to comply with its Order.
>
> Best, Richard C. Lorenzo



11. The resulting access that L1bero Partners provided, however, was severely limited and definitely not "unrestricted." Specifically, L1bero Partners restricted ES Holdings' representatives' access to "Accountant Reviewer Access" on the Oracle Netsuite Platform, even though L1bero Partners' own representatives enjoy "Administrator Access," which, among other advantages, allows access to the accounting audit trail. Although we requested "Administrator Access" to the Oracle Netsuite Platform thereafter, *see* May 24, 2019 letter from R. Lorenzo to F. Flores, attached as Exhibit G, L1bero Partners has refused to provide such equivalent access to ES Holdings' representatives.

12. Through counsel, ES Holdings has made several additional requests to gain access to the Oracle Netsuite Platform, as well as other L1bre Group accounting, financial, and corporate information relating to its legal, business, and financial operations and management,

6

but L1bero Partners continues to restrict and limit ES Holdings' access.

13. In a July 10, 2019 communication, counsel for L1bero Partners claimed that ES Holdings has been "granted full access to read and review the accounting information (including audit trail access)." *See* L1bero Partners' July 10, 2019 communication, attached as Exhibit H. Indeed, ES Holdings still cannot access the main audit trail (which includes all transactions executed by the current administrators), and can only view line-item entries without being able to access any of the underlying documents that support the entries. For example, ES Holdings can see a listing of the checks paid and the open bills, but cannot access any details or documentation regarding those transactions. Moreover, in its same July 10 communication, L1bero Partners acknowledged that it "ha[s] not and do[es] not intend to grant [ES Holdings] the power to add, alter, or delete information (which ES Holding has no intention to do) in the books and records," even though L1bero Partners has the ability to do so.

14. This communication evidences ES Holdings concern. ES Holdings seeks the same level of access that L1bero Partners enjoys. This simply has not been provided and our efforts to obtain it have been denied; L1bero Partners continues to control and run the L1bre Group without ES Holdings' input or consent. *See* July 15, 2019 email from R. Lorenzo to F. Rivero, attached as Exhibit I and copied below:

> From: Lorenzo, Richard
> Sent: Monday, July 15, 2019 5:59 PM
> To: Rivero, Francisco
> Cc: Dunn, David; Cheskin, Mark R.; Homer, William; Munoz, Arturo; Underwood, Colin A.
> Subject: RE: L1bre - Mexico
>
> Dear Francisco, your response below evidences the obstruction and gamesmanship of your clients in their efforts to avoid compliance with the NY Court's Order.
>
> <u>Our client's request is simple, it seeks the same level of access to the L1bre Group's corporate and financial documents that your clients enjoy. You have repeated refused to provide the same level of access, which is a violation of the NY Court Order. By way of example, we have asked for the L1bre Group's bank account statements and they have not been provided.</u> We have asked from access to L1bre's Mexico City offices and access has been denied. Surely this cannot be compliant with the NY Court's Order.
>
> As for the audit, Lusad's board unanimously approved the audit in December 2018. We want that the audit to begin. Grant Thornton is conflicted, as you know, as they already serve as L1bre Group's auditors. Morrison Brown is a leading accounting firm and as such, we request that Lusad immediately proceed to engage them and that our client be part of the engagement process.
>
> We reserve all of our client's rights.
>
> Best, Richard C. Lorenzo

### B.    L1bero Partners has Denied ES Holdings Joint Control of the L1bre Group.

15.     L1bero Partners persists in denying ES Holdings joint management and control of the L1bre Group. Specifically, L1bero Partners refuses to allow Mr. Zayas and me to participate in management decisions as ES Holdings' lawfully appointed board members of various members of the L1bre Group, including L1bre Holding and Lusad. L1bero Partners, instead, has demanded that ES Holdings "designat[e] replacement board members while Mexican court orders barring Mr. Leon's and Mr. Zayas' participation remain in place." *See* May 27, 2019 letter from C. Underwood to R. Lorenzo, attached as Exhibit J.

