# Exhibit Y

## CERTIFIED TRANSLATION

I, Wolf Markowitz, Manager at Targem Translations, Inc., located at 143 Rodney Street in Brooklyn, New York, a language service with a firm track record of providing expert language services to the business and legal community of more than 50 years, do hereby certify that our team of translators, editors and proofreaders are professionally trained and vastly experienced in providing professional translations, from Spanish to English and vice versa; and they have professionally translated the document referenced as **"Lusad Brief of 22 May 2019"** from Spanish to English, faithfully, accurately and completely, to the best of their expertise and experience.

Date: July 11, 2019

_____
Wolf Markowitz

_____
Notary

ROCHAL WEISS
NOTARY PUBLIC-STATE OF NEW YORK
No 01WE6293785
Qualified in Kings County
My Commission Expires 12-16-2021

**TARGEM TRANSLATIONS**
143 Rodney Street, Brooklyn, NY 11211   info@targemtranslations.com   718 384 9040   718 788 7516

VILLASANTE & FREYMAN

[Handwritten:] *540*

[cut-off handwriting]                                    **ORIGINAL**

[handwritten:] *Testimony 72,235*          **SERVICIOS DIGITALES LUSAD,**
       *4 2 Uncertified copy     of the same*     **S. DE R.L. DE C.V.**
                                                 **V.**
   [stamp] Mexico City Superior Court of Justice     **EDUARDO ZAYAS DUEÑAS ET AL**
            Presidency
            RECEIVED                              **JUDGMENT: COMMERCIAL ORDINARY**
            22 May 2019                           **CASE: 191/2019**
COMMON CIVIL CLERK'S OFFICE [illegible]           **CLERK'S OFFICE "A"**
FAMILY AND COURTROOM SECTION No.
[illegible]

**YOUR HONOR THE THIRTIETH CIVIL JUDGE.**

[stamp] [illegible] MAY 23 [illegible]

**TOMÁS ANTONIO FREYMAN VALENZUELA,** an attorney with professional ID 4987813, operating in my capacity as general attorney for claims and collections for Servicios Digitales Lusad, S. de R.L. de C.V., (hereinafter "Lusad"), come before You and respectfully state:

[illegible stamp]

In the legal time and due form, I process the hearing that my client was ordered given, with the unfounded and inadmissible defenses and exceptions filed by the co-defendant Santiago

Scanned with CamScanner

## VILLASANTE & FREYMAN

[page 5]

[Handwritten:] *544*

Having clarified the above, I will now refer to the arguments that co-defendant León Aveleyra made in response to the chapter of claims, as follows:

## C L A I M S.

A) The co-defendant **"categorically"** denies the admissibility of the claim made in paragraph **a)** of the chapter of claims of the initial pleading, considering that in this case the required elements of action are not met.

They argue in the first place that the liability that the claim intends to place on the co-defendant Zayas Dueñas does not exist due to the following:

(i)   **In their opinion, co-defendant Zayas did not commit an illegal act that breaks the law or the bylaws.**

Mr. León is wrong. The conduct of Mr. Zayas Dueñas (defended at all costs) in having signed the document by which the concession identified as

5

**Scanned with CamScanner**

## VILLASANTE & FREYMAN

[Handwritten:] *545*

SEMOVI/DGSTPI/001/2016 was modified, is an illegal act on his part, in that it violates the provision in paragraph (o) and (p) of Clause Twenty Four of the bylaws.

In Clause Twenty Four, paragraphs (o) and (p), of the bylaws, the partners of my client agreed to the following:

"…

TWENTY FOUR.- In order for the Sessions of the Board of Managers to be considered legally installed by virtue of the first or later call, they will require the presence of at least 3 (three) of the owner members or their substitutes, if any were appointed, and agreements must be adopted by a majority of the members of the Board of Managers present in the session, whether owners or substitutes. **The above with the exception of matters listed below which will be considered a "fundamental matter," which will require the presence in the first or later calls, of all members of the Company's Board of Managers, and their unanimous vote:**

**…**

**(o) Changes to the concession, issued to the Company on June 17, 2016, by the Secretariat of Mobility of Mexico City for the replacement, installation and maintenance of taxi meters,**

[stamp] [cut off] THIRTIETH CIVIL

6

**Scanned with CamScanner**

## VILLASANTE & FREYMAN

[Handwritten:] *546*

[stamp] [cut off] THIRTIETH

**with geolocation of individual public transportation of passengers in Mexico City, as well as the development, operation and exploitation of a cell phone application to remotely call taxi trips, as well as to end, suspend, assign, encumber, renounce, rescind or abandon it in any way.**

**(p) The acceptance, granting, modification or renouncement of any concession, temporary permit or administrative authorization that the Company owns (or gains ownership of)…"**

Any person that is appointed member of the Board of Managers, including of course Mr. Zayas León, by accepting his position committed to the company, among many other duties, to respect and comply with the company's bylaws, because any violation of them means he would be committing an act contrary to the law, and thus an illegal act.

In the terms of the Clause transcribed above, from the company bylaws, which was ordered by the supreme body of the Company, that is, the partner's assembly, in order for Lusad to be able to make a change to the concession issued to the Company on June 17, 2016 by the Secretariat of Mobility of Mexico City for the replacement, installation and maintenance of taxi meters with

7

TORCUATO LASSO DOS 37, PH. CO. POLANCO V SECCION
11560 MEXICO CITY
VILLASANTEFREYMAN.COM

**Scanned with CamScanner**

**VILLASANTE & FREYMAN**

[Handwritten:] *547*

geolocation of individual public transportation of passengers in Mexico City, as well as the development, operation and exploitation of a cell phone application to remotely call taxi trips (hereinafter only the "Concession"), a unanimous resolution from the Board of Managers of my client was required previously and necessarily.

[stamp] [cut off]

Notwithstanding the above, in outright violation of the bylaws, that is, without a unanimous resolution from the Board of Managers of Lusad, Mr. Zayas Dueñas on November 7, 2018, signed a pre-closed document on "April 13, 2018," which changed, to Lusad's detriment, its details and many of its clauses, among which those that regulate its economic conditions are especially relevant.

Clearly, this action by Zayas Dueñas, contrary to what his defender León Aveleyra states (proving his conflict of interest with the company), is an act that violates the covenants adopted in the bylaws of Lusad, because though a unanimous resolution adopted by the Board of Managers did not exist, he signed a document that changed the concession.

8

TORCUATO LASSO DOS 37, PH. CO. POLANCO V SECCION
11560 MEXICO CITY
VILLASANTEFREYMAN.COM

**Scanned with CamScanner**

## VILLASANTE & FREYMAN

[Handwritten:] *548*

There is no great doubt in this respect. The conduct displayed by a member of the Board of Managers of a commercial company, which violates that established in the bylaws, is or constitutes an illegal act on their part.

Lastly, it must be stated that what Mr. León Aveleyra manifested clearly indicates that he was not the only one in agreement with Mr. Zayas performing this legal action, without a unanimous resolution of the Board of Managers of my client.

<div style="float:left">[stamp] [cut off] THIRTIETH CIVIL</div>

**(ii)    Co-defendant León argues that there is no damage in the conduct displayed by Zayas Dueñas.**

That is, León states that the fact that Mr. Zayas changed the concession does not result in any damage.

Voluntarily or involuntarily, the co-defendant is wrong, not to say it otherwise, because the change which Mr. Zayas Dueñas consented to in the concession did cause property damage to my client, because it changed, to Lusad's prejudice, the economic conditions and the

9

TORCUATO LASSO DOS 37, PH. CO. POLANCO V SECCION
11560 MEXICO CITY
VILLASANTEFREYMAN.COM

**Scanned with CamScanner**

**VILLASANTE & FREYMAN**

[Handwritten:] *549*

financial balance that said legal entity had with respect to the concession before Mr. Zayas Dueñas changed it.

That is, the conduct displayed by Mr. Zayas Dueñas, as will be shown at the appropriate procedural moment, did cause a reduction in the value of the assets of my client and payment expectations.

Along this line or thinking, it is false that there was no property damage.

**(iii)    Lastly, the co-defendant states that there is no causal link between the illegal act and the damage.**

Clearly there is a causal link, because it is by reason of Mr. Zayas Dueñas, without authorization for it in the terms of the bylaws of Lusad, changed the concession on behalf of and in representation of this legal entity, which caused my client property damage.

**B)** As to the claim made in the claims of paragraph b) in the initial pleading of the lawsuit, co-defendant León Aveleyra denies its admissibility by arguing the following:

10

[stamp] [cut off]

TORCUATO LASSO DOS 37, PH. CO. POLANCO V SECCION
11560 MEXICO CITY
VILLASANTEFREYMAN.COM

**Scanned with CamScanner**

**VILLASANTE & FREYMAN**

[Handwritten:] *550*

(i) **That the organic representation has been executed with total and absolute honor, in strict adherence with the law and the bylaws.**

Unlike that assertion, the defendant has performed acts overlooking resolutions of the board, whose adoption he participated in, as we will see further ahead.

Added to the above, see the conduct displayed throughout this response to the lawsuit. On the one hand he defends an act that damaged the company in arguing that the co-defendant's changing of the concession is not illegal, which is a clear conflict of interest, and furthermore, without any legitimacy, it is clear that he now intends to annul via exception precisely a clause of the bylaws of Lusad, to avoid it being determined that Zayas Dueñas has liability, the above instead of safeguarding the interests of the legal entity of which he was member of the Board of Managers.

(ii) Now, **he states that in hiring the audit company referred to in resolution 1.1 adopted in the Board of Managers**

[stamp] [cut off]

11

TORCUATO LASSO DOS 37, PH. CO. POLANCO V SECCION
11560 MEXICO CITY
VILLASANTEFREYMAN.COM

**Scanned with CamScanner**

VILLASANTE & FREYMAN

[Handwritten:] *551*

**session of December 14, 2018, he acted in accordance with the resolution of this collegiate body, because that power to carry out the contracting was not reserved for any person.**

As the basis for his defense, the co-defendant makes a separate transcription of the resolution specified in the preceding paragraph. But he abstains from indicating the resolution of this administration body in resolution Nine of this same session, which I will transcribe below for greater clarity:

[stamp] [cut off]

> "**NINE. Authorization for the General Director of the Company to negotiate with the providers of the Company and its subsidiaries, their debts and to implement the agreements adopted by this Session.**
>
> 9.1 The General Director of the Company, Lic. Fabio Covarrubias Piffer, is authorized to negotiate and implement the actions in the terms approved in Resolutions One to Seven, inclusive, approved in this Session."

As Your Honor can see well, resolution one of the Board of Managers' session held on December 14, 2018, should be analyzed in light of resolution nine of this same session

12

**Scanned with CamScanner**

### VILLASANTE & FREYMAN

[Handwritten:] *552*

and not alone, as the defendant craftily intends to do.

From a proper analysis of the document in which said resolutions were recorded, Your Honor will clearly see that the Board of Managers resolved that an audit would be conducted (resolution 1.1) and that the negotiation and implementation of the hiring of the external company would be done by the general director of the company, that is, Licenciado Covarrubias Piffer.

As such, the premise on which the defense of co-defendant León Aveleyra rests is false, that no employee of the company had been appointed or set aside to hire the external company.

Along this line of thinking, the now defendant León Aveleyra clearly acted illegally in ignoring the unanimous resolutions of the Board of Managers which he was a part of, which is definitely an illegal act on his behalf.

[stamp] [cut off]

13

Scanned with CamScanner

## VILLASANTE & FREYMAN

[Handwritten:] *553*

**C)** León Aveleyra denies the admissibility of the claim in paragraph c) of the initial pleading, referring for this to the statement in the chapter "Previous Clarification" and other statements he made in response to the preceding claims, for which reason, instead of useless repetitions I request that each and every one of the arguments set out throughout this document be inserted here by reference, from which we see how unfounded and inadmissible the defenses and exceptions filed by the counterpart are.

There is no question and this will be quantified at the appropriate procedural moment, to determine the losses and damages caused to my client by the co-defendants by their illegal actions, especially the unauthorized modification, contrary to the bylaws, of the Concession that brought a reduction in the value of the company's assets. That is, property damage.

