# Exhibit AA

March 29, 2019

**In-Person-Delivery**

Estados Unidos Mexicanos
Dirección General de Inversión Extranjera
Secretaría de Economía
Av. De los Insurgentes Sur 1940
Colonia La Florida
Ciudad de México, México

and

Mr. Orlando Pérez Garate | Director General
Dirección General de Consultoría Jurídica de Comercio Internacional
Secretaría de Economía
Calle de Pachuca 189
Colonia Condesa
Ciudad de México, México

Re: Notice of Intent to Submit a Claim to Arbitration under NAFTA Chapter 11

Dear Sir,

Pursuant to Articles 1116, 1117, and 1119 of the North American Free Trade Agreement ("NAFTA"), L1bero Partners LP, Espiritu Santo Technologies LLC and L1BRE Holding LLC, hereby give written notice of their intention to submit to arbitration a claim against the Government of the United Mexican States on their own behalf and on behalf of their wholly-owned subsidiary Servicios Digitales Lusad S. de R.L. de C.V. for Mexico's breach of its obligations under NAFTA Chapter 11. To the extent possible, this dispute may be resolved amicably through consultation or negotiation in accordance with Article 1118 of NAFTA.

**I.  Disputing Investors**

A. L1bero Partners LP

L1bero Partners LP ("L1bero Partners") is an Alberta Limited Partnership. Documentation of L1bero Partners' status as a Canadian investor is attached as **Exhibit A**, (Registration Statement of L1bero Partners LP in Alberta, Canada.) L1bero Partners' address is:

> 21 Waterway Ave. Suite 300
> The Woodlands, Texas, 77380
> c/o Hightech Bookkeepers

1

B. Espiritu Santo Technologies LLC

Espiritu Santo Technologies LLC ("EST") is a Limited Liability Company established under the laws of the State of Delaware, in the United States of America. Documentation of EST's status as an American investor is attached as **Exhibit B**, (Certificate of Formation of Espiritu Santo Technologies LLC.). L1bero Partners owns and controls 50% of EST. Documentation of EST's share ownership is attached as **Exhibit C**.

EST's address is:

> 21 Waterway Ave. Suite 300
> The Woodlands, Texas, 77380
> c/o Hightech Bookkeepers

C. L1bre Holding LLC

L1bre Holding LLC ("L1bre Holding") is a Limited Liability Company, established under the laws of the State of Delaware, in the United States of America. Documentation of L1bre Holding's status as an American investor is attached as **Exhibit D**, (Certificate of Formation of L1bre Holding LLC.). EST currently maintains a membership interest in L1bre Holding. Documentation of Libre Holding's membership interest is attached as **Exhibit E**.

L1bre Holding's address is:

> 21 Waterway Ave. Suite 300
> The Woodlands, Texas, 77380
> c/o Hightechbookkeepers

## II. Name and Address of the Wholly Owned Enterprise

Servicios Digitales Lusad S. de R.L. de C.V. ("Lusad" or the "Company"), is a Mexican indirect subsidiary of L1bero Partners and EST and a direct subsidiary of L1bre Holding. L1bre Holding is the direct owner of 72% of Lusad's membership interest and indirect owner of the remaining 28% through Libre LLC a Delaware Limited Liability Company wholly owned by L1bre Holding. Documentation of Lusad's legal status and ownership structure is attached as **Exhibit F**. Lusad's address is:

> Montes Urales 455, piso 6
> Col. Lomas de Chapultepec,
> Mexico City, 1100, Mexico

Lusad uses the commercial name: "L1BRE."

### III. Legal Representative and Service of Documents

Mr. Fabio Massimo Covarrubias Piffer, Chief Executive Officer and representative for all three enterprises: L1bero Partners, EST and L1bre Holding, signs and delivers this notice of intent to submit a claim to arbitration under NAFTA Chapter 11 on their behalf. Mr. Covarrubias is an Attorney- -in-Fact of Lusad. Documentation that confirms Mr. Covarrubias' position as CEO and representative of L1bero Partners, EST and L1bre Holding is attached as **Exhibit G**. Documentation that confirms Mr. Covarrubias' position as Attorney-in-Fact of Lusad is attached as **Exhibit H**.

King & Spalding LLP and Malpica, Iturbe, Buj & Paredes are acting as counsel for L1bero Partners, EST and L1bre Holding in this matter:

King & Spalding
Houston Office
1100 Louisiana St #4000,
Houston, TX 77002, USA
Tel. +1 713 751 3200

Messrs.:
Roberto Aguirre Luzi (raguirre@kslaw.com)
Fernando Rodríguez Cortina (frodriguez-cortina@kslaw.com)


Malpica, Iturbide, Buj & Paredes, S.C.
Paseo de la Reforma 350
14th Floor
Col. Juarez
C.P. 06600
Mexico City, Mexico
Tel. + 52 (55) 5280 1551

Messrs.:
Carlos Malpica (cmalpica@mibp.com.mx)
Horacio Paredes (hparedes@mibp.com.mx)


Please direct correspondence related to this matter to Roberto Aguirre Luzi, Fernando Rodriguez Cortina, Carlos Malpica, and Horacio Paredes at the above addresses.


