# Exhibit CC

## CERTIFIED TRANSLATION

I, Wolf Markowitz, Manager at Targem Translations, Inc., located at 143 Rodney Street in Brooklyn, New York, a language service with a firm track record of providing expert language services to the business and legal community of more than 50 years, do hereby certify that our team of translators, editors and proofreaders are professionally trained and vastly experienced in providing professional translations, from Spanish to English and vice versa; and they have professionally translated the document referenced as **"Nullity claim"** from Spanish to English, faithfully, accurately and completely, to the best of their expertise and experience.

Date: July 11, 2019

_____
Wolf Markowitz

_____
Notary

ROCHAL WEISS
NOTARY PUBLIC-STATE OF NEW YORK
No 01WE6293785
Qualified in Kings County
My Commission Expires 12-16-2021

**TARGEM TRANSLATIONS**
143 Rodney Street, Brooklyn, NY 11211   info@targemtranslations.com   718 384 8040   718 388 3516

SUPERIOR COURT OF JUSTICE
OF THE FEDERAL DISTRICT

- 4 CIT sets
- 1 provisional agreement and copy

2019 APR – 2 10:07 AM

SIXTY-THIRD COURT
FOR CIVIL MATTERS

'SUPERIOR COURT OF JUSTICE OF THE [illegible]
OFFICE OF THE PRESIDENT

RE**CE**IVED
01 APR 2019

CENTRAL FILING DESK FOR CIVIL COURTS
SMALL CLAIMS, ORAL, FAMILY AND
CHAMBERS SECTION No. [illegible]

**L1BRE HOLDING, LLC**

**V.**

**ESPÍRITU SANTO TECHNOLOGIES, LLC;
ESPÍRITU SANTO HOLDINGS, LP; L1BERO
PARTNERS, LP; AND SERVICIOS
DIGITALES LUSAD, S. DE R.L. DE C.V.
ORDINARY COMMERCIAL PROCEEDINGS**

**YOUR HONOR, SITTING JUDGE FOR CIVIL MATTERS
OF MEXICO CITY**

*334/19*

I, **JOSÉ GARCÍA GRANADOS TORRES,** acting in my capacity as legal representative of the foreign legal

entity called L1BRE HOLDINGS, LLC, a capacity that I accredit by means of the certified notary copy

that I hereby submit along with this writ as **Annex 1)**, which justifies said capacity; indicating as

domicile to hear and receive notifications the one located at TORRE ESMERALDA I, BOULEVARD

MANUEL ÁVILA CAMACHO NÚMERO 40, PISO 14, COLONIA LOMAS DE CHAPULTEPEC, DELEGACIÓN

[Round stamp:]
SUPREME COURT OF
JUSTICE OF THE
FEDERAL DISTRICT
SIXTY-THIRD COURT
FOR CIVIL MATTERS,
MEXICO

MIGUEL HIDALGO, C.P. 11000, IN MEXICO CITY; and authorizing Mr. JUAN CARLOS MÁRQUEZ GARCÍA

in accordance with the terms of paragraph three, article 1069 of the Code of Commerce, respectfully

appear before You and respectfully state as follows:

That, by means of this pleading, I have come to demand from (i) ESPÍRITU SANTO TECHNOLOGIES,

LLC, which may be served notice at 21 Waterway Ave., Suite 300, The Woodlands, Texas, 77380,

United States of America; (ii) ESPÍRITU SANTO HOLDINGS, LLP, which may be served notice at 50

Cape Florida Drive, Key Biscayne, Florida, 33149, United States of America; (iii) L1BERO PARTNERS,

LP, which may be served notice at 21 Waterway Ave., Suite 300, The Woodlands, Texas, 77380,

United States of America; and (iv) SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., which may be

01042019 12:59:12 C63 334/2019 A9
H/PC102 2368EC 602/01-04-2019 COURT FOR CIVIL MATTERS 203 ORDINARY COMMERCIAL
HOLDING LLC
… SANTO TECHNOLOGIES LLC

TSJCDMX
FILE 334/2019
[Signature]

served notice at Montes Urales 455, Séptimo Piso, Colonia Lomas de Chapultepec, C.P. 11000, Alcaldía Miguel Hidalgo, in Mexico City; the payment and fulfillment of the following:

**CLAIMS**

1.- The nullity of clause 5, paragraph 5.2, sub-paragraphs (b) and (d) of the Partnership Agreement entered into on December 6, 2017, by and between the companies L1BERO PARTNERS, L.P., ESPÍRITU SANTO HOLDINGS, L.P., and ESPÍRITU SANTO TECHNOLOGIES, L.L.C., by virtue of the fact that by means of the agreement adopted in said clause, they pretend to give the same effect among those who signed it and also with respect to third parties to said contractual relationship, by pretending that an organization other than the shareholders' meeting of the company SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., be the one to decide on matters expressly indicated in Article 78 of the General Corporations Act, in clear violation of the precepts analyzed throughout this lawsuit.

2.- A court ruling declaring the nullity of clause 5, paragraph 5.2, sub-paragraph (u) of the Partnership Agreement dated December 6, 2017, entered into by and between the companies L1BERO PARTNERS, L.P., ESPÍRITU SANTO HOLDINGS, L.P., and ESPÍRITU SANTO TECHNOLOGIES, L.L.C., by virtue of the fact that, without my client being a party to that contract, they pretend to limit and obstruct its free and spontaneous exercise of its right to vote within the Shareholders' Meeting of SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., in clear violation of the provisions of Article 79 of the General Corporations Act.

[Round stamp:]
SUPREME COURT OF
JUSTICE OF THE
FEDERAL DISTRICT
SIXTY-THIRD COURT
FOR CIVIL MATTERS
MEXICO

3.- A court ruling declaring the nullity of clause 12 of the Partnership Agreement that contains the arbitration commitment between L1BERO PARTNERS, LP, ESPÍRITU SANTO HOLDINGS, LP, and ESPÍRITU SANTO TECHNOLOGIES, LLC, due to its being exorbitant and affecting the rights of third parties not related to said mutual agreement, such as my client and its subsidiaries.

4.- The payment of any expenses and costs that may result from the processing of this case.

This lawsuit is based on the statements of fact and legal considerations set out below:

[Round stamp:]
SUPREME COURT OF
JUSTICE OF THE
FEDERAL DISTRICT
SIXTY-THIRD COURT
FOR CIVIL MATTERS
MEXICO

## FACTS

1.  My client is a single shareholder company, incorporated under the laws of Delaware, United States of America, whose current and sole shareholder is the company known as ESPÍRITU SANTO TECHNOLOGIES, LLC, also incorporated pursuant to the laws of the same state of the American union; as can be gathered from the notarial document that accredits my capacity.

2.  On December 6, 2017, the now co-defendants L1BERO PARTNERS, LP, ESPÍRITU SANTO HOLDINGS, LP, and ESPÍRITU SANTO TECHNOLOGIES, LLC, signed an agreement that they called Partnership Agreement. I hereby declare under oath that my client does not have an original of said document nor a certified or authorized copy thereof, due to the fact

that it is not a party to the agreement, reason why, in accordance with the provisions on that regard

set forth in article 89 of the Federal Code of Civil Procedures, applicable by extension, it is admissible

to require the defendants to produce this document when answering the complaint, be it in its

original form or in the form of a certified copy, with the warning that should they fail to do so, my

client's claims will be deemed to be true.

[Round stamp:]
SUPREME COURT OF
JUSTICE OF THE
FEDERAL DISTRICT
SIXTY-THIRD COURT
FOR CIVIL MATTERS.
MEXICO

The foregoing notwithstanding, I am attaching as **Annex 2)** a copy of said mutual agreement

written in the English language, along with its Spanish translation.

3.  To the signing of the mutual agreement described in the preceding fact, along with L1BERO

PARTNERS, LP and ESPÍRITU SANTO HOLDINGS, LP, there appeared ESPÍRITU SANTO

TECHNOLOGIES, LLC, which was called *"the Company,"* of which the former two are

shareholders.

4.  It is important to highlight that the entirety of the shares that make up the capital stock of

ESPÍRITU SANTO TECHNOLOGIES, LLC (hereinafter the "Company"), is divided into one hundred

units with voting rights, which are split equally between L1BERO PARTNERS, LP and ESPÍRITU

SANTO HOLDINGS, LP.

5.  Clause two of the Partnership Agreement established that by signing it, the Company acted as a

company controlled by L1BERO PARTNERS, LP and ESPÍRITU SANTO HOLDINGS, LP, as well as a

controlling company of my client, which in turn is a controlling company of the Mexican company

named SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., with the latter being the

titleholder to a concession granted by the Government of Mexico City, as we will discuss later.

6. Regarding the foregoing, we must emphasize that the capital stock of SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., is divided into two shares, one of which is owned by my client, while the other one belongs to the company L1BRE, LLC, which is not a party to this lawsuit.

The foregoing is accredited with the certification issued by the Secretary of the Board of Directors of SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., attached hereto as **Annex 3)**.

[Round stamp:]
SUPREME COURT OF
JUSTICE OF THE
FEDERAL DISTRICT
SIXTY-THIRD COURT
FOR CIVIL MATTERS
MEXICO

7. In other words, it is extremely relevant to this lawsuit to mention that:

   a) L1BERO PARTNERS, LP, and ESPÍRITU SANTO HOLDINGS, LP, are not shareholders of my client, and

   b) L1BERO PARTNERS, LP, and ESPÍRITU SANTO HOLDINGS, LP, and the Company, are not shareholders of SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V.

8. By signing the Partnership Agreement, several agreements were adopted between L1BERO PARTNERS, LP, and ESPÍRITU SANTO HOLDINGS, LP, as shareholders of the Company, who accepted said agreements, since in principle, they would have repercussions only in its operation.

9. Some of the agreements that L1BERO PARTNERS, LP, and ESPÍRITU SANTO HOLDINGS, LP, adopted with respect to the Company included those related to the composition, powers, and operation of the latter's Board of Directors, contained in Clause Five of the Partnership Agreement, among which the following stand out:

[Round stamp:]
SUPREME COURT OF
JUSTICE OF THE
FEDERAL DISTRICT.
SIXTY-THIRD COURT
FOR CIVIL MATTERS.
MEXICO

a) Clause 5.1, paragraph a), the Board of Directors of the Company shall be made up of four directors, two of them to be appointed by L1BERO PARTNERS, LP, and the other two by ESPÍRITU SANTO HOLDINGS, LP.

b) In that same Clause, it was agreed that the Chairman of the Board of Directors would be selected from among the 4 members appointed to serve in said board, and that the entity in charge of making the corresponding appointment would be ESPÍRITU SANTO HOLDINGS, LP, and that once the initial one-year period had elapsed, the appointment would be made by L1BERO PARTNERS, LP, following this alternating pattern in the future.

10. In Clause 5.2 of the Partnership Agreement, the parties established the capacities and powers to be held by the Board of Directors of the Company; however, and as it will become clear below, these capacities exceed the legal sphere of the Company, and they pretend that said body should have powers with respect to third parties that bear no relation to that contractual relationship.

11. In fact, in Clause 5.2, paragraphs (b) and (d) of the Partnership Agreement the Company, **L1BERO** PARTNERS, LP, and ESPÍRITU SANTO HOLDINGS, LP, agreed that the powers of the Board of Directors of the Company would include the following:

> *"5.2 Duties and Powers of the Board*
>
> *(a)*
>
> *...*
>
> *(b) To amend the articles of incorporation of the Company or articles of incorporation or corporate bylaws of any of the companies affiliated to the Company;*
>
> *...*
>
> *(d) To terminate, liquidate, or dissolve the company or any of its affiliates (including, without limitations, Lusad);"*

[Round stamp:]
SUPREME COURT OF
JUSTICE OF THE
FEDERAL DISTRICT.
SIXTY-THIRD COURT
FOR CIVIL MATTERS
MEXICO

My client is an affiliate of the Company and, in addition, it is a shareholder of SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V.; therefore, the references made with respect to affiliates in the Partnership Agreement clearly refer to, among others, my client and SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V.

12. From the simple reading of sub-paragraphs (b) and (d) of paragraph 5.2 of Clause 5 of the Partnership Agreement transcribed above, it is clear that they intend to affect the legal sphere of persons that did not sign that mutual agreement, in other words, the rights of third parties such as my client and SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., are thereby involved, compromised, and affected, even though they did not express their will to bind themselves under the terms of said agreement, thus violating the express text of article 1796 of the Federal

Civil Code, applicable as supplement to the Code of Commerce, which sets forth that contracts

only bind the parties who signed them. The following serves as support:

> "RES INTER ALIOS ACTA. Agreements may only bind
> those parties that intervene in them; and seeking to
> extend their effects to persons outside of these
> agreements is a violation of their guarantees."

> Civil amparo under review. Amaya Pedro and co-
> petitioner. August 23, 1920. Ten unanimous votes.
> Absent: Albert M. González. The publication does not
> mention the name of the rapporteur.

> Term: Fifth Term, Registry: 288246, Instance: Plenary,
> Type of Thesis: Isolated, Source: Judicial Weekly of the
> Federation, Volume VII, Matter(s): Common, Thesis:,
> Page: 751.

