UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                     :

ESPIRITU SANTO HOLDINGS, LP,             :

                                               Petitioner,           :

    -against-                             :    No. 19-cv-3930-CM

L1BERO PARTNERS, LP,                   :

   and                                        :

ESPIRITU SANTO TECHNOLOGIES, LLC, :

                                     Respondents.         :

------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF PETITIONER ES HOLDINGS' MOTION TO HOLD RESPONDENT L1BERO PARTNERS, LP IN CIVIL CONTEMPT OF THE COURT'S MAY 16, 2019 PRELIMINARY INJUNCTION

HOGAN LOVELLS US LLP
390 Madison Avenue
New York, New York 10017

600 Brickell Avenue, Suite 2700
Miami, Florida 33131

*Attorneys for Petitioner*
*Espiritu Santo Holdings, LP*

# TABLE OF CONTENTS

                                                        **Page**

PRELIMINARY STATEMENT ....................................................................................................1

BACKGROUND ..............................................................................................................................2

ARGUMENT ....................................................................................................................................4

    I.    Applicable Legal Standards..................................................................................4

    II.    L1bero Partners Is in Contempt of the Court's Preliminary Injunction...................5

        A.    L1bero Partners' Continued Denial of Equal Access to Company Books and Records, and Refusal to Even Allow ES Holdings on Company Property, Are Clear Violations of the Preliminary Injunction. ....................5

        B.    L1bero Partners' Failure to Seat ES Holdings' Chosen Directors on Lusad's Board Violates the Preliminary Injunction. ................................7

        C.    L1bero Partners' Continued Pursuit of Sole Control of the L1bre Group Violates the Preliminary Injunction.........................................................10

    III.    The Court Should Issue Monetary Sanctions and Other Relief to Compel Compliance With the Preliminary Injunction.....................................................12

CONCLUSION...............................................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ACLI Gov't Sec., Inc. v. Rhoades*,
  No. 83 Civ. 4778 (SAS), 2000 WL 204521 (S.D.N.Y. Feb. 22, 2000) .................................. 13

*CBS Broad. Inc. v. FilmOn.com, Inc.*,
  814 F.3d 91 (2d Cir. 2016) ................................................................................................. 13

*CE Int'l Res. Holdings LLC v. S.A. Minerals Ltd. P'ship*,
  No. 12 Civ. 8087 (CM), 2013 WL 324061 (S.D.N.Y. Jan. 24, 2013) .............................. 5, 12

*Drywall Tapers & Pointers of Greater N.Y., Local 1974 of I.B.P.A.T. AFL–CIO v.
  Local 530 of Operative Plasterers & Cement Masons Int'l Ass'n*,
  889 F.2d 389 (2d Cir. 1989) ................................................................................................. 9

*EEOC v. Local 28 of Sheet Metal Workers Int'l Ass'n*,
  247 F.3d 333 (2d Cir. 2001) ................................................................................................. 4

*Fed. Home Loan Mortg. Corp. v. Berbod Realty Assocs., L.P.*,
  No. 91 Civ. 1033 (CSH), 1994 WL 1060301 (S.D.N.Y. Aug. 16, 1994) ............................ 13

*GTE Sylvania, Inc. v. Consumers Union*,
  445 U.S. 375 (1980) .............................................................................................................. 4

*Huber v. Marine Midland Bank*,
  51 F.3d 5 (2d Cir. 1995) .................................................................................................. 4, 6

*LG Capital Funding, LLC v. FLASR, Inc.*,
  No. 16 Civ. 3565 (LDH) (JO), 2017 WL 5054742 (E.D.N.Y. July 27, 2017) ...................... 9

*NLRB v. Hopwood Retinning Co.*,
  104 F.2d 302 (2d Cir. 1939) ............................................................................................... 13

*Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*,
  369 F.3d 645 (2d Cir. 2004) ................................................................................................. 4

*S.E.C. v. Durante*,
  No. 01 Civ. 9056, 2013 WL 6800226 (DAB) (AJP) (S.D.N.Y. Dec. 19, 2013) .................... 4

