UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ESPIRITU SANTO HOLDINGS, LP,

                       Petitioner,

-against-

LIBERO PARTNERS, LP,

       and

ESPIRITU SANTO TECHNOLOGIES, LLC

                       Respondents.

Civil Action No. 19-cv-03930

## DECLARATION OF JOHN WILLIAM WOOD

I, John William Wood, hereby declare, under penalty of perjury of the laws of the United States, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1.     I am a corporate representative of L1bero Partners, LP ("**L1bero Partners**"). I have been authorized to declare on behalf of L1bero Partners the facts and circumstances set forth in this Declaration. I make my declaration as a corporate representative of L1bero Partners based on L1bero Partners' records and/or on information and belief after a good faith investigation. I submit this declaration in further support of Respondents L1bero Partners' Memorandum of Law in Opposition to ES Holdings' Motion to Hold Respondent L1bero Partners, LP in Civil Contempt of the Court's May 16, 2019 Preliminary Injunction.[1]

**ES Holdings' Procedural Maneuvers**

2.     ES Holdings filed its request for arbitration on May 1, 2019.

---

[1] L1bero Partners has appealed the May 16, 2019 preliminary injunction. *See* Exhibits 1 and 2.

3.  Notwithstanding that the preliminary injunction was issued after ES Holdings filed an emergency motion purportedly in aid of arbitration, ES Holdings subsequently prevented the arbitration from moving forward despite repeated requests from the administering entity of the arbitration, the International Chamber of Commerce (the "**ICC**").

4.  ES Holdings delayed payment of the fees required to move the arbitration forward for a period of approximately 3 months and on not fewer than 6 separate occasions. These delays are documented in correspondence to and from ES Holdings and the ICC. These communications show that: (i) on May 1, 2019, ES Holdings filed its request for arbitration without making the provisional advance payment that is necessary to commence the arbitration; (ii) on May 16, 2019, the ICC sent a letter to ES Holdings requesting payment by June 11, 2019; (iii) on June 10, 2019, ES Holdings sent a letter to the ICC requesting an extension; (iv) on June 25, 2019, ES Holdings sent a letter to the ICC requesting "another ten (10) days, through and including 5 July 2019 to provide this provisional advance"; (v) on July 5, 2019, the ICC sent a letter to ES Holdings referring to the ICC's "correspondence dated 25 June 2019, in which [the ICC] invited Claimant to pay the balance of the provisional advance by 5 July 2019" and noted that the ICC "did not receive such payment within the time limit granted" to ES Holdings; and (vi) on July 25, 2019, the ICC sent a letter to the Parties indicating that ES indicating that ES Holdings had paid only a part of the provisional advance and was being granted yet another extension to pay the full amount owed. True and correct copies of above letters are attached as Exhibits 3-7

5.  ES Holdings acknowledged in its correspondence to the ICC that it "[understood] that neither the Court nor the Secretary General can take any decisions until [such] time" as ES Holdings finally made its provisional payments to the ICC. *See* Exhibit 8.

6. It was not until August 1, 2019—just after ES Holdings filed its contempt motion—that the ICC confirmed that ES Holdings had finally paid the provisional advance needed for the arbitration proceedings to move forward.

**Current Status of the L1bre Group**

7. The L1bre Group has been unable to realize its essential business purpose because of unresolved disputes surrounding the Mexico City Concession.

8. Briefly, in November 2018, one of the principals of ES Holdings, Mr. Eduardo Zayas, signed a document that was affixed to a version of the Mexico City Concession in which certain of the key terms of the Mexico City Concession had been altered. The altered terms essentially destroyed the value of the Mexico City Concession for the L1bre Group. The circumstances surrounding this event are the subject of ongoing proceedings in the Mexican courts and in arbitration.[2] At this time, there are no prospects for the L1bre Group to obtain any benefit from operating the Mexico City Concession.

