**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
:
**ESPIRITU SANTO HOLDINGS, LP,**
:
:
Petitioner,                                    :
:
-against-                                             :          **No. 19 Civ. 3930 (CM)**
:
**L1BERO PARTNERS, LP,**
:
:
and                                              :
:
**ESPIRITU SANTO TECHNOLOGIES, LLC**          :
:
Respondents.                                   :
:
-----------------------------------------------------------------x

## THIRD DECLARATION OF SANTIAGO LEÓN AVELEYRA

I, Santiago León Aveleyra, pursuant to 28 U.S.C. § 1746, declare under penalty of

perjury that the following is true and correct:

1.       As I stated in my Second Declaration, I represent and manage, along with

Eduardo Zayas Dueñas, ES Holdings[1] on behalf of a close group of investors.  I submit this

declaration in further support of ES Holdings' Motion for Contempt and to rebut the numerous

misleading and inaccurate factual allegations contained in L1bero Partners' opposition.



2.       In the preparation of this Declaration, I have reviewed the declarations of John

William Wood and Horacio Alamilla Medina submitted by L1bero Partners in support of its

Opposition to ES Holdings' Motion for Contempt.  While Mr. Wood purports to be a corporate

representative of L1bero Partners, I have never met, spoken to, or even heard of Mr. Wood prior

to the submission of his declaration, much less known him to be a representative of L1bero

_____

[1]      All abbreviations used in this Declaration shall have the same meaning as those in
my previous declarations.

Partners.  Mr. Wood did not participate in the negotiation of the Partners Agreement, was never

designated as a board member of any L1bre Group entity, played no role in obtaining the Mexico

City taximeter concession, and was never involved in any discussions regarding the management

or operations of the L1bre Group, including the discussions between the parties (and their

counsel) that have occurred since the Court issued its Preliminary Injunction in May 2019.

Given the statements in his declaration, however, Mr. Wood appears to have greater access to

information regarding the L1bre Group than any representative of ES Holdings.

       3.     Based on publically available information, Mr. Wood is a solo practitioner in

Houston, Texas, who appears to be connected to Fabio Covarrubias with respect to certain

investments made by Mr. Covarrubias in the state of Texas.  *See*

https://www.texasbar.com/AM/Template.cfm?

Section=Find_A_Lawyer&template=/Customsource/MemberDirectory/MemberDirectoryDetail.

cfm&ContactID=150368.  After a more extensive search, we were able to discover that Mr.

Wood is the registered agent for several companies for which Mr. Covarrubias serves as a

director.

       4.     I find it surprising that Mr. Wood submitted a declaration on behalf of L1bero

Partners, and not Mr. Covarrubias, given that Mr. Covarrubias is one of the principals of L1bero

Partners, the Chief Executive Officer of Lusad, resides in Texas, maintains a home in Texas, and

is associated with multiple Texas businesses.  Yet, Mr. Covarrubias offers no testimony under

oath in defense of L1bero Partners.

       5.     In the paragraphs that follow, I will address the factual misstatements contained in

the declarations of Mr. Wood and Mr. Alamilla.

A.       **ES Holdings Does Not Have Unfettered, Equal Access to the Oracle Platform**

6.      Mr. Wood alleges that ES Holdings' representatives have the same level of access

to the information contained in the Oracle platform as L1bero Partners' representatives.  This is

false.  While L1bero Partners' board members may not have direct administrator access, they are

able to obtain unfettered access to the information contained in the platform through, among

others, Horacio Alamilla, who previously served as Lusad's financial director and was recently

appointed controller by L1bero Partners without the knowledge or consent of ES Holdings.

Importantly, Mr. Alamilla also serves or served as the financial director of several of Mr.

Covarrubias' companies, including Fertinal.