16.     To my knowledge, no Mexican court order has permanently barred our participation on the Lusad board. Instead, the "Mexican court orders" referenced by L1bero Partners' counsel only prohibited our participation in a February 21, 2019 board meeting. Although we contest the validity of that prohibition, my understanding is that it does not affect our participation on the Lusad board going forward. Still, L1bero Partners persists in denying



our right to take part in the management of Lusad.

17. Nevertheless, ES Holdings complied with L1bero Partners' demand and designated Francisco De Paula Leon Olea and Jimena Rodriguez Perez-Vargas as replacement board members of Lusad. *See* May 29, 2019 letter from R. Lorenzo to C. Underwood, attached as Exhibit K. Several weeks later, however, counsel for L1bero Partners presented additional impediments to ES Holdings' equal participation in the management and control of Lusad, informing ES Holdings that the "appointment of the directors selected by [ES Holdings] requires a resolution by the shareholders [of Lusad]." *See* June 13, 2019 email from F. Rivero to R. Lorenzo, attached as Exhibit L.

18. On July 3, 2019, instead of providing the Lusad resolution of the shareholders, counsel for L1bero Partners provided an "instruction letter," which would effectively remove me and Mr. Zayas from the boards of *all* the L1bre Group entities, including ES Technologies. A copy of this "instruction letter" is attached as Exhibit M. L1bero Partners continues to control Lusad, and it could have instructed Lusad without any need of an instruction letter to confirm and appoint ES Holdings' newly designated directors. L1bero Holdings has failed and refused to do so for many weeks, notwithstanding this Court's order.

19. In response to this "instruction letter," Mr. Lorenzo (counsel for ES Holdings) exchanged several emails with Mr. Rivero (counsel for L1bero Partners), requesting that L1bero Partners "take any and all action necessary to cause ES Holdings' replacement *Lusad* board members to be confirmed." *See* July 4, 2019 email from R. Lorenzo to F. Rivero, attached as Exhibit N.

9

20.     L1bero Partners demanded replacement Lusad board members in May 2019. ES Holdings immediately provided the replacement candidates. Over two months later, they have not been confirmed. *See* July 10, 2019 email exchange between R. Lorenzo and F. Rivero, attached as Exhibit O; *see also* July 15, 2019 email from R. Lorenzo to F. Rivero, attached as Exhibit P. On July 18, 2019, counsel for L1bero Partners finally informed ES Holdings that a "request ***will be made*** that the Secretary prepare the relevant resolutions" appointing the Lusad board members, but the final resolutions have yet to be issued, over five weeks since this issue first arose, and over eight weeks since the issuance of the Injunction. *See* July 18, 2019 email from F. Rivero to R. Lorenzo, attached as Exhibit Q.

21.     On July 23, 2019, we received notice through counsel that Mr. Zayas and I had been named to the board of L1bre Nuevo León, the L1bre Group company previously formed without ES Holdings' input and without ES Holdings-nominated directors to bid on a taximeter concession for the state of Nuevo León. *See* July 23, 2019 email from F. Rivero to R. Lorenzo, attached as Exhibit R; Order at 14, 16-18, 42. These appointments, though, were symbolic only. For example, neither Mr. Zayas nor I are granted the same power of attorney as the Nuevo León entity's two other directors, Messers. Covarrubias and Belmont: Messers. Covarrubias and Belmont are authorized to act individually on behalf of the company. but Mr. Zayas and I are only allowed to act after obtaining the approval of the company's board. Therefore, even though Mr. Zayas and I would now be directors in name, we have no actual power to exercise joint control of the company. Additionally, since we began legal proceedings against L1bero Partners, I understand that L1bre Nuevo León's bid on the taxi concession in Nuevo León, submitted unilaterally by L1bero Partners, was unsuccessful. Thus, the Nuevo León entity has no foreseeable purpose or business.

22. Similarly, on July 24, 2019, we received revised bylaws for L1bre Jalisco, the L1bre Group company formed in order to bid on a taximeter concession for the state of Jalisco. *See* July 24, 2019 email from F. Rivero to R. Lorenzo, attaching the revised bylaws for L1bre Jalisco, attached as Exhibit S. The revised bylaws do not comply with the Partners Agreement and do not grant ES Holdings joint management and control of the company. For example, the bylaws of L1bre Jalisco (i) include a jurisdictional clause that provides that any and all controversies arising from or related to the company are subject to the jurisdiction of the competent courts of Jalisco, which ES Holdings has not agreed to, ii) do not grant any ES Holdings representative a power of attorney to act on behalf of L1bre Jalisco, and (iii) do not appoint any ES Holdings representative as a member of the L1bre Jalisco board. *See* July 24, 2019 email from R. Lorenzo to F. Rivero, attached as Exhibit T.