**D)** Again, Mr. León Aveleyra comes, in outright violation of the interests of Lusad, to the defense of Mr. Zayras, because it is undisputable that the latter, without instructions

[stamp] [cut off]

14

TORCUATO LASSO DOS 37, PH. CO. POLANCO V SECCION
11560 MEXICO CITY
VILLASANTEFREYMAN.COM

Scanned with CamScanner

**VILLASANTE & FREYMAN**

[Handwritten:] *554*

for this, contrary to the interests of the company, intended to grant a pardon to a person that is the subject of a criminal investigation begun by the company itself, which he intended to discontinue.

But also, it is surprising that as a result of the investigations in the corresponding investigation folder, a certified copy of which was submitted as evidence, the investigating authority has found elements that indicate that Mr. Zayras may have participated in the facts that were reported, which shows that his actions were never in benefit of the company, and that it never authorized or instructed him for this.

Your Honor, Mr. Zayas in this case intended to do something similar by trying to withdraw the action that Lusad filed against him. It is clear that what motivates his actions is not to perform acts in benefit of the company, but rather the contrary.

Article 2,562 of the Federal Civil Code establishes that the proxy, in the performance of their job, will subject themselves to the instructions received from the principal, and under no circumstances will proceed against the latter's express provisions.

15

[stamp] [illegible]

TORCUATO LASSO DOS 37, PH. CO. POLANCO V SECCION
11560 MEXICO CITY
VILLASANTEFREYMAN.COM

Scanned with CamScanner

**VILLASANTE & FREYMAN**

My client never instructed the defendant to act in the way he did, that is, to grant a pardon in the investigation case that was specified in the initial pleading of the lawsuit. Having even attempted to do this is a clearly illegal action on his part.

E) Lastly, the co-defendant is "categorically" opposed to the admissibility of the claim of costs and expenses. Nevertheless, given the bad faith with which the co-defendants act (proof of this is the attempt by Zayas Dueñas to withdraw from the action), among other reasons, the demand which my client made of them is admissible.

Next I will refer to the response the co-defendant gave to the facts in the initial pleading of the lawsuit, as follows:

[stamp] [cut off]

**F A C T S.**

In responding to fact 9 of the lawsuit, Mr. León Zayas makes various assertions, which I state the following in response to:

16

Scanned with CamScanner



VILLASANTE A FREYMAN   ORIGINAL

**SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V.**
**VS**
**EDUARDO ZAYAS DUEÑAS Y OTRO**
**JUICIO: ORDINARIO MERCANTIL**
**EXPEDIENTE: 191/2019**
**SECRETARÍA "A"**

## C. JUEZ TRIGÉSIMO DE LO CIVIL.

**TOMÁS ANTONIO FREYMAN VALENZUELA,** apoderado con cédula profesional 4987813, promoviendo en mi carácter de apoderado general para pleitos y cobranzas de Servicios Digitales Lusad, S. de R.L. de C.V., (en adelante "...."), ante Usted respetuosamente expongo:

En legales tiempo y forma, desahogo la vista que se ordenó dar a mi poderdante con las infundadas e improcedentes defensas y excepciones opuestas por el codemandado Santiago

Scanned with CamScanner

VILLASANTE ∧ FREYMAN

...do referencia a aquellos argumentos que al dar respuesta al ...pítulo de prestaciones y hechos ha esgrimido León Aveleyra y ...ex ya sea, constituyen una confesión de su parte o pudieran ...er considerados como argumentos tendientes a defender su ...osición.

El codemandado introduce un capítulo en su ...ontestación de demanda al que denomina **"Cuestión Previa"**, ...ediante el que básicamente hace un esfuerzo desbordado por ...adir el cumplimiento del requerimiento que le fuera realizado, ...l respecto lo siguiente:

## CUESTIÓN PREVIA.

...SIMO

L

En síntesis, afirma el codemandado que era una ...arga de mi mandante el exhibir los documentos en los que ...unda su acción en términos del artículo 1061 del Código de ...omercio y que al tratarse de documentos que se encuentran en ...na dependencia pública, y al haber sido parte en el ...torgamiento de los mismos, se encontraban a disposición de ...usad para solicitar copia autentificada de los mismos.

En primer término debe hacerse hincapié en que el ...odemandado León Aveleyra no manifiesta en momento alguno,

2

VILLASANTE & FREYMAN

540 é

..s no digamos bajo protesta de decir verdad, que se encuentra imposibilitado para exhibir esos documentos o bien que no los tiene en su posesión, limitándose, se insiste, a evadir su responsabilidad mediante argumentos francamente desafortunados, pues como se verá más adelante, **no combatió el auto mediante el que se le formuló el requerimiento y por ende el mismo ha quedado firme.**

En términos del artículo 89 del Código Federal de Procedimientos Civiles, de aplicación supletoria al Código de Comercio, las partes de un juicio están obligadas a exhibir en el mismo la cosa o documentos que tuviera en su poder y que puedan servir como prueba en el juicio.

...ESIMO   Ese es un deber que la legislación impone, no solo a las partes en beneficio al derecho fundamental de acceso a la justicia, sino incluso al juzgador para allegarse de todos aquellos elementos que pueden crear convicción para resolver la controversia que ante él se presenta.

Es absurdo el argumento de la demandada quien mediante formalismos pretende que se violente la posibilidad de que el juez cuente con todos los elementos de prueba en beneficio del propio procedimiento en que se actúa, pues si no

3

VILLASANTE & FREYMAN

expuso imposibilidad para la exhibición de la documentación que le fue requerida, ni que no estuviera en su posesion, es evidente que no es jurídicamente sostenible que evada esa responsabilidad bajo el argumento de que mi mandante podía solicitar en la dependencia pública copia certificada de las mismas.

Con independencia de todo lo anterior debe hacerse hincapié que el codemandado fue requerido de la documentación que ahora se niega a exhibir mediante auto de 21 de febrero del año en curso, apercibido que de no hacerlo se le tendría por confeso de las afirmaciones de mi representada, auto que, al no haber sido recurrido en la parte relativa al requerimiento que le fuera formulado, el mismo se encuentra firme y ha sido, en consecuencia, consentido por León Aveleyra.

Inclusive su Señoría, dada la conducta omisiva de los codemandados, a la fecha se ha hecho ya en su contra efectivo el apercibimiento decretado en la resolución del 21 de febrero de 2019, por lo que las objeciones que pretende hacer valer son infundadas e improcedentes.

4

Scanned with CamScanner

VILLASANTE & FREYMAN

Aclarado lo anterior, procedo a referirme a los argumentos que al dar respuesta al capitulo de prestaciones vierte el codemandado León Aveleyra como sigue:

## PRESTACIONES.

**A)** El codemandado niega "categóricamente" la procedencia del reclamo que se le formula en el inciso a) del capitulo de prestaciones del escrito inicial de demanda, al considerar que no se reúnen, en la especie, los requisitos de los elementos de la acción.

Sostiene en primer término que no existe la responsabilidad que en el reclamo se le pretende fincar al codemandado Zayas Dueñas por lo siguiente:

**(i)   A su parecer, no existe un hecho ilícito del codemandado Zayas que violente la ley o el pacto social.**

Se equivoca el señor León, la conducta desplegada por el señor Zayas Dueñas (a quien defiende a toda costa) al haber suscrito el documento mediante el que modificó la

5

VILLASANTI N FELICMAN

concesión identificado como SEMOVI/DGSTPI/001/2016, sí constituye un acto ilícito de su parte, al violentar lo dispuesto en el inciso (o) y (p) de la Cláusula Vigésima Cuarta de los estatutos sociales.

En la Cláusula Vigésima Cuarta, incisos (o) y (p) del pacto social, los socios de mi representada acordaron lo siguiente:

"...

VIGÉSIMA CUARTA.- Para que las Sesiones del Consejo de Gerentes se consideren legalmente instaladas en virtud de primera o ulterior convocatoria será necesaria la presencia de, por lo menos, 3 (tres) de los miembros propietarios o sus respectivos suplentes, si se hubieren designado, y los acuerdos deberán ser adoptados por el voto de la mayoría de los miembros del Consejo de Gerentes presentes en la sesión, sean propietarios o suplentes. **Lo anterior con excepción de los asuntos que se enlistan a continuación los cuales serán considerados como un "asunto fundamental" para los cuales se requerirá la presencia en primera o en ulteriores convocatorias, de la totalidad de los miembros del Consejo de Gerentes de la Sociedad y su voto unánime:**

...

**(o) La modificación a la concesión, expedida a favor de la Sociedad con fecha 17 de junio de 2016 por la Secretaría de Movilidad de la ciudad de México para la sustitución, instalación, y mantenimiento de taximetros,**

6

VILLASANTE A FREYMAN

$316\ \mathbb{I}$

con geo-localización de transporte público individual de pasajeros en la ciudad de México, así como el desarrollo, operación, y explotación de una aplicación móvil para la contratación remota de viajes de taxi; así como su terminación, suspensión, cesión, gravamen, renuncia, rescisión o abandono por cualquier medio.

(p) ____ La ____ aceptación, ____ otorgamiento, modificación o renuncia de cualquier concesión, permiso temporal o autorización administrativa del cual sea titular (o llegue a ser titular) la Sociedad..."

Cualquier persona que fuera designado como miembro del Consejo de Gerentes, incluyendo por supuesto al señor Zayas León, al aceptar su encargo se comprometió frente a la sociedad, entre otros muchos deberes, a respetar y cumplir los estatutos de la sociedad, pues cualquier violación a los mismos, significa de su parte un acto contrario a la ley, y por ende un hecho ilícito.

En términos de la Cláusula antes trascrita de los estatutos sociales, que fue determinada por el órgano supremo de la sociedad, esto es, la asamblea de socios, para que pudiera procederse por parte Lusad a la modificación de la concesión expedida a favor de la Sociedad con fecha 17 de junio de 2016 por la Secretaría de Movilidad de la Ciudad de México para la sustitución, instalación, y mantenimiento de taxímetros, con

7

Scanned with CamScanner

VILLASANTE & FREYMAN 

pro-localización de transporte público individual de pasajeros en la ciudad de México, así como el desarrollo, operación, y explotación de una aplicación móvil para la contratación remota de viajes de taxi (en adelante únicamente la "Concesión"), se requería previa y necesariamente, una resolución unánime del Consejo de Gerentes de mi poderdante.

No obstante lo anterior, en franca contravención a los estatutos sociales, esto es, sin que hubiere una resolución unánime por parte del Consejo de Gerentes de Lusad, el señor Zayas Dueñas, el día 7 de noviembre de 2018, suscribió un documento pre fechado al día "13 de abril de 2018", mediante el cual modificó, en detrimento de Lusad, sus antecedentes y varias de sus cláusulas, siendo especialmente relevantes aquellas que regulan las condiciones económicas de la misma.

Claramente ese actuar por parte de Zayas Dueñas, contrariamente a lo que afirma su defensor León Aveleyra (evidenciando su conflicto de intereses con la sociedad), es un acto que contraviene los pactos adoptados en los estatutos sociales de Lusad, pues sin que existirá una resolución unánime adoptada por el Consejo de Gerentes, suscribió un documento mediante el que modificó la concesión.

8

VILLASANTE & FREYMAN

5632

No existe mayor duda al respecto, la conducta desplegada por un miembro del Consejo de Gerentes de una sociedad mercantil, que violenta lo establecido en el pacto social, es o constituye un hecho ilícito de su parte.

Por último debe señalarse que lo manifestado por León Aveleyra es un claro indicativo que no solo él estuvo de acuerdo en que el señor Zayas, sin contar con una resolución unánime del Consejo de Gerentes de mi mandante, llevara a cabo ese acto jurídico.

**(ii)  Sostiene el codemandado León, que no existe daño con la conducta desplegada por Zayas Dueñas.**

ÉSIMO
CIVIL
Es decir, afirma León que el hecho de que hubiere modificado la concesión el señor Zayas no acarrea daño alguno.

Voluntaria o involuntariamente se equivoca el codemandado, por no decirlo de otra forma, pues la modificación que de la concesión consintió el señor Zayas Dueñas sí causó un daño patrimonial a mi mandante, pues modificó en perjuicio de Lusad, las condiciones económicas y el

9

VILLASANTE A FREYMAN

equilibrio financiero que dicha persona moral tenía respecto de la concesión antes de que el señor Zayas Dueñas la alterara.

Es decir, la conducta desplegada por el señor Zayas Dueñas, como quedará demostrado en el momento procesal oportuno, si provocó una disminución en el valor de los activos de mi mandante y expectativas de pago.