### IV. NAFTA Provisions that Mexico Breached

Mexico has breached its obligations under NAFTA Articles:

1102: National Treatment;

1104: Standard of Treatment;

3

1105: Minimum Standard of Treatment; and

1110: Expropriation and Compensation.

## V. Issues and Factual Basis for the Claim

### A. Factual Background

On June 17, 2016, the Ministry of Mobility (*Secretaria de Movilidad*, "Semovi") of Mexico City, granted Lusad the concession SEMOVI/DGSTPI/001/2016 for the "*substitution, installation and maintenance of taximeters for Mexico City's Individual Public Passenger Transportation System (Taxi) with geo-positioning system and for the development, operation and exploitation of a mobile application to request taxi rides remotely in Mexico City*" (the " Concession").

The Concession gave Lusad the right and obligation to install 138,000 digital taximeters in Mexico City's taxi fleet and to develop and exploit a mobile application to order taxis remotely (the "App"). In addition to the digital taximeters and the App, Lusad committed to install a platform with GPS, WIFI, and a "panic button" in all taxis to allow passengers to send an alert to Mexico City's Security and Command Center, known as the C5, in case of emergency.

The L1bre Group developed the state-of-the-art L1BRE platform to host and operate the digital taximeter and all the additional features required under the Concession. The L1BRE platform operates via two smart tablets (one on the driver's front side and the other one attached to the passengers' backseat), one camera mounted inside the vehicle's top and the App. The installation of L1BRE's breakthrough technology platform would enhance the mobility of Mexico City's congested transportation system, allow traditional taxi drivers and companies to compete with the growing presence of ridesharing companies, and provide greater security for passengers and taxi drivers.

On October 6, 2016, Lusad requested Semovi to amend the Concession pursuant to Mexico City's Mobility Law and the Law of Public Service and Patrimonial Regime. On January 9, 2017, Lusad and Semovi executed the amendment to the Concession and on March 21, 2017, Semovi issued an amendment (the "Amended Concession") to reflect the modifications.

Under the Amended Concession, Lusad had the right to charge a variable fee capped at MXP $12.00 for rides hailed by passengers on the street (the "Consideration Fee"). If the passenger requested the taxi via the App, Lusad was still entitled to receive the fixed MXP $12.00. The fee— whether variable or fixed depending on the modality— was passed through to the passengers' final ticket. The taxi drivers did not pay for it and therefore it was neutral for them. Additionally, Lusad had the right to the revenues resulting from advertising placed in the passengers' backseat tablet and from the passengers' use of the WIFI system.

Lusad started to perform its obligations under the Amended Concession from the outset. Among other things, Lusad (i) acquired 80,000 tablet kits (*i.e.*, 160,000 tablets in total) and placed an order for additional 30,000 kits, (ii) worked tirelessly to connect the L1BRE platform with Mexico City's C5, (iii) made available different facilities throughout Mexico City for the

4

installation of the L1BRE platform in taxis, and (iv) installed the L1BRE platform in over 1,200 taxis in Mexico City to test proper functioning. By mid-2017, the Company had already performed the physical installation of over 2,000 smart tablets and conducted tests with local drivers. On December 20, 2017, Semovi officially acknowledged the end of the trial period and committed to publish a Mandatory Substitution Notice of taximeters in Mexico City's Official Gazette.

Lusad also undertook different actions to comply with regulatory requirements. To name a few, Lusad (i) submitted the smart tablets for technical authorization by Mexico's Federal Economy Ministry, (ii) registered the company as a hailing software provider before Semovi, (iii) posted a surety bond and maintained insurance for all the technology equipment, and (iv) obtained a permit to show advertising on the backseat tablet.

To enforce the installation of L1BRE's platform, on April 17, 2018, Semovi finally published the Mandatory Substitution Notice in Mexico City's Official Gazette requiring all taxi drivers in Mexico City to install the L1BRE platform within the term of one year approximately. Under the Mandatory Substitution Notice, Semovi committed to create a digital appointment system in Semovi's official webpage (www.semovi.cdmx.gob.mx ) to allow taxi drivers to complete the platform's free installation on a rolling basis.

Shortly after the publication of the Mandatory Substitution Notice, taxi drivers' unions and suppliers of analog taximeters filed several injunctions (*amparos*) to enjoin its enforcement. From the 138,000 taxis authorized to operate in Mexico City, only close to 400 filed the injunctions. The taxi unions and taxi owners that opposed the installation of LIBRE's platform, although small in number, had significant political influence and during that time, Mexico and Mexico City were in the middle of political campaigns for President and Mayor. Candidates from all parties promised to cancel the Amended Concession to gain political support. In what can only be explained as a political maneuver, Semovi delayed the creation of the digital appointment system.