[Round stamp:]
SUPREME COURT OF
JUSTICE OF THE
FEDERAL DISTRICT
SIXTY-THIRD COURT
FOR CIVIL MATTERS
MEXICO

13. Likewise, neither my client nor SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., were represented

in the mutual agreement by the people who signed it, and nevertheless, the Partnership

Agreement commits and makes use of rights that belong only to them, which shows once again

that this mutual agreement is null and void since neither my client nor SERVICIOS DIGITALES

LUSAD, S. DE R.L. DE C.V., expressed their will.

14. Regardless of the foregoing, the agreements contained in sub-paragraphs b) and d) of Clause 5.2

of the Partnership Agreement are null because they violate the provisions that regulate and

apply to SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., such as the General Corporations Act

and its own corporate bylaws, as stated below.

15. As already indicated, SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., is a Mexican company governed by the provisions set forth in the General Corporations Act and its own corporate bylaws, and its only shareholders are my client and L1BRE, LLC.

16. Along this line of thought and in the terms of the provisions of article 77 of the General Corporations Act, the supreme body of SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., is its shareholders' meeting, which will adopt the appropriate resolutions by a majority of votes representing at least half of the capital stock, unless the articles of incorporation requires a larger majority.

[Round stamp:]
SUPREME COURT OF
JUSTICE OF THE
FEDERAL DISTRICT
SIXTY-THIRD COURT
FOR CIVIL MATTERS.
MEXICO

17. Consistent with the foregoing, in Clause Thirteen of the corporate bylaws of SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., its shareholders agreed as follows:

> "THIRTEEN.- The Shareholders' Meeting is the maximum authority of the Company. Shareholders' Meetings must always meet at the Company's corporate office, except in the case of unforeseeable circumstances or force majeure. Shareholders' Meetings shall meet to approve any of the matters provided for in article seventy-eight of the General Corporations Act and all other matters put to their consideration by the Shareholders and the applicable laws."

As can be gathered from the above paragraph, in adherence to what the law establishes, the shareholders of SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V. reiterated in the corporate bylaws of the company that the Shareholders' Meeting is their maximum authority and that said

Shareholders' Meeting shall be in charge of the matters referred to in article 68 [sic] of the General Corporations Act.

I hereby attach as **Annex 4)** a copy of the notarial document that contains the bylaws currently in force of SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., declaring under oath that my client does not have a certified copy of this deed, for which reason I request that the defendants be required to produce this document when answering the complaint, with the warning that should they fail to do so, my client's claims will be deemed to be true, in accordance with article 89 of the Federal Code of Civil Procedures, applicable by extension.

18. Now then, some of the powers that are reserved solely and exclusively to the shareholders' meeting of SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., which is its maximum authority, include precisely the ones listed in article 78 of the General Corporations Act, which points out the following, among others:

[Round stamp:]
SUPREME COURT OF
JUSTICE OF THE
FEDERAL DISTRICT.
SIXTY-THIRD COURT
FOR CIVIL MATTERS.
MEXICO

> *"Article 78.- The shareholders' meetings shall have the following powers:*
>
> *...*
>
> *VIII.- Amending the articles of incorporation."*

19. From the foregoing facts, the following is gathered:

(i)   The Shareholders' Meeting of SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., is comprised solely and exclusively of its shareholders.

(ii)   The Shareholders' Meeting of SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., is the maximum authority of the company.

[Round stamp:]
SUPREME COURT OF
JUSTICE OF THE
FEDERAL DISTRICT
SIXTY-THIRD COURT
FOR CIVIL MATTERS.
MEXICO

(iii)   The Shareholders' Meeting of SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., holds the exclusive power to discuss and decide on the amendment of the articles of incorporation.

Thus, it is clear that said power may not be delegated to any other corporate body, let alone a body that is foreign to the company in question, since said power belongs exclusively to the shareholders of SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., acting in a shareholders' meeting, that is, a meeting of my client along with L1BRE, LLC.

20. In a clear violation of the foregoing, through Clause 5, paragraph 5.2, sub-paragraph b) of the Partnership Agreement, the Company, L1BERO PARTNERS, L.P., and ESPÍRITU SANTO HOLDINGS, L.P., intend to evade the application of the General Corporations Act and the corporate bylaws of SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., by creating a super entity that is foreign to it, placing it even above the body that the law and its bylaws deem to be the maximum authority, in other words, the Shareholders Meeting (my client and L1BRE, LLC), and grant the Board of Directors of the Company – without

having the authority to do so – the power to amend the articles of incorporation of SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., which is a violation of articles 77 and 78, Section VIII, of the General Corporations Act, and therefore null and void.

21. With this in mind, said mutual agreement is null, on one hand, because it violates articles 77 and 78, section VIII of the General Corporations Act and the corporate bylaws of SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., for the reasons previously stated, in addition to the fact that, in that sense, the agreement itself is an amendment of the articles of incorporation, evidently carried out outside of the shareholders' meeting and adopted by individuals that are not even shareholders of said legal entity.

22. In turn, in clause 5.2, paragraph d) of the Partnership Agreement, the Company, L1BERO PARTNERS, L.P., and ESPÍRITU SANTO HOLDINGS, L.P., agreed that the liquidation of SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., would be a matter to be resolved by the Board of Directors of the Company, even though it is a matter reserved to the Shareholders' Meeting, under the terms of article 78, section XI of the General Corporations Act, as provided for in Clause Thirteen of the corporate bylaws of that company.

[Round stamp:]
SUPREME COURT OF
JUSTICE OF THE
FEDERAL DISTRICT.
SIXTY-THIRD COURT
FOR CIVIL MATTERS.
MEXICO

23. The foregoing is enough to realize that Clause 5, paragraph 5.2, sub-paragraph d) of the Partnership Agreement is null and void as it violates the applicable provisions of the General Corporations Act that have been previously specified, since by means of this agreement, they intend to have an entity foreign to the Shareholders' Meeting of SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., to be above the one to which the law grants the nature of maximum authority, delegating to it a power that is exclusive to the Shareholders'

Meeting, that is, to decide on the dissolution of the company, thus violating, on one hand, articles 77 and 78, section VIII of the General Corporations Act, and on the other, the corporate bylaws.

> "COMPANIES. PRIOR TO RESORTING TO THE COURTS TO REQUEST THE DECLARATION OF THEIR DISSOLUTION, THE DISSOLUTION MUST BE SUBMITTED TO THE CONSIDERATION OF THE SHAREHOLDERS' MEETING. Article 232 of the General Corporations Act states that, of all the grounds for the dissolution of a company contained in sections I through V of article 229 of the same legal body, only that which refers to the expiration of the term established in the contract will operate by the mere passage of time; that in all other cases, if registration is not made once the company has verified the respective ground for dissolution, the dissolution will be registered in the Public Registry of Commerce and, if not, any of the interested parties may resort to the courts to order it. In turn, article 182, section II of the aforementioned commercial law provides that the early dissolution of the company must be determined in an extraordinary shareholders' meeting, which may be convened at the request of any shareholder, as provided for in subsequent articles 183 and 184. In this context, it is evident that in all dissolution cases other than the expiration of the term, it is necessary that the company in question issue a decision on the matter, prior to making the corresponding request before the judicial authority; thus, if such a determination has not been adopted by the shareholders' meeting, the natural Judge is unable to decree it."

> SECOND THREE-JUDGE COURT OF THE FOURTEENTH CIRCUIT.

[Round stamp:]
SUPREME COURT OF
JUSTICE OF THE
FEDERAL DISTRICT
SIXTY-THIRD COURT
FOR CIVIL MATTERS
MEXICO

*Direct Amparo 185/97. Irene del Socorro Rivas Garrido. April 24, 1997. Unanimous Vote. Rapporteur: Pablo V. Monroy Gomez. Secretary: José Guadalupe Orta Méndez.*

*Term: Ninth Term, Registry: 198597, Instance: Three-Judge Circuit Courts, Type of Thesis: Isolated, Source: Judicial Weekly of the Federation and its Gazette, Volume V, June 1997, Matter(s): Civil, Thesis: XIV.2o.48 C, Page: 784.*

24. Likewise, by means of that agreement they pretend – outside of the Shareholders' Meeting and without having taken part in the legal act that originated it – to amend the corporate bylaws of SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., by granting a power that in said bylaws was given to the shareholders meeting, to an entity that is foreign to the company.

[Round stamp:]
SUPREME COURT OF
JUSTICE OF THE
FEDERAL DISTRICT
SIXTY-THIRD COURT
FOR CIVIL MATTERS
MEXICO

25. While it is true that none of the provisions expressly applicable to Limited Liability Companies contained in the General Corporations Act provides for the signing of a Partnership Agreement, it is also true that it does not exclude them, since by analogy, article 198 of the same regulatory body, which is textually transcribed below, may be applied in that case:

*"Article 198. Notwithstanding the provisions of special laws, the shareholders of corporations may agree among themselves:*

*I. Rights and obligations that establish options for the purchase or sale of shares representing the company's capital stock, such as:*

*a) That one or more shareholders may only dispose of all or part of their shareholding, when the*

acquirer also commits to acquiring a proportion or all of the shares of another or other shareholders, under the same conditions;

b) That one or more shareholders may demand from another shareholder the sale of all or part of their shareholding, when they accept an offer of acquisition, under the same conditions;

c) That one or more shareholders have the right to dispose of or acquire from another shareholder, who must be required to dispose of or acquire, as appropriate, all or part of the shareholding object of the transaction, at a determined or determinable price;

d) That one or more shareholders are required to subscribe and pay in for a certain number of shares representing the capital stock of the company, at a determined or determinable price; and

e) Other rights and obligations of a similar nature;

II. Disposals and other legal acts related to the ownership, disposition, or exercise of the right of first refusal referred to in article 132 of this Law, regardless of whether such legal acts are carried out with other shareholders or with persons other than them;

III. Agreements for the exercise of the right to vote in shareholders' meetings;

IV. Agreements for the disposal of their shares in public offers; and

V. Others of a similar nature.
The agreements referred to in this article will not be enforceable against the company, except in the case of a court order."

26. As can be gathered from the legal provision transcribed above, only the shareholders of a limited liability company may subscribe, among themselves, an agreement agreeing and committing to,

[Round stamp:]
SUPREME COURT OF
JUSTICE OF THE
FEDERAL DISTRICT
SIXTY-THIRD COURT
FOR CIVIL MATTERS
MEXICO

among other things, the exercise of the right to vote in shareholders' meetings, in other words, the manner and terms under which they will vote on a certain matter.

27. We insist, only the owner of that right has the ability to dispose of said right under the terms of article 198 of the General Corporations Act.

28. My client and the company L1BRE, LLC, are the only shareholders of SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., and as such, the only owners of the right to vote in the shareholders' meetings of that legal entity; therefore, they are the only ones legally authorized to subscribe a contract establishing the manner and conditions under which their vote will be exercised in the shareholders' meetings of SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V.

[Round stamp:]
SUPREME COURT OF
JUSTICE OF THE
FEDERAL DISTRICT
SIXTY-THIRD COURT
FOR CIVIL MATTERS
MEXICO

29. Notwithstanding the foregoing, in Clause 5, paragraph 5.2, sub-paragraph (u) of the Partnership Agreement, the Company, L1BERO PARTNERS, L.P., and ESPÍRITU SANTO HOLDINGS, L.P., agreed that the Board of Directors of the Company would have the power to:

> "(u) Exercise any of the corporate or voting rights issued by the Company Affiliates, and the appointment of any legal representative or proxy authorized to vote and approve any of the acts or matters described in paragraphs (a) through (s) of this section; for each of the Company Affiliates;
> ..."

30. As can be gathered from the above paragraph, even though the Company, L1BERO PARTNERS, L.P., and ESPÍRITU SANTO HOLDINGS, L.P., are not shareholders of SERVICIOS DIGITALES

LUSAD, S. DE R.L. DE C.V., and therefore don't have the right to vote in the shareholders' meetings, they, acting in violation of article 198 of the General Corporations Act, disposed of and committed – without being authorized or instructed to do so – the rights to vote in the shareholders' meetings of SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., owned by my client and by L1BRE, L.L.C., when they determined that it would be the Board of Directors of the Company the one to establish the manner in which this right would be exercised.

31. In other words, by means of the clause now under analysis and whose nullity is demanded herein, the parties to the Partnership Agreement disposed of a right that does not belong to them and for which they had no authorization or instruction from their rightful owners to do so, which shows the nullity of this agreement.

*[Round stamp:]*
*SUPREME COURT OF*
*JUSTICE OF THE*
*FEDERAL DISTRICT*
*SIXTY-THIRD COURT*
*FOR CIVIL MATTERS*
*MEXICO*

32. In addition to the above, Clause 5, paragraph 5.2, sub-paragraph (u) is also null because it limits and obstructs the free exercise of the right to vote of my client and of L1BRE, LLC, as shareholders of SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., by having illegally agreed that those rights would be exercised through an entity that is foreign to them and not in accordance to the will of their owners, thus violating article 79 of the General Corporations Act, which provides that said right belongs to the shareholders and no one else, which translates into the nullity of that mutual agreement.

33. Finally, the arbitration commitment contained in Clause 12 of the Partnership Agreement, is also affected by nullity, and it must be so declared.

34. In fact, under the terms of said Clause 12, the Company, L1BERO PARTNERS, L.P., and ESPÍRITU SANTO HOLDINGS, L.P., agreed that any actions derived from the Partnership Agreement would be governed by the laws of the State of Delaware, and that any disputes arising thereof, including its validity, would be submitted to an arbitration proceeding before the International Court of Arbitration of the International Chamber of Commerce (ICC).