*Young v. U.S. ex rel. Vuitton et Fils S.A.*,
  481 U.S. 787 (1987) .............................................................................................................. 4

**Other Authorities**

18 U.S.C. § 401 ............................................................................................................. 1, 4

Local Civil Rule 83.6 .................................................................................................... 1, 13

Petitioner Espiritu Santo Holdings, LP ("ES Holdings" or "Petitioner") submits this memorandum in support of its motion, pursuant to Local Civil Rule 83.6, 18 U.S.C. § 401, and this Court's inherent authority, to hold Respondent L1bero Partners, LP ("L1bero Partners" or "Respondent") in civil contempt of this Court's May 16, 2019 preliminary injunction order (Dkt. 39) (the "Preliminary Injunction"). In support of this motion, Petitioner submits the Second Declaration of Santiago León Aveleyra, dated July 29, 2019 (the "Second León Declaration" or "Second León Decl."), and the exhibits annexed thereto, and the Declaration of Richard C. Lorenzo, dated July 29, 2019.

## PRELIMINARY STATEMENT

On May 14, 2019, this Court issued a comprehensive decision and order granting ES Holdings' motion for a preliminary injunction in aid of its pending arbitration against Respondent, Petitioner's business partner in the L1bre Group of companies. *See* Dkt. 33 (the "PI Decision").[1] Among other findings, this Court concluded that ES Holdings was suffering "real irreparable harm" resulting from "the fact that, owing to repeated breaches of contract by Respondent and its principals, Petitioner is being systematically, bit by bit by bit, cut out of the management" of the L1bre Group, "depriving it of the ability to make its own business decisions." PI Decision at 46. Accordingly, the Court issued a Preliminary Injunction, fashioning relief to preserve ES Holdings' rights under the parties' Partners Agreement to jointly manage and control the L1bre Group, on equal footing with L1bero Partners.

Despite Petitioner's repeated requests, L1bero Partners has steadfastly and consistently refused to comply with the Preliminary Injunction's plain terms. Instead, and as set forth below and in greater detail in the Second León Declaration, Respondent has: (1) taken the position that

---

[1] Unless otherwise indicated, capitalized terms have the same meanings as in the Court's PI Decision.

it need not provide ES Holdings with equal access to and control over the L1bre Group's corporate and financial records, including (to take one example) copies of recent bank statements from L1bre Group companies; (2) barred ES Holdings representatives from accessing the L1bre Group offices in Mexico City; (3) unjustifiably erected multiple obstacles to reinstate Messers. León and Zayas or their chosen replacements to Lusad's board; and (4) continued to unilaterally make business decisions and issue directives on Lusad's behalf, not least the decision to continue the prosecution of Mexican court actions in Lusad's name against Messers. León and Zayas and L1bre's name seeking to undo key provisions of the Partners Agreement, including those that concern joint control. In short, Respondent has taken *numerous* steps to continue to frustrate ES Holdings' rights to equal participation in the L1bre Group's business, and these clear violations of the Preliminary Injunction warrant a finding of civil contempt, the imposition of financial and other sanctions, and an award of the attorneys' fees incurred in compelling L1bero Partners' compliance with this Court's order. Finally, this Court should reserve the right to incarcerate L1bero Partners' representatives, Ricardo Salinas and Fabio Covarrubias, in the event that L1bero Partners fails to pay any of the fines imposed by this Court.