9. Given the situation with the Mexico City Concession, a contingency plan to scale down operations and retain only essential personnel and suppliers was discussed at the December 14, 2019 meeting of the board of Lusad. During this meeting, it was acknowledged that a capital contribution of at least US $3 million dollars would be necessary for the contingency plan. A true and correct copy of the unanimous resolutions of the board of Lusad dated December 14, 2018 is attached as Exhibit 10. L1bero Partners proposed that such a capital contribution be funded 50/50 by L1bero Partners and ES Holdings. *Id.* ES Holdings requested 8 days to present a counterproposal. *Id.* The period requested by ES Holdings elapsed without ES Holdings submitting a counterproposal or an alternative plan as it had promised.

---

[2] Under the Partners' Agreement any modification of the Mexico City Concession was subject to the written approval of the board. A true and correct copy of the Partners Agreement is attached as Exhibit 9.

10. In the interim, L1bero Partners advanced $1 million in the form of a loan in order to fund operations on a scaled down basis over a six month period.

11. After the hearing on the preliminary injunction that is the subject ES Holdings' contempt motion, Lusad registered to bid on a taximeter concession in Monterrey, Nuevo León. It was hoped that if Lusad was successful, the Monterrey concession could represent an opportunity to make use of existing technology and inventory and try to keep the business alive. Unfortunately, Monterrey would not *require* taxis to upgrade on a mandatory basis to digital taximeters, which meant that the business opportunity was economically inviable.

12. By June 2019, L1bero Partners could no longer continue to advance additional funds. ES Holdings has not advanced or offered any additional capital. Because of the purported alteration of the Mexico City Concession, the L1bre Group has no income. The business has run out of operating capital, and there is no realistic prospect of obtaining additional capital at this time. Most of the L1bre Group's employees are no longer with the company. The remaining employees are a skeleton crew performing essential administrative tasks. Finally, payments to vendors and suppliers have been reduced and, in some cases, have been stopped entirely in an attempt to ensure that there are sufficient funds to cover essential services.

13. Given the current financial situation, in the near future, creditors and suppliers may initiate involuntary bankruptcy proceedings.

**The L1bre Group is Being Harmed by León's and ES Holdings' Actions**

14. I have read Mr. León's statements in his Second Declaration regarding allegations in the media related to Mr. Covarrubias' prior business ventures.

15. Independent of the fact that Mr. León's statements appear to be based on news sorties and are presented without substantiation for purposes of disparagement, Mr. León's

accusations of wrongdoing are surprising given allegations of fraud against Mr. León and his associates as part of ongoing litigation in the United States that was initiated by third parties. The allegations against Mr. León relate specifically to the taximeter technology and business that ES Holdings and its principals represented that they had developed.

16. Plaintiffs have alleged that Mr. León stole trade secrets and technology and used the trade secrets and technology to obtain the Mexico City Concession.[3] Mr. León has been sued for misappropriating a third-party company's confidential business information (the "**León Fraud Lawsuit**"). *See Taxinet, Corp. vs. Santiago León*, 16-24266-CIV-Moreno (S.D. Fla.). A true and correct copy of the live complaint is attached hereto as Exhibit 11.

17. The L1bre Group has paid a substantial amount of Mr. León's legal fees based on representations from Messrs. León and Zayas that the allegations lacked merit. Trial in the León Fraud Lawsuit is scheduled to begin on January 21, 2020.

18. On or around April 17, 2019 a second lawsuit was filed against certain L1bre Group entities (including L1bre Holding, LLC and L1bre LLC) based on allegations similar to those in the León Fraud Lawsuit. *See Taxinet, Corp vs. L1bre, LLC and L1bre Holdings, LLC*, 1:19-CV-22535 (S.D. Fla.) A true and correct copy of the live complaint is attached as Exhibit 12.