7.      Prior to the appointment of Mr. Alamilla by L1bero Partners, representatives for

both ES Holdings and L1bero Partners were able to obtain unfettered access to all information in

the Oracle platform through, among others, Lusad's jointly appointed controller, Manuel

Tabuenca.  Notably, Mr. Alamilla falsely states in his LinkedIn profile that he was comptroller at

"L1bre" from October 2017 to the present.  *See* LinkedIn Profile of Horacio Alamilla, attached

as Exhibit A.  This is not true, given that Mr. Tabuenca held the controller position up until

December 2018.  After Mr. Tabuenca, however, uncovered irregular transactions and misuse of

corporate funds, Mr. Tabuenca was demoted, his access to the platform restricted, and was

subsequently terminated by Mr. Covarrubias, who appears to have then installed Mr. Alamilla as

his hand-picked successor.

8.      Having "administrator" access is critical, and is the level of access that ES

Holdings enjoyed until the dispute with L1bero Partners arose in December 2018.

"Administrator" access allows a user to have complete and unfettered access to the Oracle

platform, allowing persons with that level of access to modify or delete financial entries.

Contrarily, "audit trail" and "account reviewer" access (which is the limited access ES Holdings

has been provided) does not grant full access to the Oracle platform and does not permit

modifications or deletions of entries.  By way of example, ES Holdings is unable to view the

fixed asset entries on the Oracle system.  The screen shot below evidences that ES Holdings

lacks permission to access this section of the Oracle platform.



9.      Incredibly, while L1bero Partners denies ES Holdings complete access to the

Oracle platform, Exhibit 1 to the Declaration of Mr. Alamilla evidences that multiple mid-level

Lusad employees enjoy "administrator" access that ES Holdings is denied, as depicted below:




## B.      ES Holdings Continues to be Denied Joint Control of the L1bre Group

10.     Mr. Wood conclusorily asserts that "Messrs. Leon and Zayas hold the same

powers of attorney as Messrs. Covarrubias and Belmont with respect to L1bre Nuevo Leon."

Wood Decl. ¶ 29.  As I stated in my Second Declaration, however, even though Mr. Zayas and I

are directors in name, we have no actual power to exercise control over, for example, L1bre

Nuevo León.  L1bero Partners' directors, Messrs. Covarrubias and Belmont (Ricardo Salinas' board representative), are authorized to act individually on behalf of the company, while Mr. Zayas and I are only allowed to act after obtaining the approval of the company's board. Therefore, contrary to Mr. Wood's Declaration, Mr. Zayas and I do not have the same powers of attorney as Messrs. Covarrubias and Belmont.

11.     With respect to L1bre Jalisco, L1bero Partners failed to provide any documentation regarding the operations of this entity until July 24, 2019.  The documentation provided was defective in several material respects, as highlighted in Mr. Lorenzo's July 24, 2019 correspondence to Mr. Rivero.  For example, the bylaws of L1bre Jalisco do not comply with the Partners Agreement because they (i) include a jurisdictional clause that provides that any and all controversies arising from or related to the company are subject to the jurisdiction of the competent courts of Jalisco, which ES Holdings has not agreed to, (ii) do not grant any ES Holdings representative a power of attorney to act on behalf of L1bre Jalisco, and (iii) do not appoint any ES Holdings representative as a member of the L1bre Jalisco board.  Moreover, in its correspondence, ES Holdings requested that L1bero Partners provide the original corporate formation documents of L1bre Jalisco and the shareholder book.  L1bero Partners never responded to Mr. Lorenzo's communication or provided these documents.

12.     In Mr. Wood's Declaration, he explains that the failures to appoint Mr. Zayas and me as members of the L1bre Jalisco board, and to grant us powers of attorney, was the result of an inadvertent omission by a notary public and stated that the omission will allegedly be corrected by "next week."  As of the date of this Declaration, the corrected documents have not been provided.  Moreover, L1bero Partners has yet to provide us with the corporate formation documents and copies of the shareholder book.