23. These documents relating to L1bre Nuevo León and L1bre Jalisco are further attempts by L1bero Partners to obstruct and delay its compliance with the Injunction. *See* July 24, 2019 email from R. Lorenzo to F. Rivero, attached as Exhibit U.

C. **ES Holdings' Representatives Have Been Denied Access to L1bre Group Offices**

24. On July 8, 2019, representatives of ES Holdings attempted to be admitted into the L1bre Group offices in Mexico City. The representatives were denied access by building security, without explanation. ES Holdings immediately informed L1bero Partners of this denial of access, but L1bero Partners has not responded, and has taken no action to make the L1bre Group Mexico City offices available to ES Holdings. *See* July 8, 2019 email from R. Lorenzo to F. Rivero, attached as Exhibit V.

25. L1bero Partners' failure to provide ES Technologies' representative access to L1bre Group's offices in Mexico demonstrates that L1bero Partners has no intention of

providing ES Technologies joint control of the L1bre Group or full access to the L1bre Group's books and records.

D. **L1bero Partners has Continued to Pursue Actions in Mexican Courts to Undermine ES Holdings' Joint Control of the L1bre Group**

26. L1bero Partners continues to pursue actions in Mexican courts designed to undermine ES Holdings' rights under the Partners Agreement. There are currently three separate actions pending before Mexican courts that L1bero Partners has initiated and continues to prosecute: (i) a civil action filed on behalf of Lusad, seeking to declare Mr. Zayas and me liable for alleged actions that we took in our roles as directors of Lusad (the "Lusad Action"); (ii) a criminal proceeding, alleging that Mr. Zayas was complicit in an alleged theft of Lusad computers (the "Criminal Action"); and (iii) a civil action filed on behalf of L1bre Holding, seeking to nullify certain sections of the Partners Agreement (the "L1bre Holding Action"). Each Mexican action has been taken without our advance knowledge or the consent of ES Holdings and appears to be a pretextual basis for L1bero Partners to obtain a Mexican court order to seize full control of the L1bre Group and maintain it, despite this Court's orders to the contrary. Even after the Injunction was entered, L1bero Partners continues to actively litigate these claims in the name of the L1bre Group without any input or consent from ES Holdings.

27. By letter dated May 29, 2019, ES Holdings through counsel requested that L1bero Partners "take immediate action to dismiss or withdraw the pending actions in Mexican courts." *See* Exhibit K. ES Holdings further requested that "ES Holdings immediately be notified of any other legal actions that have been initiated by the L1bre Group, and no further actions should be taken without the prior written consent of ES Holdings." *Id.* L1bero Partners has ignored these requests.

28. After learning that L1bero Partners has continued to take actions in these Mexican

court proceedings against ES Holdings, its representatives, and L1bre Group members without ES Holdings' advance knowledge or consent, on July 7, 2019, counsel for ES Holdings sent a further communication by email (which has not been responded to by L1bero Partners), specifically requesting, among other matters, that "no actions in any of these Mexican court proceedings can be taken without [ES Holdings'] knowledge and consent." A copy of the July 7, 2019 email from R. Lorenzo to F. Rivero is attached as Exhibit W.

29. L1bero Partners continues to take actions in various Mexican court proceedings against ES Holdings and its representatives in the name of the L1bre Group despite our repeated demands to refrain from doing so. Additionally, the actions were initiated by L1bero Partners' representatives based on knowingly false statements, as discussed below.

    **(i)    The Lusad Action**

30. L1bero Partners initiated the Lusad Action in January 2019. Even after the Injunction was entered, L1bero Partners unilaterally has caused Lusad to make several filings that effectively eliminate our interest in Lusad.



31. First, on May 17, 2019, *the day after* the U.S. District Court entered the Injunction, L1bero Partners caused Lusad to file a motion in the Mexican civil court, seeking to hold me in contempt of court for not producing certain documents. A true and correct copy of the motion, as well as a translation, is attached as Exhibit X.