En ese orden de ideas, es falso que no exista un daño patrimonial.

**(III) Por último, afirma el codemandado que no existe nexo causal entre el hecho ilícito y el daño.**

Claramente si existe ese nexo casual, pues es en razón de que el señor Zayas Dueñas, sin estar autorizado para ello en términos del pacto social de Lusad, en nombre y representación de esa persona moral modificó la concesión, que provocó a mi mandante un daño patrimonial.

**B)** En cuanto al reclamo que se le realiza en la prestación contenida en el inciso b) del escrito inicial de demanda, el codemandado León Aveleyra niega su procedencia argumentando lo siguiente:

10

Scanned with CamScanner

VILLASANTE ᴀ FREYMAN 

(i) Que la representación orgánica que ostenta la ha ejecutado con total y absoluta honradez, apegado estrictamente a la ley y a los estatutos sociales.

Se difiere de tal aseveración, el enjuiciado ha realizado actos pasando por alto resoluciones del consejo, en cuya adopción él ha participado como se verá más adelante.

Aunado a lo anterior, véase la conducta que despliega a lo largo de ésta contestación de demanda, por un lado defiende un acto que daño a la compañía al sostener que la modificación de la concesión por parte de su codemandado no es ilegal, lo que constituye un claro conflicto de intereses, y además, sin tener legitimación alguna claro está, ahora pretende anular vía excepción precisamente una cláusula de los estatutos sociales de Lusad, para evitar que se determine que existe responsabilidad de Zayas Dueñas, lo anterior en lugar de velar por los intereses de la persona moral de la que fungía como miembro del Consejo de Gerentes.

(ii) Ahora bien, afirma que al realizar la contratación del despacho de auditores a que se refiere la resolución 1.1 adoptada en la sesión del Consejo de

11

Scanned with CamScanner

Gerentes del 14 de diciembre de 2018, él actúa de conformidad a lo resuelto por ese órgano colegiado, pues dicha facultad para realizar la contratación no fue reservada a persona alguna.

Para fundar su defensa, el codemandado hace una trascripción aislada de la resolución precisada en el párrafo que antecede, sin embargo, se abstiene de señalar lo resuelto por ese órgano de administración en la resolución Novena de esa misma sesión, la cual para mayor claridad a continuación trascribo:

"NOVENA. Autorización al Director General de la Sociedad para negociar con proveedores de la Sociedad y sus sociedades subsidiarias, los adeudos de las mismas y para implementar los acuerdos adoptados en esta Sesión.

9.1 Se autoriza al Director General de la Sociedad, Lic. Fabio Covarrubias Piffer para negociar e implementar las acciones en los términos aprobados en las Resoluciones Primera a Séptima, inclusive, aprobadas en esta Sesión."

Como bien se podrá percatar su Señoría, la resolución primera de la sesión del Consejo de Gerentes de lusad celebrada el 14 de diciembre de 2018, debe ser analizada a la luz de la resolución novena de esa misma sesión

12

Scanned with CamScanner

VILLASANTE A FREYMAN

, no aisladamente como mañosamente lo pretende el enjuiciado.

De un análisis correcto del documento en que dichas resoluciones se hicieron constar, su Señoría tendrá claro que, el consejo de Gerentes resolvió que se llevaría a cabo una auditoría (resolución 1.1) y que la negociación e implementación de la contratación del despacho externo la llevaría a cabo el director general de la sociedad, esto es, el licenciado Covarrubias Piffer.

Así las cosas, es falsa la premisa sobre la que hace descansar su defensa el codemandado León Aveleyra, en el sentido de que no se hubiere designado o reservado a algún funcionario de la empresa para realizar la contratación del despacho externo.

En ese orden de ideas, el ahora enjuiciado León Aveleyra claramente actúo ilícitamente al desconocer las resoluciones unánimes del Consejo de Gerentes del que formaba parte, lo que constituye en definitiva un hecho ilícito de su parte.

13

VILLASANTE & FREYMAN



**C)** León Aveleyra niega la procedencia de la prestación que se contiene en el inciso c) de la demanda inicial, remitiéndose para ello a lo manifestado en el capitulo de "Aclaración Previa" y demás manifestaciones que realizó al dar respuesta a las prestaciones que anteceden, razón por la cual, en obvio de inútiles repeticiones solicito se tengan por aqui transcritos como si a la letra se insertaran, todos y cada uno de los argumentos que se han expuesto a lo largo del presente escrito, de las que se desprenden lo infundadas e improcedentes que resultan ser las defensas y excepciones que opone la contraparte.

No existe duda y ello será materia de la cuantificación que en el momento procesal oportuno se realizará, para determinar los daños y perjuicios que se causaron a mi mandante por parte de los codemandados por su ilícito actuar, en especial, la modificación sin autorización en contra de los estatutos sociales de la Concesión que trajo una disminución en el valor de los activos de la sociedad, esto es, un daño patrimonial.

**D)** De nueva cuenta el señor León Aveleyra sale, en franca contravención a los intereses de Lusad, a la defensa del señor Zayas, pues es incontrovertible que éste sin instrucciones

14

Scanned with CamScanner

VILLASANTE & FREYMAN

para ello, en contra de los intereses de la sociedad pretendió otorgar el perdón a una persona que es sujeto a una investigación penal iniciada por la propia sociedad, con lo que pretendió que la misma no continuara.

Pero además lo sorprendente es que derivado de las investigaciones en la carpeta de investigación correspondiente, cuya copia certificada ha sido ofrecida como prueba, la autoridad investigadora ha encontrado elementos que le indican que el señor Zayas pudo haber tenido participación en los hechos que fueron denunciados, lo que pone de manifiesto que su actuar no fue jamás en beneficio de la sociedad y que ésta jamás lo autorizó o instruyó para ello.

Su Señoría, en el presente juicio el señor Zayas pretendió hacer algo parecido al tratar de desistirse de la acción que Lusad interpuso en su contra, está claro que lo que lo conlleva a actuar no es realizar actos en beneficio de la sociedad, sino por el contrario.

El artículo 2,562 del Código Civil Federal, establece que el mandatario, en el desempeño de su encargo, se sujetará a las instrucciones recibidas del mandante y en ningún caso podrá proceder contra disposiciones expresas del mismo.

VILLASANTE & FREYMAN 

Mi mandante jamás instruyó al demandado para que actuara en la forma que lo hizo, esto es, otorgar un perdón dentro de la carpeta de investigación que ha quedado precisada en el escrito inicial de demanda, al haberlo siquiera intentado hacer es un hecho claramente ilícito de su parte.

E) Por último, se opone "categóricamente" el codemandado a la procedencia del reclamo de gastos y costas, sin embargo dado la mala fe con la que se conducen los codemandados (prueba de ella el pretendido desistimiento de la acción por parte de Zayas Dueñas), entre otras razones, es procedente la exigencia que mi mandante les realizó.

A continuación me refiero a la respuesta que el codemandado dio a los hechos del escrito inicial de demanda como sigue:

## HECHOS.

Al dar respuesta al hecho 9 de la demanda, el señor León Zayas realiza diversas afirmaciones, respecto de las cuales me manifiesto como sigue:



## VILLASANTE & FREYMAN

En el tercer párrafo hace la siguiente afirmación:

"... precisamente en la escritura pública número ochenta y cinco mil doscientos catorce (85,214), de fecha veintidós de diciembre de dos mil diecisiete, pasada ante la fe del Licenciado Roberto Garzón Jiménez, Notario Público número doscientos cuarenta y dos (242), de la Ciudad de México, algunos particulares – las diversas sociedades tenedoras de las partes sociales de la actora, que son Libre Holding, LLC y Libre, LLC..."

Desde este momento mi mandante hace suya la confesión del codemandado cuando afirma que los tenedores de las partes sociales de Lusad, lo son Libre Holding, LLC y Libre, LLC Libre, por lo tanto, lo que implica necesariamente que los socios de mi mandante lo son única y exclusivamente esas personas morales y ni él ni el señor Zayas Dueñas son socios de mi mandante como absurdamente lo han tratado de proponer.

Asimismo, al continuar con la respuesta al hecho noveno de la demanda, el codemandado admite que la Cláusula Vigésima Cuarta de los estatutos sociales de Lusad fue reformada para quedar en los términos en que realiza la trascripción.

17



Scanned with CamScanner

VILLASANTE A FREYMAN

557

En ese orden de ideas, Lusad hace suyas las confesiones que el codemandado realiza y que consisten en las siguientes:

(i) Que la Cláusula Vigésima Cuarta de los estatutos sociales de Lusad fue reformada, y

(ii) Que en dicha cláusula se estableció que dentro de los asuntos que se establecieron como fundamentales para los que se requería una resolución unánime de la totalidad de los miembros del consejo de gerentes de mi mandante, se encontraban los contenidos en los incisos (o) y (p) de dicha cláusula y que son los siguientes:

ÉSIMO
VIL

"...

(o) La modificación a la concesión, expedida a favor de la sociedad con fecha 17 de junio de 2016 por la Secretaría de Movilidad de la Ciudad de México para la sustitución, instalación y mantenimiento de taxímetros, con geo-localización de trasporte público individual de pasajeros en la Ciudad de México, así como el desarrollo, operación y explotación de una aplicación móvil para la contratación remota de viajes de taxi; así como su terminación, suspensión, cesión, gravamen, renuncia, recisión o abandono por cualquier medio.

18

Scanned with CamScanner

VILLASANTE & FREYMAN

(p) La aceptación, otorgamiento, modificación o renuncia de cualquier concesión, permiso temporal o autorización administrativa de la cual sea titular [o llegue a ser titular] la sociedad..."

Como se advierte de lo anterior, el codemandado confiesa la existencia de ese acuerdo entre los socios, que todo miembro del Consejo de Gerentes de Lusad debía observar.

Ahora bien, evidenciando de nueva cuenta su conflicto de intereses con la sociedad y en defensa, claro está, de su codemandado, pretende absurdamente la nulidad de los incisos antes trascritos, lo que es a todas luces improcedente por un lado por su falta de legitimación para ello, y por otro, porque la misma contrariamente a lo que sostiene no viola disposición legal alguna tal y como se verá a continuación:

**VIGÉSIMA a)** Como lo ha reconocido el señor León Aveleyra, él no es titular de parte social alguna de Lusad, es decir, no es socio de la misma.

Al no ser socio de Lusad es claro que carece de legitimación activa para pretender, como absurdamente lo hace, la nulidad de un pacto contenido en los estatutos sociales, ya sea vía acción o excepción.

19

Scanned with CamScanner

VILLASANTE A FREYMAN

Es de consabido derecho que si bien la nulidad absoluta de un acto jurídico puede hacerse valer por cualquier interesado, ello no significa que cualquier persona se encuentre legitimada para ello, la expresión de "cualquier interesado" establecida por el legislador se entiende y debe ser entendida bajo la figura del interés jurídico.