In July 2018, the city held general elections to vote for a new mayor (*Jefe de Gobierno*) and new head representatives for all the city's boroughs (*alcaldías*). Mr. Andres Manuel Lopez Obrador and Ms. Claudia Sheinbaum, both from the new dominant Morena Party, were respectively elected President and Mexico City Mayor. On July 17, 2018, two weeks after the elections, local representatives from the Morena Party publicly stated that they intended to cancel the new tablet system with the aid of the Mayor-elect, Ms. Sheinbaum. A couple of weeks later Ms. Sheinbaum confirmed her support to retire L1BRE's platform.

By this time, L1bero, EST and L1bre Holding, through its Mexican subsidiary Lusad, had already invested US$ 78 million to develop L1BRE's platform and perform its obligations under the Amended Concession. Additionally, Lusad undertook payment obligations with various providers for US$25 million. On July 14, 2018, Goldman Sachs valued the business at US $852 million only with respect to the Mexico City market that was covered under the Amended Concession, with a potential of increasing the value to US $1.8 billion if Lusad applied for and obtained concessions in other major cities in Mexico.



On November 7, 2018, less than a month before Mexico City's new administration took office, Semovi's authorities summoned Lusad's representative, Mr. Eduardo Zayas, to Semovi's office in Mexico City. He was told that Semovi would give him an official document related to L1bre's activities. Mr. Carlos Meneses, Semovi's Minister at that time, and other officers were present at this meeting. Instead of receiving the document he was promised, Mr. Zayas was asked to sign a signatures page to supposedly be inserted in the Amended Concession but, in fact, that signatures page was part of an altered version of the Amended Concession (the "Altered Concession") without being allowed to review it. Mr. Zayas, who is not an attorney, was told by Semovi's representatives at the meeting that this Altered Concession simply restated Lusad's original rights under the Amended Concession. Mr. Zayas was told that the only reason for restating the Amended Concession was to add more signatories on Semovi's side to make the concession "bullet proof" against the wave of protests by taxi owners and drivers and the Mayor-elect's vow to cancel the Amended Concession. Upon Semovi's insistence, Mr. Zayas signed the Altered Concession without reviewing the text.

Semovi's officers did not tell Mr. Zayas, however, that the Altered Concession entirely amended the Consideration Fee and other relevant provisions of the Amended Concession to Lusad's detriment. It was only the next day, on November 8, 2018, when Lusad's attorneys reviewed the Altered Concession, that the Company realized that the government had arbitrarily changed the terms and conditions of the Amended Concession, effectively amending it without following the procedure required under the Amended Concession and applicable legislation. Under the Altered Concession, Lusad was no longer entitled to receive the Consideration Fee, the revenues resulting from the advertisements played in the tablets or the revenues resulting from the passengers' use of the WIFI system. The government also included a provision that suggested that theConcession and the Amended Concession were only draft versions that never came into effect.

That same day, Lusad's attorneys and representatives met with Semovi's Minister to express the Company's disagreement and opposition. Minister Meneses told the Lusad's attorneys and representatives that he had never seen the text of the Amended Concession before and that the Altered Concession was now the only valid concession. But the Minister's and Semovi's disavowal of the Amended Concession, as if it had never existed, was simply implausible: both, the Company and the city's government, had dully signed the Amended Concession and had taken several actions thereunder. Furthermore, Semovi issued several official documents referring to actions or issues derived from the Amended Concession. Semovi's disavowal of the Concession and the Amended Concession can only be explained as an improper and arbitrary maneuver by the Mexican government to strip Lusad of its legitimate economic rights.

Lusad brought these and other irregularities surrounding the circumstances under which the Altered Concession was issued in different meetings with Semovi's officers between November 8 and November 23, 2018. On March 6, 2019, Lusad and Libero Partners filed a criminal complaint before the office of Mexico's City's Attorney General, denouncing the events surrounding the

November 7, 2018 meeting. However, Mexico and its authorities have completely ignored the Company thus causing L1bero Partners to incur damages in at least US $850 million.

### B. Jurisdiction

An arbitration tribunal constituted under NAFTA Chapter 11 has jurisdiction over this dispute. L1bero Partners—a company incorporated in Alberta, Canada—and EST and L1bre Holding—companies incorporated in Delaware, United Sates of America—are investors of a Party under Article 1139. Lusad is an enterprise as defined in NAFTA Article 201, and an investment of an investor of a Party under Article 1139. Mexico has consented to submit this dispute to arbitration under Article 1122.