35. As already pointed out, by subscribing the Partnership Agreement, the Company, L1BERO PARTNERS, L.P., and ESPÍRITU SANTO HOLDINGS, L.P., have intended to have said agreement affect the legal sphere of a Mexican company: SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., which, as also already stated, is governed in accordance to the applicable regulations of the General Corporations Act and its corporate bylaws; therefore, the agreement to have foreign laws applied to it is null and void.

[Round stamp:]
SUPREME COURT OF
JUSTICE OF THE
FEDERAL DISTRICT.
SIXTY-THIRD COURT
FOR CIVIL MATTERS
MEXICO

36. Likewise, the arbitration commitment contained in that Clause 12 of the Partnership Agreement between the Company, L1BERO PARTNERS, L.P., and ESPÍRITU SANTO HOLDINGS, L.P., is null and void because through it, they intend to subject third parties such as my client, L1BRE, LLC, and SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., among others, to an arbitration tribunal, when they never expressed their will to do so, nor authorized or instructed any of those companies to do so in their stead.

37. By establishing that the validity of the Partnership Agreement would be resolved by an arbitration tribunal, they intend for said agreement to have exorbitant effects so that any person with a legal interest that may consider it invalid, even though

they never expressed their will to do so, must submit to an arbitration proceeding, which is clearly null and void.

38. Finally, the arbitration commitment contained in clause 12 is null to the extent that with it, they intend to regulate any disputes, claims, or controversies that may arise from the Partnership Agreement itself which, as we have already seen, in turn intends to regulate the corporate life of, among others, SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., who is the titleholder to a concession granted by the Government of Mexico City for the installation and maintenance of digital taximeters.

[Round stamp:]
SUPREME COURT OF
JUSTICE OF THE
FEDERAL DISTRICT
SIXTY-THIRD COURT
FOR CIVIL MATTERS
MEXICO

In fact, on June 17, 2016, the Government of Mexico City issued the concession title SEMOVI/DGSTPI/001/2016, granting SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., *"...the preferential right and obligation for the replacement, installation, and maintenance of taximeters for the Individual Public Passenger Transport Services (Taxi) of Mexico City, with satellite geolocation system; as well as the design, operation, and exploitation of the application for remote taxi hiring in Mexico City."*

Thus, it is undeniable that any dispute that may be related to SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., in accordance with the provisions of articles 1457, section II, and 1462, section II, both of the Code of Commerce, which provide as grounds for declaring the nullity and not recognizing or executing an arbitral award, precisely the one to the effect that, under Mexican law, the object of the dispute is not susceptible to arbitration –which is what happens in the case at hand, since the object of the litigation is the nullity of the Partnership Agreement based on rules of public law, and what's more,

with respect to a Mexican company, holder of the title to a concession of a public right such as transportation–, cannot be resolved by a tribunal established by private parties, appointed even by the parties or a third party. On the contrary, this dispute must necessarily be heard and resolved until the end by the Mexican State, through the Judiciary, because it involves provisions of public interest and National relevance that cannot be transferable, which will not only affect the interests of the parties in this case, but also society in general, which has a vested interest in having a safe public taxi transportation service provided by a concessionaire, under the supervision of the State , in this case the Government of Mexico City.

On this regard, the doctrine has stated the following:

[Round stamp:]
SUPREME COURT OF
JUSTICE OF THE
FEDERAL DISTRICT.
SIXTY-THIRD COURT
FOR CIVIL MATTERS.
MEXICO

> "
>
> ...
>
> As a general rule, we can say that **what belongs to public law is not subject to arbitration for the purposes of private arbitration**. As a mere reminder, and in accordance with the Mexican legal system, the public law is comprised of **administrative** law, international public law, criminal law, constitutional law, labor law, tax law, as well as other branches that derive from those already indicated. Consequently, private arbitration may be used only in two of the branches: in commerce law and civil law, which are reflected internationally through the branch of private international law. ...
>
> **When a dispute involves public interests**, such as in cases of perpetration of a crime, **we're clearly dealing with a matter not subject to arbitration.** The same occurs in cases of monopoly; consumer protection,

> environmental matters, controlled pricing, licensing, and antitrust cases. **Some cases involve trade companies, but that doesn't necessarily mean that the matter is subject to arbitration.**
>
> On the other hand, and as an alternative manner to determine the matters that can be subject to arbitration, we conclude that it is those rights over which the parties can compromise, since they only affect their interests, and **no one is harmed by the decisions reached between them.**"[1]

I hereby attach as **Annex 5)** a photocopy of the concession title granted to SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., declaring under oath that my client does not have a certified copy thereof, for which reason, based on article 89 of the Federal Code of Civil Procedures, applicable by extension, I request that, when answering the complaint, the defendants be required to produce an authorized or certified copy of that concession title, with the warning that should they fail to do so, my client's claims will be deemed to be true.

[Round stamp:]
SUPREME COURT OF
JUSTICE OF THE
FEDERAL DISTRICT.
SIXTY-THIRD COURT
FOR CIVIL MATTERS.
MEXICO

39. By virtue of the foregoing, my client is in the urgent need to resort to this lawsuit, as filed.

**LAW**

---

[1] RODRIGUEZ GONZALEZ-VALADEZ, Carlos. *"México Ante el Arbitraje Comercial Internacional"* [Mexico and International Commercial Arbitrations]. Editorial Porrúa, Mexico, 1999, pp. 88 and 89.

[...]

9. **PRESUMPTIVE** [EVIDENCE], in its dual legal and human aspects, in everything that may favor the interests of my client.

I relate this evidence to each and every one of the facts of the lawsuit, and with it, the right of my client to demand from the defendant payment for the claims contained in the foreword section of this document will be accredited.

[Round stamp:]
SUPREME COURT OF
JUSTICE OF THE
FEDERAL DISTRICT
SIXTY-THIRD COURT
FOR CIVIL MATTERS
MEXICO

## PRECAUTIONARY MEASURE

Based on the provisions of article 384 of the Federal Code of Civil Procedures, I hereby ask Your Honor to decree as a precautionary measure, that the things remain in their current state until such time as this proceeding is decided in a final judgment, and specifically for the following purposes:

(i)     That during the processing of this case and until its conclusion via the issuance of a final judgment, the parties to the Partnership Agreement abstain from initiating the arbitration proceeding agreed to in its Clause 12, whose nullity is being requested;

(ii)    That during the processing of this case and until such time as a final judgment is issued, the parties and the Board of Directors of the Company abstain from carrying out acts based on

said agreement that may impact the corporate sphere of SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V.

(iii)    That during the processing of this case and until such time as a final judgment is issued, the current corporate status of SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., remain under the same terms to date, without holding any shareholders' meetings whatsoever that could modify its current legal status.

For the purposes of providing more clarity to Your Honor regarding the terms in which the precautionary measures mentioned in this section are being requested, and which, it must be insisted, are suitable, proportional, and essential in the specific case in order to make any judgment issued in this proceeding effective, we deem it necessary to take into account the content and scope of the so-called "diffuse constitutionality control" and *ex officio* "conventionality control," the *pro personae* principle, and the basic right to access to justice, in its effective precautionary protection aspect.

[Round stamp:]
SUPREME COURT OF
JUSTICE OF THE
FEDERAL DISTRICT.
SIXTY-THIRD COURT
FOR CIVIL MATTERS,
MEXICO.

Thus, we must first explain the content, scope, and regulation in our legal system of the right to access to justice, since the basic right to effective precautionary protection that Your Honor is tasked with maximizing, can be gathered from the set of rules that comprise it.

[...]

TRIBUNAL SUPERIOR
DE JUSTICIA DEL
D.    F. FEDERAL

LIBRE HOLDING, LLC

VS

ESPÍRITU SANTO TECHNOLOGIES, LLC;
ESPÍRITU SANTO HOLDINGS, LP,
LIBERO PARTNERS, LP Y SERVICIOS
DIGITALES LUSAD, S. DE R.L. DE C.V.

JUICIO: ORDINARIO MERCANTIL

**C. JUEZ DE LO CIVIL EN TURNO DE LA
CIUDAD DE MÉXICO.**

334/19

JOSÉ GARCÍA GRANADOS TORRES, en mi carácter de mandatario general de la

persona moral extranjera denominada LIBRE HOLDING, LLC personalidad que acredito

en mérito del testimonio notarial que exhibo con este escrito como Anexo 1),

justificativo de tal carácter; señalando como domicilio para oír y recibir notificaciones, el

ubicado en TORRE ESMERALDA I, BOULEVARD MANUEL ÁVILA CAMACHO

NUMERO 40, PISO 14, COLONIA LOMAS DE CHAPULTEPEC, DELEGACIÓN MIGUEL

HIDALGO, C.P. 11000, EN LA CIUDAD DE MÉXICO, autorizando en términos del tercer

párrafo del artículo 1069 del Código de Comercio, al licenciado JUAN CARLOS

MÁRQUEZ GARCÍA, ante Usted con el debido respeto comparezco a exponer:

Que, por medio del presente escrito, vengo a demandar de (i) ESPÍRITU SANTO

TECHNOLOGIES, LLC, quien puede ser emplazada en 21 Waterway Ave., Suite 300, The

Woodlands, Texas, 77380, Estados Unidos de América; (ii) ESPÍRITU SANTO

HOLDINGS, LP, quien puede ser emplazada en 50 Cape Florida Drive, Key Bizcayne,

Florida 33149, Estados Unidos de América; (iii) LIBERO PARTNERS, LP, quien puede

ser emplazada en 21 Waterway Ave., Suite 300, The Woodlands, Texas, 77380, Estados

Unidos de América y (iv) SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., quien puede

01/04/2019 12:59:12 C63 334/2019 A9
RFPC102 2X6BC 602/01-04;2019 JUZGADO 63 DE LO CIVIL 203 ORDINARIO MERCANTIL
LDHG LLC
U SANTO TECHNOLOGIES LLC

TSJCDMX
EXP. 334/2019

ser emplazada en Montes Urales 455, séptimo piso, Colonia Lomas de Chapultepec C.P. 11000, Alcaldía Miguel Hidalgo, en la Ciudad de México: el pago y cumplimiento de las siguientes:

**PRESTACIONES**

1.- La nulidad de la cláusula 5, inciso 5.2, subincisos (b) y (d) del Convenio entre Socios celebrado el seis de diciembre de dos mil diecisiete entre las sociedades denominadas L1BERO PARTNERS, L.P., ESPÍRITU SANTO HOLDINGS, L.P. y ESPÍRITU SANTO TECHNOLOGIES, L.L.C., en virtud de que mediante el acuerdo adoptado en dicha cláusula, se intenta dar al mismo efectos entre quienes lo suscribieron y también respecto de terceros ajenos a dicha relación contractual, al pretender que un órgano ajeno a la asamblea de socios de la persona moral denominada SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., sea quien resuelva los asunto a que se refiere expresamente el artículo 78 de Ley General de Sociedades Mercantiles; en franca contravención los preceptos que se analizan a lo largo de la presente demanda.

2.- La declaración judicial de nulidad de la cláusula 5, inciso 5.2, sub inciso (u) del Convenio entre Socios de fecha seis de diciembre de dos mil diecisiete, entre las sociedades denominadas L1BERO PARTNERS, L.P., ESPÍRITU SANTO HOLDINGS, L.P., y ESPÍRITU SANTO TECHNOLOGIES, L.L.C., en virtud de que, sin que mi mandante fuere parte en esa contrato, se le pretende limitar y obstruir el libre y espontáneo ejercicio de su voto dentro de la Asamblea de Socios de SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., en franca contravención a lo dispuesto por el artículo 79 de la Ley General de Sociedades Mercantiles.

3.- La declaración judicial de nulidad de la cláusula 12 del Convenio entre Socios, que contiene el compromiso arbitral entre L1BERO PARTNERS, LP, ESPÍRITU SANTO HOLDINGS, LP y ESPÍRITU SANTO TECHONOLOGIES, LLC, por resultar exorbitante y afectar derechos de terceros ajenos a dicho acuerdo de voluntades, como lo es mi mandante y sus subsidiarias.

4.-    El pago de los gastos y costas que se generen por la tramitación de este procedimiento.

Fundan esta demanda, los hechos y consideraciones de derecho que enseguida se relacionan:



**HECHOS**

1.    Mi mandante es una sociedad unipersonal, constituida bajo las leyes de Delaware, Estados Unidos de América, cuyo actual y único socio es la sociedad denominada ESPÍRITU SANTO TECHNOLOGIES, LLC, también constituida conforme a las leyes de dicho estado de la unión americana; tal y como se desprende el instrumento notarial justificativo de mi personalidad.

2.    El seis de diciembre de dos mil diecisiete, los hoy codemandados L1BERO PARTNERS, LP; ESPÍRITU SANTO HOLDINGS, LP y ESPÍRITU SANTO TECHNOLOGIES, LLC, suscribieron un acuerdo que denominaron Convenio entre Socios; manifestando bajo formal protesta de decir verdad, que mi representada no cuenta con un original ni con copia certificada o autorizada del mismo, en razón de que

no es parte del mismo, motivo por el cual de conformidad con lo que al efecto prevé el

artículo 89 del Código Federal de Procedimientos Civiles, de aplicación supletoria, es

procedente se requiera a los demandados para que al contestar la demanda exhiban este

documento, ya sea en original o copia certificada, con el apercibimiento que en caso de

no hacerlo, se tendrán por ciertas las afirmaciones de mi representada.