## **BACKGROUND**

The key facts underlying this Motion are laid out in the Second León Declaration, and its exhibits. We summarize them here:

1. Since the Court issued its TRO and later its Preliminary Injunction, L1bero Partners has persistently continued to deny ES Holdings' equal access to corporate, financial, and accounting information and documents. *See* Second León Decl. ¶¶ 4-5, 8-14. For example, on the Oracle Netsuite Program—the application that the L1bre Group uses to store, among other information, its financial and accounting data—ES Holdings' access is restricted to "Accountant Reviewer Access." *Id.* ¶ 11. Representatives of L1bero Partners, on the other hand, have

"Administrator Access," which allows the user to access full and complete financial information denied to ES Holdings, including the main accounting audit trail. *Id.* Among other things, ES Holdings can see a listing of the checks paid and the open bills, but cannot access any details or documentation regarding those transactions, or edits that the current "administrators" may have made to those entries. *Id.* ¶¶ 11-12. Despite repeated requests for L1bero Partners to grant equivalent access, this asymmetric access remains in place, and ES Holdings' representatives still are deprived of access to critical L1bre Group information. *Id.* ¶¶ 8-14.

2. L1bero Partners has physically restricted ES Holdings' access to the L1bre Group offices in Mexico City. *Id.* ¶ 24. On July 8, 2019, representatives of ES Holdings attempted to be admitted to those offices, but were denied access by building security; no reason was then or ever provided for such denial. *Id.*

3. L1bero Partners has obstructed the appointment of ES Holdings' representatives to the Lusad board. *Id.* ¶¶ 15-23. Specifically, L1bero Partners refused to re-seat ES Holdings' principals (León and Zayas) to Lusad's board. Instead, it demanded that ES Holdings "designat[e] replacement board members while Mexican court orders barring Mr. Leon's and Mr. Zayas' participation remain in place." *Id* ¶ 15. ES Holdings did so, on May 29, 2019, *id.* ¶ 17. The designated individuals, however, have not been confirmed to the board of Lusad. *Id.* ¶¶ 17-20. L1bero Partners continues to delay the confirmation process, and ES Holdings remains without representatives on the Lusad board. *Id.*

4. Finally, L1bero Partners has continued to pursue actions in Mexican courts on behalf of the L1bre Group without the consent of ES Holdings. *See id.* ¶¶ 26-45. At present, there remain three separate proceedings pending before Mexican courts; despite ES Holdings' requests to immediately dismiss or withdraw these actions L1bero Partners persists in actively

litigating these matters in the name and supposedly on behalf of L1bre Group entities. *Id.* ¶¶ 26-29. Each action is designed and intended to undermine ES Holdings' rights to equal control of the L1bre Group. *Id.* ¶¶ 26-45.

## ARGUMENT

### I. Applicable Legal Standards

"A party who violates an injunction entered by the district court faces the threat of both civil and criminal contempt." *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 657 (2d Cir. 2004) ("*Paramedics*"). Federal courts have statutory and inherent authority to punish "disobedience to their orders." *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 793 (1987); 18 U.S.C. § 401. "In order to hold [an] alleged contemnor in [civil] contempt, the court need only (1) have entered a clear and unambiguous order, (2) find it established by clear and convincing evidence that the order was not complied with, and (3) find that the alleged contemnor has not clearly established [her] inability to comply with the terms of the order." *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995) (cleaned up). "It need not be established that the violation was willful." *Paramedics*, 369 F.3d at 655.[2]

"Once civil contempt is established, district courts have broad discretion to fashion an appropriate coercive remedy . . . based on the nature of the harm and the probable effect of alternative sanctions." *S.E.C. v. Durante*, No. 01 Civ. 9056 (DAB) (AJP), 2013 WL 6800226, at *14 (S.D.N.Y. Dec. 19, 2013), *report and recommendation* adopted, No. 01 Civ. 9056 DAB, 2014 WL 5041843 (S.D.N.Y. Sept. 25, 2014), *aff'd*, 641 F. App'x 73 (2d Cir. 2016) (quoting

---

[2] A pending appeal of a court's order is no excuse for noncompliance, because "persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order." *GTE Sylvania, Inc. v. Consumers Union,* 445 U.S. 375, 386 (1980).

*EEOC v. Local 28 of Sheet Metal Workers Int'l Ass'n*, 247 F.3d 333, 336 (2d Cir. 2001)). In crafting an appropriate sanction, a court must consider: "(1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of the sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the sanction's burden." *CE Int'l Res. Holdings LLC v. S.A. Minerals Ltd. P'ship*, No. 12 Civ. 8087 (CM), 2013 WL 324061, at *3 (S.D.N.Y. Jan. 24, 2013) (McMahon, J.) (quotations omitted).