**Steps Taken to Comply with the Court's May 16, 2019 Preliminary Injunction**

*Access to Information*

19. On May 22, 2019, in response to ES Holdings' counsel's May 21, 2019 correspondence requesting information, Mr. Francisco Flores provided documents that ES Holdings requested and/or that this Court ordered L1bero Partners to provide, including,

---

[3] For the avoidance of doubt, L1bero Partners submits that the technology that was used by ES Holdings to obtain the Mexico City Concession was not actually functional, which is why it was necessary for L1bero Partners to use the funds that it invested to develop the operative digital taximeter technology.

but not limited to, documents and communications related to: (i) the NAFTA notice of intent, (ii) the incorporation of L1bre Nuevo León; (iii) the possible concession in Nuevo León; and (iv) powers of attorney issued by L1bre Group companies.

20. Mr. Flores also explained that: (i) ES Holdings' non-director designees would be granted access to the Oracle NetSuite Platform holding the L1bre Group's financial information upon receipt of written confirmation from ES Holdings of the names and e-mails of the authorized designees; (ii) ES Holdings could access and review records of corporate actions through the Secretary of the Board, Mr. Rodrigo Núñez, and he understood that its representatives had done so earlier that day; (iii) Zayas was the only legal representative of the L1bre Group companies who engaged in official communications regarding the Mexico City Concession; and (iv) the L1bre Group companies had not engaged in any official communications regarding a possible concession in Jalisco. Mr. Flores stated that steps were being taken to bring L1bre Jalisco into the L1bre Group corporate structure, and that the relevant documents would be provided once they were finalized and formalized before a notary public. This process was completed, and the relevant documents were provided to ES Holdings' counsel on July 24, 2019.

21. On May 23, 2019, ES Holdings' counsel provided the written confirmation that Mr. Flores had requested authorizing ES Holdings' designated representatives to access the L1bre Group's financial information. A true and correct copy of the written confirmation from ES Holdings is attached hereto as Exhibit 13. That same day, ES Holdings' non-director designees (Richard Lorenzo, Javier Mijangos, Cesar Cantoral, Javier Coello, Manuel Tabuenca, and Jose Luis Valera) were granted access to the L1bre Group's financial information contained in the Oracle NetSuite Platform. *See* Declaration of Horacio Alamilla Medina at ¶ 6.

22.     On May 24, 2019, the day after ES Holdings' non-director designees were granted access to the Oracle NetSuite Platform, ES Holdings' counsel alleged that L1bero Partners had "restricted" ES Holdings' access to "Accountant Reviewer Access," asserted without basis that L1bero Partners had been granted "Administrator Access," and raised unfounded accusations of financial improprieties. As explained in the declaration of Mr. Horacio Alamilla, L1bero Partners did not "restrict" ES Holdings' access because ES Holdings and its principals never had "Administrator Access." L1bero Partners' representatives, Messrs. Covarrubias and Belmont, have also never had "Administrator Access" to the Oracle NetSuite Platform. The only people who have had "Administrator Access" are the CFO/Controller, staff members who assist with the duties of the CFO/Controller, and representatives of Multiconsulting, S.A. de C.V., which is not affiliated with L1bero Partners and is a service provider for the Oracle NetSuite Platform.

23.     As attested by Mr. Horacio Alamilla, on or around June 10, 2019, ES Holdings' non-director designees were granted "Audit Trail Access" which allows them to review not only the information contained on the Oracle NetSuite Platform, but also to access the audit trail. Information contained on the Oracle NetSuite Platform tracks the details of the L1bre Group's incoming and outgoing bank account funds and financial transactions, which are uploaded onto the platform on a monthly basis. The only access that ES Holdings' non-director designees have not been granted is "Administrator Access" which would allow them to add, alter, and delete information in the Oracle NetSuite Platform. Such permissions are not necessary to review information for the purposes of conducting an audit, and it would be problematic to grant such permissions to individuals who are not performing the duties of the Controller.

24.     Mr. Flores' May 22, 2019 correspondence also addressed access to the corporate books and records of the L1bre Group, as well as a review of all the corporate actions taken by the

L1bre Group since December 6, 2017 to date. As noted in his correspondence, this type of review should in fact be conducted through the Secretary, Mr. Rodrigo Núñez, who is the custodian of such books and records. Upon information and belief, representatives of ES Holdings including Ms. Carolina Marrusich Esquivel and Mr. César Cantoral went to Mr. Nuñez's office and performed this review. As such, ES Holdings was provided with access to, and, in fact, reviewed corporate books and records of the L1bre Group.