13.     Importantly, Mr. Wood's Declaration attaches the appellate brief filed in the Court of Appeals for the Second Circuit by L1bero Partners, which alleges that "L1bre Jalisco remain[s] inactive; no evidence showed that Covarrubias or anyone else was seeking contracts or business for that entity, as the district court would later indicate in its decision." Wood Decl., Ex. 1, p. 25. This allegation is patently false. Between May and August 2018, Diego Covarrubias (the son of Fabio Covarrubias), Francisco Flores (in-house counsel for L1bero Partners and Lusad), and José Antonio Álvarez Tamayo, among others, met with several Jalisco government officials in order to obtain a taximeter concession for L1bre Jalisco. For example, meeting minutes demonstrate that on May 25, 2018 and August 23, 2018, Diego Covarrubias met with the Secretary of Mobility for the State of Jalisco as well as the Secretary's legal director. During these meetings, Mr. Covarrubias provided an overview of the L1bre digital taximeter technology, discussed whether the technology was compatible with the legal requirements of the State, and inquired whether obtaining a concession would be possible. Below are images from the May 25, 2018 and August 23, 2018 meeting minutes.







Accordingly, and contrary to Mr. Wood's Declaration and L1bero Partners' appellate brief attached thereto, L1bre Jalisco actively sought a taximeter concession.

14.     L1bero Partners also continues to deny ES Holdings' representatives joint management and control of Lusad.  Mr. Wood states that on August 2, 2019 (after the filing of the Motion for Contempt), Lusad's secretary sent L1bero Partners' counsel draft resolutions for the appointment of ES Holdings' replacement directors to the Lusad board.  Wood Decl., ¶ 47.

15.     These resolutions, however, are limited to merely appointing ES Holdings' representatives to the Lusad board, and do not grant these representatives the same powers held by L1bero Partners' board members.  For example, Mr. Covarrubias can take actions on his own on behalf of the company, such as transfer and sell assets, open and close bank accounts, and make transfers from Lusad's accounts.  The proposed resolutions do not grant ES Holdings' representatives these same powers.

16.     In addition, the resolutions seek to appoint Mr. Covarrubias as "Presidente del Consejo de Gerentes" of Lusad.  I am currently Chairman of the Board of the non-Mexican

7

entities and "Presidente del Consejo de Gerentes" of Lusad.  In effect, L1bero Partners provided resolutions that do not simply appoint ES Holdings' representatives to the Lusad board, but instead seek to remove me from positions that I currently hold.

**C.    L1bero Partners Has Continued to Pursue Actions in Mexican Courts on Behalf of Lusad Without ES Holdings' Knowledge or Consent**

17.    As explained in my Second Declaration, L1bero Partners initiated three actions in Mexican courts (the Lusad Action, the Criminal Action, and the L1bre Holding Action) without ES Holdings' knowledge or consent.  To this day, L1bero Partners continues to cause the L1bre Group to take actions in these proceedings without ES Holdings' knowledge or consent.

18.    For example, in the Lusad Action, the court scheduled a hearing for August 6, 2019, in order for Mr. Zayas and me to be examined regarding Lusad's allegations in the complaint; namely, that as members of Lusad's board, we acted against the company's interests. Yesterday (August 6) our counsel requested that the court postpone the hearing, explaining that Mr. Zayas and I were currently in the United States preparing for a mediation in connection with the appeal of the Preliminary Injunction order currently pending before the Court of Appeals for the Second Circuit that is scheduled for August 7.  Counsel for Lusad, however, without our knowledge or consent, objected to postponing the hearing and requested the court to issue a decision deeming Lusad's allegations as admitted.

19.    Further, L1bero Partners has not provided ES Holdings with copies of the pleadings filed in any of these three actions, despite our multiple requests.  *See* July 15, 2019 Email from R. Lorenzo to F. Rivero, attached as Exhibit B.

**D.      L1bero Partners Was Fully Aware of the Meritless Claims Asserted in the Taxinet**
       <u>Litigation at the Time of Its Investment</u>

20.     Mr. Wood references an on-going litigation brought by third-party Taxinet against me, alleging that I stole trade secrets and technology to obtain the Mexico City concession, in an apparent attempt to disparage my reputation and credibility.  The claims asserted in this matter are meritless, and I am rigorously defending against this action in court.  Moreover, L1bero Partners was fully aware of the details of this baseless lawsuit prior to its investment and thereafter, has been given complete access to all documents relating to the litigation, and has been kept fully apprised of all developments, including a subsequent state-court action initiated by Taxinet against L1bre Holding and L1bre LLC.