32. Then, on May 22, 2019, L1bero Partners caused Lusad to file a brief in the same Mexican court, again arguing that Mr. Zayas and I should be held liable for damages to Lusad, incorrectly insisting that we had no authority to hire Deloitte to conduct an independent audit of Lusad. A true and correct copy of the relevant portions of the brief, as well as a translation into English, is attached as Exhibit Y. This assertion directly contradicts Mr. Flores's testimony

before the U.S. District Court on behalf of L1bero Partners, where he agreed that "Deloitte was the auditor that was approved unanimously in the resolutions on December 14th to conduct the internal investigation" and denied that those resolutions were null and void by affirmatively testifying that "[t]he resolutions were adopted at the meeting." *See* May 13, 2019 Hearing Transcript, pp. 114-116, attached as Exhibit Z.

33. In the same brief, L1bero Partners' representatives also argued that Mr. Zayas allegedly signed an altered concession contract that changed the terms of the concession originally negotiated with Mexico City. That allegation, however, is entirely inconsistent with another document filed by L1bero Partners in another proceeding, namely the NAFTA Notice of Intent filed by L1bero Partners on behalf of ES Technologies (the "Notice of Intent"). A true and correct copy of the Notice of Intent is attached as Exhibit AA.

34. Contrary to the allegations in the May 22, 2019 brief, L1bero Partners' Notice of Intent affirms that certain Mexico City authorities wrongfully induced Zayas into signing that altered concession. According to the Notice of Intent, "[i]nstead of receiving the document he was promised, Mr. Zayas was asked to sign a signatures page to supposedly be inserted in the Amended Concession but, in fact, that signatures page was part of an altered version of the Amended Concession." The Notice of Intent, filed by L1bero Partners, states that these actions taken by the Mexico City authorities "can only be explained as an improper and arbitrary maneuver by the Mexican government to strip Lusad of its legitimate economic rights." These statements directly contradict the allegations made now by L1bero Partners that Mr. Zayas wrongfully signed an amended concession against Lusad's interest.

35. After this Court entered the Injunction, ES Holdings sought to have the Injunction admitted into evidence in the Lusad Action. The Mexican court allowed the Injunction to be

admitted, and L1bero Partners challenged this decision on May 31, 2019, by causing Lusad to file a motion which takes issue with the validity of this Court's Injunction. A true and correct copy of that motion, as well as a translation, is attached as Exhibit BB.

36. Among other arguments, L1bero Partners asserts:

- The Injunction was issued by a foreign court and is unenforceable in Mexico;

- Lusad was not part of the proceeding before the U.S. District Court, and as such, the U.S. District Court lacks jurisdiction to impede Lusad form exercising its legal rights; and

- The Injunction is not binding on Lusad, as it relates to foreign parties that are not Lusad's direct shareholders.

37. Through these Mexican court filings in the Lusad Action, L1bero Partners seeks to undermine and disenfranchise ES Holdings' rights to joint control of Lusad. Notably, L1bero Partners' actions were made *on behalf of Lusad* after entry of the Injunction, without ES Holdings' advance knowledge or consent.



**(ii) The L1bre Holding Action**

38. Additionally, in March 2019, L1bero Partners initiated an additional Mexican civil action (currently pending before Civil Judge 63 of the Mexico City Court – Judicial File 334/19) on behalf of L1bre Holding against ES Holdings, ES Technologies, L1bero Partners, and Lusad. A true and correct copy of the relevant portions of the complaint that L1bero Partners caused to be filed on behalf of L1bre Holding, as well as a translation of the same, is attached as Exhibit CC.

39. This action seeks to nullify Clauses 5.2 (b), (d) and (u) and Clause 12 of the Partners Agreement (the arbitration agreement) under the specious argument that the Partners

15

Agreement cannot bind L1bre Holding because the Agreement was executed only by L1bero, ES Technologies, and ES Holdings.