En ese sentido, solo tendrá interés jurídico para prevalecerse de la a nulidad absoluta de un acto jurídico, aquel a quien dicho acto afecta o pueda perjudicar en su esfera patrimonial, y no cualquier persona que crea que un acto se encuentra viciado. Sirve de apoyo a lo anterior:

"NULIDAD ABSOLUTA. PERSONAS QUE ESTÁN LEGITIMADAS PARA PREVALERSE DE ELLA (INTERPRETACIÓN DEL ARTÍCULO 2226 DEL CÓDIGO CIVIL PARA EL DISTRITO FEDERAL). El artículo 2226 del Código Civil para el Distrito Federal preceptúa que de la declaración de nulidad absoluta puede prevalerse todo interesado. De una interpretación apagógica y pragmática de la norma precisada se advierte que por todo interesado debe entenderse aquella persona que haya sido afectada en su esfera de derechos y obligaciones por cierto acto jurídico, y que tenga interés en invocar en beneficio de sus pretensiones la nulidad del

20

VILLASANTE & FREYMAN

mismo, previamente decretada, ya que si se considerara que la expresión en análisis sólo involucra a quienes fueron parte en el juicio en el que se pronunció la nulidad absoluta del acto de que se trate, se incurriría en el absurdo de mantener la vigencia de un acto nulo de manera absoluta para unas personas, y de destruir ese acto para otras, aun cuando todas hubieran sido afectadas en sus intereses jurídicos por tal acto, lo que es un contrasentido jurídico. Por otra parte, al atender al propósito que tuvo el legislador al instituir el precepto legal de referencia se advierte que la nulidad absoluta, a diferencia de la relativa, encuentra su justificación en la protección al interés general, en efecto, la distinción entre ambas no radica en que existan nulidades de mayor o menor grado, sino en el interés que protegen, por lo que habrá actos cuyos vicios afecten al interés general y otros que sólo afecten intereses particulares, por esta circunstancia se sanciona con mayor rigor a los primeras, dado que no son convalidables, y la nulidad que los afecta no es prescriptible, lo que constituye la nulidad absoluta. En este orden de ideas, si el legislador previó que de la nulidad absoluta puede prevalerse todo interesado y no lo hizo así en relación con la nulidad relativa, resulta evidente que ello obedeció a que <u>la protección del interés general justifica que cualquier persona que tenga interés jurídico pueda valerse o servirse de dicha nulidad, es decir, está legitimada para prevalerse de la misma, haya sido o no parte en el juicio en el que ésta se declaró, dado que así se impide de manera eficaz que un acto que atente contra normas de orden público y contra el interés general, surta sus efectos para unas personas y para otras no, por el solo hecho de que las primeras no hayan demandado tal nulidad."</u>

21



VILLASANTE A FREYMAN

セal

**SÉPTIMO TRIBUNAL COLEGIADO EN MATERIA CIVIL DEL PRIMER CIRCUITO.**

Amparo directo 779/2003. Banco Unión, S.A., Institución de Banca Múltiple en liquidación, hoy en quiebra. 22 de enero de 2004. Unanimidad de votos. Ponente: Anastacio Martínez García. Secretario: Carlos Arturo Rivero Verano.

Es claro que los incisos (o) y (p) de la cláusula Vigésima Cuarta de los estatutos sociales de Lusad, no afectan de forma alguna al señor León Aveleyra, es decir, no repercuten en su patrimonio, siendo de esta forma claro que carece de interés jurídico para prevalecerse (vía acción o excepción) de la supuesta nulidad que ahora invoca.

Es realmente sorprendente y revelador que sea ahora que se le pretende imputar una responsabilidad, que el enjuiciado para evadir aquella en que incurrió, sin legitimación alguna, pretenda la nulidad de cláusulas previstas en los estatutos sociales de Lusad, por los cuales debió haber velado cuando era miembro del Consejo de Gerentes.

b) Con independencia de la falta de interés jurídico del codemandado para prevalecerse de la nulidad, es falso

22

Scanned with CamScanner

VILLASANTE & FREYMAN 

que los incisos (o) y (p) de la Cláusula Vigésima Cuarta de los estatutos sociales de Lusad sean nulos como a continuación se expone.

Para construir su argumento, el enjuiciado parte de premisas erróneas mediante las cuales pretende engañar a su Señoría. Afirma que el acto jurídico administrativo denominado concesión, es un acto de imperio del Estado, y como tal, los términos y condiciones de un acto de tal naturaleza son impuestos por el propio Estado, sin que pueda intervenir en ellas la voluntad del particular a quien se le otorga la concesión.

En virtud de lo anterior, afirma el enjuiciado, en la modificación a una concesión, no participa la voluntad del concesionario, al ser un acto de imperium el Estado, a través de la dependencia correspondiente, impone todas y cada una de las condiciones de la concesión y el particular no tiene más que acatarlas so pena de perder la concesión.

Se equivoca el enjuiciado, las concesiones han sido, incluso por nuestros Máximos Tribunales, considerados como actos administrativos mixtos, que como tales

23

VILLASANTE  FREYMAN 

contienen verdaderos acuerdos que provienen de ambas partes, tanto del concesionario como del estado, y otras que constituyen condiciones regulatorias en cuya imposición o modificación no participa la voluntad del concesionario, pero que sin embargo, no pueden ser impuestas o cambiarse arbitrariamente sino que deben justificarse bajo determinados supuestos.

Dentro de aquellas cuestiones relativas a una concesión en la que si participa la voluntad del concesionario y que no pueden ser modificadas al arbitrio del Estado, se encuentran las relativas precisamente a las cantidades que por la prestación del servicio público concesionado percibirá el concesionario, pues ello tiene que ver con un principio fundamental de ese acto jurídico, esto es, el equilibrio económico, en términos del cual, ese equilibrio es el que faculta al concesionario para determinar si se obliga o no en los términos de la concesión, pues al final del día su interés es el de obtener una ganancia y no para que le cueste a él la prestación del servicio concesionado.

Sería absurdo sostener como lo hace la contraparte, que el estado, arbitrariamente puede decidir bajar la

24



[ilegible texto manuscrito/deteriorado]
... representación, ...
concesionario, y que ... ...
establecimiento ... que los debe de aceptar los
individuos, pero aun así ... hace posible en ... se ...
inserta en su propia ... por tratarse de consentida o
en común de su voluntad.

Por lo que hace a las cuestiones regulatorias mediante
las que se establecen los términos y condiciones de la
organización y funcionamiento del servicio público
concesionado, y aun las que el Estado puede modificar
sin el consentimiento del concesionario, en base por
supuesto en el interés general.

Es decir, aún los aspectos regulatorios de una concesión
no pueden ser modificados o impuestos arbitrariamente,
requieren de una justificación basada en el interés
general y no en el capricho de una autoridad.

En concordancia con lo anterior, en el Capítulo Cuarto
inciso 4.3 del título de concesión, por lo que se refiere a
los aspectos regulatorios del servicio concesionado, se
estableció lo siguiente:

25

[texto ilegible manuscrito/deteriorado]

VILLASANTE & FREYMAN 

*...

4.3 Según lo **requiera el interés público y las necesidades del servicios que se detecten**¹, la Secretaría está facultada para autorizar, modificar o reorientar durante la vigencia de la Concesión, los horarios, la frecuencia, programas de mantenimiento y demás condiciones operativas y ambientales que deban cubrir los Equipos que se encuentren en operación y se señalan en los antecedentes y documentación anexa del presente instrumento, siempre y cuando dichas modificaciones hayan sido previa y debidamente notificadas al Concesionario procurando que no se ponga en riesgo la sustentabilidad financiera de su operación y por ende la prestación del servicio...*"

Como se aprecia de lo anterior, incluso la modificación a las condiciones regulatorias de una concesión, no pueden ser impuestas arbitrariamente, requiriéndose para ello, en términos de lo antes transcrito, lo siguiente:

(i)    Que la modificación sea necesaria por así requerirlo el interés público;

(ii)    Que en base al servicio se detecten las necesidades de éste y se modifiquen, es decir, como se pude observar ello presupone que el servicio ya se estuviere en marcha y durante el trascurso de la prestación se ponga de manifiesto la necesidad de

---

¹ El énfasis es nuestro

VILLASANTE & FREYMAN

una modificación (lo cual no aconteció en la especie).

(iii) Notificar previamente al concesionario los cambios, lo que le daría oportunidad de decir si los acepta o no, y en éste último, aún y cuando se traduzca en la perdida de la concesión, no continuar obligado a prestar el servicio que con motivo de las modificaciones ya no le es viable desde el punto de vista financiero.

Considerar que no obstante que la prestación del servicio le es adverso o no atractivo al concesionario desde el punto de vista económico, pero que aun así debe asumir los cambios que le son ordenados al tratarse de un acto de *imperium* del Estado, resulta una aberración, pues es absurdo que se le obligue a continuar con la prestación del servicio concesionado si ya no es su deseo al no serle ya atractivo desde el punto de vista financiero.

(iv) Dentro de las cuestiones que constituyen los aspectos regulatorios de la concesión que pueden ser modificados por el Estado, una vez cumpliendo

27

VILLASANTE A FREYMAN 

con los requisitos anteriores, los horarios, programas de mantenimiento y demás condiciones operativas y ambientales, NO ASÍ LA CONTRAPRESTACIÓN QUE EL CONCESIONARIO PERCIBIRA; PUES PARA SU MODIFICACIÓN SI SE REQUIERE DE LA VOLUNTAD DEL CONCESIONARIO.

Todo lo anterior se robustece con los criterios que nuestros Máximos Tribunales han pronunciado y que a continuación trascribo:

"CONCESIÓN ADMINISTRATIVA, NOCIÓN Y ELEMENTOS REGLAMENTARIOS Y CONTRACTUALES QUE LA INTEGRAN. La concesión administrativa, entendida como el acto administrativo mediante el cual el Estado concede a un particular la gestión de un servicio público o la explotación de un bien del dominio público, crea un derecho en favor del concesionario que antes no tenía; sin embargo, el acuerdo de voluntades plasmado no debe concebirse como un simple acto contractual donde primen intereses particulares de los contratantes, pues se trata de un acto administrativo mixto, en el que coexisten elementos reglamentarios y contractuales. Dentro del primer grupo se encuentran las normas a que han de sujetarse la organización y funcionamiento del servicio o la explotación o aprovechamiento de los bienes, las que el Estado puede modificar sin el consentimiento del concesionario, considerando como

28

VILLASANTE & FREYMAN  

principios rectores del interés general, los siguientes: a) continuidad, b) mutabilidad, c) igualdad, d) calidad y e) asequibilidad. Por su parte, el elemento contractual protege los intereses legítimos del concesionario, y crea a su favor una situación jurídica individual que no puede ser modificada unilateralmente por el Estado: atiende básicamente a las ventajas económicas que representen para el concesionario la garantía de sus inversiones y la posibilidad de mantener el equilibrio financiero. Así, toda concesión administrativa se encuentra sujeta a las modificaciones del orden jurídico que regulan las condiciones conforme a las cuales, el servicio público debe prestarse o el bien público ser explotado, al mismo tiempo que garantiza los intereses legítimos de los concesionarios."

PRIMER TRIBUNAL COLEGIADO DE CIRCUITO EN MATERIA ADMINISTRATIVA ESPECIALIZADO EN COMPETENCIA ECONÓMICA, RADIODIFUSIÓN Y TELECOMUNICACIONES, CON RESIDENCIA EN EL DISTRITO FEDERAL Y JURISDICCIÓN EN TODA LA REPÚBLICA.

Amparo en revisión 95/2014. Radiomóvil Dipsa, S.A. de C.V. 17 de septiembre de 2015. Unanimidad de votos. Ponente: Jean Claude Tron Petit. Secretario: Marco Antonio Pérez Meza.

Esta tesis se publicó el viernes 15 de enero de 2016 a las 10:15 horas en el Semanario Judicial de la Federación.

Época: Décima Época, Registro: 2010834, Instancia: Tribunales Colegiados de Circuito, Tipo de Tesis: Aislada, Fuente: Gaceta del Semanario Judicial de la Federación, Libro 26, Enero de 2016, Tomo IV, Materia(s):

29



Scanned with CamScanner

VILCASANTE & FREYMAN

Administrativa, Tesis: I.1o.A.E.109 A (10a).
Página: 3178.

"CONCESIÓN ADMINISTRATIVA. NOCIÓN Y ELEMENTOS QUE LA INTEGRAN. La concesión administrativa es el acto por medio del cual el Estado otorga a un particular la prestación de un servicio público, la explotación de bienes del dominio público, o bien, la realización de ambas actividades, y aun cuando mediante esa figura jurídica se constituye un derecho en favor de aquél, que no tenía, a diferencia de la autorización que permite el ejercicio de uno preexistente, no debe concebirse como un simple acto contractual, sino que se trata de uno administrativo mixto, en el cual coexisten elementos reglamentarios y contractuales. Así, los primeros consignan las normas a que ha de sujetarse la organización y el funcionamiento del servicio, y que el Estado puede modificarlas en cualquier instante, de acuerdo con las necesidades del servicio, sin que sea necesario el consentimiento del concesionario (horarios, modalidades de la prestación del servicio, derechos de los usuarios, etcétera). Mientras que <u>los segundos tienen como propósito proteger el interés legítimo del concesionario, al crear a su favor una situación jurídica individual que no puede ser modificada unilateralmente por el Estado y que se constituye por las cláusulas que conceden ventajas económicas que representan la garantía de sus inversiones y, con ello, la posibilidad de mantener el equilibrio financiero de la empresa.</u> Así, toda concesión, como acto jurídico administrativo mixto, se encuentra sujeta a las modificaciones del orden jurídico que regulan el servicio público que debe prestarse o el bien público por explotar, al mismo tiempo que garantiza los intereses de los concesionarios.