Likewise, L1bero Partners', EST's and L1bre Holding's investments in Mexico meet the definition of protected investment under NAFTA Article 1139. In the relevant part, NAFTA Article 1139 defines "investment" as:

> (a) an enterprise; [...]
>
> (e) an interest in an enterprise that entitles the owner to share in income or profits of the enterprise; [...]
>
> (g) real estate or other property, tangible or intangible, acquired in the expectation or used for the purpose of economic benefit or other business purposes; and
>
> (h) interests arising from the commitment of capital or other resources in the territory of a Party to economic activity in such territory, such as under:
>
>> (i) contracts involving the presence of an investor's property in the territory of the Party, including turnkey or construction contracts, or concessions, or
>>
>> (ii) contracts where remuneration depends substantially on the production, revenues or profits of an enterprise

L1bero Partners, EST and L1bre Holding, own or control, directly or indirectly, the rights under the Amended Concession. Such rights and interests are "(h) interests arising from the commitment of capital or other resources in the territory of a Party to an economic activity in such territory, such as under contracts, ... including concessions." They also constitute "(g)... property, tangible or intangible, acquired in the expectation or used for the purpose of economic benefit or other business purposes." The assets acquired for the performance of the Amended Concession (including tablets, software and hardware), which today sit idle in a warehouse due to Mexico's measures, also constitute tangible property acquired in the expectation of economic benefit.



Moreover, Lusad is "(a) an enterprise" and as a result constitutes a protected investment, as does L1bero Partners', EST's and L1bre Holding's "(e)... interest" in Lusad.

### C. Basis for the Claim

To date, L1bero Partners, EST, and L1bre Holding have invested millions of US dollars in Lusad and in performing Lusad's rights and obligations under the Amended Concession. The Mexican Government's disavowal of the Amended Concession and the obscure and irregular circumstances under which the Mexican government issued the Altered Concession violated L1bero Partners', EST's, L1bre Holding's, and Lusad's rights to transparency, due process and treatment that is not arbitrary, among other fundamental tenets of fair and equitable treatment under NAFTA Article 1105. Such treatment is also contrary to Mexico's National Treatment commitment under Article 1102 and to the Standard of Treatment that Mexico afforded to investors under Article 1104. Further, Mexico's violated NAFTA Article 1110 by expropriating the Amended Concession and the rights thereunder without compensation.

### VI. Relief Sought and Damages Claimed

L1bero Partners, EST, and L1bre Holding seek full compensation for the losses and other injuries suffered as a result of Mexico's breaches, and will claim at least US$852 million in damages plus any applicable interest and cost.

### VII. Service

This notice of intent to submit a claim to arbitration is submitted to you as the authority designated by Mexico pursuant to Annex 1137.2 of the NAFTA and in accordance with Article I of the *Acuerdo por el que se faculta a la Dirección General de Inversión Extranjera para fungir como lugar de entrega de notificaciones y otros documentos, de conformidad con lo señalado en el artículo 1137.2 del Tratado de Libre Comercio de América del Norte* published in the *Diario Oficial de la Federación* on 12 June 1996.

Very truly yours,

Fabio Massimo Covarrubias Piffer

8

29 de marzo de 2019

**Entrega Personal**

Estados Unidos Mexicanos
Dirección General de Inversión Extranjera
Secretaría de Economía
Av. De los Insurgentes Sur 1940
Colonia La Florida
Ciudad de México, México

y

Sr. Orlando Pérez Garate | Director General
Dirección General de Consultoría Jurídica de Comercio Internacional
Secretaría de Economía
Calle de Pachuca 189
Colonia Condesa
Ciudad de México, México

**Ref.: Notificación de intención para someter a arbitraje una reclamación conforme al Capítulo 11 del TLCAN.**

Estimado Señor:

De conformidad con los Artículos 1116, 1117 y 1119 del Tratado de Libre Comercio de America del Norte ("TLCAN"), L1bero Partners LP, Espiritu Santo Technologies LLC y L1BRE Holding LLC, por medio del presente notifican por escrito su intención de someter a arbitraje una reclamación en contra del Gobierno de los Estados Unidos Mexicanos, por cuenta propia y en representación de su subsidiaria al cien por ciento Servicios Digitales Lusad S. de R.L. de C.V., por el incumplimiento por parte de México de sus obligaciones conforme al Capítulo 11 del TLCAN. En la medida de lo posible, esta disputa podrá ser resuelta de manera amigable por vía de consulta y negociación conforme al Artículo 1118 del TLCAN.

I. Inversionistas Contendientes

A. L1bero Partners LP

L1bero Partners LP ("L1bero Partners") es una Sociedad Limitada (*Limited Partnership*) de Alberta. La documentación del estatus de L1bero Partners como inversionista canadiense se

1

adjunta a la presente como **Anexo A**, (Informe de Registro de L1bero Partners LP en Alberta, Canadá.) La dirección de L1bero Partners es:

> 21 Waterway Ave. Suite 300
> The Woodlands, Texas, 77380
> c/o Hightech Bookkeepers

### B. Espiritu Santo Technologies LLC

Espiritu Santo Technologies LLC ("EST") es una Sociedad de Responsabilidad Limitada (*Limited Liability Company*) constituida conforme a las leyes del estado de Delaware, en los Estados Unidos de América. La documentación del estatus de EST como un inversionista americano se adjunta a la presente como **Anexo B**, (Certificado de Constitución de Espiritu Santo Technologies LLC.). L1bero Partners es propietario y controla 50% de EST. La documentación de la tenencia accionaria de EST se adjunta a la presente como **Anexo C**.