No obstante lo anterior, acompaño como **Anexo 2)** una copia de dicho acuerdo de

voluntades en el idioma inglés, conjuntamente con su traducción al español.

3.- A la firma del acuerdo de voluntades precisado en el hecho que antecede,

conjuntamente con L1BERO PARTNERS, L.P. y ESPÍRITU SANTO HOLDINGS, L.P.,

compareció ESPÍRITU SANTO TECHNOLOGIES, L.L.C. a quien se le denominó: *"the*

*Company"*, en español la "Compañía", de las que las primeras son socias.

4.- Es importante destacar que la totalidad de las partes sociales que integran el capital

social de ESPÍRITU SANTO TECHNOLOGIES, L.L.C (en adelante la "Compañía") se

encuentra dividido en cien unidades con derecho a voto, que se dividen por partes

iguales entre L1BERO PARTNERS, L.P. y ESPÍRITU SANTO HOLDINGS, L.P.

5.- En cláusula segunda del Convenio entre Socios, se estableció que al suscribirlo, la

Compañía actuaba como una sociedad controlada por L1BERO PARTNERS, L.P. y

ESPÍRITU SANTO HOLDINGS, L.P., y además como sociedad controladora de mi

mandante, quien a su vez es socia controladora de la sociedad de nacionalidad mexicana

denominada SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., esta última titular de

Página 5 de 44

una concesión otorgada por el Gobierno de la Ciudad de México, como más adelante se expone.

6.- En relación a lo anterior, debe hacerse hincapié que el capital social de SERVICIOS DIGITALES LUSAD, S.DE R.L. DE C.V., se encuentra dividido en dos partes sociales, de una de ellas es titular mi representada, mientras que la otra le pertenece a la sociedad denominada L1BRE, LLC que no es parte en este juicio.

Lo anterior se acredita con la certificación expedida por el Secretario del Consejo de Gerentes de SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., que se acompaña como Anexo 3).

7.- En otras palabras, resulta de gran relevancia para esta demanda hacer mención que:

   a)   L1BERO PARTNERS, L.P. y ESPÍRITU SANTO HOLDINGS, L.P., no son accionistas de mi mandante, y

   b)   L1BERO PARTNERS, L.P. y ESPÍRITU SANTO HOLDINGS, L.P., y la Compañía, no son socios de SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V.

8.- Mediante la celebración del Convenio entre Socios, fueron adoptados diversos acuerdos entre L1BERO PARTNERS, L.P. y ESPÍRITU SANTO HOLDINGS, L.P., como socios de la Compañía, quien aceptó los mismos, pues en principio únicamente tendrían repercusión en su funcionamiento.

9.- Dentro de esos acuerdos que L1BERO PARTNERS, L.P. y ESPÍRITU SANTO HOLDINGS, L.P., adoptaron respecto a la Compañía, se encuentran los relativos a la integración, facultades y funcionamiento del Consejo de Directores de esta última, contenidos en la Cláusula Quinta del Convenio entre Socios, dentro de los que destacan los siguientes:



   a) Cláusula 5.1, inciso a), el Consejo de Directores de la Compañía
      estará integrado por cuatro directores, dos de ellos designados
      por L1BERO PARTNERS, L.P., y los otros dos por ESPÍRITU
      SANTO HOLDINGS, L.P.

   b) En esa misma Cláusula, se pactó que el Presidente del Consejo de
      Directores sería elegido dentro de los 4 miembros designados
      para integrar dicho consejo, y quien haría el nombramiento
      correspondiente para el periodo inicial de un año sería ESPÍRITU
      SANTO HOLDINGS, L.P., y una vez concluido el mismo, la
      designación la realizaría L1BERO PARTNERS, L.P., y así
      alternadamente se haría en lo sucesivo.

10.- En la Cláusula 5.2 del Convenio entre Socios, las partes establecieron las facultades y poderes de los que gozaría el Consejo Directivo de la Compañía, sin embargo y como se verá en adelante, esas facultades exceden la esfera jurídica de la Compañía y pretenden que dicho órgano tenga facultades respecto de terceros ajenos a esa relación contractual.

11.- En efecto, en la Cláusula 5.2, incisos (b) y (d) del Convenio entre Socios, se convino por parte de la Compañía, LIBERO PARTNERS, L.P. y ESPÍRITU SANTO HOLDINGS, L.P., que dentro de las facultades del Consejo directivo de la Compañía, estarían las siguientes:

> *"5.2 Funciones y Poderes del Consejo.*
>
> *(a)*
>
> *...*
>
> *(b) Enmendar los artículos de asociación de la Compañía o documentos de incorporación o estatutos sociales de cualquiera de las sociedades afiliadas de la Compañía;*
>
> *...*
>
> *(d) Terminar, liquidar o disolver a la compañía o cualquiera de sus afiliadas (incluyendo sin limitación, Lusad);"*



Mi representada es una sociedad afiliada de la Compañía, y además, es socia de SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., por lo tanto, las referencias que en Convenio entre Socios se realizan respeto de afiliadas, es claro que hacen referencia, entre otras, a mi mandante y a SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V.

12.- Los subincisos (b) y (d) del Inciso 5.2 de la Cláusula 5 del Convenio entre Socios que han quedado antes trascritos, como se aprecia de su simple lectura, pretenden impactar en la esfera jurídica de personas que no suscribieron ese acuerdo de voluntades, es decir, se involucran, comprometen y afectan derechos de terceros, como lo son mi mandante y SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., aún y cuando ellos no externaron su voluntad para obligarse en los términos del mismo, contraviniendo de esta manera el texto expreso del artículo 1796 del Código Civil

Federal, de aplicación Supletoria al Código de Comercio, que establece que los contratos únicamente obligan a quienes los suscriben. Sirve de apoyo:

> "RES INTER ALIOS ACTA. Los convenios no pueden obligar más que a los que en ellos intervienen, y pretender extender sus efectos a personas ajenas a esos convenios, importa para ellas una violación de garantías."
>
> Amparo civil en revisión. Amaya Pedro y coagraviada. 23 de agosto de 1920. Unanimidad de diez votos. Ausente: Alberto M. González. La publicación no menciona el nombre del ponente.
>
> Época: Quinta Época, Registro: 288246, Instancia: Pleno, Tipo de Tesis: Aislada, Fuente: Semanario Judicial de la Federación, Tomo VII, Materia(s): Común, Tesis:, Página: 751

13.- Tampoco en ese acuerdo de voluntades mi mandante, ni SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., estuvieron representadas por las personas que lo celebraron, y no obstante ello, en el Convenio entre Socios, se comprometen y disponen derechos de los que únicamente aquellas son titulares, lo que pone de manifiesto, de nueva cuenta, que ese acuerdo de voluntades es nulo al no haber externado su voluntad mi mandante, ni SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V.

14.- Con independencia de lo anterior, los pactos contenidos subincisos b) y d) de la Cláusula 5.2 del Convenio entre Socios, son nulos al contravenir las disposiciones que regulan y le resultan aplicables a SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., como lo son la Ley General de Sociedades Mercantiles y sus propios estatutos sociales, tal y como a continuación se expone.

15.- SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., como ya se ha señalado, es una sociedad mercantil de nacionalidad mexicana, que se rige por lo dispuesto en la Ley General de Sociedades Mercantiles y sus estatutos sociales, y sus únicos socios son mi mandante y L1BRE, LLC.

16.- En ese orden de ideas y en términos de lo dispuesto por el artículo 77 de la Ley General de Sociedades Mercantiles, el órgano supremo de SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., es su asamblea de socios, quien adoptará las resoluciones correspondientes por mayoría de votos que representen por lo menos la mitad del capital social, a menos de que el contrato social exija una mayoría más elevada.

17.- En concordancia con lo anterior, en la Cláusula Décima Tercera de los estatutos sociales de SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., los socios de ésta acordaron:

> "*DÉCIMA TERCERA.- La Asamblea de Socios es el órgano supremo de la Sociedad, Las Asambleas de Socios siempre se deberán reunir en el domicilio de la Sociedad, excepto en caso fortuito o fuerza mayor, Las Asambleas de Socios se reunirán para aprobar cualquiera de los asuntos previstos en el artículo setenta y ocho de la Ley General de Sociedades Mercantiles y todos los demás asuntos puestos a su consideración de los Socios y las leyes aplicables.*"

Como se desprende de lo anterior, en apego a lo que la legislación establece, los socios de SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., en los propios estatutos de la sociedad, reiteraron que la Asamblea de Socios es su órgano supremo y que ésta se

encargará de los asuntos a que se refiere el artículo 68 de la Ley General de Sociedades Mercantiles.

Adjunto al presente como **Anexo 4**, copia del instrumento notarial que contiene los estatutos vigentes de SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V.; manifestando bajo formal protesta de decir verdad, que mi mandante no cuenta con una copia certificada o testimonio de esta escritura, motivo por el cual, solicito se requiera a las demandadas para que la exhiban al contestar la demanda, con el apercibimiento que en caso de no hacerlo, se tendrán por ciertas las afirmaciones de mi mandante, de conformidad con el artículo 89 del Código Federal de Procedimientos Civiles, de aplicación supletoria.



18.- Ahora bien, dentro de las facultades que se encuentran reservadas única y exclusivamente a la asamblea de socios de SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., órgano supremo de la misma, se encuentran precisamente los enumerados en el artículos 78 de la Ley General de Sociedades Mercantiles, que entre otros asuntos señala el siguiente:

> *"Artículo 78.- Las asambleas tendrán las facultades siguientes:*
>
> *...*
>
> *VIII.- Modificar el contrato social."*

19.- De los hechos que anteceden se desprende lo siguiente:

(i)    La Asamblea de Socios de SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., se integra única y exclusivamente por los socios de la misma.

(ii)    La Asamblea de Socios de SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., es el órgano supremo de la sociedad.

(iii)    Es facultad exclusiva de la Asamblea de Socios de SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., resolver y acordar lo relativo a la modificación del contrato social.



Es claro así, que dicha facultad no pueden ser delegadas a ningún otro órgano social, mucho menos a un órgano que le es ajeno a la sociedad de que se trate, pues ella es exclusiva de los socios de SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., actuando en asamblea, esto es, de mi mandante conjuntamente con L1BRE, LLC.

20.- En franca contravención a lo anterior, mediante la Cláusula 5, inciso 5.2, subinciso b) del Convenio entre Socios, la Compañía, L1BERO PARTNERS, L.P. y ESPÍRITU SANTO HOLDINGS, L.P., pretenden evadir la aplicación de la Ley General de Sociedades Mercantiles y los estatutos sociales de SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., creando un súper órgano que le es ajeno a ésta, por encima, incluso del órgano que la ley y sus estatutos le reputan como supremo, esto es, la Asamblea de Socios (mi mandante y L1BRE LLC) y concederle al Consejo de Directores de la Compañía, sin estar

autorizados para ello, la facultad de modificar el contrato social de SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., lo que resulta violatorio de los artículos 77 y 78, fracción VIII, de la Ley General de Sociedades Mercantiles y por ende, nulo.

21.- Así las cosas, dicho acuerdo de voluntades resulta nulo por un lado al violar los artículos 77 y 78, fracción VIII, de la Ley General de Sociedades Mercantiles y los estatutos sociales de SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., por los motivos expuestos, además de que el propio acuerdo en ese sentido es una modificación en sí al contrato social, llevado a cabo fuera de asamblea claro está y adoptado por personas que ni siquiera son socios de dicha persona moral.

22.- Por su parte, en la cláusula 5.2 inciso d) del Convenio entre Socios, la Compañía, IBERO PARTNERS, L.P. y ESPÍRITU SANTO HOLDINGS, L.P., acordaron que la liquidación de SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., sería una cuestión que sería resuelta por el Consejo de Directores de la Compañía, no obstante que es un asunto reservado a la Asamblea de Socios, en términos del artículo 78, fracción XI, de la Ley General de Sociedades Mercantiles, tal y como se encuentra previsto en la Cláusula Décima Tercera de los estatutos sociales de dicha sociedad.

23.- Lo anterior es suficiente para percatarse que la Cláusula 5, inciso 5.2, subinciso d) del Convenio entre Socios es nula al contravenir las disposiciones aplicables de la Ley General de Sociedades Mercantiles que han quedado precisadas con anterioridad, pues mediante dicho acuerdo se pretende que un órgano ajeno a la Asamblea de Socios de SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., esté por encima de aquel al que la ley le otorga el carácter de supremo, y se le delega una facultad exclusiva de la Asamblea

de Socios, esto es, la de decidir sobre la disolución de la sociedad, violando de esa manera, por un lado los artículos 77 y 78, fracción VIII, de la Ley General de Sociedades Mercantiles y por otro los propios estatutos sociales.