## II. L1bero Partners Is in Contempt of the Court's Preliminary Injunction.

L1bero Partners has committed at least four clear breaches of the Court's Preliminary Injunction. It has flatly refused to grant ES Holdings equal access to the L1bre Group's corporate, financial, and accounting information. It has refused to even allow ES Holdings' representatives access to L1bre Group's offices. It has obstructed the appointment of ES Holdings' chosen directors, precluding Petitioner from exercising its clear-cut rights to jointly manage the L1bre Group's business affairs. And it has continued to make business decisions on behalf of Lusad and other L1bre Group entities—most egregiously continuing the prosecution of actions in the Mexican courts against Petitioner's principals—over ES Holdings' strenuous and repeated objections. Each of these breaches is serious. Collectively, they reveal a willful disregard for the Court's directives, and should be addressed accordingly.

### A. L1bero Partners' Continued Denial of Equal Access to Company Books and Records, and Refusal to Even Allow ES Holdings on Company Property, Are Clear Violations of the Preliminary Injunction.

The Preliminary Injunction was clear: because L1bero Partners was "enjoined from taking any actions . . . that would eliminate, diminish, or compromise" ES Holdings' "equal ownership stake" and right to "equal participation in the management and control" of the L1bre Group, Preliminary Injunction at 2-3, the Court specifically provided that ES Holdings' directors

"shall have *unrestricted and unfettered access* to any and all corporate, financial, and accounting information and documents of all [ ] companies" in the L1bre Group. Preliminary Injunction at 4 (emphasis added). ES Holdings has made repeated requests for such access, but L1bero Partners has refused to provide it. Second León Decl. ¶¶ 8-14.[3] Rather, as described in the Second León Declaration, ES Holdings' representatives have been provided with only partial access to the L1bre Group's records management systems; in particular, L1bero Partners has refused to provide ES Holdings with "administrator" level permissions (the level of access possessed by L1bero Partners) that would, *inter alia*, allow ES Holdings to review accounting audit trail data. *Id*. ¶ 11. ES Holdings' current level of access allows it only to view the "bottom-line" figures in the system; no backup or supporting information is available or visible. *Id.* ¶ 13.

L1bero Partners is fully capable, from a technological perspective, of providing ES Holdings with equal access to the L1bero Group's records management system, and has never asserted that it lacks this capability. There is, in other words, no doubt about L1bero Partners' "ability to comply with the terms of the [Preliminary Injunction]." *Huber*, 51 F.3d at 10. Rather, L1bero Partners' position is that—notwithstanding this Court's clear directive in its order—Libero Partners can choose not to provide equal access because administrator-level permission also entails the purported ability to edit entries. Second León Decl. ¶ 13 (note from L1bero Partners' counsel stating that "[w]e have not and do not intend to grant them the power to add, alter, or delete information in the books and records"). L1bero Partners has *never* been entitled to unilaterally restrict and fetter its partner's equal access to company books, *see* Partners Agreement §§ 5.1(a), 5.3, 8.1, 8.3, and its persistence in doing so flaunts the Preliminary Injunction, which specifically prevents L1bero Partners denying its partner equal access to books

---

[3] As explained in the Second Leon Declaration, ES Holdings' directors nominated their counsel to review such records on their behalf. Second León Decl. ¶ 10.

and records. If L1bero Partners has "Administrator" level access, then ES Holdings is entitled to the same rights.

In addition, ES Holdings has made numerous requests for core records, such as copies of the "L1bre Group's bank account statements," that would allow it to make sense of the entries in the computerized records. *See* Second León Decl. ¶ 14. These requests, too, have gone unanswered and, in effect, denied.