### *Access to Company Offices*

25. Mr. León states in his Second Declaration at ¶ 24 that, on July 8, 2019, representatives of ES Holdings "attempted to be admitted into the L1bre Group offices in Mexico City" and were "denied access by building security without explanation."

26. L1bero Partners has investigated this matter and its understanding is that an unidentified ES Holdings representative or representatives asked building security to be admitted into the L1bre Group offices and were denied entry because they refused to provide information regarding their identity and purpose of their visit. No one from the L1bre Group's office was notified of the presence of any visitor representing ES Holdings.

27. The building which houses the L1bre Group offices is not owned by L1bero Partners or the L1bre Group, and neither L1bero Partners nor the L1bre Group is responsible for building security. L1bero Partners did not instruct building security to deny access to ES Holdings' representatives and, from the information that L1bero Partners has been able to gather, it appears that ES Holdings' representative were denied access because they refused to comply with security protocols and then abruptly left the building.

28. In addition, L1bero Partners would note that the L1bre Group's offices are now empty because the L1bre Group has no current business. As previously described earlier in my

declaration, given the financial situation of the L1bre Group many of its former employees are no longer with the company. The employees that remain do not maintain regular business hours given that there are no business operations to undertake other than certain administrative tasks.

### Replacement Directors

#### L1bre Nuevo León

29. Messrs. Leon and Zayas hold the same powers of attorney as Messrs. Covarrubias and Belmont with respect to L1bre Nuevo León. *See* Public Deed 15057 dated July 22, 2019 forwarded to ES Holdings counsel on July 22, 2019, a true and correct copy of which is attached as Exhibit 14. On May 27, 2019, Notary Public No. 63 of Guadalajara, Jalisco was asked by Mr. Francisco Flores to appoint Messrs. León and Zayas as directors of L1bre Nuevo León. Notary Public No. 63 finalized their appointment on the L1bre Nuevo León Board via the resolutions contained in Public Deed No. 15057 dated July 22, 2019. *See id.* (Public Deed No. 15057 dated July 22, 2019). Powers of attorney for both Mr. León and Mr. Zayas were likewise granted via these resolutions. *See id.* (Public Deed No. 15057 dated July 22, 2019).

30. Contrary to Mr. León's statement in his Second Declaration at ¶ 21, no actions have been taken by L1bre Nuevo León other than registering to bid for the Monterrey concession. The bid documents presented by L1bre Nuevo León for the concession were provided to ES Holdings' counsel on May 22, 2019. *See* Flores email to ES Holdings' counsel dated May 22, 2019, a true and correct copy of which is attached as Exhibit 15. A *"libro de accionistas"* or stock registry ledger for L1bre Nuevo León has not yet been prepared.

#### L1bre Jalisco

31. L1bre Jalisco has been brought into the L1bre Group corporate structure. *See* Public Deed 15058 dated July 24, 2019, a true and correct copy of which is attached as Exhibit 16.

Contrary to Mr. León's allegations, since its incorporation, the bylaws of L1bre Jalisco have not been changed or amended by L1bero Partners. The incorporation of L1bre Jalisco occurred through the sale of shares by the shareholders to Lusad and Servicios Administrativos Lusad, S.A. de C.V., as buyers. This was formalized through public deed 15058 dated July 22, 2019, issued by Notary Public No. 63 of Guadalajara, Jalisco and is the only corporate act that has occurred since its incorporation. *See id.* (Public Deed 15058 dated July 24, 2019).

32. The by-laws of L1bre Jalisco contain a clause that requires disputes to be submitted to local courts because Mexican law requires that the by-laws of companies incorporated in Mexico provide for Mexican court jurisdiction with respect to such disputes.