21.     The initial Taxinet litigation was disclosed to L1bero Partners as part of the due diligence it performed prior to entering into the Partners Agreement.  Francisco Flores and Rodrigo Nuñez, Lusad's corporate secretary, traveled to Miami to meet with Geoffrey Travis and Steven Gillman of Shutts & Bowen LLP, counsel then handling the Taxinet matter, to discuss the details and merits of the litigation.  Mr. Travis and Mr. Gillman provided a detailed overview of the pending claims.

22.     After the meeting, L1bero Partners proposed that a different attorney, Harry Payton, take over the litigation.  L1bero Partners' proposal is reflected in a presentation Mr. Covarrubias made to Lusad's board of directors on April 25, 2018, depicted below.



SESIÓN DE CONSEJO
SERVICIOS DIGITALES LUSAD, S. DE R.L DE C.V. Y SUBSIDIARIAS
25 DE ABRIL DE 2018
CONFIDENCIAL

## ABOGADOS CORP Y LITIGIO EUA
### DESIGNACIÓN Y CONTRATACIÓN

- Se propone designar a los despachos:

(i) Payton & Associates de Miami, Florida para que se encargue del manejo del litigio que promueve Taxinet en contra de Santiago León A. y L1bre Holding;  y

(ii) Vinson & Elkins LLP, en su oficina de Houston Texas; o bien Akerman LLP, también a través de su oficina en Houston, para que maneje los asuntos corporativos en Estados Unidos de L1bre Holding LLC y subsidiarias



23.    L1bero Partners also agreed that Lusad would cover the costs incurred in defending the Taxinet litigation, as confirmed by Mr. Flores in a communication to me dated April 3, 2018.  *See* April 3, 2018 Email from F. Flores to S. León, attached as Exhibit C.

24.    When a second lawsuit was filed by Taxinet, this time against L1bre Holding and L1bre LLC, ES Holdings provided prompt notice of the lawsuit to L1bero Partners, in conformity with the Partners Agreement.  *See* June 26, 2019 Letter from R. Lorenzo to F. Rivero, attached as Exhibit D.  In its correspondence, counsel for ES Holdings provided Mr. Rivero, counsel for L1bero Partners, a copy of the as-filed complaint and asked if L1bero Partners would agree to the retention of Mr. Payton as counsel for both L1bre Holding and L1bre LLC in this dispute.

25.    In response, counsel for L1bero Partners asserted that "L1bero [Partners] has not been informed of the current status of the lawsuits and has not been involved in litigation

strategy." *See* July 4, 2019 Email Exchange between R. Lorenzo and F. Rivero, attached as

Exhibit E.  As counsel for ES Holdings explained, this statement is simply incorrect as evidenced

from the e-mail below:

> **From:** Lorenzo, Richard
> **Sent:** Thursday, July 04, 2019 1:14 PM
> **To:** 'Rivero, Francisco'; Homer, William
> **Cc:** Cheskin, Mark R.; Underwood, Colin A.; Munoz, Arturo; Dunn, David; Homer, William
> **Subject:** RE: Taxinet Corp. v. L1bre LLC and L1bre Holding LLC; Case No. 2019-11577-CA-01
>
> Dear Francisco, thank you for your email.  Regrettably, however, your client appears to have failed to provide you an accurate account of the facts concerning the Taxinet matter and as a result your email is incorrect in many material respects.
>
> First, your client was made fully aware, at the time of the investment and thereafter, of the Taxinet litigation.  In fact, Francisco Flores was sent to Miami by your client to meet with Geoffrey Travis and Steven Gillman of Shutts & Bowen, counsel then handling the Taxinet matter, to review the dispute and related action.  Second, at no point, did our client "assure" your client that the action would be dismissed.  Third, L1bero and ES Holdings agreed to shift the defense of the matter to Mr. Payton.  Then Francisco Flores, this time accompanied by Rodrigo Nuñez, traveled to Miami to meet with Mr. Payton to discuss the case and defense strategy.  In fact, in an April 2018 L1bero initiated board proposal titled " Abogados Corp y Litigio EUA," L1bero proposed that Mr. Payton be designated to handle the Taxinet litigation, including the defense of Mr. Leon *and* L1bre.  L1beros' proposal to the board was approved and it was agreed that L1bre would be responsible for the Taxinet defense costs and accordingly, L1bre paid Mr. Payton's fees incurred in the defense of the matter until the present conflict with L1bero began.  L1bero's decision to not honor this agreement is yet another breach of its obligations and a further violation of the NY order, as this decision was taken without ES Holdings' consent.