40. Specifically, section 5.2 of the Partners Agreement requires that all "Major Decisions" require the unanimous written approval of all four members of the board of directors. Section 5.2(b) provides that any amendment to the articles of association or bylaws of ES Technologies or any affiliate is a "Major Decision," requiring unanimous approval. Partners Agreement § 5.2(b). Section 5.2(d) states that the termination, liquidation, or dissolution of ES Technologies or any affiliate also is a "Major Decision." *Id.* § 5.2(d). In addition, Section 5.2(u) provides that the "exercise of any corporate or voting rights" issued by any L1bre Group entity, and the "designation of any proxy or representative authorized to vote" by any L1bre Group entity are "Major Decisions," which require unanimous board approval. Under Section 12 of the Partners Agreement, "[a]ny dispute, claim or controversy resulting from, relating to or arising out of this Agreement . . . shall by submitted to final and binding arbitration." *Id.* § 12.

41. ES Holdings never consented to L1bre Holding's initiation of this action; yet L1bero Partners' representatives continue to pursue this litigation in the name of L1bre Holding and even refuse to provide copies of the pleadings filed in this action. *See* July 15, 2019 email from R. Lorenzo to F. Rivero, attached as Exhibit DD.

42. Further, respondents were ordered to respond to the lawsuit before June 6, 2019, but ES Holdings was not made aware of this order. It appears ES Technologies and Lusad did not timely respond, given that on June 21, 2019, after the entry of the Injunction, L1bre Holding requested that the court issue a decision deeming the complaint's allegations admitted based on ES Technologies and Lusad's apparent failure to timely respond. A true and correct copy of the request, as well as a translation, is attached as Exhibit EE.

43. If L1bero Partners is successful in the prosecution of this Mexican action, the provisions of the Partners Agreement requiring ES Holdings' joint control would be nullified, at least according to a Mexican court. Since L1bre Holding owns at least 99.99% of each of the remaining L1bre Group entities, joint control over the L1bre Group would no longer exist. As such, Mr. Covarrubias and L1bero Partners will have succeeded in their scheme to use the Mexico courts to "legally" usurp complete control over all L1bre Group entities.

### (iii) The Criminal Action

44. In January 2019, representatives of L1bero Partners initiated the Criminal Action on behalf of Lusad, alleging that Deloitte – the accounting firm hired to conduct an audit of Lusad by a unanimous December 14, 2018 board resolution – stole two Lusad laptop computers and that Mr. Zayas was complicit in the purported "robbery" of the computers. L1bero Partners has since expanded the Criminal Action by adding me as a defendant. On June 5, 2019, after the entry of the Injunction and without ES Holdings' consent, Mr. Flores appealed the Mexican court decision that determined that neither Deloitte nor Mr. Zayas had committed a crime with respect to the alleged theft of the Lusad computers. In the appeal, Mr. Flores maintains that Deloitte's representative committed a "robbery" and that Mr. Zayas was complicit in the purported robbery. Although Mr. Flores admits that Lusad's board authorized the Deloitte audit in the appeal, *see supra* ¶ 22, he nevertheless states that Mr. Zayas was not authorized to take any actions regarding the audit.

45. L1bero Partners' appeal filed on behalf of Lusad was filed, yet again, without the knowledge of or consent from ES Holdings.

\*\*\*

46. In conclusion, while L1bero Partners has taken steps to create the appearance that

they are attempting to comply with the Preliminary Injunction, such as providing documents regarding L1bre Nuevo León and L1bre Jalisco, in reality nothing has changed. L1bero Partners continues to (i) deny ES Holdings access to the L1bre Group's Mexico City offices, (ii) deny ES Holdings the same level of access enjoyed by L1bero Partners to Lusad's financial records as well as L1bre Group bank account records or statements, (iii) deny ES Holdings access to, or copies of, any L1bre Group Mexican court submissions, (iv) deny Mr. Zayas and myself the right to assume our Lusad board positions, (v) refuse to cause ES Holdings' replacement Lusad board members to be confirmed, (vi) refuse to grant ES Holdings' representatives corresponding powers of attorneys to act on behalf of the L1bre Group, (vii) refuse to allow ES Holdings to take part in any management decisions being considered and made by the L1bre Group, and (viii) deny ES Holdings any role in any L1bre Group management decisions since December 2018.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 29, 2019.

_____
Santiago León Aveleyra