30

VILLASANTE ∧ FREYMAN

CUARTO TRIBUNAL COLEGIADO EN MATERIA
ADMINISTRATIVA DEL PRIMER CIRCUITO.

Incidente de suspensión (revisión) 1/2013. MVS
Multivisión, S.A. de C.V. y otra. 29 de agosto de
2013. Unanimidad de votos. Ponente: Patricio
González-Loyola Pérez. Secretario: Carlos Luis
Guillén Núñez.

Esta tesis se publicó el viernes 13 de diciembre
de 2013 a las 13:20 horas en el Semanario
Judicial de la Federación.

Época: Décima Época, Registro: 2005171,
Instancia: Tribunales Colegiados de Circuito,
Tipo de Tesis: Aislada
Fuente: Gaceta del Semanario Judicial de la
Federación Libro 1, Diciembre de 2013, Tomo
II, Materia(s): Administrativa, Tesis: I.4o.A.73 A
(10a.), Página: 1109.

Es claro así que la defensa del enjuiciante se funda
en una premisa falsa, ya que incluso tratándose de
modificaciones a los aspectos regulatorios de una concesión, no
pueden ser impuestas arbitrariamente por el Estado al
Concesionario y obligarlo a continuar prestando el servicio,
pues además de que deben justificarse en base al interés
general, el particular prestador del servicio público no
necesariamente debe asumirlas estando siempre en posibilidad,
de considerar que le son sumamente adversas, de no aceptarlas
aún y cuando pierda la concesión, pero será su decisión. **Por lo**

31

VILLASANTE A FREYMAN

591 

que hace a las condiciones contractuales, éstas únicamente pueden ser modificadas por la voluntad de ambas partes.

De todo lo anterior se despende que la cláusula Vigésima Cuarta, incisos (o) y (p) de los estatutos sociales de Lusad no es nula, y se encuentra apegada a derecho, pues:

- No violenta disposición de orden público alguna, en dichos incisos jamás se desconoce o se impide que ni siquiera las cuestiones regulatorias de las concesiones puedan ser modificadas, en ellos se establece, y así debe entenderse, que para que la sociedad externe su voluntad para modificar (aspectos contractuales o regulatorios) la concesión se requiere una resolución unánime del Consejo de Gerentes, ya que bien podría suceder que, tratándose cambios a los aspectos regulatorios, no estuviera de acuerdo con la modificación y pudiera ya sea combatirla argumentando la falta de interés general o notificación previa (extremos que no se cumplieron en el caso concreto), de lo que se vio impedida debido al actuar de los codemandados o bien, decidir, a través de ese órgano, no obligarse en términos de las modificaciones aún bajo pena de perder la concesión.

32



VILLASANTE & FREYMAN

- Se insiste que lo aseverado por el demandado es falso, las cuestiones contractuales de una concesión no pueden ser modificadas unilateralmente por el Estado, esto es, no puede imponer su voluntad, debe concurrir la del concesionario en tratándose de cuestiones económicas con base a las cuales había decidido obligarse en un inicio el particular en ciertos términos de la concesión.

Es evidente que el actuar de la contraparte fue ilegal y contrario a los estatutos sociales de Lusad, mediante la modificación de la que se duele mi mandante, sin que para ello existirá voto unánime del Consejo de Gerentes, pues se modificó la contraprestación a la que tendría derecho, esto es, una cuestión contractual para la que sí se requería la voluntad de mi mandante.

Pero aun suponiendo sin conceder que se tratara de una modificación a los aspectos regulatorios o que no existiera la diferencia con los contractuales, aun así es, el señor Zayas Dueñas requería, para suscribir el documento correspondiente a la modificación, de una resolución unánime del Consejo de Gerentes de Lusad que así lo autorizara o instruyera.

33

VILLASANTE & FREYMAN

En efecto, aún bajo ese negado supuesto, el señor Zayas no estaba autorizado y mucho menos obligado, como lo hace parecer el enjuiciante, a suscribir tal modificación, menos cuando no se cumplieron los extremos necesarios (interés general o la necesidad del servicio) y mucho menos cuando no se cumplió el procedimiento de modificación previsto en el capítulo Décimo Quinto la concesión (como se verá más adelante).

Sea como fuere, al haber suscrito el documento que modificó la concesión el señor Zayas, sin estar autorizado para ello en términos de los estatutos sociales, convalido las violaciones que pudieron hacerse valer por no haberse cumplido el procedimiento previsto en la propia concesión para ello y aceptó, a pesar de los daños que ello causaba a mi mandante, una contraprestación mucho menor a la que tenia derecho en términos de la concesión original y su primera modificación.

Asimismo, al haber firmado de forma ante fechada (lo que nada lo justifica) dicha modificación, privó a mi mandante de poder ejercer los medios de defensa correspondientes, ya que el término para interponerlos ya había fenecido, consintiendo

**34**

TORCUATO LASSO 57, TEL. 300, FRACC COL ...
11560 QUE ME ... QUE ME ...
VILLASANTE ...

Scanned with CamScanner

VILLASANTE & FREYMAN

por ende las posibles violaciones que en su actuar incurrió la dependencia concesiónate.

En síntesis es falso y contrario a derecho lo aseverado por el enjuiciado cuando afirma que la modificación a la concesión es un acto unilateral reservada al Estado, pues como hemos visto tratándose de aspectos regulatorios, los cambios pueden ser o no aceptados, además de que deben estar justificados y seguirse el procedimiento establecido, mientras que los contractuales se requiere de la voluntad del concesionario.

Así de simple su Señoría, en los estatutos sociales se estableció que cualquier modificación a la concesión, evidentemente para ser suscrita por Lusad, debía ser previamente acordada mediante voto unánime del Consejo de Gerentes de mi mandante, lo que no fue respetado por el señor Zayas Dueñas, actuar de su parte que violentó el contrato social, lo que se traduce en un hecho ilícito de su parte.

El enjuiciante niega el hecho **10** del escrito inicial de demanda, manifestado que no se reúnen en la especie los elementos de una acción de responsabilidad. Al respecto, en obvio de inútiles repeticiones, solicito se tengan por aquí

35

Scanned with CamScanner

VILLASANTE ᴧ FREYMAN 

trascritos, como si a la letra se insertaran, todos y cada uno de los argumentos vertidos con anterioridad en este ocurso, de los que se desprenden que, contrariamente a lo afirmado por el codemandado, existen y serán acreditados en la especie: (i) Un hecho ilícito a cargo de los codemandados, (ii) Un daño a mi mandante y (iii) un nexo causal entre el hecho ilícito y el daño.

El codemandado al dar respuesta a los hechos **12** al **27** del escrito inicial de demanda, se limita a negarlos y reproducir e insistir en las defensas que previamente ya ha expuesto, esto es:

(i)     El supuesto incumplimiento de mi mandante de exhibir los documentos que se encontraban a su disposición, al respecto únicamente habrá que recordar que sobre de esos instrumentos, ya se tiene a los codemandados confesos de los mismos al habérseles hecho efectivo el apercibimiento mediante decretado mediante resolución firme.

(ii)    Por lo que hace a que la modificación de la concesión es un acto unilateral reservado al Estado, como ya se ha expuesto ello no es correcto, pues por un lado, **tratándose de aspectos contractuales de la concesión,**



VILLASANTE & FREYMAN

como lo son las cuestiones económicas, se requiere de la voluntad del concesionario, y por el otro, esto es, los aspectos regulatorios, el concesionario está en posibilidad de rechazarlos con independencia de la consecuencia que ello traiga aparejada, deben estar justificados en el interés general o bien, en la necesidad del servicio y cumplirse el procedimiento establecido en el Capitulo 15 del título de concesión, extremos los anteriores que no se cumplieron y que subsanó el codemandado al suscribir sin autorización la modificación.

En cuanto a los motivos que expone el demandado para negar el hecho marcado con el numeral 28 del escrito inicial de demanda, manifiesto lo siguiente:

Es falso, como ya se ha externado con anterioridad, que para la contratación de un auditor externo a que se refiere la resolución 1.1 de la sesión del Consejo de Gerentes de Lusad celebrada el 14 de diciembre de 2018, no se haya designado o reservado a una persona determinada, basta una simple lectura a la resolución novena de esa misma sesión del Consejo de Gerentes para percatarse de lo contrario.

37



VILLASANTE & FREYMAN

Los únicos socios de Lusad, al ser los titulares de la totalidad de las partes sociales en que se divide su capital social, lo son L1bre Holding, LLC, y L1bre, LLC, únicos facultados para ejercer los derechos que con tal carácter la legislación aplicable les confiere.

Es claro así que el señor León desconoció y actúo en contravención a resoluciones del Consejo de Gerentes de mi representada, violando de esta forma a su vez los estatutos de la sociedad en términos de los cuales tales resoluciones al haber sido adoptadas en la forma prescrita en el contrato social, eran válidas y por supuesto vinculantes.

Por lo que se refiere a la respuesta que vierte a los hechos 29 a 40 del escrito inicial de demanda, el codemandado León Aveleyra insiste en los argumentos que expuso al dar respuesta a los hechos que anteceden, es decir, no aporta nada nuevo, razón por la cual, en obvio de inútiles repeticiones, solicito se tengan por aquí trascritos, como si a la letra se insertaren, todos y cada uno de los argumentos vertidos con anterioridad en el presente ocurso.

Hechas las manifestaciones anteriores, procedo a pronunciarme a las excepciones y defensas que de forma

38

VILLASANTE & FREYMAN

578

específica hace valer el codemandado en el capítulo correspondiente de su contestación de demanda.

## EXCEPCIONES Y DEFENSAS.

**PRIMERA.- EXCEPCIÓN DE PRECLUSIÓN DERIVADA DE LO ORDENADO POR EL ARTÍCULO 1078 DEL CÓDIGO DE COMERCIO, EN RELACIÓN CON LO ORDENADO POR LAS FRACCIONES III Y IV DEL ARTÍCULO 1061 DEL CITADO CÓDIGO DE COMERCIO.**

Que hace consistir en las mismas argumentaciones que expuso en el capítulo previo de su contestación de demanda, la cual es por supuesto infundada e improcedente en atención a lo siguiente:

En síntesis, afirma el codemandado que era una carga de mi mandante el exhibir los documentos en los que funda su acción en términos del artículo 1061 del Código de Comercio y que al tratarse de documentos que se encuentra en una dependencia pública, y al haber sido parte en el otorgamiento de los mismos, se encontraban a disposición lusad para solicitar copia autentificada de los mismos.

39



# VILLASANTE & FREYMAN

Que al no haber cumplido con lo anterior, esto es, exhibir esos documentos la acción es improcedente.

De verdad que es ridícula la excepción opuesta, por dos simples motivos:

(i) La falta de exhibición de documentos en todo caso puede dar lugar a una prevención por parte del juzgador, de la cual no fue objeto la demanda instaurada en el presente juicio y el codemandado consintió dicha situación al no haber recurrido tal situación.

Ahora bien, pretender como lo hace la contraparte que una demanda sea improcedente por no exhibir documentos, es tanto como afirmar y negar la posibilidad de reconocer que existen otros elementos de prueba.

(ii) En el caso concreto mi mandante solicitó se requiriera a la contraparte la exhibición de los mismos al estar en su poder, pues él fue representante de Lusad y en tal carácter los mantenía.

40

Scanned with CamScanner

VILLASANTE & FREYMAN

El codemandado no negó tenerlos en su poder sino mediante formalismos exagerados pretende evadir un deber que la ley le impone de exhibir todos los elementos de prueba que le sean requeridos y asi pretender que la acción de mi mandante sea improcedente, lo cual es lamentable.

Lo cierto es que, el demando no combatió el requerimiento que le fue formulado, no manifestó imposibilidad para exhibir los documentos que le fueron requeridos y aun asi se abstuvo de aportarlos al presente juicio, en consecuencia de su negativa, se le hizo efectivo el apercibimiento decretado en autos, firme por cierto, esto es, se le tuvo a los codemandados confesos de las afirmaciones que mi mandante realizó con base a los documentos que el codemandado se niega a exhibir y por buenas las copias simples que de los mismos fueron exhibidos.