La dirección de EST es:

> 21 Waterway Ave. Suite 300
> The Woodlands, Texas, 77380
> c/o Hightech Bookkeepers

### C. L1bre Holding LLC

L1bre Holding LLC ("L1bre Holding") es una Sociedad de Responsabilidad Limitada (*Limited Liability Company*), constituida conforme a las leyes del Estado de Delaware, en los Estados Unidos de América. La documentación del estatus de L1bre Holding como un inversionista americano se adjunta a la presente como **Anexo D**, (Certificado de Constitución de L1bre Holding LLC.). EST actualmente es propietario de ciertas partes sociales de L1bre Holding. La documentación de la tenencia accionaria de Libre Holding se adjunta a la presente como **Anexo E**.

La dirección de L1bre Holding es:

> 21 Waterway Ave. Suite 300
> The Woodlands, Texas, 77380
> c/o Hightechbookkeepers

## II. Nombre y domicilio de la empresa subsidiaria

Servicios Digitales Lusad S. de R. L. de C.V. ("Lusad" o la "Compañía"), es una empresa subsidiaria mexicana indirecta de L1bero Partners y EST y una subsidiaria directa de L1bre Holding. L1bre Holding es el propietario directo del 72% del capital social y propietario indirecto del restante 28% de Lusad a través de L1bre LLC, una empresa de responsabilidad limitada

2

constituida de acuerdo a las leyes de Delaware, propiedad de L1bre Holding . La documentación del estatus legal y estructura societaria de Lusad se adjunta a la presente como **Anexo F**. La dirección de Lusad es:

>   Montes Urales 455, piso 6
>   Col. Lomas de Chapultepec
>   Ciudad de México, 1100, México

Lusad utiliza el nombre comercial: "L1BRE."

### III.    Representante legal y notificación de documentos

El Sr. Fabio Massimo Covarrubias Piffer, Director General (*Chief Executive Officer*) y representante de las tres sociedades: L1bero Partners, EST y L1bre Holding, firma y entrega esta notificación de intención para someter a arbitraje una reclamación conforme el Capítulo 11 del TLCAN, en su representación. El Sr. Covarrubias es un apoderado de Lusad. La documentación que confirma el cargo de Director General (*Chief Executive Officer*) y representante de L1bero Partners, EST y L1bre Holding se adjunta a la presente como **Anexo G**. La documentación que confirma el cargo del Sr. Covarrubias como apoderado de Lusad se adjunta a la presente como **Anexo H**.

King & Spalding LLP y Malpica, Iturbe, Buj & Paredes actúan como asesores legales de L1bero Partners, EST y L1bre Holding en este asunto:

King & Spalding
Oficina de Houston
1100 Louisiana St #4000,
Houston, TX 77002, USA
Tel. +1 713 751 3200

Señores:
Roberto Aguirre Luzi (raguirre@kslaw.com)
Fernando Rodríguez Cortina (frodriguez-cortina@kslaw.com)

Malpica, Iturbide, Buj & Paredes, S.C.
Paseo de la Reforma 350
Piso 14
Col. Juárez
C.P. 06600
Ciudad de México, México
Tel. + 52 (55) 5280 1551

3

Señores:
Carlos Malpica (cmalpica@mibp.com.mx)
Horacio Paredes (hparedes@mibp.com.mx)

Favor de dirigir la correspondencia relacionada con este asunto a Roberto Aguirre Luzi, Fernando Rodríguez Cortina, Carlos Malpica, y Horacio Paredes en los domicilios antes señalados.

IV. Disposiciones del TLCAN que México incumplió

México ha incumplido con sus obligaciones bajo los siguientes Artículos del TLCAN:

1102: Trato Nacional;

1104: Nivel de Trato;

1105: Nivel Mínimo de Trato; y

1110: Expropiación y Compensación.

V. Cuestiones de hecho y de derecho en que se funda la reclamación

A. Antecedentes Fácticos

El 17 de junio de 2016, la Secretaria de Movilidad ("Semovi") de la Ciudad de México, otorgó a Lusad la concesión SEMOVI/DGSTPI/001/2016 para la "sustitución, instalación y mantenimiento de taxímetros para el Transporte Público Individual de Pasajeros para la Ciudad de México (Taxi) con sistema de geolocalización y para el desarrollo, operación y explotación de una aplicación móvil para solicitar servicio de taxi de forma remota en la Ciudad de México (la "Concesión").

La Concesión otorgaba a Lusad el derecho y la obligación de instalar 138,000 taxímetros digitales en la flotilla de taxis de la Ciudad de México y para desarrollar y explotar una aplicación móvil para ordenar taxis de forma remota (la "App"). En adición a los taxímetros digitales y la App, Lusad se comprometió a instalar una plataforma con GPS, WIFI y un "botón de pánico" en todos los taxis para permitir a los pasajeros enviar una alerta al Centro de Comando y Seguridad de la Ciudad de México conocido como C5, en caso de emergencia.