> *"SOCIEDADES. PREVIAMENTE A ACUDIR ANTE LA AUTORIDAD JUDICIAL A SOLICITAR QUE SE DECLARE SU DISOLUCIÓN, ÉSTA DEBE PROPONERSE A LA ASAMBLEA. El artículo 232 de la Ley General de Sociedades Mercantiles señala que de las causas de disolución de una sociedad, contenidas en las fracciones I a V del diverso numeral 229 del mismo ordenamiento, únicamente la que se refiere a la expiración del término fijado en el contrato, se realizará por el solo transcurso del tiempo; que en cualquier otra hipótesis, al no hacerse la inscripción una vez comprobada por la sociedad la causa respectiva, la disolución se inscribirá en el Registro Público de Comercio y, de no ser así, alguno de los interesados puede acudir ante la autoridad judicial para que la ordene. Por su parte, el artículo 182, fracción II, de la citada ley mercantil prevé que la disolución anticipada de la sociedad deberá determinarse en asamblea extraordinaria, cuya celebración puede ser solicitada por cualquier socio, según lo disponen los artículos 183 y 184 siguientes. En este contexto, se evidencia que en todos los casos de disolución, distintos de la expiración del término, resulta necesario que la sociedad mercantil de que se trate se pronuncie al respecto, previamente a formular la solicitud correspondiente ante el órgano judicial; de ahí que si tal determinación no ha sido tomada por la asamblea, el Juez natural se encuentra imposibilitado para decretarla."*

*SEGUNDO TRIBUNAL COLEGIADO DEL DÉCIMO CUARTO CIRCUITO.*

*Amparo directo 185/97. Irene del Socorro Rivas Garrido
24 de abril de 1997. Unanimidad de votos. Ponente: Pablo
V. Monroy Gómez. Secretario: José Guadalupe Orta
Méndez.*

*Época: Novena Época, Registro: 198597, Instancia:
Tribunales Colegiados de Circuito, Tipo de Tesis: Aislada,
Fuente: Semanario Judicial de la Federación y su Gaceta,
Tomo V, Junio de 1997, Materia(s): Civil, Tesis: XIV.2o.48
C, Página: 784.*

24.- Asimismo, mediante ese pacto se pretende, fuera de Asamblea de Socios, y sin que

estos hayan participado en el acto jurídico que le dio origen, modificar los estatutos

sociales de SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., al otorgar una facultad

que en ellos se estableció en favor de la asamblea, en favor de un órgano que es ajeno a

la sociedad.



25.- Si bien es cierto que dentro de las disposiciones expresamente aplicables a las

Sociedades de Responsabilidad Limitada contenidas en la Ley General de Sociedades

Mercantiles, no se prevé la celebración de un Convenio entre Socios, también lo que ello

no les es excluyente, pues por analogía puede aplicarse bajo ese supuesto el artículo 198

de ese mismo dispositivo normativo, el cual a la letra reza:

*"Artículo 198. Sin perjuicio de lo que dispongan las leyes
especiales, los accionistas de las sociedades anónimas
podrán convenir entre ellos:
I. Derechos y obligaciones que establezcan opciones de
compra o venta de las acciones representativas del capital
social de la sociedad, tales como:
a) Que uno o varios accionistas solamente puedan enajenar
la totalidad o parte de su tenencia accionaria, cuando el*

adquirente se obligue también a adquirir una proporción o
la totalidad de las acciones de otro u otros accionistas, en
iguales condiciones;

*b)* Que uno o varios accionistas puedan exigir a otro socio
la enajenación de la totalidad o parte de su tenencia
accionaria, cuando aquéllos acepten una oferta de
adquisición, en iguales condiciones;

*c)* Que uno o varios accionistas tengan derecho a enajenar
o adquirir de otro accionista, quien deberá estar obligado a
enajenar o adquirir, según corresponda, la totalidad o parte
de la tenencia accionaria objeto de la operación, a un precio
determinado o determinable;

*d)* Que uno o varios accionistas queden obligados a
suscribir  y  pagar  cierto  número  de  acciones
representativas del capital social de la sociedad, a un precio
determinado o determinable, y

*e)* Otros derechos y obligaciones de naturaleza análoga;

*II.* Enajenaciones y demás actos jurídicos relativos al
dominio, disposición o ejercicio del derecho de preferencia
a que se refiere el artículo 132 de esta Ley, con
independencia de que tales actos jurídicos se lleven a cabo
con otros accionistas o con personas distintas de éstos;

*III.* Acuerdos para el ejercicio del derecho de voto en
asambleas de accionistas;

*IV.* Acuerdos para la enajenación de sus acciones en oferta
pública; y

*V.* Otros de naturaleza análoga.

Los convenios a que se refiere este artículo no serán
oponibles a la sociedad, excepto tratándose de resolución
judicial."



26.- Como se aprecia del precepto legal antes trascrito, son únicamente los socios de
una sociedad de responsabilidad limitada quienes pueden suscribir, entre ellos, un
acuerdo en el que se convenga y comprometa, entre otras cosas, el ejercicio del derecho

de voto en asambleas de socios, esto es, la forma y términos que votaran determinado asunto.

27.- Se insiste, únicamente es el titular de ese derecho quien puede disponer del mismo en términos del artículo 198 de la Ley General de Sociedades Mercantiles.

27.- Mi mandante y la sociedad denominada L1BRE, LLC, son las únicas socias de SERVICIOS DIGITALES LUSAD, S. DE R.L DE C.V., y como tales, las únicas titulares de derecho de voto en las asambleas de socios de dicha persona moral, por lo tanto, son ellas las únicas facultadas legalmente para suscribir un contrato mediante el cual se comprometa la forma y condiciones en que su voto se ejercerá en las asambleas de SERVICIOS DIGITALES LUSAD, S. DE R.L DE C.V.



29.- No obstante lo anterior, en la Cláusula 5, inciso 5.2, sub inciso (u) del Convenio entre Socios, la Compañía, L1BERO PARTNERS, L.P. Y ESPÍRITU SANTO HOLDINGS, L.P., acordaron que sería facultad del Consejo Directivo de la Compañía:

> *"(u) El ejercicio de cualesquier derechos corporativos o de voto emitidos por las Afiliadas de la Compañía y la designación de cualquier apoderado o autorizado para votar y aprobar cualesquiera de los actos o asuntos descritos en los párrafos (a) al (s) de la presente sección; por cada una de las Afiliadas de la Compañía;*
> *..."*

30.- Como se desprende de lo anterior, aún y cuando la Compañía, L1BERO PARTNERS, L.P. y ESPÍRITU SANTO HOLDINGS, L.P., no son socias de SERVICIOS DIGITALES

LUSAD, S. DE R.L DE C.V., y por lo tanto el derecho de voto en las asambleas de socios no les corresponde, éstas, en contravención del artículo 198 de la Ley General de Sociedades Mercantiles, dispusieron y comprometieron, sin estar autorizados o instruidos para ello, de los derechos de voto de los que son titulares mi mandante y L1BRE, LLC, en la asamblea de socios de SERVICIOS DIGITALES LUSAD, S. DE R.L DE C.V., al determinar que será el Consejo Directivo de la Compañía quien establecería la forma en que ese derecho sería ejercido.

31.- Es decir, mediante la cláusula que ahora se analiza y cuya nulidad se demanda, las partes del Contrato de Sociedad dispusieron de un bien que a ellas no les corresponde a respecto del cual no contaban con autorización o instrucción de sus verdaderos titulares para hacerlo, lo que pone de manifiesto la nulidad de ese acuerdo.

32.- Aunado a lo anterior, la Cláusula 5, inciso 5.2, subinciso (u) también es nula, porque mediante la misma se limita y obstruye el libre ejercicio del derecho de voto de mi mandante y L1BRE, LLC, como socias de SERVICIOS DIGITALES LUSAD, S. DE R.L DE C.V., al haber acordado ilegalmente que esos derechos serían ejercidos a través de un órgano que les es ajeno y no conforme a la voluntad de sus titulares, violando de esa manera el artículo 79 de la Ley General de Sociedades Mercantiles, que dispone que ese derecho es de los socios y de nadie más, lo que se traduce en la nulidad de ese acuerdo de voluntades.

33.- Por último, el compromiso arbitral contenido en el Convenio entre Socios, Cláusula 12, también está afectado de nulidad, y así habrá de declararse.

34.- En efecto, en términos de dicha Cláusula 12, la Compañía, L1BERO PARTNERS, L.P. y ESPÍRITU SANTO HOLDINGS, L.P., acordaron que las acciones derivadas del Convenio entre Socios, se regirían y les serían aplicables las leyes del Estado de Delaware y que cualquier controversia que resultare del mismo, incluyendo su validez, sería sometido a un arbitraje administrado ante la Corte Internacional de Arbitraje de la Cámara de Comercio Internacional ("ICC").

35.- Como se ha señalado, al haber suscrito el Convenio entre Socios, la Compañía, L1BERO PARTNERS, L.P. y ESPÍRITU SANTO HOLDINGS, L.P., han pretendido que el mismo repercute en la esfera jurídica de una sociedad mercantil de nacionalidad mexicana: SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., la cual como también se ha sostenido, se rige de conformidad con las normas aplicables de la Ley General de Sociedades Mercantiles y sus estatutos Sociales, por lo que el acuerdo para que le sean aplicadas leyes extranjeras resulta nulo.



36.- Asimismo, es nulo el compromiso arbitral que en esa Cláusula 12 del Contrato de Sociedad la Compañía, L1BERO PARTNERS, L.P. Y ESPÍRITU SANTO HOLDINGS, L.P., pues mediante el mismo pretenden someter a terceros como lo son mi mandante, L1BRE, LLC, y SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., entre otros, a un tribunal arbitral, cuando éstas jamás externaron su voluntad para ello, ni autorizaron o instruyeron a ninguna de esas sociedades para hacerlo.

37.- Al establecerse que la validez del Convenio entre Socios sería resuelta por un tribunal arbitral, se pretende que dicho acuerdo tenga efectos exorbitantes para el efecto de que cualquier persona con interés jurídico que los considere inválido, aún y

cuando no haya expresado su voluntad para ello, debe someterse a un procedimiento arbitral, lo que resulta a todas luces nulo.

38.- Finalmente, el compromiso arbitral de la cláusula 12 resulta nulo en tanto que con el mismo se pretende regular cualquier disputa, reclamación o controversia que resulte del propio Convenio entre Socios, el que como hemos visto, a su vez pretende regular la vida social de, entre otras, SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., quien resulta ser concesionaria del Gobierno de la Ciudad de México para la instalación y mantenimiento de taxímetros digitales.

Efectivamente, el diecisiete de junio de dos mil dieciséis, el Gobierno de la Ciudad de México expidió el título de concesión SEMOVI/DGSTPI/001/2016, a través del cual se otorgó a SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., *"...el derecho y la obligación de manera preferencial para la sustitución, instalación y mantenimiento de taxímetros del Servicio de Transporte de Pasajeros Público Individual (Taxi) de la Ciudad de México, con sistema de geolocalización satelital; así como del diseño, operación y explotación de la aplicación de contratación remota del taxi, en la Ciudad de México".*



Entonces, es inconcuso que cualquier disputa que pudiera tener relación con SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., de conformidad con lo dispuesto en los artículos 1457, fracción II, y 1462, fracción II, ambos del Código de Comercio, que prevén como causas para decretar la nulidad y no reconocer ni ejecutar un laudo arbitral, precisamente, el que según la legislación mexicana, el objeto de la controversia no sea susceptible de arbitraje; lo que ocurre en la especie, pues el objeto de la *litis* es la nulidad del Convenio entre Socios a la luz de normas de derecho público, y lo que es más,

respecto de una sociedad mercantil mexicana concesionaria de un derecho público como lo es el transporte; lo que por ende, no puede ser resuelto por un tribunal instituido por particulares, designados incluso por las partes o por un tercero; sino que esta controversia debe, necesariamente, ventilarse y resolverse hasta sus últimas consecuencias por el Estado Mexicano, a través del Poder Judicial, pues están de por medio disposiciones de interés público y relevancia Nacional, que no pueden ser transigibles, y que no sólo afectarán los intereses de las partes en este juicio, sino a la sociedad en general, quien está interesada en que el transporte público de taxi sea seguro y esté prestado por una sociedad concesionaria, bajo la observancia del Estado, en este caso el Gobierno de la Ciudad de México.

Sobre el particular, la doctrina ha señalado al respecto, lo siguiente:



> "
>
> ...
>
> Como regla general podemos decir que *lo que pertenece al derecho público no es arbitrable para efectos del arbitraje privado.* Como mero recordatorio y de acuerdo con el sistema jurídico mexicano, el derecho público se encuentra integrado por: derecho **administrativo**, derecho internacional público, derecho penal, derecho constitucional, derecho laboral, derecho fiscal, así como por otras ramas que derivan de las indicadas. En consecuencia, el arbitraje privado se puede utilizar únicamente en dos ramas: el derecho comercial y derecho civil, las cuales se reflejan a nivel internacional mediante la rama del derecho internacional privado. ...
>
> *Cuando una disputa envuelva intereses públicos,* como el caso de la comisión de un delito, *estamos claramente frente a una materia no arbitrable.* Igualmente sucede en el caso de monopolios, protección al consumidor,

*cuestiones ambientales, precios controlados, licencias de antitrust. En algunos casos están envueltos negocios comerciales y no por eso se deduce que la materia se arbitrable.*

*Por otro lado, y como otra manera de determinar la materia sobre la cual se puede efectuar el arbitraje, se concluye que son aquellos derechos sobre los cuales las partes pueden transigir, pues solamente afectan sus intereses y a nadie perjudican las decisiones que se tomen sobre ellos."*[1]

Como **Anexo 5)**, acompaño una copia fotostática del título de concesión otorgado a SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., manifestando bajo formal protesta de decir verdad, que mi mandante no cuenta con una copia certificada del mismo, motivo por el cual, con fundamento en el artículo 89 del Código Federal de Procedimientos Civiles, de aplicación supletoria, solicito se requiera a los demandados para que al momento de dar contestación a la demanda, exhiban una copia autorizada o certificada de este título de concesión, con el apercibimiento que de no hacerlo, se tendrán por ciertas las afirmaciones de mi representada.