As referenced above, when ES Holdings' representatives sought to visit the company's offices so that they might, *inter alia*, review records in person, they were flatly barred from even entering the premises. *See supra* at p. 2. But to state the obvious, Petitioner cannot enjoy "equal participation in the management and control" of the L1bre Group, Preliminary Injunction at 2-3, when Respondent's security guards are preventing ES Holdings from even setting foot inside the L1bre Group's offices. Tellingly, L1bero Partners has never offered any explanation for this flat denial of access; that is because, under the Preliminary Injunction and the Partners Agreement, there can be none. These multiple, willful denials of equal access to L1bre Group records and facilities are clear violations of the Preliminary Injunction.

**B.   L1bero Partners' Failure to Seat ES Holdings' Chosen Directors on Lusad's Board Violates the Preliminary Injunction.**

L1bero Partners' continued efforts, since the Preliminary Injunction was entered, to obstruct the seating of ES Holdings' chosen directors on Lusad's board, as required to re-establish ES Holdings' equal management and control over the company, is a plain violation of the Preliminary Injunction.

Initially, L1bero Partners' outright refusal to re-seat ES Holdings' principals, Messers. Zayas and Leon, on Lusad's board (Second León Decl. ¶ 15) itself was an action that would "eliminate, diminish, or compromise" ES Holdings' rights under the Partners Agreement, which

gives the signatories thereto the right to appoint directors of their choice. *See* Partners Agreement §§ 5.1(a), 5.2; *see also* PI Decision at 20 (describing the "scheme to strip Leon and Zayas of their right—guaranteed by Section 5.2 and other sections of the Partners Agreement—to act as directors of Lusad."). L1bero Partners' only justification for this claim was that some unspecified "Mexican court orders barr[ed] Mr. Leon's and Mr. Zayas' participation" on Lusad's board. Second Leon Decl. ¶ 15. Any such purported order, however, was wrongfully obtained based on false accusations at the urging of L1bero Partners. L1bero Partners could easily withdraw its specious accusations in Mexican courts, but has failed to do so.

Libero Partners' continued wrongful actions are worse still. ES Holdings agreed to L1bero Partners' (unjustified) demand that replacement directors for Messers. León and Zayas be nominated on *May 29, 2019*. *See* Second León Decl. ¶ 17. More than two months later, those replacement directors have *still* not been seated. Instead, L1bero Partners has offered up a shifting array of excuses, evasions, and stalling tactics:

- On June 13, 2019, more than two weeks after ES Holdings named two replacement directors, L1bero Partners' counsel sent an email stating without explanation or citation that "appointment of the directors selected by [ES Holdings] requires a resolution by the shareholders [of Lusad]." *See* Second León Decl., Ex. L.

- Nearly three weeks after that, on July 3, 2019, L1bero Partners finally provided a draft of a supposed instruction letter to Lusad's secretary. However, rather than simply installing ES Holdings' replacement board members for *Lusad*, the draft instead installed those replacements as directors of *all* L1bre Group companies, including ES Technologies—with the effect of stripping Messers. León and Zayas of all their directorships. *Id.*, Ex. M. ES Holdings responded the next day to inform L1bero Partners that its attempt to remove León and Zayas from their positions was unjustified[4] and demanded a response by July 10. *Id.*, Ex. N.

---

[4] L1bero Partners' excuse for excluding Mr. Leon and Mr. Zayas from the Lusad board was based on certain Mexican court actions that, at most, concerned *only* Lusad, and not any other companies in the L1bre Group.

- L1bero Partners' counsel responded via email at 10:51 p.m. on July 10, 2019, stating that the proposed instruction letter was merely a "draft" and positing that ES Holdings had been "invited to review and revise the draft so that a joint instruction can be sent to [Lusad's] Secretary." *Id.*, Ex. O.[5] After ES Holdings' counsel pointed out that L1bero Partners had "over a month to make this happen and ha[d] refused to do so," L1bero Partners responded the next day with a new version that—once again—covered appointments to companies other than Lusad. *Id.* On July 15, 2019 ES Holdings sent a marked up instruction letter covering only appointments to Lusad. *Id.*, Ex. P. To date, ES Holdings replacement board members have yet to confirmed.