33. On May 27, 2019, Notary Public No. 63 of Guadalajara, Jalisco was instructed by Mr. Francisco Flores to appoint Messrs. León and Zayas as Members of the L1bre Jalisco Board of Directors. The Notary Public inadvertently omitted this appointment.

34. On July 25, 2019, after this omission was identified, Mr. Flores again asked the Notary Public to prepare a public deed to name ES Holdings' representatives as board members and grant them powers of attorney for L1bre Jalisco.

35. On July 29, 2019, after realizing that the Notary Public had been out on vacation, Mr. Flores again reached out to the Notary Public to press for this change. The Notary Public has confirmed that the corresponding public deed is to be finalized by no later than Wednesday of next week. For the avoidance of doubt, L1bre Jalisco is not a company that is currently operating. L1bero Partners can confirm that no actions have been taken by L1bre Jalisco.

*Lusad*

36. On May 27, 2019, L1bero Partners' counsel sent a letter to ES Holdings' counsel indicating that L1bero Partners "intends to comply with the PI Order" notwithstanding its

disagreement with the terms and would even be open to taking steps not required by the preliminary injunction order such as discussing the possibility of ES Holdings "designating replacement board members [for Lusad] while Mexican court orders barring Mr. Le[ó]n's and Mr. Zayas' participation remains in place."

37.  On May 29, 2019, ES Holdings' counsel responded by disputing the existence of any Mexican court order that "permanently bar[s] Mr. Zayas or Mr. León f[rom] acting on the Lusad board,"[4] but nonetheless agreed to designate Mr. Francisco De Paula León Olea and M Jimena Rodriguez Perez-Vargas as replacement board members of Lusad."

38.  On June 12, 2019, ES Holdings' counsel followed up by email to request an update on when ES Holdings could expect its replacement directors to be confirmed to the Lusad board.

39.  On June 13, 2019, L1bero's counsel responded by explaining that the appointment of the replacement directors would "require[] a resolution by the shareholders" and that ES Holdings would need to contact the Secretary, Mr. Núñez, to "request that he prepare and circulate a draft resolution providing for the appointment of [ES Holdings'] board members."

40.  Between June 15, 2019 and June 20, 2019, counsel for ES Holdings and L1bero Partners engaged in back-and-forth correspondence to coordinate a meeting in Atlanta, Georgia to discuss the parties' disputes.

41.  On or around June 28, 2019, counsel for ES Holdings and L1bero Partners continued their discussions about appointing ES Holdings' replacement directors, and, during a

---

[4] Mr. León incorrectly states the Mexican court order *only* prohibited Mr. León and Mr. Zayas from participating in the February 21, 2019 Lusad board meeting. *See* León Decl. ¶ 16. The order prohibits Mr. León and Mr. Zayas from any activity inconsistent with holding Messrs. León and Zayas responsible for their actions against the company and the removal of Messrs. León and Zayas from their positions as members of the board. A true and correct copy of the Mexican court order is attached as Exhibit 17.

call, counsel for ES Holdings asked counsel for L1bero Partners to prepare a document instructing the Secretary to prepare the necessary drafts of the resolutions.

42. On July 1, 2019, L1bero Partners' counsel indicated that a draft document to cause ES Holdings' replacement directors to be confirmed to the Lusad board was being prepared and then, on July 3, 2019, sent a further email attaching "a draft document for the appointment of Board Members." On July 4, 2019, ES Holdings' counsel sent an email objecting to the draft letter and explained that ES Holdings' replacement directors should be appointed only to the Lusad board with Messrs. León and Zayas remaining on the boards of the other L1bre Group companies. ES Holdings' counsel also faulted L1bero Partners for the amount of time that had passed, and demanded that L1bero Partners take any and all actions necessary to confirm its replacement board members to the Lusad board by no later than July 10, 2019.