Counsel for ES Holdings further made clear that L1bero Partners was free to contact Mr. Payton

and "request any information regarding the Taxinet matter directly from him."  *Id.*

**E.     ES Holdings Did Not Delay the Initiation of the Arbitration Proceedings**

26.     Mr. Wood alleges that ES Holdings "prevented the arbitration from moving

forward" by "delay[ing] payment of the fees required to move the arbitration forward."  Wood

Decl., ¶¶ 3-4.  This is not accurate.  Mr. Wood fails to mention that both parties requested

multiple extensions of their respective obligations in the arbitration proceeding, and that the

extensions requested by the parties were due, in part, to then-ongoing settlement discussions.

27.     The International Chamber of Commerce ("ICC") requested that ES Holdings

make a provisional advance of costs by June 11, 2019.  At that time, ES Holdings and L1bero

Partners were discussing a possible meeting to explore a potential settlement. As a result, ES

Holdings requested an extension until June 25, 2019 to make the required payment.  The parties

ultimately held a confidential settlement conference in Atlanta on June 20, 2019, and agreed on a framework for future settlement talks. Consequently, ES Holdings requested another extension to pay the provisional advance. Subsequently, however, it became apparent that the parties would be unable to reach agreement on settlement terms, and therefore ES Holdings paid the $145,000 provisional advance in full by July 26, 2019. The ICC confirmed on August 1, 2019 that it had received the payment and that the provisional advance had been fully paid.

28.     Notably, L1bero Partners also requested an extension of its obligations in the arbitral proceeding. On June 11, 2019, L1bero Partners sought an additional 30 days to file its Answer to ES Holdings' Request for Arbitration and did not file its Answer until July 11, 2019.

**F.     ES Holdings Did Not Make Any Inappropriate Payments to Third Parties**

29.     Mr. Wood asserts that a "financial investigation and audit is needed particularly with regard to transactions that took place before L1bero Partners' involvement." Wood. Decl., ¶ 48. Mr. Wood accuses ES Holdings of transferring L1bre Group funds to third parties that are unrelated to the L1bre Group's business. *Id.* ¶ 49. One such "questionable transaction," according to Mr. Wood, is a "payment to a mining venture [known] as 'Fairfield Gold' that is linked to Messrs. Leon and Zayas personally." *Id.* In fact, Fairfield Gold is a company in which Mr. Zayas and I have an interest and from which we contributed hundreds of thousands of dollars to the L1bre Group before L1bero Partners became involved in the business.

30.     The payment to Fairfield Gold, before L1bero Partners had any interest in the L1bre Group, was completely appropriate. Fairfield Gold had originally funded the L1bre business and the subsequent payment was made to repay that investment.

31.     Moreover, information regarding this transaction was available to L1bero Partners during the due diligence it performed prior to executing the Partners Agreement.

* * *

In conclusion, while L1bero Partners has taken steps to appear that they are attempting to comply with the Preliminary Injunction, in reality, nothing has changed.  L1bero Partners continues to (i) deny ES Holdings access to L1bre Group bank account records and statements, (ii) deny ES Holdings access to the L1bre Group's Mexico City offices, (iii) deny ES Holdings the same level of access enjoyed by L1bero Partners to Lusad's financial records, (iv) deny ES Holdings access to, or copies of, any L1bre Group Mexican court submissions, (v) deny Mr. Zayas and myself the right to assume our Lusad board positions, (vi) refuse to grant ES Holdings' replacement Lusad board members the same powers as L1bero Partners' representatives, (vii) refuse to allow ES Holdings to take part in any management decisions being considered and made by the L1bre Group, and (viii) deny ES Holdings any role in any L1bre Group management decisions since December 2018.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 7, 2019.


_____
                **Santiago León Aveleyra**