Luego entonces al tenerse como originales las copias simples exhibidas como consecuencia de la negativa de cumplir con un deber juridico que le incumbia a los codemandados, es claro que la excepción que se responde es infundada e improcedente, pues la consecuencia de la omisión implica el cumplimiento del requisito de cuyo incumplimiento se duele la contraparte.

41

VILLASANTE & FREYMAN

581

## SEGUNDA.- FALTA DE LEGITIMACIÓN ACTIVA EN LA CAUSA.

La presente excepción, lejos de beneficiar al codemandado, pone evidencia su total desconocimiento de la ley de la materia. Analicemos pues, los infundados argumentos en que hace descansar la presente excepción:

Sostiene que la acción no fue ejercida por parte legítima y con derecho para reclamar pretensión alguna, ya que bajo su muy particular punto de vista, para emitir una resolución orgánica, tuvo que celebrarse una asamblea que emitió unas "resoluciones unánimes" con fecha 14 de febrero de 2019, en la que un supuesto apoderado de L1bre Holding, LLC y L1bre LLC; determinó dicha resolución unánime, lo cual resulta corporativamente imposible por ser los codemandados socios al 50% (cincuenta por ciento), tanto de L1bre Holding, LLC; como de L1bre, LLC, al respecto:

Los únicos que tienen el carácter de socios de Lusad son L1bre Holding, LLC y L1bre, LLC, esas personas morales son las únicas titulares de la totalidad de las partes sociales en que se divide el capital social de mi mandante. Bajo la

42

TORCUATO TASSO 325 3ER. PISO COL. POLANCO V SECCIÓN
11560 CIUDAD DE MÉXICO
VILLASANTEFREYMAN.COM

Scanned with CamScanner

VILLASANTE & FREYMAN 

legislación aplicable, esto es, la Ley General de Sociedades Mercantiles, los únicos que pueden participar en las asambleas de una sociedad de responsabilidad limitada, o adoptar resoluciones unánimes fuera de asamblea (como fue el caso) son los socios de la sociedad mercantil de que se trate, en este caso, las dos sociedades extranjeras antes precisadas.

El señor León sostiene infundada y absurdamente que es imposible la adopción de las resoluciones, porque ni él ni el señor Zayas participaron en la adopción de éstas no obstante que ellos afirmas que son socios de L1bre Holding, LLC y L1bre, LLC., NO DE LUSAD.

Con independencia de que ni siquiera acreditan que sean socios de L1bre Holding, LLC y L1bre, LLC (éstas si socias de Lusad), lo que no podrán hacer al no ser cierta tal afirmación, aún bajo ese negado supuesto, el hecho de ser socios de aquellas no les arrogan o conceden a los codemandados el carácter de socios de Lusad, ni mucho menos les confiere derechos que son únicos y exclusivos de los socios de una sociedad mercantil como lo es mi representada.

Por lo tanto, es falso que para la validez de las resoluciones adoptadas en asamblea de socios o fuera de ella,

43

COU HATE TASSOCIRES 57 INC SUL PLA AIGLEY Sa Co en
11560 CIUDAD MEXICO
VILLASANTE@GMAIL.COM

Scanned with CamScanner

VILLASANTE & FREYMAN

se requiriera la presencia, anuencia o consentimiento de los enjuiciados.

Así las cosas, el hecho de que los codemandados no hayan participado en las resoluciones unánimes adoptadas el 14 de febrero de 2019, no les restan validez y/o eficacia alguna.

Asimismo, argumenta el codemandado que la falta de legitimación deviene en el hecho de que la sesión no fue protocolizada, ni agregada a actas, tampoco que hubiere sido notificada al Consejo de Administración. Vayamos por partes:

En primer término debe señalarse que la legislación no exige como requisito de validez de una asamblea de socios o de resoluciones unánimes de los socios de una sociedad mercantil, que sea necesario notificar al órgano de administración las mismas, por lo que es claro que ese argumento carece de sustento legal alguno.

Tampoco en la legislación se establece como requisito de existencia o validez la protocolización del acta de asamblea o de resoluciones unánimes, ni mucho menos que sean inscritas en el libro de actas.

44

Scanned with CamScanner

VILLASANTE & FREYMAN

"PODERES DE LAS SOCIEDADES MERCANTILES. SU REVOCACIÓN CONTENIDA EN UN ACTA DE ASAMBLEA SURTE EFECTOS JURÍDICOS MIENTRAS SU AUTENTICIDAD NO SEA DESVIRTUADA, AUN CUANDO AQUÉLLA NO ESTÉ PROTOCOLIZADA Y NO SEA DE FECHA CIERTA, YA QUE TAL REQUISITO NO LO EXIGE LA LEY GENERAL RELATIVA. El artículo 10 de la Ley General de Sociedades Mercantiles regula la representación de las sociedades y lo relativo a los poderes, imponiendo como obligaciones de los notarios públicos en la protocolización de actas que contengan poderes otorgados por las sociedades mercantiles, ya que señala que para reconocerles validez, es necesario que hayan relacionado, insertado o agregado al apéndice de certificaciones, entre otros documentos, los que acrediten las facultades del órgano social que acordó el otorgamiento del poder, conforme a los estatutos de la sociedad. La finalidad de exigir tales requisitos es dejar constancia de que el poderdante efectivamente goza de las facultades y calidad con que se ostenta, y de que legal y estatutariamente esta autorizado para otorgar poder, y con ello se da seguridad jurídica a los terceros con los cuales celebren actos jurídicos. Ahora bien, tratándose de la revocación de poderes, los numerales 10, 145, 149, 162 y 194 de la aludida legislación no exigen que el acta de asamblea donde consta sea protocolizada ante notario para que surta efectos jurídicos, por lo que aun cuando sea un documento de carácter privado, lo acordado en ella surte efectos desde luego, incluso antes de su protocolización, mientras su autenticidad no sea desvirtuada en juicio, a pesar de que no sea de fecha cierta, pues tal requisito no lo exige la Ley General de Sociedades Mercantiles para la revocación de mandatos."

45



VILLASANTE ᴀ FREYMAN

SEGUNDO TRIBUNAL COLEGIADO EN
MATERIA CIVIL DEL CUARTO CIRCUITO.

Amparo directo 151/2006. De Llano, S.A. de
C.V. 13 de julio de 2006. Unanimidad de votos.
Ponente: José Gabriel Clemente Rodríguez.
Secretario: Guillermo Erik Silva González.

Época: Novena Época, Registro: 172173,
Instancia: Tribunales Colegiados de Circuito,
Tipo de Tesis: Aislada, Fuente: Semanario
Judicial de la Federación y su Gaceta, Tomo
XXV, Junio de 2007, Materia(s): Civil, Tesis:
IV.2o.C.59 C, Página: 1128.

No obstante lo anterior, según se acredita con el
documento que adjunto se exhibe como **Anexo 1)**, y que se
**acompaña única y exclusivamente para desvirtuar las**
**defensas y excepciones opuestas** por la contraparte en
términos de lo dispuesto por el segundo párrafo del artículo
1378 del Código de Comercio, las resoluciones unánimes
adoptadas por los socios de Lusad, si fueron protocolizadas ante
fedatario público.

Asimismo, y con independencia de que no es un
requisito de validez o eficacia, es falso que las resoluciones
unánimes del 14 de febrero de 2019, no hubieren sido
agregadas al libro de actas societario correspondiente, lo que
será demostrado a través de la prueba de inspección judicial
correspondiente.

46

VILLASANTE & FREYMAN

Se equivoca el codemandado, fueron cumplidos todos y cada uno de los requisitos que la ley establece, pues incluso las RESOLUCIONES UNANIMES DE LA TOTALIDAD DE LOS SOCIOS que fueron adoptadas, se determinó designar a diversas personas para que en nombre de la sociedad, con motivo del acuerdo de los socios, ejercieran la acción de responsabilidad, dentro de ellos, al suscrito, quien compareció al presente juicio con un poder otorgado incluso cuando el señor León Aveleyra era miembro del consejo de administración, por lo tanto no puede ahora desconocer esa personalidad.

El enjuiciado trascribe dos tesis aisladas para pretender sustentar sus argumentos, tesis que para su desfortuna se refieren a supuestos que no se actualizan en la especie.

Las tesis citadas por la contraparte y/o la legislación aplicable, jamás señalan que la persona que debe de ser designada para el ejercicio de la acción de responsabilidad tenga que ser un representante orgánico de la sociedad, sino que se refiere a que es la asamblea quien determinará si se procede o no en contra de los administradores, no limitándola en forma alguna a que se designe para el ejercicio de la acción a

47

VILLASANTE & FREYMAN

un representante orgánico de la sociedad, basta que la persona que se elija por ese órgano supremo cuente o se le otorgue en ese acto con poderes suficientes para ello, tal y como aconteció en la especie.

Es decir, si la asamblea designa a un tercero para el ejercicio de la acción y no le otorga poderes o no contaba con poderes previamente otorgados, es evidente que ese tercero, no apoderado, ni titular del derecho subjetivo, carecería de legitimación activa tanto en la causa como en el proceso, pues el derecho de exigir responsabilidad no es trasmisible, razón por la cual en dichas tesis se establece que no se surte la excepción prevista en el artículo 163 de la Ley General de Sociedades Mercantiles.

En pocas palabras, el codemandado pretende establecer requisitos que la ley no exige a efecto de que evadir una condena en el presente juicio, pues incluso la tesis que trascribe para distinguir la representación orgánica y funcional no tiene los alcances que mediante una interpretación inexplicable el señor León pretende atribuirle; esa tesis se refiere a que la responsabilidad que se pude imputar a quien ejerce la responsabilidad funcional no requiere de acuerdo de la asamblea, mientras que la de un representante orgánico si lo

48

VILLASANTE & FREYMAN

588 A

exige, pero NO que esté prohibido o sea improcedente la designación de apoderado de la sociedad para que en nombre y representación de ella ejercite la acción de responsabilidad en contra de un administrador.

**TERCERA.- NULIDAD DEL PACTO PRIVADO CONTENIDO EN EL INCISO (O) DE LA CLÁUSULA VIGÉSIMA CUARTA DE LOS ESTATUTOS SOCIALES DE LA SOCIEDAD MERCANTIL DENOMINADA SERVICIOS DIGITALES LUSAD, SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE; DERIVADA DE LO ORDENADO POR EL ARTÍCULO 6° DEL CÓDIGO CIVIL FEDERAL, EN RELACIÓN A LOS ARTÍCULOS 75 Y 76 DEL RÉGIMEN PATRIMONIAL DEL SERVICIO PÚBLICO.**

Sostiene el demandado que el inciso (o) de la Cláusula Vigésimo Cuarta de los estatutos sociales de Lusad es nulo al contravenir disposiciones de orden público, lo cual es falso como a continuación se expone:

El señor León Aveleyra, no es titular de parte social alguna de Lusad, es decir, no es socio de la misma, pues como se ha señalado y acreditado, los únicos socios de mi mandante lo son L1bre Holding, LLC y L1bre, LLC.

49



VILLASANTE & FREYMAN

Al no ser socio de Lusad no existe duda alguna, que el codemandado carece de legitimación para pretender, via acción o excepción, la nulidad de un pacto contenido en los estatutos sociales que únicamente incumben al funcionamiento de la sociedad.

Es de consabido derecho que si bien la nulidad absoluta de un acto jurídico puede hacerse valer por cualquier interesado, ello no significa que cualquier persona se encuentre legitimada para ello, la expresión de "cualquier interesado" establecida por el legislador se entiende y debe ser entendida bajo la figura del interés jurídico.