El Grupo L1bre desarrolló la plataforma L1BRE de vanguardia para albergar y operar el taxímetro digital y las funciones adicionales requeridas conforme a la Concesión. La Plataforma L1BRE opera a través de dos tabletas inteligentes (una en el lado delantero del conductor y otra adherida en el asiento trasero del pasajero), una cámara montada en la parte superior dentro del vehículo y la App. La instalación de la plataforma tecnológica e innovadora de L1BRE mejoraría la movilidad del congestionado sistema de transporte de la Ciudad de México, permitiría a los

4

conductores de taxi tradicionales y a las compañías competir con la creciente presencia de las compañías de viajes compartidos y proporcionaría mayor seguridad para los pasajeros y los conductores de taxis.

El 6 de octubre de 2016, Lusad solicitó a Semovi modificar la Concesión de conformidad con la Ley de Movilidad del Distrito Federal y la Ley del Régimen Patrimonial y del Servicio Público. El 9 de enero de 2017, Lusad y Semovi llevaron a cabo la modificación a la Concesión y el 21 de marzo de 2017, Semovi emitió una modificación a la Concesión (la "Concesión Modificada") para reflejar dichas modificaciones.

Conforme a la Concesión Modificada, Lusad tenía el derecho de cobrar una comisión variable topada a $12.00 pesos mexicanos por viajes tomados por pasajeros en la calle (la "Comisión de Contraprestación"). Si el pasajero solicitaba el taxi a través de la App, Lusad seguía teniendo el derecho a recibir los $12.00 pesos mexicanos fijos. La comisión, ya fuera fija o variable dependiendo de la modalidad, se trasladaba a la cuenta final del pasajero. Los conductores de los taxis no pagaban por la misma y por lo tanto era neutral para ellos. Adicionalmente, Lusad tenía derecho a los ingresos que resultaran de la publicidad colocada en la tableta del asiento trasero del pasajero y por el uso del sistema WIFI.

Lusad comenzó con el cumplimiento de sus obligaciones bajo la Concesión Modificada desde el inicio. Entre otras cosas, Lusad (i) adquirió 80,000 kits de tabletas (*i.e.*, 160,000 tabletas en total) e hizo un pedido por 30,000 kits adicionales, (ii) trabajó incansablemente para conectar la plataforma L1BRE con el C5 de la Ciudad de México, (iii) puso a disposición diversos establecimientos a lo largo de la Ciudad de México para la instalación de la plataforma L1BRE en taxis, e (iv) instaló la plataforma L1BRE en más de 1,200 taxis en la Ciudad de México para probar su debido funcionamiento. A mediados del 2017, la Compañía ya había llevado a cabo la instalación física de más de 2,000 tabletas inteligentes y llevado a cabo pruebas con conductores locales. En diciembre de 2017, Semovi oficialmente reconoció el fin del periodo de prueba y se comprometió a publicar un Aviso de Obligatoriedad de los taxímetros en la Gaceta Oficial de la Ciudad de México.

Lusad también llevó a cabo diferentes acciones para cumplir con los requisitos legales. Por nombrar algunos, Lusad (i) sometió las tabletas a la autorización técnica por parte de la Secretaría de Economía de México, (ii) registró a la compañía como un proveedor de software para contratar servicio de transporte ante la Semovi, (iii) pagó una fianza y mantuvo un seguro para todo el equipo tecnológico, y (iv) obtuvo un permiso para mostrar publicidad en la tableta del asiento trasero.

Para hacer cumplir la instalación de la plataforma L1BRE, el 17 de abril de 2018, Semovi finalmente publicó el Aviso de Obligatoriedad en la Gaceta Oficial de la Ciudad de México requiriendo a todos los taxistas en la Ciudad de México a instalar la plataforma L1BRE dentro del término de un año aproximadamente. Conforme al Aviso de Obligatoriedad, Semovi se comprometió a crear un sistema de citas digitales en la página web oficial de Semovi (www.semovi.cdmx.gob.mx) para permitir a los taxistas completar la instalación gratuita de la plataforma de manera continua.

5

Poco después de la publicación del Aviso de Obligatoriedad, los sindicatos de taxistas y proveedores de taxímetros analógicos presentaron varios amparos para impedir su ejecución. De 138,000 taxis autorizados para operar en la Ciudad de México, sólo cerca de 400 presentaron amparos. Los sindicatos de taxistas y los propietarios de taxis que se opusieron a la instalación de la plataforma L1BRE, aunque reducidos en número, tenían influencia política significativa y durante dicho tiempo, tanto México como la Ciudad de México se encontraban a la mitad de las campañas políticas para Presidente y Jefe de Gobierno. Los candidatos de todos los partidos prometieron cancelar la Concesión Modificada para obtener apoyo político. En lo que sólo puede explicarse como una maniobra política, Semovi retrasó la creación del sistema de citas digitales.