39.- En mérito de todo lo anterior, mi poderdante se ve en la imperiosa necesidad de acudir a la presente demanda, en la vía y forma propuestas.

**DERECHO**

[1] RODRÍGUEZ GONZÁLEZ-VALADEZ, Carlos. "México ante el Arbitraje Comercial Internacional". Editorial Porrúa, México, 1999, p. 88 y 89

Son aplicables en cuanto al fondo del asunto, los artículos 1º, fracción III, 2º, 58, 59, 74, 75, 77, 78, 79, 198 y demás relativos y aplicables de la Ley General de Sociedades Mercantiles; 1910, 2108, 2109 y 2110 del Código Civil Federal, de aplicación supletoria. El procedimiento se rige por lo dispuesto en los artículos 1377, 1378 y demás relativos y aplicables del Código de Comercio. Su Señoría es competente para conocer del presente asunto, atento a lo dispuesto por los artículos 1090, 1091 y demás relativos y aplicables del Código de Comercio, y la jurisprudencia siguiente:



> *"ARBITRAJE COMERCIAL. COMPETENCIA PARA*
> *CONOCER DE LA ACCIÓN DE NULIDAD DEL ACUERDO*
> *DE ARBITRAJE PREVISTA EN EL PRIMER PÁRRAFO DEL*
> *ARTÍCULO 1424 DEL CÓDIGO DE COMERCIO.*
> *CORRESPONDE AL JUEZ Y NO AL TRIBUNAL ARBITRAL.*
> *La posibilidad de apartar la intervención de la justicia*
> *estatal en un conflicto, a fin de someterlo al arbitraje*
> *comercial, es una manifestación de la potestad de los*
> *particulares para renunciar a sus derechos subjetivos y*
> *establecer los dispositivos legales a los cuales desean*
> *someterse; de ahí que un acuerdo de arbitraje pueda estar*
> *incluido en un contrato como cláusula compromisoria, lo*
> *que por regla general y en términos del artículo 1432 del*
> *Código de Comercio, otorga su competencia a los árbitros*
> *para intervenir, conocer y decidir aun sobre la existencia o*
> *validez del propio contrato, así como de dicha cláusula*
> *compromisoria, lo contrario violaría la voluntad de las*
> *partes. Sin embargo, existe una excepción a dicha regla,*
> *cuando en términos del artículo 1424 del citado Código,*
> *ante un órgano jurisdiccional se somete el diferendo, sobre*
> *un contrato que contenga una cláusula compromisoria, y se*
> *ejerza al mismo tiempo la acción para que la misma se*
> *declare nula, ineficaz o de ejecución imposible, la que en*
> *dicho supuesto haría necesaria una decisión judicial previa,*
> *sobre la acción de nulidad. Lo anterior porque, por un lado,*

*no debe soslayarse la existencia del debido control judicial sobre el arbitraje y, por el otro, la competencia de los árbitros proviene de la autonomía de la voluntad de las partes, de manera que si se alega, por ejemplo, la existencia de algún vicio de la voluntad en el acto que otorga competencia al árbitro, la acción de nulidad debe resolverse previamente por el órgano jurisdiccional, quedando a salvo los derechos de las partes para que en términos del segundo párrafo del referido artículo 1424 puedan iniciarse las actuaciones arbitrales relativas a la disputa sobre el cumplimiento e inclusive la existencia o validez del propio contrato que contiene la cláusula compromisoria, ya que a ese respecto el tribunal arbitral conserva su competencia exclusiva."*

*Contradicción de tesis 51/2005-PS. Entre las sustentadas por los Tribunales Colegiados Sexto y Décimo, ambos en Materia Civil del Primer Circuito. 11 de enero de 2006. Mayoría de tres votos. Disidentes: Olga Sánchez Cordero de García Villegas y José Ramón Cossío Díaz. Ponente: Juan N. Silva Meza. Secretario: Eligio Nicolás Lerma Moreno.*
*Tesis de jurisprudencia 25/2006. Aprobada por la Primera Sala de este Alto Tribunal, en sesión de fecha veintinueve de marzo de dos mil seis.*
*Época: Novena Época. Registro: 174303. Instancia: Primera Sala. Tipo de Tesis: Jurisprudencia. Fuente: Semanario Judicial de la Federación y su Gaceta. Tomo XXIV, Septiembre de 2006. Materia(s): Civil. Tesis: 1a./J. 25/2006. Página: 5*



Sin que ello agote el derecho de mi representada para anunciar nuevos medios de convicción en el momento procesal oportuno, con fundamento en el artículo 1378 del Código de Comercio, desde este momento ofrezco de mi parte las siguientes PRUEBAS:

**1.-** CONFESIONAL, a cargo del LIBERO PARTNERS, L.P., por conducto de apoderado o representante con facultades para absolver posiciones en su nombre y representación; a quien habrá de citársele en el domicilio procesal que señale en autos, a fin de que comparezca local de ese H. Juzgado a absolver las posiciones que se le formularán el día y hora que al efecto se señale, al tenor del pliego de posiciones que en su momento será exhibido; bajo el apercibimiento que de no comparecer sin justa causa, será declarado confeso de las posiciones que previamente sean calificadas de legales.

Esta prueba la relaciono con todos los hechos de la demanda y con la misma, se demostrará que L1BERO PARTNERS, L.P., es socia de ESPÍRITU SANTO TECHNOLOGIES, LLC. y que en conjunto con ésta y ESPÍRITU SANTO HOLDINGS, L.P., celebró el Convenio entre Socios, en el que acordaron, ilegalmente, delegar en favor de un órgano que les es ajeno a mi mandante, a L1BRE, LLC, y a SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., facultades que únicamente corresponden a los socios de ésta última actuando en asamblea, así como que dispusieron de derechos que no le corresponden al delegárselos a terceros y han celebrado un pacto arbitral que pretende someter a éstas últimas tres personas a un procedimiento que jamás acordaron. La razón por la cual se estima que con esta prueba se demostrarán mis afirmaciones, es que de las respuestas que vierta el absolvente, debidamente protestado para conducirse con verdad, su Señoría se percatará la veracidad de tales afirmaciones y que asiste la razón a mi representada.

**2.-** CONFESIONAL, a cargo del de ESPÍRITU SANTO TECHNOLOGIES, LLC, por conducto de apoderado o representante con facultades para absolver posiciones en su nombre y representación; a quien habrá de citársele en el domicilio procesal que señale

en autos, a fin de que comparezca local de ese H. Juzgado a absolver las posiciones que

se le formularán el día y hora que al efecto se señale, al tenor del pliego de posiciones

que en su momento será exhibido; bajo el apercibimiento que de no comparecer sin justa

causa, será declarado confeso de las posiciones que previamente sean calificadas de

legales. Esta prueba la relaciono con todos los hechos de la demanda y con la misma, se

demostrará que ESPÍRITU SANTO HOLDINGS, L.P., es socia de ESPÍRITU SANTO

TECHNOLOGIES, LLC, y que en conjunto con ésta y L1BERO PARTNERS, L.P., celebró

el Convenio entre Socios, en el que acordaron, ilegalmente, delegar en favor de un

órgano que les es ajeno a mi mandante, a L1BRE, LLC, y a SERVICIOS DIGITALES

LUSAD, S. DE R.L. DE C.V., facultades que únicamente corresponden a los socios de ésta

última actuando en asamblea, así como que dispusieron de derechos que no le

corresponden al delegárselos a terceros y han celebrado un pacto arbitral que pretende

someter a éstas últimas tres personas a un procedimiento que jamás acordaron. La

razón por la cual se estima que con esta prueba se demostrarán mis afirmaciones, es

que de las respuestas que vierta el absolvente, debidamente protestado para conducirse

con verdad, su Señoría se percatará la veracidad de tales afirmaciones y que asiste la

razón a mi representada.

3.-   **CONFESIONAL**, a cargo del de ESPÍRITU SANTO HOLDINGS, LP, por conducto

de apoderado o representante con facultades para absolver posiciones en su nombre y

representación; a quien habrá de citársele en el domicilio procesal que señale en autos,

a fin de que comparezca local de ese H. Juzgado a absolver las posiciones que se le

formularán el día y hora que al efecto se señale, al tenor del pliego de posiciones que en

su momento será exhibido; bajo el apercibimiento que de no comparecer sin justa causa,

será declarado confeso de las posiciones que previamente sean calificadas de legales.

Esta prueba la relaciono con todos los hechos de la demanda y con la misma, se demostrará que ESPÍRITU SANTO TECHNOLOGIES, LLC, es socia de mi representada y que en conjunto con L1BERO PARTNERS, L.P., y ESPÍRITU SANTO HOLDINGS, L.P., celebró el Convenio entre Socios, en el que estuvo de acuerdo en que, ilegalmente, se delegara en favor de un órgano que les es ajeno a mi mandante, a L1BRE, LLC, y a SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., facultades que únicamente corresponden a los socios de ésta última actuando en asamblea, así como que dispusieron de derechos que no le corresponden al delegárselos a terceros y han celebrado un pacto arbitral que pretende someter a éstas últimas tres personas a un procedimiento que jamás acordaron. La razón por la cual se estima que con esta prueba se demostrarán mis afirmaciones, es que de las respuestas que vierta el absolvente, debidamente protestado para conducirse con verdad, su Señoría se percatará la veracidad de tales afirmaciones y que asiste la razón a mi representada.



**4.- DOCUMENTAL PRIVADA**, consistente en el Convenio entre Socios, que por el momento exhibo en copia como **Anexo 2)**, manifestando bajo protesta que mi representada no cuenta con un original o copia certificada del mismo, por lo que de conformidad con el artículo 89 del Código Federal de Procedimientos Civiles, de aplicación supletoria, solicito se requiera a los demandados para que al producir su contestación, exhiban este documento en original o copia certificada, con el apercibimiento que en caso de no hacerlo, se tendrán por ciertas las afirmaciones de mi representada.

Esta prueba la relaciono con todos los hechos de la demanda y con la misma, mi mandante demostrarán las causas de nulidad que se invocan en este escrito, ya que las cláusulas invocadas están contenidas precisamente en este documento.

6.- **DOCUMENTAL PRIVADA**, consistente en el certificado emitido por el Secretario de Consejo de Gerentes de SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., que se exhibe como **Anexo 3).**

Esta prueba la relaciono con todos los hechos de la demanda y con la misma se pretende demostrar los socios que conforman dicha persona moral, ya que ello se desprende de este documento, expedido por la persona facultada para tales efectos.

7.- **DOCUMENTAL PÚBLICA**, consistente en los estatutos sociales de SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., mismos que se contienen en el instrumento notarial que por el momento se exhibe en copia como **Anexo 4),** manifestando bajo protesta que mi representada no cuenta con un original o copia certificada del mismo, por lo que de conformidad con el artículo 89 del Código Federal de Procedimientos Civiles, de aplicación supletoria, solicito se requiera a los demandados para que al producir su contestación, exhiban este documento en original o copia certificada, con el apercibimiento que en caso de no hacerlo, se tendrán por ciertas las afirmaciones de mi representada.

Esta prueba la relaciono con todos los hechos de la demanda, y con la misma se demostrará la existencia de tales estatutos, los que se contienen en una documental pública con pleno valor probatorio.

**8.- DOCUMENTAL PÚBLICA,** consistente en el título de concesión SEMOVI/DGSTPI/001/2016, expedido el diecisiete de junio de dos mil dieciséis a SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., por el Gobierno de la Ciudad de México; mismo que por el momento exhibo en copia como **Anexo 5)**, manifestando bajo protesta que mi representada no cuenta con un original o copia certificada del mismo, por lo que de conformidad con el artículo 89 del Código Federal de Procedimientos Civiles, de aplicación supletoria, solicito se requiera a los demandados para que al producir su contestación, exhiban este documento en original o copia certificada, con el apercibimiento que en caso de no hacerlo, se tendrán por ciertas las afirmaciones de mi representada.

Esta prueba la relaciono con todos los hechos de la demanda, y con la misma se prueba que SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V., es concesionaria del Gobierno de la Ciudad de México respecto de un servicio público como lo es el transporte de taxi, de manera que resulta nulo el compromiso arbitral contenido en la cláusula 12 del Convenio entre Socios; situación que se desprende del título de concesión mismo, que es expedido por una autoridad por lo que goza de pleno valor probatorio.

**8.- INSTRUMENTAL DE ACTUACIONES,** consistente en todo lo actuado en el presente juicio, en lo que favorezca a los intereses de mi representada.

Esta prueba se relaciona con todos y cada uno de los hechos de la demanda, y con la misma, se acreditará la procedencia de la acción intentada así como de las prestaciones reclamadas,

**9.-**   **PRESUNCIONAL,** en su doble aspecto, legal y humana, en todo lo que favorezca a los intereses de mi representada.