This ongoing set of maneuvers contravenes this Court's clear mandate to allow Petitioner "equal participation in the management and control" of the L1bre Group. Preliminary Injunction at 2-3. At a minimum, L1bero Partners was required to be "reasonably diligent and energetic in attempting to accomplish what was ordered." *Drywall Tapers & Pointers of Greater N.Y., Local 1974 of I.B.P.A.T. AFL–CIO v. Local 530 of Operative Plasterers & Cement Masons Int'l Ass'n*, 889 F.2d 389, 394 (2d Cir. 1989). The above-described actions do not approach the requisite level of compliance; they thus violate the Preliminary Injunction. *See, e.g.*, *LG Capital Funding, LLC v. FLASR, Inc.*, No. 16 Civ. 3565 (LDH) (JO), 2017 WL 5054742, at *4 (E.D.N.Y. July 27, 2017) (alleged contemnor's late-breaking, half-a-loaf compliance was "manifestly not the kind of reasonable method of compliance that can forestall a finding of contempt").[6]

---

[5] In the same email, L1bero Partners' counsel stated that "L1bero does not control the Company's corporate books, which are kept by the Company's Secretary, Mr. Rodrigo Núñez Sarrapy." *Id.*, Ex. O. Of course, the record reflects that L1bero Partners is perfectly able to solicit immediate assistance from Mr. Núñez Sarrapy when it suits L1bero Partners. *See, e.g.*, Dkt. 29 (Declaration of Rodrigo Nunez-Sarrapy in Opposition to Order to Show Cause).

[6] On July 23, 2019, Respondent informed Petitioner's counsel that Messers. Zayas and León had been named to the board of L1bre Nuevo León. *See* Second León Decl. ¶ 21. This cynical move fits L1bero Partners' *modus operandi* to a "T." The appointments are entirely symbolic; they were not accompanied by the granting of any powers of attorney, like those possessed by the Nuevo León entity's other directors, including Mr. Covarrubias. Moreover, the timing of the appointments is deeply suspicious. Respondent could have appointed Messers. Zayas and León at any time over the past several months; instead, it waited until the eve of the instant contempt application. And the appointments came well *after* L1bre Nuevo León's bid for

### C. L1bero Partners' Continued Pursuit of Sole Control of the L1bre Group Violates the Preliminary Injunction.

L1bero Partners' continued unilateral prosecution of Mexican legal proceedings in the name of Lusad and L1bre Holding, the purpose of which is to have a Mexican court oust ES Holdings from joint control of the L1bre Group, also violates the Preliminary Injunction's clear proscriptions against: (1) "actions . . . that would eliminate, diminish, or compromise Petitioner's . . . right under the Partners Agreement . . . to equal participation in the management and control of" the L1bre Group, Preliminary Injunction at 2-3; and (2) "issuing directives or making business decisions on behalf of any [L1bre Group] company . . . in violation of the Partners Agreement or to the exclusion of [ES Holdings] and its appointed directors," *id.* at 3.

Despite this Court's directive, Lusad and L1bre Holding have at all times continued to press their pending Mexican-court actions. Second León Decl. ¶¶ 26-45.[7] There can be no serious question that the choice to continue such litigation is a "business decision," and the

---

the Nuevo León concession appears to have been rejected, leaving little if anything for the Nuevo León entity to do. *See id.*

Similarly, on July 24, 2019, Respondent informed Petitioner's counsel that L1bre Jalisco had revised its bylaws in an apparent attempt to comply with the Preliminary Injunction. The revised bylaws, however, are not compliant with the Partners Agreement. They (1) include a jurisdictional clause that provides that any and all controversies arising from or related to the company are subject to the jurisdiction of the competent courts of Jalisco, which ES Holdings has not agreed to, (2) do not grant any ES Holdings representative a power of attorney to act on behalf of L1bre Jalisco, and (3) do not appoint any ES Holdings representative as a member of the L1bre Jalisco Board. *See* Second León Decl. ¶ 22. This latest gambit—to grant ES Holdings illusory directorships, while Lusad and the rest of the L1bre Group entities remain under Respondent's sole control—does not come close to good-faith compliance with the Preliminary Injunction.