43. On July 10, 2019, L1bero Partners' counsel communicated to ES Holdings counsel that "under the Partner[s] Agreement, L1bero does not have sole authority to appoint individuals to the board[s]" and that it had merely prepared and circulated a "draft joint notification to the Secretary" with the expectation that ES Holdings would "review and revise the draft . . . so that the parties can agree on final language and issue a joint instruction to the Secretary." That same day, ES Holdings' counsel replied by email, but rather than providing the requested revisions, ES Holdings' counsel instead accused L1bero Partners of engaging in a "charade" and refusing to comply with the preliminary injunction order. L1bero Partners' counsel replied by again inviting ES Holdings' counsel to "please make your redlines" so that the parties could "jointly agree on the terms, execute, and provide to the Company's Secretary." Rather than cooperate by providing edits and a revised draft, ES Holdings' counsel instead replied by again accusing L1bero Partners of "playing games." L1bero Partners' counsel replied by explaining that they were being

"sincere" and thought they had "prepared what [ES Holdings] wanted" but they would ask Mexican counsel to consider the emails and "modify the document as close as they can to what they think [ES Holdings is] asking."

44. The next day, on July 11, 2019, L1bero Partners' counsel sent an email attaching a revised draft of the joint instruction letter to the Secretary. Despite ES Holdings' assertion to the contrary, the revised draft instruction letter to the Secretary did not—or at least was not intended to—cover appointments to L1bre Group companies other than Lusad. Notwithstanding the foregoing, on July 15, 2019, ES Holdings' counsel replied by again objecting to the language in the draft instruction letter, but this time finally agreed to provide—and provided—revisions reflecting the language that ES Holdings desired.

45. On July 18, 2019, L1bero Partners' counsel replied that L1bero Partners was "amenable to the changes [ES Holdings] proposed" and would make a request "that the Secretary prepare the relevant resolutions." A true and correct copy of this correspondence is attached as Exhibit 18. Shortly thereafter, on July 20, 2019, Mr. Flores asked the Secretary to prepare the necessary resolutions for the appointment of ES Holdings' replacement directors.

46. On July 30, 2019, before ES Holdings filed the instant motion, L1bero Partners' counsel emailed ES Holdings' counsel and informed them that the instruction letter with their changes would be circulated for execution later that week. A true and correct copy of this correspondence is attached as Exhibit 19.

47. On August 2, 2019, the Secretary sent L1bero Partners' counsel draft resolutions for the appointment of ES Holdings' replacement directors to the Lusad board. A true and correct copy of this correspondence is attached as Exhibit 20. On August 4, 2019, L1bero Partners

executed these resolutions and its counsel sent them to ES Holdings' counsel to be executed by ES Holdings. A true and correct copy of this correspondence is attached as Exhibit 21.

**Discovery of Questionable Transactions and Fraud by Petitioner**

48. L1bero Partners has indicated that a financial investigation and audit is needed particularly with regard to transactions that took place before L1bero Partners' involvement and specifically given ES Holdings representations before this Court that ES Holdings "deployed US $40 million of its own capital" allegedly to "develop[] [the taximeter] technology." These representations were among the main selling points that induced L1bero Partners to fund millions of dollars while ES Holdings provided no capital.

49. L1bero Partners has requested information and clarification from ES Holdings regarding transfers of funds or company property to companies and individuals that had been represented as service providers including but not limited to Stagwell Technologies, Inc. f/k/a 10.1 and/or f/k/a Stagwell Tech, Hubub, Clearpath, Accendo Capital, Group, Inc., Accendo Capital LLC, Accendo Holdings, LLC and affiliates, subsidiary, and associated entities or individuals. As an example of the type of transactions that have not been clarified by ES Holdings, it appears that the L1bre Group made payments to a mining venture as "Fairfield Gold" that is linked to Messrs. León and Zayas personally. The L1bre Group's business has nothing to do with mining and there is no evidence of any benefit or service to the L1bre Group from "Fairfield Gold."

50. ES Holdings has yet to provide the clarifications or disclosures requested.

Executed on August 5, 2019

_____
John William Wood

Subscribed and sworn to before me, the undersigned authority, on the 5th day of August, 2019.

_____
Notary Public in and for the State of Texas

SANJUANA RENDON
My Commission Expires
01/31/2022
ID No. 124048173

- 15 -