En ese sentido, solo tendrá interés jurídico para prevalecerse de la nulidad absoluta de un acto jurídico, aquél a quien dicho acto afecta o pueda perjudicar en su esfera patrimonial, y no cualquier persona que crea que un acto se encuentra viciado. Sirve de apoyo a lo anterior:

"NULIDAD ABSOLUTA. PERSONAS QUE ESTÁN LEGITIMADAS PARA PREVALERSE DE ELLA (INTERPRETACIÓN DEL ARTÍCULO 2226 DEL CÓDIGO CIVIL PARA EL DISTRITO FEDERAL). El artículo 2226 del Código Civil para el Distrito Federal preceptúa que de la declaración de nulidad absoluta puede

50

VILLASANTE & FREYMAN



prevalerse todo interesado. De una interpretación apagógica y pragmática de la norma precisada se advierte que por todo interesado debe entenderse aquella persona que haya sido afectada en su esfera de derechos y obligaciones por cierto acto jurídico, y que tenga interés en invocar en beneficio de sus pretensiones la nulidad del mismo, previamente decretada, ya que si se consideraran que la expresión en análisis sólo involucra a quienes fueron parte en el juicio en el que se pronunció la nulidad absoluta del acto de que se trate, se incurriría en el absurdo de mantener la vigencia de un acto nulo de manera absoluta para unas personas, y de destruir ese acto para otras, aun cuando todas hubieran sido afectadas en sus intereses jurídicos por tal acto, lo que es un contrasentido jurídico. Por otra parte, al atender al propósito que tuvo el legislador al instituir el precepto legal de referencia se advierte que la nulidad absoluta, a diferencia de la relativa, encuentra su justificación en la protección al interés general; en efecto, la distinción entre ambas no radica en que existan nulidades de mayor o menor grado, sino en el interés que protegen, por lo que habrá actos cuyos vicios afecten al interés general y otros que sólo afecten intereses particulares, por esta circunstancia se sanciona con mayor rigor a los primeros, dado que no son convalidables, y la nulidad que los afecta no es prescriptible, lo que constituye la nulidad absoluta. En este orden de ideas, si el legislador previó que de la nulidad absoluta puede prevalerse todo interesado y no lo hizo así en relación con la nulidad relativa, resulta evidente que ello obedeció a que <u>la protección del interés general justifica que cualquier persona que tenga interés jurídico pueda valerse o servirse de dicha nulidad, es decir, está legitimada para prevalerse de la misma, haya</u>

51

TORCUATO TASSO No. 245 PISO 5 COL. POLANCO CHAPULTEPEC
11560 CIUDAD DE MÉXICO
VILLASANTEFREYMAN.COM

Scanned with CamScanner

VILLASANTE A FREYMAN

sido o no parte en el juicio en el que ésta se
declaró, dado que, al se impide de manera
eficaz que un acto que atente contra normas
de orden público y contra el interés general,
surta sus efectos para unas personas y para
otras no, por el solo hecho de que las
primeras no hayan demandado tal nulidad."

SÉPTIMO TRIBUNAL COLEGIADO EN MATERIA
CIVIL DEL PRIMER CIRCUITO.

Amparo directo 779/2003. Banco Unión, S.A.,
Institución de Banca Múltiple en liquidación,
hoy en quiebra. 22 de enero de 2004.
Unanimidad de votos. Ponente: Anastacio
Martínez García. Secretario: Carlos Arturo
Rivero Verano.

Al no ser el señor León socio de mi mandante, el
inciso (o) de la cláusula Vigésima Cuarta de los estatutos
sociales de Lusad, no afectan de forma alguna su esfera
jurídica, es decir, no repercuten en su patrimonio, pues es una
norma individualizada que solo tiene efectos dentro de la
sociedad y por lo tanto carecen de trascendencia hacia el
exterior de la misma.

Sea como fuere, para construir su argumento el
enjuiciado parte de premisas erróneas mediante las cuales
pretende engañar a su Señoria. Afirma que el acto jurídico
administrativo denominado concesión, es un acto de imperio del
Estado, y como tal, los términos y condiciones de la un acto de

52

Scanned with CamScanner

VILLASANTE & FREYMAN

tal naturaleza son impuestos por el propio Estado, sin que pueda intervenir en ellas la voluntad del particular a quien se le otorga la concesión.

En virtud de lo anterior, afirma el enjuiciado, que en la modificación a una concesión, no participa la voluntad del concesionario, al ser un acto de imperium el Estado, a través de la dependencia correspondiente, impone todas y cada una de las condiciones de la concesión y el particular no tiene más que acatarlas so pena de perder la concesión.

Que al ser un acto de imperio que pude ser modificado únicamente, si así lo decide la dependencia auxiliar, es nulo el pacto societario que prevé que para la modificación de la concesión, esto es, que para que Lusad externe su voluntad para ello, se requiere de un acuerdo unánime del Consejo de Gerentes, con lo que a su parecer se violan los artículos 75 y 76 de la Ley del Régimen Patrimonial y del Servicio Público.

Se equivoca el enjuiciado, las concesiones han sido, incluso por nuestros Máximos Tribunales, considerados como actos administrativos mixtos, que como tales contienen verdaderos acuerdos que provienen de ambas partes, tanto del concesionario como del estado, y otras que constituyen

53

Scanned with CamScanner

VILLASANTE & FREYMAN

condiciones regulatorias en cuya imposición o modificación no participa la voluntad del concesionario, pero que sin embargo, no pueden ser impuestas o cambiarse arbitrariamente sino que deben justificarse bajo determinados supuestos.

Dentro de aquellas cuestiones relativas a una concesión en la que si participa la voluntad del concesionario y que no pueden ser modificadas al arbitrio del Estado, se encuentran las concernientes precisamente a las cantidades que por la prestación del servicio público concesionado percibirá el concesionario, pues ello tiene que ver con un principio fundamental de ese acto jurídico, esto es, el equilibrio económico, en términos del cual, ese equilibrio es el que faculta al concesionario para determinar si se obliga o no en los términos de la concesión, pues al final del día su interés es el de obtener una ganancia y no para que le cueste a él la prestación del servicio concesionado.

Sería absurdo sostener como lo hace la contraparte, que el estado, arbitrariamente puede decir bajar la contraprestación a la que tiene derecho un concesionario, y que éste debe de aceptar las condiciones económicas que incluso pudieran no serle beneficias, pero aun así para no perder la

54

concesión e incurrir en un posible incumplimiento deba asumirlas en contra de su voluntad.

Las cuestiones regulatorias mediante las que se establecen los términos y condiciones de la organización y funcionamiento del servicio público concesionado, son las que el Estado puede modificar sin el consentimiento del concesionario siempre y cuando se justifiquen de acuerdo al interés general.

Es decir, aún los aspectos regulatorios de una concesión no pueden ser modificados o impuestos arbitrariamente, requieren de una justificación basada en el interés general y no en el capricho de una autoridad.

En concordancia con lo anterior, en el Capítulo Cuarto inciso 4.3 del título de concesión, por lo que se refiere a los aspectos regulatorios del servicio concesionado, se estableció lo siguiente:

> *...
> 4.3 Según lo **requiera el interés público y las necesidades del servicios que se detecten**[1], la Secretaría está facultada para autorizar, modificar o reorientar durante la vigencia de la Concesión, los horarios, la frecuencia,

El énfasis es nuestro

TORCUATO LASS ...
TITULO Concesión ...
VELASANTE ...

VILLASANTE & FREYMAN

> programas de mantenimiento y demás condiciones operativas y ambientales que deban cubrir los Equipos que se encuentren en operación y se señalan en los antecedentes y documentación anexa del presente instrumento, siempre y cuando dichas modificaciones hayan sido previa y debidamente notificadas al Concesionario procurando que no se ponga en riesgo la sustentabilidad financiera de su operación y por ende la prestación del servicio..."

Como se aprecia de lo anterior, incluso la modificación a las condiciones regulatorias de una concesión, no pueden ser impuestas arbitrariamente, requiriéndose para ello, en términos de lo antes trascrito, lo siguiente:

(i)   Que la modificación sea necesaria por así requerirlo el interés público;

(ii)  Que en base al servicio se detecten las necesidades de éste y se modifiquen, es decir, como se pude observar ello presupone que el servicio ya se estuviere en marcha y durante el trascurso de la prestación se ponga de manifiesto la necesidad de una modificación (lo cual no aconteció en la especie).

(iii) Notificar previamente al concesionario los cambios, lo que le daría oportunidad de decir si los acepta o no, y en éste último, aún y cuando se traduzca en

56

VILLASANTE A FREYMAN

la perdida de la concesión, no continuar obligado a prestar el servicio que con motivo de las modificaciones ya no le es viable desde el punto de vista financiero.

Considerar que no obstante que la prestación del servicio le es adverso o no atractivo al concesionario desde el punto de vista económico, pero que aun así debe asumir los cambios que le son ordenados al tratarse de un acto de *imperium* del Estado, resulta una aberración, pues es absurdo que se le obligue a continuar con la prestación del servicio concesionado si ya no es su deseo al no serle ya atractivo desde el punto de vista financiero.

(iv) Dentro de las cuestiones que constituyen los aspectos regulatorios de la concesión que pueden ser modificados por el estado, una vez cumpliendo con los requisitos anteriores, los HORARIOS, programas de mantenimiento y demás condiciones operativas y ambientales, NO ASÍ LA CONTRAPRESTACIÓN QUE EL CONCESIONARIO PERCIBIRA; PUES PARA SU MODIFICACIÓN SI SE

57

VILLASANTE & FREYMAN

REQUIERE DE LA VOLUNTAD DEL CONCESIONARIO.

Todo lo anterior se robustece con los criterios que nuestros Máximos Tribunales han pronunciado y que a continuación trascribo:

"CONCESIÓN ADMINISTRATIVA. NOCIÓN Y ELEMENTOS REGLAMENTARIOS Y CONTRACTUALES QUE LA INTEGRAN. La concesión administrativa, entendida como el acto administrativo mediante el cual el Estado concede a un particular la gestión de un servicio público o la explotación de un bien del dominio público, crea un derecho en favor del concesionario que antes no tenía; sin embargo, el acuerdo de voluntades plasmado no debe concebirse como un simple acto contractual donde primen intereses particulares de los contratantes, pues se trata de un acto administrativo mixto, en el que coexisten elementos reglamentarios y contractuales. Dentro del primer grupo se encuentran las normas a que han de sujetarse la organización y funcionamiento del servicio o la explotación o aprovechamiento de los bienes, las que el Estado puede modificar sin el consentimiento del concesionario, considerando como principios rectores del interés general, los siguientes: a) continuidad, b) mutabilidad, c) igualdad, d) calidad y e) asequibilidad. Por su parte, el elemento contractual protege los intereses legítimos del concesionario, y crea a su favor una situación jurídica individual que no puede ser modificada unilateralmente por el Estado; atiende básicamente a las ventajas económicas que representen para el

58

VILLASANTE & FREYMAN

518

concesionario la garantía de sus inversiones y la posibilidad de mantener el equilibrio financiero. Así, toda concesión administrativa se encuentra sujeta a las modificaciones del orden jurídico que regulan las condiciones conforme a las cuales, el servicio público debe prestarse o el bien público ser explotado, al mismo tiempo que garantiza los intereses legítimos de los concesionarios."

PRIMER TRIBUNAL COLEGIADO DE CIRCUITO EN MATERIA ADMINISTRATIVA ESPECIALIZADO EN COMPETENCIA ECONÓMICA, RADIODIFUSIÓN Y TELECOMUNICACIONES, CON RESIDENCIA EN EL DISTRITO FEDERAL Y JURISDICCIÓN EN TODA LA REPÚBLICA.

Amparo en revisión 95/2014. Radiomóvil Dipsa, S.A. de C.V. 17 de septiembre de 2015. Unanimidad de votos. Ponente: Jean Claude Tron Petit. Secretario: Marco Antonio Pérez Meza.

Esta tesis se publicó el viernes 15 de enero de 2016 a las 10:15 horas en el Semanario Judicial de la Federación.

Época: Décima Época, Registro: 2010834, Instancia: Tribunales Colegiados de Circuito, Tipo de Tesis: Aislada, Fuente: Gaceta del Semanario Judicial de la Federación, Libro 26, Enero de 2016, Tomo IV, Materia(s): Administrativa, Tesis: I.1o.A.E.109 A (10a.), Página: 3178.