En julio de 2018, en la ciudad se celebraron elecciones generales para votar por un nuevo Jefe de Gobierno y nuevos alcaldes para todas las alcaldías de la ciudad. El Sr. Andrés Manuel López Obrador y la Sra. Claudia Sheinbaum, ambos del nuevo partido dominante Morena, fueron elegidos respectivamente Presidente y Jefa de Gobierno de la Ciudad de México. El 17 de julio de 2018, dos semanas después de las elecciones, los representantes locales del Partido Morena declararon públicamente que tenían la intención de cancelar el nuevo sistema de tabletas con la ayuda de la Jefa de Gobierno electa, la Sra. Sheinbaum. Un par de semanas después, la Sra. Sheinbaum confirmó su apoyo para retirar la plataforma de L1BRE.

Para ese momento, L1bero, EST y L1bre Holding, a través de su subsidiaria mexicana Lusad, habían invertido $78 millones de dólares norteamericanos para desarrollar la plataforma de L1BRE y cumplir con sus obligaciones bajo la Concesión Modificada. Adicionalmente, Lusad contrajo con proveedores, pasivos por US$25 millones de dólares norteamericanos. El 14 de julio de 2018, Goldman Sachs valuó el negocio en $852 millones de dólares norteamericanos sólo respecto al mercado de la Ciudad de México cubierto por la Concesión Modificada, con el potencial de aumentar el valor a $1.8 mil millones de dólares norteamericanos si Lusad solicitara y obtuviera concesiones en las demás ciudades principales de México.

El 7 de noviembre de 2018, menos de un mes antes de que la nueva administración de la Ciudad de México asumiera el cargo, las autoridades de Semovi citaron al representante de Lusad, el Sr. Eduardo Zayas, a las oficinas de Semovi en la Ciudad de México. Le dijeron que Semovi le entregaría un documento oficial relacionado con las actividades de L1bre. El Sr. Carlos Meneses, titular de Semovi en ese momento, y otros funcionarios estuvieron presentes en esta reunión. En lugar de recibir el documento que le había sido prometido, se le pidió al Sr. Zayas firmar una hoja de firmas para sustituir la de la Concesión Modificada, cuando en realidad esa hoja de firmas era de una versión alterada de la Concesión Modificada (la "Concesión Falsa") sin que se le permitiera revisarla. Los representantes de Semovi dijeron en dicha reunión al Sr. Zayas, quien no es abogado, que esta Concesión Falsa simplemente reexpresaba los derechos originales de Lusad bajo la Concesión Modificada. Al Sr. Zayas se le dijo también que la única razón para reexpresar la Concesión Modificada era agregar a más partes firmantes de parte de Semovi para "blindar" la

6

concesión contra la ola de protestas de los propietarios y conductores de taxis y la encomienda de la Jefa de Gobierno electa para cancelar la concesión. Ante la insistencia de Semovi, el Sr. Zayas firmó la Concesión Falsa sin revisar el texto.

Sin embargo, los funcionarios de Semovi no le dijeron al Sr. Zayas que la Concesión Falsa modificaba por completo la Comisión de Contraprestación y otras disposiciones relevantes de la Concesión Modificada en detrimento de Lusad. Fue hasta el día siguiente, el 8 de noviembre de 2018, cuando los abogados de Lusad revisaron la Concesión Falsa, que la Compañía se dio cuenta de que el gobierno había cambiado arbitrariamente los términos y condiciones de la Concesión Modificada, modificándola efectivamente sin seguir el procedimiento requerido bajo la Concesión Modificada y la legislación aplicable. Bajo la Concesión Falsa, Lusad no tendría derecho a recibir la Comisión de Contraprestación, los ingresos resultantes de los anuncios reproducidos en las tabletas o los ingresos resultantes del uso de los pasajeros del sistema WIFI. El gobierno incluyó también una disposición que sugería que la Concesión y la Concesión Modificada eran solo borradores que nunca entraron en vigor.

Ese mismo día, los abogados y representantes de Lusad se reunieron con el titular de Semovi para expresar el desacuerdo y la oposición de la Compañía. El Sr. Meneses dijo a los abogados y representantes de Lusad que nunca antes había visto el texto de la Concesión Modificada y que la Concesión Falsa ahora era la única concesión válida. Pero el rechazo por parte de Semovi y su titular de la Concesión Modificada, como si nunca hubiera existido, era simplemente inverosímil: tanto la Compañía como el gobierno habían firmado debidamente la Concesión Modificada y habían tomado varias medidas al respecto. Además, Semovi emitió varios documentos oficiales referentes a acciones o asuntos derivados de la Concesión Modificada. El rechazo de Semovi de la Concesión y la Concesión Modificada sólo puede explicarse como una maniobra indebida y arbitraria por parte del gobierno mexicano para despojar a Lusad de sus legítimos derechos económicos.