Esta prueba la relaciono con todos y cada uno de los hechos de la demanda, y con la misma, se acreditará el derecho que le asiste a mi poderdante de reclamar al demandado el pago de las prestaciones contenidas en el proemio de este escrito.

## MEDIDA CAUTELAR



Con fundamento en lo dispuesto por el artículo 384 del Código Federal de Procedimientos Civiles, solicito a su Señoría se sirva decretar como medida precautoria, que las cosas se mantengan en el estado que actualmente guardan hasta en tanto no se resuelva, mediante sentencia definitiva el presente juicio y en específico para los siguientes efectos:

(i)     Que durante la tramitación del presente juicio y hasta la conclusión mediante el dictado de una sentencia definitiva, las partes del Convenio entre Socios, se abstengan de iniciar el procedimiento arbitral pactado en su Cláusula 12, cuya nulidad se demanda;

(ii)    Que las partes y el Consejo de Directores de la Compañía, durante la tramitación del presente juicio y hasta en tanto se dicte sentencia definitiva, se abstengan de realizar actos con

fundamento en dicho acuerdo de voluntades que repercutan en la esfera corporativa de SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V.

(iii)     Que durante la tramitación del presente juicio y hasta en tanto se dicte sentencia definitiva, la situación corporativa actual de SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V, se mantenga en los términos que a la fecha se encuentra, sin que se lleva asamblea de socios alguna que pudiera modificar su situación jurídica actual

A efecto de brindar mayor claridad a su Señoría sobre los términos en los que se solicitan las medidas cautelares a que se refiere el presente apartado, mismas que, se insiste, resultan idóneas, proporcionales e indispensables en el caso concreto para hacer efectiva la sentencia que se pronuncie en el presente juicio, estimamos que debe tomarse en consideración el contenido y alcances del llamado control difuso de constitucionalidad y convencionalidad ex officio, el principio pro personae, y el derecho fundamental de acceso a la justicia, en su vertiente de tutela cautelar efectiva.

Así, debemos explicar en primer término el contenido, alcances y regulación en nuestro sistema del derecho de acceso a la justicia, pues del conjunto de normas que lo integran se desprende el derecho fundamental de tutela cautelar efectiva, cuya maximización corresponde a su Señoría en el caso concreto.

El derecho fundamental de tutela judicial efectiva es el derecho público subjetivo que toda persona tiene para acceder de manera expedita a tribunales independientes e imparciales, a plantear una pretensión o a defenderse de ella, con el fin de que a través de un proceso en el que se respeten ciertas formalidades, se decida sobre la pretensión o la defensa y en su caso, se ejecute esa decisión.

El derecho a una tutela jurisdiccional efectiva implica que cualquier órgano jurisdiccional debe de estar libre de obstáculos para impartir justicia (obstáculos que pueden ser consecuencia de acciones indebidas por parte del demandado), lo que se traduce en una obligación a cargo del legislador de prever en las leyes procesales las instituciones que permitan al juzgador resolver en las apuntadas condiciones de libertad.

El derecho fundamental de acceso a la justicia está reconocido en los artículos 17 de la Constitución Política de los Estados Unidos Mexicanos y 25 de la Convención Americana  sobre Derechos Humanos. Específicamente este último precepto ordena que toda persona tiene derecho a un recurso sencillo y rápido o a cualquier otro recurso efectivo ante los jueces o tribunales competentes, que la ampare contra actos que violen sus derechos fundamentales reconocidos por la Constitución, la ley o dicha Convención, aun cuando tal violación sea cometida por personas que actúen en ejercicio de sus funciones oficiales. Asimismo prevé el tratado internacional citado que los Estados Partes se comprometen (i) a garantizar que la autoridad competente prevista por el sistema legal del Estado decidirá sobre los derechos de toda persona que interponga tal recurso; (ii) a desarrollar las posibilidades de recurso judicial, y (iii) a garantizar el cumplimiento, por las autoridades competentes, de toda decisión en que se haya estimado procedente el recurso. A continuación se transcriben los artículos correlativos.

La tutela cautelar efectiva permite inclusive que se decrete una medida precautoria que si bien no se desprenda del cuerpo normativo que regula de manera primigenia la situación concreta, sí se pueda decretar una medida que se desprenda del bloque de reglas procesales que contienen derechos humanos que garanticen que toda persona tenga derecho a un recurso sencillo y rápido o a cualquier otro recurso efectivo ante los jueces o tribunales competentes, que la ampare contra actos que violen sus derechos fundamentales reconocidos por la Constitución, la ley o dicha Convención.

En tratándose de medidas cautelares, Piero Calamandrei consideraba que la denominación adecuada lo era de providencia cautelar, cuyo carácter distintivo era la provisionalidad o sea la duración o limitación de sus efectos. Para Héctor Fix Zamudio en el derecho procesal de los derechos humanos las medidas precautorias o cautelares asumen una trascendencia fundamental, porque si no se dictan de manera adecuada y oportuna, los daños que se pueden causar pueden ser y de hecho lo son de carácter irreparable, además de que la violación se refiere a los derechos esenciales de la persona. Sobre los bienes sobre los que recaen las medidas se dice que recaen sobre derechos humanos para evitar daños irreparables a las personas pero también pueden recaer sobre el derecho a la propiedad privada o sobre otros objetos.

Pues bien, en el caso concreto las reglas previstas en los artículos 25 de la Convención Americana Sobre Derechos Humanos, permiten el otorgamiento de la medida cautelar que aquí se solicita, de modo que se deje a mi mandante en un estado tal que exista la posibilidad de que el Juzgador pueda dictar una sentencia cuyos efectos no sean meramente ilusorios y sea posible su ejecución, dado que, como ya se dijo, las medidas

solicitadas resultan idóneas, proporcionales e indispensables para poder, materializar la codena que eventualmente se llegue imponer a las demandadas, evitando que, durante el tiempo que se lleve el procedimiento, se realicen actos en base de pactos que resultan ilegales y que con posterioridad sería complicado revertir, evitando daños irreparables a los socios de SERVICIOS DIGITALES LUSAD, S. DE R.L. DE C.V. y a la propia sociedad, así como evitar daños a terceros que con motivo de actos que posteriormente pueden dejar de ser eficaces al realizarse en base de actos que llegaran a ser declarados nulos se vean engañados y posteriormente perjudicados.

La aplicación de los preceptos invocados también se justifica al analizar el contenido y alcances del derecho de acceso a la justicia en su vertiente de tutela cautelar efectiva, puesto que la Primera Sala de la Suprema Corte de Justicia de la Nación ha señalado que en todo caso los Juzgadores se encuentran obligados a evitar cualquier práctica o imponer cualquier restricción que limite el referido derecho, de modo que, específicamente y con fundamento en los artículos 17 de la Constitución Política de los Estados Unidos Mexicanos y 25 de la Convención Americana Sobre Derechos Humanos, debe también evitarse cualquier restricción o limitante al otorgamiento de las medidas que cautelarmente resulten necesarias para garantizar la debida eficacia del fallo que se emita y, en consecuencia, la maximización del derecho de acceso a la justicia de los gobernados:

"*Época: Décima Época*
*Registro: 159900*
*Instancia: Tribunales Colegiados de Circuito*
*Tipo de Tesis: Jurisprudencia*
*Fuente: Semanario Judicial de la Federación y su Gaceta*
*Libro XV, Diciembre de 2012, Tomo 2*

*Materia(s): Constitucional*
*Tesis: I.4o.A. J/103 (9a.)*
*Página: 1053*

## ACCESO A LA JUSTICIA. LOS ÓRGANOS JURISDICCIONALES DEBEN EVITAR, EN TODO MOMENTO, PRÁCTICAS QUE TIENDAN A DENEGAR O LIMITAR ESE DERECHO.

A fin de satisfacer efectivamente el derecho fundamental de acceso a la justicia, debe acudirse al artículo 25 de la Convención Americana sobre Derechos Humanos, el cual prescribe la obligación por parte del Estado, de conceder a toda persona bajo su jurisdicción, un recurso judicial efectivo contra actos violatorios de derechos, los cuales pueden estar reconocidos tanto en la legislación interna, como en la propia convención. Asimismo, en la interpretación que se ha hecho de este numeral por parte de la Corte Interamericana de Derechos Humanos, ha sido criterio sostenido que, para la satisfacción de dicha prerrogativa, no basta con la existencia formal de un recurso, sino que éste debe ser efectivo; es decir, capaz de producir resultados o respuestas y tener plena eficacia restitutoria ante la violación de derechos alegada; en otras palabras, la obligación a cargo del Estado no se agota con la existencia legal de un recurso, pues éste debe ser idóneo para impugnar la violación y brindar la posibilidad real, no ilusoria, de interponer un recurso sencillo y rápido que permita alcanzar, en su caso, la protección judicial requerida. En estas condiciones, la existencia de esta garantía constituye uno de los pilares básicos, no sólo de la Convención Americana citada, sino de todo Estado de derecho. Por tanto, los órganos jurisdiccionales deben evitar, en todo momento, prácticas que tiendan a denegar o limitar el referido derecho de acceso a la justicia.



CUARTO TRIBUNAL COLEGIADO EN MATERIA ADMINISTRATIVA DEL PRIMER CIRCUITO.
Amparo directo 505/2009. Rosalinda González Hernández. 21 de enero de 2010. Unanimidad de votos. Ponente: Patricio

González-Loyola Pérez. Secretario: Víctor Octavio Luna Escobedo.

Amparo directo 315/2010. Comercializadora de Productos Institucionales, S.A. de C.V. 7 de octubre de 2010. Unanimidad de votos. Ponente: Jesús Antonio Nazar Sevilla. Secretaria: Indira Martínez Fernández.

Amparo directo 386/2011. Hilario Gamero Herrera. 25 de agosto de 2011. Unanimidad de votos. Ponente: Patricio González-Loyola Pérez. Secretaria: Dulce María Nieto Roa.

Amparo en revisión (improcedencia) 331/2011. Josefina Peralta Albavera. 29 de septiembre de 2011. Unanimidad de votos. Ponente: Jean Claude Tron Petit. Secretaria: Alma Flores Rodríguez.

Amparo directo 391/2012. José Alberto Montoya Gutiérrez. 23 de agosto de 2012. Unanimidad de votos. Ponente: Jesús Antonio Nazar Sevilla. Secretaria: Angela Alvarado Morales.

Nota: Por instrucciones del Tribunal Colegiado de Circuito, esta tesis se publicó nuevamente con la clave o número de identificación correcto, para quedar como aparece publicada en el Semanario Judicial de la Federación y su Gaceta, Décima Época, Libro XVI, Tomo 3, enero de 2013, página 1695, de rubro: "ACCESO A LA JUSTICIA. LOS ÓRGANOS JURISDICCIONALES DEBEN EVITAR, EN TODO MOMENTO, PRÁCTICAS QUE TIENDAN A DENEGAR O LIMITAR ESE DERECHO."



"Época: Novena Época
Registro: 172759
Instancia: Primera Sala
Tipo de Tesis: Jurisprudencia
Fuente: Semanario Judicial de la Federación y su Gaceta
Tomo XXV, Abril de 2007
Materia(s): Constitucional
Tesis: 1a./J. 42/2007
Página: 124

### GARANTÍA A LA TUTELA JURISDICCIONAL PREVISTA EN EL ARTÍCULO 17 DE LA CONSTITUCIÓN POLÍTICA DE LOS ESTADOS UNIDOS MEXICANOS. SUS ALCANCES.

La garantía a la tutela jurisdiccional puede definirse como el derecho público subjetivo que toda persona tiene, dentro de los plazos y términos que fijen las leyes, para acceder de manera expedita a tribunales independientes e imparciales, a plantear una pretensión o a defenderse de ella, con el fin de que a través de un proceso en el que se respeten ciertas formalidades, se decida sobre la pretensión o la defensa y, en su caso, se ejecute esa decisión. Ahora bien, si se atiende a que la prevención de que los órganos jurisdiccionales estén expeditos -desembarazados, libres de todo estorbo- para impartir justicia en los plazos y términos que fijen las leyes, significa que el poder público -en cualquiera de sus manifestaciones: Ejecutivo, Legislativo o Judicial- no puede supeditar el acceso a los tribunales a  condición alguna, pues de establecer cualquiera, ésta constituiría un obstáculo entre los gobernados y los tribunales, por lo que es indudable que el derecho a la tutela judicial puede conculcarse por normas que impongan requisitos impeditivos u obstaculizadores del acceso a la jurisdicción, si tales trabas resultan innecesarias, excesivas y carentes de razonabilidad o proporcionalidad respecto de los fines que lícitamente puede perseguir el legislador. Sin embargo, no todos los requisitos para el acceso al proceso pueden considerarse inconstitucionales, como ocurre con aquellos que, respetando el contenido de ese derecho fundamental, están enderezados a preservar otros derechos, bienes o intereses constitucionalmente protegidos y guardan la adecuada proporcionalidad con la finalidad perseguida, como es el caso del cumplimiento de los plazos legales, el de agotar los recursos ordinarios previos antes de ejercer cierto tipo de acciones o el de la previa consignación de fianzas o depósitos.

Amparo directo en revisión 1670/2003. Fianzas México Bital, S.A., Grupo Financiero Bital. 10 de marzo de 2004. Cinco votos.