[7] The Court declined to issue an anti-suit injunction "that would enjoin [L1bero Partners] from litigating the issue of the validity of the arbitration agreement in Mexico." PI Decision at 48. But the above-described actions are, for the most part, not about the validity of the arbitration agreement. *See* Second León Decl. ¶¶ 26-45. And even the L1bre Holding action, which does seek to nullify the arbitration agreement in part, seeks to unwind other parts of the Partners Agreement and undermine joint management of the L1bre Group more generally. *See id.* ¶ 39.

directives given to Mexican counsel are "directives." Preliminary Injunction at 3. And, of course, it is beyond doubt that these decisions and directives have made "to the exclusion of Petitioner and its appointed directors." *Id.* Indeed, immediately after the Court issued its Preliminary Injunction and thereafter, ES Holdings demanded that L1bero Partners "take immediate action to dismiss or withdraw the pending actions in Mexican courts." Second León Decl. ¶ 27. But, in continued violation of the Partners Agreement[8] and in violation of the Preliminary Injunction, L1bero Partners has continued to prosecute the proceedings apace.

The mere pendency of the Mexican actions without ES Holdings' consent to their continuation is itself improper, and violative of the Preliminary Injunction. But the positions taken in those Mexican actions are particularly egregious. On May 22, 2019, L1bero Partners caused Lusad to file a brief in the Mexican court *again* arguing, contrary to the evidence presented in this Court, that Messers. Zayas and Leon had no authority to hire Deloitte to conduct an independent audit of Lusad. *See id.*, Ex. Y. On May 31, 2019, after the Mexican court allowed this Court's Preliminary Injunction entered into evidence, L1bero Partners caused Lusad to file an appeal brief that disputes the validity of the Preliminary Injunction. *See id.*, Ex. BB. And the entire point of the L1bre Holding action, of course, to evade the joint control provisions of the Partners Agreement and strip-mine the L1bre Group from within. *Id.* ¶¶ 40-43.

ES Holdings has not consented to these frivolous representations, made on behalf of a company that should (and must, pursuant to the Preliminary Injunction) in plain derogation of ES Holdings' right to joint control.

---

[8] Indeed, under the Partners Agreement, ES Technologies' board has "the ultimate power to make decisions for [ES Technologies] on material matters," Partners Agreement § 5.2, an arrangement that must be replicated for all affiliates, *see id.* § 5.1(c).

### III. The Court Should Issue Monetary Sanctions and Other Relief to Compel Compliance With the Preliminary Injunction.

The Court should sanction L1bero Partners for its violations of the Preliminary Injunction. At the least, the Court should issue financial penalties designed to induce compliance. *See, e.g.*, *CE Int'l Res. Holdings LLC*, 2013 WL 324061, at *3 (fining contemnor "$5,000 per day for each business day after the date of this order, escalating to $20,000 per day after 20 business days," until contemnor "submits proof satisfactory to the Court of his compliance"). Financial sanctions are appropriate here for several reasons.

*First*, "the character and magnitude of the harm threatened by the continued contumacy," *id.*, is significant. L1bero Partners' violations of the Preliminary Injunction—its obstinate refusal to allow Petitioner equal access to the company's books, offices, and equal access to company decision-making—further the core, irreparable harm previously identified by the Court. PI Decision at 46. This harm is no less irreparable now.