"CONCESIÓN ADMINISTRATIVA. NOCIÓN Y ELEMENTOS QUE LA INTEGRAN. La concesión administrativa es el acto por medio del cual el

59

ICIRCUATO TASS'

VILLASANTE

Scanned with CamScanner

VILLASANTE ^ FREYMAN

Estado otorga a un particular la prestación de
un servicio público, la explotación de bienes del
dominio público, o bien, la realización de ambas
actividades, y aun cuando mediante esa figura
jurídica se constituye un derecho en favor de
aquél, que no tenía, a diferencia de la
autorización que permite el ejercicio de uno
preexistente, no debe concebirse como un
simple acto contractual, sino que se trata de
uno administrativo mixto, en el cual coexisten
elementos reglamentarios y contractuales. Así,
los primeros consignan las normas a que ha de
sujetarse la organización y el funcionamiento
del servicio, y que el Estado puede modificarlas
en cualquier instante, de acuerdo con las
necesidades del servicio, sin que sea necesario
el consentimiento del concesionario (horarios,
modalidades de la prestación del servicio,
derechos de los usuarios, etcétera). Mientras
que **los segundos tienen como propósito**
**proteger el interés legítimo del**
**concesionario, al crear a su favor una**
**situación jurídica individual que no puede**
**ser modificada unilateralmente por el Estado**
**y que se constituye por las cláusulas que**
**conceden ventajas económicas que**
**representan la garantía de sus inversiones y,**
**con ello, la posibilidad de mantener el**
**equilibrio financiero de la empresa.** Así, toda
concesión, como acto jurídico administrativo
mixto, se encuentra sujeta a las modificaciones
del orden jurídico que regulan el servicio
público que debe prestarse o el bien público por
explotar, al mismo tiempo que garantiza los
intereses de los concesionarios.

CUARTO TRIBUNAL COLEGIADO EN MATERIA
ADMINISTRATIVA DEL PRIMER CIRCUITO.

Incidente de suspensión (revisión) 1/2013. MVS
Multivisión, S.A. de C.V. y otra. 29 de agosto de
2013. Unanimidad de votos. Ponente: Patricio

60

Scanned with CamScanner

VILLASANTE & FREYMAN

González-Loyola Pérez. Secretario: Carlos Luis Guillén Núñez.

Esta tesis se publicó el viernes 13 de diciembre de 2013 a las 13:20 horas en el Semanario Judicial de la Federación.

Época: Décima Época, Registro: 2005171, Instancia: Tribunales Colegiados de Circuito, Tipo de Tesis: Aislada, Fuente: Gaceta del Semanario Judicial de la Federación Libro 1, Diciembre de 2013, Tomo II, Materia(s): Administrativa, Tesis: I.4o.A.73 A (10a.), Página: 1109.

Es claro así que la defensa del enjuiciante se funda en una premisa falsa, ya que incluso tratándose de modificaciones a los aspectos regulatorios de una concesión, no pueden ser impuestas arbitrariamente por el Estado al Concesionario y obligarlo a continuar prestando el servicio, pues además de que deben justificarse en base al interés general, el particular prestador del servicio público no necesariamente debe asumirlas estando siempre en posibilidad, de considerar que le son sumamente adversas, de no aceptarlas aún y cuando pierda la concesión, pero será su decisión. **Por lo que hace a las condiciones contractuales, éstas únicamente pueden ser modificadas por la voluntad de ambas partes.**

61

VILLASANTE & FREYMAN

De todo lo anterior se despende que la cláusula vigésima cuarta, inciso (o) de los estatutos sociales de Lusad no es nula, y se encuentra apegada a derecho, pues:

- No violenta disposición de orden público alguna, en dichos inciso jamás se desconoce o se impide que ni siquiera las cuestiones regulatorias de las concesiones puedan ser modificadas, en ellos se establece y así debe entenderse que para que la sociedad externe su voluntad para modificar (aspectos contractuales o regulatorios) la concesión se requiere una resolución unánime del Consejo de Gerentes, ya que bien podría suceder que, tratándose cambios a los aspectos regulatorios, no estuviera de acuerdo con la modificación y pudiera ya sea combatirla argumentando la falta de interés general o notificación previa (extremos que no se cumplieron en el caso concreto) de lo que se vio impedida debido al actuar de los codemandados o bien, decidir, a través de ese órgano no obligarse en términos de las modificaciones aún bajo pena de perder la concesión.

- Se insiste que lo aseverado por la actora es falso, las cuestiones contractuales de una concesión, no

62

VILLASANTE & FREYMAN 

pueden ser modificadas unilateralmente por el Estado, esto es, no puede imponer su voluntad, deben concurrir la del concesionario en tratándose de cuestiones económicas en base a las cuales había decidido obligarse en un inicio el particular en términos de la concesión.

**CUARTA.- IMPROCEDENCIA DE LA ACCIÓN POR LA CARENCIA DE SATISFACCIÓN DEL PRIMERO DE LOS ELEMENTOS CONSTITUTIVOS DE LA ACCIÓN DE RESPONSABILIDAD DEL GERENTE, DEDUCIDA POR LA SOCIEDAD MERCANTIL ACTORA SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., DERIVADO DE LO ORDENADO POR LA FRACCIÓN I DEL ARTÍCULO 86 DE LA LEY GENERAL DEL RÉGIMEN PATRIMONIAL DEL ESTADO.**

Scanned with CamScanner

VILLASANTE & FREYMAN

(65)

lo tanto, si existe en el presente caso un hecho ilícito que sustenta la acción ejercida.

**QUINTA.- IMPROCEDENCIA DE LA ACCIÓN POR LA CARENCIA DE SATISFACCIÓN DEL PRIMERO DE LOS ELEMENTOS CONSTITUTIVOS DE LA ACCIÓN DE RESPONSABILIDAD DEL GERENTE, DEDUCIDA POR LA SOCIEDAD MERCANTIL ACTORA SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., DERIVADO DE LO ORDENADO POR LAS FRACCIONES V y VI DEL ARTÍCULO 86 DE LA LEY GENERAL DEL RÉGIMEN PATRIMONIAL DEL ESTADO.**

Es infundada e improcedente la excepción que se responde. Es falso que no exista daño patrimonial a mi mandante, pues la modificación a la concesión sin previo acuerdo del Consejo de gerentes de Lusad, ha provocado una pérdida del valor de sus activos como se acreditará en el momento procesal oportuno.

Si su Señoría considera las condiciones económicas en que fue otorgada la concesión original, las de su primer *addendum* que obra dentro del legajo de copias certificadas de la carpeta de investigación que han sido solicitadas a la autoridad investigadora correspondiente y que se exhibirán una

64

VILLASANTE & FREYMAN 

vez que se encuentren en posesión de mi mandante, a la luz de la modificación de la concesión realizada sin autorización por la contraparte, se percatará que es mucho menor la contraprestación a la que tenía derecho Lusad, lo que le ha provocado un claro daño patrimonial.

De nueva cuenta el actor hace descansar su excepción en que las condiciones económicas de una concesión son impuestas unilateralmente por el estado, lo que como hemos visto es falso. En obvio de inútiles repeticiones, solicito se tengan por aquí trascritos, como si a la letra se insertaran, todos y cada uno de los argumentos que se han vertido con anterioridad a lo largo del presente ocurso.

## SEXTA.- CARENCIA DE ACCIÓN Y DERECHO DE

Scanned with CamScanner

VILLASANTE & FREYMAN

moral denominada Espíritu Santo Holding, LLC, ni Espíritu Santo Technologies, LLC, en sesión celebrada el 14 de diciembre de 2018, acordó (Resolución Novena) que la negociación e implementación de las resoluciones primera a Séptima de dicha sesión, serían a cargo del señor Fabio Covarrubias Piffer como director general de Lusad, lo que incluye por supuesto la contratación del despacho externo de auditores.

Luego entonces, al desconocer esa resolución el señor León y el haber realizado las gestiones para la contratación de un despacho de auditores externo, violó una resolución del Consejo de Gerentes del que forma parte y por ende los estatutos sociales de Lusad que establecen que las resoluciones adoptadas por ese órgano societario son válidas y obligatorias para sus miembros, lo que constituye claramente un hecho ilícito.

Con fundamento en lo dispuesto por el segundo párrafo del artículo 1378 del Código de Comercio, a efecto de desvirtuar las excepciones y defensas opuestas por la contraparte, se ofrecen y anuncian las siguientes:

### PRUEBAS.



Scanned with CamScanner

DUARTE & FREYMAN

Previo a realizar el ofrecimiento de pruebas que se ofrecen en el presente ocurso, mi mandante se reserva expresamente el derecho para reiterar y ofrecer otros medios de convicción dentro del plazo de ofrecimiento de pruebas que ha sido decretado por su Señoría, lo anterior con fundamento en lo dispuesto por el artículo 1383 del Código de Comercio.

## 1.- LA DOCUMENTAL.- consistente en copia

certificada de la escritura pública número 72,235 de fecha 20 de febrero de 2019, otorgada ante la fe del Notario Público número 102 de la Ciudad de México, licenciado José María Moreira González, la cual exhibo al presente como **Anexo 1).**

Esta prueba se exhibe única y exclusivamente para desvirtuar la excepción opuesta por el codemandado León Avelleyra, y que hace descansar en que la acción es improcedente en virtud de que no se protocolizó el acta de asamblea.

Aún y cuando la protocolización de un acta de asamblea o de resoluciones unánimes no es un elemento de existencia o requisito de validez de ese acto jurídico, ni que su eficacia se encuentre sujeta a esa formalidad, mi mandante ofrece este medio de convicción a efecto de acreditar que

67

VILLASANTE & FREYMAN 

contrariamente a lo sostenido por la contraparte las resoluciones unánimes del 14 d febrero de 2014, si se encuentran protocolizadas.

La razón por la cual se estima que con esta prueba se demostrarán mis afirmaciones, consiste en que se trata de una documental pública con pleno valor probatorio, de conformidad con el artículo 1292 del Código de Comercio, en que consta precisamente la protocolización de las resoluciones en comento.

**2.- LA INSPECCIÓN JUDICIAL.-** que se realizará en el libro de actas de asambleas de Lusad, a efecto de que se compulse el original del documento que ha sido exhibido a juicio que contiene las resoluciones unánimes de socios adoptadas el 14 de febrero de 2019, con aquellas que se encuentran agregadas al libro de atas de asambleas o resoluciones unánimes de socios, para el efecto de que su Señoría compruebe el instrumento que contiene las resoluciones antes mencionadas si ha sido agregado al libro de actas de asambleas o resoluciones unánimes de Lusad y que por lo tanto es falso lo aseverado por la contraparte al exponer sus defensas y excepciones.

LOIS PATO LASSO 157 PH C... ... LAS... ... ...
11560 CIUDAD DE MEXICO
VILLASANTE FREYMAN ...

68

Scanned with CamScanner

VILLASANTE & FREYMAN 

Aún y cuando no consitituye un elemento de existencia o requisito de validez, ni que su la eficacia se encuentre sujeta a esa formalidad, el hecho de que se agregue una asamblea o resoluciones unánimes de una sociedad mercantil en el libro de actas, mi mandante ofrece este medio de convicción a efecto de acreditar que contrariamente a lo sostenido por la contraparte las resoluciones unánimes del 14 de febrero de 2014, si se encuentran agregadas en el libro corporativo correspondiente.

La razón por la cual se estima que con esta prueba se demostrarán mis afirmaciones, consiste en que al compulsar el original del documento que contiene las resoluciones del 14 de febrero de 2019, con aquellas actas que se encuentran agregadas en el libro corporativo correspondiente, su Señoria constatar de forma directa que, contrariamente a lo que asevera la contraparte, dichas resoluciones si se agregaron al libro de actas de asambleas o resoluciones unánimes de socios.

En preparación de este medio de convicción, solicito a su Señoria se sirva fijar día y hora para que tenga verificativo la diligencia correspondiente al desahogo de esta probanza, la cual deberá solicito se lleve a cabo en el local del H. Juzgado a su digno cargo, comprometiéndose mi mandante a poner a la vista

69

VILLASANTE & FREYMAN

de su Señoría en dicha diligencia su libro de actas de asamblea de socios y/o resoluciones unánimes de socios.

Por lo expuesto;

A USTED C. JUEZ, atentamente pido se sirva:

**PRIMERO.-** Tenerme por presentado con la personalidad que ostento, desahogando la vista con las defensas y excepciones opuestas por el codemandado Santiago León Aveleyra.

**SGUNDO.-** Tener por anunciadas las pruebas que para desvirtuar las excepciones y defensas opuestas por el codemandado ofrece mi mandante, medios de convicción que serán reiterados en el plazo de ofrecimiento de pruebas decretado por su Señoría, teniendo por hecha la reserva para ofrecer otros medios probatorios dentro del plazo para ello concedido.

Protesto lo necesario,

Ciudad de México, a 22 de mayo de 2019

TOMAS ANTONIO FREYMAN VALENZUELA

70

Scanned with CamScanner