Lusad presentó estas y otras irregularidades en torno a las circunstancias en que se emitió la Concesión Falsa en diferentes reuniones con los funcionarios de Semovi entre el 8 de noviembre y el 23 de noviembre de 2018. El 6 de marzo de 2019, Lusad y Libero Partners presentaron una denuncia penal ante la Procuraduría General de la Ciudad de México, denunciando los eventos en relación con la reunión del 7 de noviembre de 2018. Sin embargo, México y sus autoridades han ignorado completamente a la Compañía, lo que hace que L1bero Partners incurra en daños por al menos $852 millones de dólares norteamericanos.

7

B.  Jurisdicción

Un tribunal de arbitraje constituido de conformidad el Capítulo 11 del TLCAN tiene jurisdicción sobre esta disputa. L1bero Partners, una compañía constituida en Alberta, Canadá, y EST y L1bre Holding, compañías constituidas en Delaware, Estados Unidos de América, son inversionistas de una Parte conforme al Artículo 1139. Lusad es una empresa tal como se define en el Artículo 201 del TLCAN, y una inversión de un inversionista de una Parte en virtud del Artículo 1139. México ha aceptado someter esta disputa a arbitraje conforme al Artículo 1122.

Del mismo modo, las inversiones en México de L1bero Partners, EST y L1bre Holding cumplen con la definición de inversión protegida según el Artículo 1139 del TLCAN. En la parte relevante, el Artículo 1139 del TLCAN define "inversión" como:

(a) una empresa; [...]

(e) una participación en una empresa que le da derecho al propietario a compartir los ingresos o ganancias de la empresa; [...]

(g) bienes inmuebles u otros bienes, tangibles o intangibles, adquiridos con la expectativa o utilizados con fines de lucro u otros fines comerciales; y

(h) participaciones derivadas del compromiso de capital u otros recursos en el territorio de una Parte para la actividad económica en dicho territorio, como por ejemplo:

(i) contratos que involucren la presencia de la propiedad de un inversionista en el territorio de la Parte, incluidos contratos llave en mano o de construcción, o concesiones, o

(ii) contratos en los que la remuneración dependa sustancialmente de la producción, ingresos o ganancias de una empresa

L1bero Partners, EST y L1bre Holding, son propietarias o controlan, directa o indirectamente, los derechos bajo la Concesión Modificada. Dichos derechos e intereses son "(h) participaciones que surjan del compromiso de capital u otros recursos en el territorio de una Parte para una actividad económica en dicho territorio, como por ejemplo bajo contratos, ... incluidas las concesiones". También constituyen "(g) ... propiedad, tangible o intangible, adquirida con la expectativa o utilizada con fines de lucro u otros fines comerciales." Los activos adquiridos para el desarrollo de la Concesión Modificada (incluyendo tabletas, software y hardware), que hoy permanecen inactivos en un almacén debido a las medidas tomadas por México, también

8

constituyen una propiedad tangible adquirida en la expectativa de lucro. Además, Lusad es "(a) una empresa" y, como resultado, constituye una inversión protegida, al igual que (e)... las participaciones de L1bero Partners, EST y L1bre Holding en Lusad.

### C. Bases para la reclamación

A la fecha, L1bero Partners, EST y L1bre Holding han invertido millones de dólares norteamericanos en Lusad y en el cumplimiento de los derechos y obligaciones de Lusad bajo la Concesión Modificada. El rechazo por parte del gobierno mexicano de la Concesión Modificada y las circunstancias oscuras e irregulares bajo las cuales el gobierno mexicano emitió la Concesión Falsa violaron los derechos a la transparencia, el debido proceso y el trato no arbitrario de L1bero Partners, EST, L1bre Holding y Lusad, entre otros principios fundamentales del trato justo y equitativo según el Artículo 1105 del TLCAN. Este trato también es contrario al compromiso del Trato Nacional de México conforme al Artículo 1102 y al Estándar de Trato que México otorgó a los inversionistas en virtud del Artículo 1104. Además, México ha violado el Artículo 1110 del TLCAN al expropiar la Concesión Modificada y los derechos de la misma sin una compensación.

### VI. Reparación del daño y daños reclamados

L1bero Partners, EST y L1bre Holding solicitan una indemnización total por las daños y otras pérdidas sufridas como consecuencia de las infracciones de México, y reclamarán por lo menos $ 850 millones de dólares norteamericanos en daños más los intereses gastos y costas aplicables.

VII.   Notificación

La presente notificación de intención para someter a arbitraje una reclamación es presentada ante usted como la autoridad designada por México de conformidad con el Anexo 1137.2 del TLCAN y de conformidad con el Artículo I del "Acuerdo por el que se faculta a la Dirección General de Inversión Extranjera para fungir como lugar de entrega de notificaciones y otros documentos, de conformidad con lo señalado en el artículo 1137.2 del Tratado de Libre Comercio de América del Norte" publicado en el Diario Oficial de la Federación el 12 de junio de 1996.

Muy atentamente,

Fabio Massimo Covarrubias Piffer