Ponente: José de Jesús Gudiño Pelayo. Secretario: Miguel Bonilla López.

Amparo directo en revisión 806/2004. Rosa López Zúñiga y otros. 11 de agosto de 2004. Unanimidad de cuatro votos. Ponente: Olga Sánchez Cordero de García Villegas. Secretaria: Leticia Flores Díaz.

Amparo directo en revisión 1158/2005. Nicolás Alberto Ferrer Casellas. 24 de agosto de 2005. Cinco votos. Ponente: Juan N. Silva Meza. Secretario: Manuel González Díaz.

Amparo directo en revisión 1394/2005. Antonino Martínez Santamaría y otros. 19 de octubre de 2005. Cinco votos. Ponente: Sergio A. Valls Hernández. Secretaria: Miriam Flores Aguilar.

Amparo directo en revisión 631/2006. Almacenadora Regional del Golfo, S.A. de C.V. 4 de agosto de 2006. Unanimidad de cuatro votos. Ausente: Sergio A. Valls Hernández. Ponente: Olga Sánchez Cordero de García Villegas. Secretario: Heriberto Pérez Reyes.

Tesis de jurisprudencia 42/2007. Aprobada por la Primera Sala de este Alto Tribunal, en sesión de catorce de marzo de dos mil siete."

Este criterio ha sido confirmado por los Tribunales Colegiados de Circuito, según se desprende de la siguiente tesis:

"Época: Novena Época

Registro: 162163

Instancia: Tribunales Colegiados de Circuito

Tipo de Tesis: Aislada

Fuente: Semanario Judicial de la Federación y su Gaceta

Tomo XXXIII, Mayo de 2011

Materia(s): Constitucional

Tesis: XXXI.4 K

Página: 1105

*DERECHO DE ACCESO A LA JUSTICIA PREVISTO EN EL ARTÍCULO 17 DE LA CONSTITUCIÓN FEDERAL. SE RESPETA EN LA MEDIDA EN QUE SE ATIENDEN LOS ASPECTOS FORMAL Y MATERIAL EN QUE SE MANIFIESTA.* La Primera Sala de la Suprema Corte de Justicia de la Nación en la jurisprudencia 1a./J. 42/2007, publicada en el Semanario Judicial de la Federación y su Gaceta, Novena Época, Tomo XXV, abril de 2007, página 124, de rubro: 'GARANTÍA A LA TUTELA JURISDICCIONAL PREVISTA EN EL ARTÍCULO 17 DE LA CONSTITUCIÓN POLÍTICA DE LOS ESTADOS UNIDOS MEXICANOS. SUS ALCANCES.', definió la garantía a la tutela como "... el derecho público subjetivo que toda persona tiene, dentro de los plazos y términos que fijen las leyes, para acceder de manera expedita a tribunales independientes e imparciales, a plantear una pretensión o a defenderse de ella, con el fin de que a través de un proceso en el que se respeten ciertas formalidades, se decida sobre la pretensión o la defensa y, en su caso, se ejecute esa decisión ...". Por otra parte, el artículo 25 de la Convención Americana sobre Derechos Humanos (Pacto de San José, Costa Rica 1969), relativo a la protección judicial, señala que "toda persona tiene derecho a un recurso sencillo y rápido, ... que la ampare contra actos que violen sus derechos fundamentales reconocidos por la Constitución, la ley o la presente convención.", asimismo, establece el compromiso de los Estados Partes a garantizar que la autoridad competente prevista por el sistema legal del Estado decidirá sobre los derechos de toda persona que interponga el recurso; a desarrollar las posibilidades de recurso judicial, y a garantizar el cumplimiento, por las autoridades competentes, de toda decisión en que se haya estimado procedente el recurso. De lo anterior se advierte que el Estado Mexicano ha reconocido el acceso a la justicia como un derecho fundamental; sin embargo, para que éste realmente se concrete en la esfera jurídica de los gobernados, es necesario precisar que se manifiesta en dos aspectos complementarios: uno formal y otro material. El aspecto formal del acceso a la justicia se refiere a la obligación de las autoridades de dar respuesta de manera pronta, completa,





*imparcial y gratuita a las solicitudes de los particulares (partes en un procedimiento) respetando las formalidades del procedimiento; desde luego que ello no significa que necesariamente se resolverá en forma favorable a los intereses del justiciable, sino sólo en los casos que en derecho proceda. Por su parte, el aspecto material del derecho de acceso a la justicia, complementa al primero, pues se refiere a la obligación de la autoridad de hacer cumplir sus resoluciones y, especialmente, cuando se trata de una sentencia definitiva o laudo que ha sido favorable a los intereses de alguna de las partes. Por tanto, no es posible sostener que se respeta el derecho fundamental de acceso a la justicia previsto en el artículo 17 constitucional, aunque se dé respuesta al justiciable en los términos de ley, si no se atiende al aspecto material o subgarantía de "ejecución de resoluciones" o de "justicia cumplida", que otorga a los gobernados el derecho a que los fallos dictados por las autoridades jurisdiccionales se notifiquen y cumplan cabalmente, ya que, de otra manera, la prerrogativa constitucional y convencional primeramente indicada, tendría sólo carácter adjetivo o procesal.*

*TRIBUNAL COLEGIADO DEL TRIGÉSIMO PRIMER CIRCUITO. Amparo en revisión 232/2010. Luis Francisco Valladares Guerra. 9 de febrero de 2011. Unanimidad de votos. Ponente: Mayra González Solís. Secretario: Aarón Alberto Pereira Lizama."*

Ahora bien, tomando en cuenta el carácter obligatorio de la jurisprudencia de la Corte Interamericana de Derechos Humanos, para el otorgamiento de las medidas aquí solicitadas, su Señoría deberá considerar el reconocimiento que dicho órgano ha realizado con respecto al derecho fundamental a los recursos efectivos mismo que se desprende de múltiples sentencias dictadas por ese organismo internacional en varios casos contenciosos sometidos a su jurisdicción.

Tal es el caso, a modo de ejemplo de lo resuelto en, el caso "Caso Bayarri Vs. Argentina. Excepción Preliminar, Fondo, Reparaciones y Costas."2 , en el que la Corte Interamericana señaló lo siguiente:

> "117. La Corte considera que con motivo de la falta de una resolución pronta y definitiva de la denuncia penal presentada en este caso por hechos de tortura y privación ilegal de la libertad se afectó el derecho de la víctima a la debida protección judicial. Este derecho comprende no sólo el acceso del ofendido a los procesos penales en condición de querellante, sino el derecho a obtener un pronunciamiento definitivo mediante mecanismos efectivos de justicia. Asimismo, tomando en cuenta tanto el notorio retardo en la investigación y en el proceso referido, sin que exista explicación razonada, como el reconocimiento de hechos formulado por el Estado, la Corte estima que Argentina violó los artículos 8.1 y 25.1 de la Convención Americana en perjuicio del señor Juan Carlos Bayarri."

Por otro lado, al resolver el caso "Yvon Neptune Vs. Haití. Fondo, Reparaciones y Costas"3, el referido órgano jurisdiccional internacional señaló:

> "83. En íntima relación con lo anterior, el derecho de acceso a la justicia comprende que desde el inicio toda persona, en caso de ser sometida a un proceso, tenga efectivamente la posibilidad de obtener un pronunciamiento definitivo sin dilaciones indebidas que provengan de la falta de diligencia y cuidado que deben tener los tribunales de justicia, como se ha observado en este caso. En caso contrario, a la luz del derecho a un recurso efectivo, contenido en el artículo 25 de la Convención, es

---

2   Corte IDH. Caso Bayarri Vs. Argentina. Excepción Preliminar, Fondo, Reparaciones y Costas. Sentencia de 30 de octubre de 2008. Serie C No. 187, Párrafo 117.

3   Corte IDH. Caso Yvon Neptune Vs. Haití. Fondo, Reparaciones y Costas. Sentencia de 6 de mayo de 2008. Serie C No. 180, Párrafo 83

*evidente que la persona perseguida no puede hacer valer las garantías contenidas en el artículo 8 de la Convención, las que serían inútiles si fuera imposible comenzar los procedimientos en primer lugar."*

Lo resuelto en estos y otros casos, deberá ser valorado por su Señoría en el otorgamiento de la medida aquí solicitada, atendiendo al carácter vinculatorio de las resoluciones emitidas por ese órgano jurisdiccional:



*"Época: Décima Época*
*Registro: 2006225*
*Instancia: Pleno*
*Tipo de Tesis: Jurisprudencia*
*Fuente: Gaceta del Semanario Judicial de la Federación*
*Libro 5, Abril de 2014, Tomo I*
*Materia(s): Común*
*Tesis: P./J. 21/2014 (10a.)*
*Página: 204*

**JURISPRUDENCIA EMITIDA POR LA CORTE INTERAMERICANA DE DERECHOS HUMANOS. ES VINCULANTE PARA LOS JUECES MEXICANOS SIEMPRE QUE SEA MÁS FAVORABLE A LA PERSONA.**
*Los criterios jurisprudenciales de la Corte Interamericana de Derechos Humanos, con independencia de que el Estado Mexicano haya sido parte en el litigio ante dicho tribunal, resultan vinculantes para los Jueces nacionales al constituir una extensión de la Convención Americana sobre Derechos Humanos, toda vez que en dichos criterios se determina el contenido de los derechos humanos establecidos en ese tratado. La fuerza vinculante de la jurisprudencia interamericana se desprende del propio mandato establecido en el artículo 1o. constitucional, pues el principio pro persona obliga a los Jueces nacionales a resolver cada caso atendiendo a la interpretación más favorable a la persona. En cumplimiento de este mandato*

constitucional, los operadores jurídicos deben atender a lo siguiente: (i) cuando el criterio se haya emitido en un caso en el que el Estado Mexicano no haya sido parte, la aplicabilidad del precedente al caso específico debe determinarse con base en la verificación de la existencia de las mismas razones que motivaron el pronunciamiento, (ii) en todos los casos en que sea posible, debe armonizarse la jurisprudencia interamericana con la nacional; y (iii) de ser imposible la armonización, debe aplicarse el criterio que resulte más favorecedor para la protección de los derechos humanos.

Contradicción de tesis 293/2011. Entre las sustentadas por el Primer Tribunal Colegiado en Materias Administrativa y de Trabajo del Décimo Primer Circuito y el Séptimo Tribunal Colegiado en Materia Civil del Primer Circuito. 3 de septiembre de 2013. Mayoría de seis votos de los Ministros: Alfredo Gutiérrez Ortiz Mena, José Ramón Cossío Díaz, Arturo Zaldívar Lelo de Larrea, Sergio A. Valls Hernández, Olga Sánchez Cordero de García Villegas y Juan N. Silva Meza; votaron en contra: Margarita Beatriz Luna Ramos, José Fernando Franco González Salas, Jorge Mario Pardo Rebolledo, Luis María Aguilar Morales, quien reconoció que las sentencias que condenan al Estado Mexicano sí son vinculantes y Alberto Pérez Dayán. Ponente: Arturo Zaldívar Lelo de Larrea. Secretario: Arturo Bárcena Zubieta."

En ese contexto, es indudable que la actora en el caso que nos ocupa, en tanto que es una persona titular de los derechos fundamentales que reconoce el artículo 1º de la Constitución, **tiene derecho a acceder a la justicia en los términos que señalan los artículos 17 constitucional y 25 de la Convención Americana Sobre Derechos Humanos**, incluido al derecho a participar en un proceso en el que se dicte un **pronunciamiento efectivo que pueda ejecutarse**, de manera que la sentencia que se dicte no sea meramente ilusoria. Con base en estas consideraciones, son de aplicarse los artículos 17 Constitucional, 25 de la Convención Americana Sobre Derechos Humanos

y los artículos 16 fracciones III y IV, 33, 34, 35 Y 38 del Código de Comercio y, consecuentemente, otorgar la medida cautelar referida.

El otorgamiento de las medidas solicitadas es procedente al reunirse los siguientes requisitos:

Por lo anteriormente expuesto; **A USTED C. JUEZ**, atentamente pido:

**PRIMERO.-** Reconocer la personalidad que ostento, de apoderado general para pleitos y cobranzas de L1BRE HOLDING, LLC., en mérito del instrumento notarial que se exhibe con este escrito.

**SEGUNDO.-** Tener por señalado el domicilio que se indica para oír y recibir notificaciones, y por autorizadas a las personas que se mencionan para los fines que se precisan.

**TERCERO.-** Admitir la presente demanda en la vía y forma propuestas.

**CUARTO.-** Tener por anunciadas las pruebas que se mencionan en este escrito y en su oportunidad, admitirlas por no ser contrarias al derecho.

**QUINTO.-** Otorgar las medidas precautorias solicitadas.

**SEXTO.-** Requerir a los demandados los documentos que han quedado precisados en el cuerpo del presente ocurso, apercibidos que de no hacerlo se tendrán por ciertas las afirmaciones realizadas por mi mandante en relación a dichos documentos.

**SÉPTIMO.-** En su oportunidad, dictar sentencia en la que se acojan todas y cada una de las prestaciones reclamadas por mi mandante.

PROTESTO LO NECESARIO

Ciudad de México, a 25 de marzo de 2019.

JOSÉ GARCÍA GRANADOS TORRES