*Second*, the other factors considered in imposing a sanction—"the probable effectiveness of any suggested sanction in bringing about compliance," and "the contemnor's financial resources," *CE Int'l Res. Holdings LLC*, 2013 WL 324061, at *3—both counsel in favor of issuing monetary sanctions. L1bero Partners could cure its violations of the Preliminary Injunction with minimal effort; providing access to company books and records, opening the company's office to its partner, seating Petitioner's designated board members, and instructing Mexican counsel to desist from further prosecution of proceedings aimed at vitiating ES Holdings' rights, are all straightforward matters. Moreover, there is no reason to think that L1bero Partners would incur an escalating set of fines when it could avoid those penalties by complying with its pre-existing contractual and partnership obligations, and this Court's directives in the Preliminary Injunction. ES Holdings submits that the sanctions imposed by the

Court in the *CE International* case—$5,000 per business day, rising to $20,000 per day after a period of non-compliance—are a reasonable starting point.

In addition to financial penalties, this Court should direct L1bero Partners to pay the "reasonable counsel fee[s]" ES Holdings incurred in compelling Respondent's compliance with the Preliminary Injunction and bringing this motion. *See* Local Civil Rule 83.6(a). This application was necessitated by L1bero Partners' contumacious, dilatory action; they should, accordingly, pay for it. ES Holdings is prepared to submit a statement outlining the fees incurred in attempting to obtain L1bero Partners' compliance with the Preliminary Injunction and in connection with this application, as directed by the Court. *See, e.g.*, *ACLI Gov't Sec., Inc. v. Rhoades*, No. 83 Civ. 4778 (SAS), 2000 WL 204521, at *1 (S.D.N.Y. Feb. 22, 2000).

Finally, in the event that L1bero Partners fails to pay any fines or other monetary sanctions imposed by this Court, L1bero Partners' representatives Ricardo Salinas and Fabio Covarrubias, and potentially others, should be incarcerated pending compliance with the Preliminary Injunction. The Court's injunction binds Messers. Salinas and Covarrubias expressly, *see* Preliminary Injunction at 2, and as a matter of law, because "a command to a company is in 'effect a command to those who are officially responsible for the conduct of its affairs.'" *CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 100 (2d Cir. 2016) (quoting *NLRB v. Hopwood Retinning Co.,* 104 F.2d 302, 305 (2d Cir. 1939)). "Even when corporate officers are not a party to the original action, if they 'prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they, no less than the corporation itself, are guilty of disobedience, and may be punished for contempt.'" *Id.* (quoting *Hopwood,* 104 F.2d at 305); *see also Fed. Home Loan Mortg. Corp. v. Berbod Realty Assocs., L.P.*, No. 91 Civ. 1033 (CSH), 1994 WL 1060301, at *6 (S.D.N.Y. Aug. 16, 1994) (applying

same principle to partnership), *report and recommendation* adopted, No. 91 Civ. 1033 (CSH), 1995 WL 7988 (S.D.N.Y. Jan. 10, 1995). Messers. Salinas and Covarrubias are responsible for, and capable of obtaining, L1berto Partners' compliance with the Preliminary Injunction; they should be held personally responsible for any further contumacious, heel-dragging tactics.

## **CONCLUSION**

For all these reasons and based on the supporting papers filed in this action, ES Holdings respectfully requests that the Court enter an order holding L1bero Partners in civil contempt, and awarding such relief—including financial penalties and attorneys' fees—as the Court deems appropriate.

July 30, 2019
New York, New York

          HOGAN LOVELLS US LLP

          <u>/s/ David Dunn   /</u>

          David Dunn
          Benjamin A. Fleming
          390 Madison Avenue
          New York, New York 10017
          Tel. (212) 918-3000
          Fax (212) 918-3100
          david.dunn@hoganlovells.com
          benjamin.fleming@hoganlovells.com

          Richard C. Lorenzo (*pro hac vice*)
          Mark R. Cheskin (*pro hac vice*)
          Gabriella Morello
          600 Brickell Avenue, Suite 2700
          Miami, FL 33131
          Tel. (305) 459-6500
          Fax (305) 459-6550
          richard.lorenzo@hoganlovells.com
          mark.cheskin@hoganlovells.com
          gabriella.morello@hoganlovells.com

          *Attorneys for Petitioner*
          *Espiritu Santo Holdings, LP*