UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                              :

ESPIRITU SANTO HOLDINGS, LP,          :

                                              :

                 Petitioner,                  :

                                              :

   -against-                        :         No. 19-cv-3930-CM

                                              :

L1BERO PARTNERS, LP,                :

                                              :

   and                               :

                                              :

ESPIRITU SANTO TECHNOLOGIES, LLC,  :

                                              :

                 Respondents.       :

                                              :
------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PETITIONER
ES HOLDINGS' MOTION TO HOLD RESPONDENT L1BERO PARTNERS, LP IN
<u>CIVIL CONTEMPT OF THE COURT'S MAY 16, 2019 PRELIMINARY INJUNCTION</u>**

HOGAN LOVELLS US LLP
390 Madison Avenue
New York, New York 10017

600 Brickell Avenue, Suite 2700
Miami, Florida 33131

*Attorneys for Petitioner*
*Espiritu Santo Holdings, LP*

# TABLE OF CONTENTS

**Page**

ARGUMENT ..................................................................................................................1

I. L1bero Partners' Proffered Witnesses, Messrs. Alamilla and Wood, Are Not Competent to Testify. ........................................................................1

II. Respondent's Legal Contentions About Preliminary Injunctions Are Wrong. ...........................................................................................................4

III. Respondent's Rationalizations for its Contumacious Behavior Rely on Misreadings of the Preliminary Injunction and Misstatements of Fact. ................................................................................................................6

    A. Respondent Has Not Rebutted ES Holdings' Showing That It Has Been Denied Equal and Unfettered Access to L1bre Group Records and Facilities. ...............................................................................................6

    B. Respondent Has Not Rebutted ES Holdings' Showing That the Failure to Promptly Re-Seat Its Directors on Lusad's Board Violated the Injunction. ..............................................................................................7

    C. Respondent's Continued Prosecution of the Mexican Actions Is Undeniably a "Business Decision" on Behalf of the L1bre Group Made Without Petitioner's Consent. ......................................................8

IV. Respondent's Attempted Smears With Respect to Ancillary Matters Are Unavailing. ...........................................................................................10

CONCLUSION ............................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*DeWitt Stern Grp., Inc. v. Eisenberg*,
  No. 13 Civ. 3060 (RWS), 2013 WL 5815512 (S.D.N.Y. Oct. 29, 2013) .................................5

*E. Point Sys., Inc. v. Maxim*,
  No. 13 Civ. 215 (VAB), 2015 WL 8023569 (D. Conn. Dec. 4, 2015) ...................................3

*In re Hilton*,
  544 B.R. 1 (Bankr. N.D.N.Y. 2016) ......................................................................................3

*Mastrio v. Sebelius*,
  768 F.3d 116 (2d Cir. 2014) ..............................................................................................4, 5

*Metro. Life Ins. Co. v. Massachusetts*,
  471 U.S. 724 (1985) ..............................................................................................................9

*Mizrahi v. Gonzales*,
  492 F.3d 156 (2d Cir. 2007) ..................................................................................................9

*N. Am. Soccer League LLC v. U.S. Soccer Fed'n*,
  883 F.3d 32 (2d Cir. 2018) ................................................................................................4, 5

*Patterson v. Cnty. of Oneida*,
  375 F.3d 206 (2d Cir. 2004) ..................................................................................................3

*Rowe Entm't, Inc. v. William Morris Agency, Inc.*,
  No. 98 Civ. 8272 (RPP), 2005 WL 22833 (S.D.N.Y. Jan. 5, 2005) ......................................3

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*,
  60 F.3d 27 (2d Cir. 1995) ......................................................................................................4

**Other Authorities**

Fed R. Civ. P. 56 ..........................................................................................................................3

Fed. R. Civ. P. 65 .....................................................................................................................5, 8

Fed. R. Evid. 602 .........................................................................................................................2

In further support of its motion to hold L1bero Partners[1] in civil contempt of the Court's Preliminary Injunction, and in response to Respondent's opposition (Dkt. 52) (the "Opp."), ES Holdings respectfully submits the Third Declaration of Santiago León Aveleyra, dated August 7, 2019 (the "3d León Decl."), the exhibits annexed thereto; the Declaration of Eduardo Zayas Dueñas, dated August 7, 2019 (the "Zayas Decl."); and this reply memorandum.

## ARGUMENT

### I. L1bero Partners' Proffered Witnesses, Messrs. Alamilla and Wood, Are Not Competent to Testify.

Respondent submitted two written statements in opposition to the instant motion: (a) a declaration of Horacio Alamilla Medina (Dkt. 53) (the "Alamilla Decl."), who purports to be the former comptroller of Lusad and its subsidiaries; and (b) a declaration by John William Wood, a "corporate representative" of L1bero who asserts that he has "been authorized to declare" certain things on L1bero's behalf (Dkt. 54) (the "Wood Decl."). Strikingly, L1bero Partners has offered no testimony from either of its actual partners, who decline to submit themselves to cross examination—including Mr. Covarrubias, who lives in Houston, a domestic plane ride away. *See* 3d León Decl. ¶ 4; *cf.* Dkt. 34 (5/13/19 Tr.) at 15:2–10 ("If [Mr. Covarrubias] thought it was important enough to come, he would be here."). Mr. Flores, who testified about Respondent's actions and the L1bre Group business at the May 13 hearing, *id.* at 80:5–130:17, has likewise declined to appear. Their stand-ins, Messers. Alamilla and Wood, are not competent witnesses, and their testimony should be stricken or disregarded.

We start with Alamilla, who claims to have served as Lusad's comptroller from some unspecified period until June 14, 2019. Alamilla Decl. ¶ 1. That is news to Petitioner. Previously, Manuel Tabuenca served as Lusad's comptroller (after he was demoted from his

---

[1] Unless otherwise indicated, capitalized terms have the same meanings as in the Court's PI Decision and ES Holdings' opening memorandum (Dkt. 48) (the "ES Holdings Mem.").

prior CFO role, *see* León Decl. ¶ 15)—only for L1bero Partners to fire him after he reported financial irregularities at Lusad to upper management. *See* 3d León Decl. ¶ 7. ES Holdings has never received any notice that Respondent appointed *anyone* as Tabuenca's replacement, as required (*see* Partners Agreement § 5.1(b)(vi)), much less Alamilla, whom ES Holdings knows to be an employee of Mr. Covarrubias and his related businesses, including Fertinal, the Covarrubias entity presently involved one of Mexico's most notorious corruption scandals. 3d León Decl. ¶ 6.[2]

As for Wood: he is a complete cipher. Nobody associated with ES Holdings has ever dealt with him or even heard of him with respect to the L1bre Group's business, or the dealings relevant to this contempt application. *See* 3d León Decl. ¶ 2. Indeed, the Wood Declaration offers not the faintest hint who Wood *is*, much less how or why he is a proper witness here. Petitioner's own research indicates that Wood is likely a Texas-licensed attorney who lives in Houston and serves as the registered agent for some of Mr. Covarrubias' companies. *See id.* ¶ 3.

This is no basis for competent testimony: "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. The Wood Declaration contains *no* explanation for how Wood has personal knowledge regarding any of the matters as to which he purports to offer testimony. Indeed, the declaration contains statements and attaches documents regarding a host of issues about which Wood does not claim to possess, and could not possibly have, any personal knowledge. *See* 3d León Decl. ¶¶ 2–4.

---

[2] Alamilla's LinkedIn page states that he was comptroller at L1bre from "October 2017 – present." That is false. 3d León Decl. ¶ 7 & Ex. A. The same page reflects that Alamilla was the comptroller at Grupo Fertinal when Covarrubias was its majority shareholder (*i.e.*, before the sale to Pemex that is the source of an ongoing corruption and bribery scandal). *See* Second León Decl. ¶¶ 6–7.

Wood purports to base some of his statements "on L1bero Partners' records." Wood Decl. ¶ 1. He does not say what records, or how, why or when he obtained access to them. While "employees are generally found to have personal knowledge of, and therefore may testify in relation to, records of their employers that they reviewed in their official capacities," *In re Hilton*, 544 B.R. 1, 8 (Bankr. N.D.N.Y. 2016), Wood does not claim to be an employee of Respondent or to have any "official capacity" at all. For that reason, "courts have consistently stricken affidavits made by a party's attorney where there was no indication that the attorney had personal knowledge of the matters about which they testified." *Id.* (citing cases).[3] Likewise, Wood's attempt to offer evidence "on information and belief" (Wood Decl. ¶ 1) is a non-starter. *See Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) ("[Rule 56's] requirement that affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief.'"). Moreover, Wood offers no evidence of what information forms the basis for his beliefs—or how, where, or in what circumstances he obtained such information, making it impossible for him to be effectively cross-examined.

It *appears*—again, because of the complete lack of clarity in the Wood Declaration, it is difficult to be definite—that Respondent retained Wood as a special-purpose amanuensis for the purpose of responding to this motion (and shielding those with actual knowledge, including

---

[3] *See also Rowe Entm't, Inc. v. William Morris Agency, Inc.*, No. 98 Civ. 8272 (RPP), 2005 WL 22833, at *70 (S.D.N.Y. Jan. 5, 2005) ("Mr. Rowe's affidavit states that concerts in Atlanta, Detroit, and Chicago had been sold at the time of his conversation, but he does not state any basis for this belief. As it is not shown to be based on personal knowledge, it cannot be accepted as evidence in this case."), *aff'd*, 167 F. App'x 227 (2d Cir. 2005); *E. Point Sys., Inc. v. Maxim*, No. 13 Civ. 215 (VAB), 2015 WL 8023569, at *2–3 (D. Conn. Dec. 4, 2015) ("Plaintiffs provided the Court with no authority for the proposition that a certified public accountant not employed by the plaintiff company, and who had no personal involvement with the plaintiff company or its financial records during the relevant time periods, may testify as a fact witness, following his review of the business's financial records, about financial losses (*i.e.*, damages) allegedly suffered by the plaintiff company.").

Covarrubias, Flores, and Salinas). In all events, his declaration contains nothing that identifies him as a proper witness, and the Court should disregard his declaration and Alamilla's as well.

## II. Respondent's Legal Contentions About Preliminary Injunctions Are Wrong.

Respondent advances two broad contentions about the law of preliminary injunctions, both of which are wrong.

*First*, Respondent repeatedly draws a purportedly "significant" distinction between "mandatory" and "prohibitory" preliminary injunctions. Opp. at 19; *see id.* at 2–4, 9, 20. According to L1bero Partners, the Court's Preliminary Injunction is not a mandatory" order that would "require[] a party to take affirmative action," but rather a prohibitory one that merely "prevents L1bero from taking certain actions." Opp. at 19. As a result, Respondent argues, it need not actually *do anything* to, among other things, "re-establish . . . equal management and control over the company." *Id.*

ES Holdings agrees that the Preliminary Injunction is "prohibitory" and not "mandatory," to the extent that this taxonomy is pertinent.[4] Prohibitory injunctions "generally seek[ ] only to maintain the status quo pending a trial on the merits." *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995); *accord* Opp. at 17 (agreeing that the injunction here "preserve[s] the status quo"). But "[t]he 'status quo' to be preserved by a preliminary injunction is the last actual, peaceable uncontested status which preceded the pending controversy." *Mastrio v. Sebelius*, 768 F.3d 116, 120 (2d Cir. 2014) (cleaned up). In other words, "[t]he 'status quo' in preliminary injunction parlance is really a 'status quo ante.'" *NASL*, 883 F.3d at 37 n.5 (citing cases). As the Second Circuit aptly put it, "[t]his special 'ante' formulation of the status

---

[4] *But see N. Am. Soccer League LLC v. U.S. Soccer Fed'n*, 883 F.3d 32, 37 n.4 (2d Cir. 2018) ("*NASL*") ("We focus on the status quo rather than the 'mandatory' and 'prohibitory' terminology because 'in borderline cases injunctive provisions containing essentially the same command can be phrased in either mandatory or prohibitory terms.'") (quoting *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 835 (1994)).

quo in the realm of equities shuts out defendants seeking shelter under a current 'status quo' precipitated by their wrongdoing." *Id.* To that end, "[p]reserving the status quo is not confined to ordering the parties to do nothing: it may require parties to take action." *Mastrio*, 768 F.3d at 120–21.

That principle applies with full force to the Court's injunction here. Because "the irreparable harm found by the Court [was] the exclusion of Petitioner from its right to co-manage and co-control the entire business of the partnership," Preliminary Injunction at 1, the Court's injunction was designed to (and does) "freez[e] the corporate status quo pending arbitration," PI Decision at 53. This means restoring the "status quo ante"—the equal control over the L1bre Group that the parties bargained for in the Partners Agreement. *See* Preliminary Injunction at 2–3. Any complaint that the text of the Preliminary Injunction does not literally say "re-seat ES Holdings' directors on Lusad's board" (Opp. at 19) is a transparent dodge. Respondent knows and always knew that the injunction required that result, which is why Respondent did not claim otherwise until the instant application was filed, and why it has (very) belatedly taken baby steps in that direction.

*Second*, Respondent asserts that the Preliminary Injunction violates Rule 65 because it is "tied to the parties' rights and obligations under," and refers to, an "external document"—the Partners Agreement. Opp. at 17. Neither Rule 65, nor any case cited by Respondent, supports those propositions.[5] The operative language in Rule 65 requires an injunction to "describe in reasonable detail—and not by referring to [another] document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(C). Respondent does not claim that the Court's detailed

---

[5] In the only in-circuit case cited in Respondent's treatment of this issue, the injunction at issue was both "tied to . . . rights and obligations under" and "referenced" an external document. *DeWitt Stern Grp., Inc. v. Eisenberg*, No. 13 Civ. 3060 (RWS), 2013 WL 5815512, at *5 (S.D.N.Y. Oct. 29, 2013).

injunction fails to describe in "reasonable detail" what is required; as a result, the fact that the Partners Agreement is referenced in the Preliminary Injunction is of no moment.

### III. Respondent's Rationalizations for its Contumacious Behavior Rely on Misreadings of the Preliminary Injunction and Misstatements of Fact.

#### A. Respondent Has Not Rebutted ES Holdings' Showing That It Has Been Denied Equal and Unfettered Access to L1bre Group Records and Facilities.

The Preliminary Injunction instructs L1bero Partners to provide "unrestricted and unfettered access to any and all corporate, financial, and accounting information and documents of all [L1bre Group] companies." ES Holdings Mem. at 5–7. The evidence demonstrates that Respondent has willfully refused to comply with this mandate. For one thing, it has no response at all to ES Holdings' showing that it has repeatedly requested copies of the L1bre Group's bank statements, to no avail. *Compare id.* at 7 *with* Opp. at 23. That alone justifies a finding of contempt and sanctions.

As to access to electronic records via the Oracle platform: Respondent readily admits that it has, indeed, rejected ES Holdings' requests for "unrestricted and unfettered access" to the company records, via administrator privileges. *See* Opp. at 22–23. Its excuses for this non-compliance are unavailing. *First*, whether "Administrator Access" allows a user to "add, alter, or delete" information (*id.* at 22) is irrelevant; the Court ordered "unrestricted and unfettered access," not access that Respondent unilaterally deems acceptable in the circumstances.[6] *Second*, even if it were true that the partners themselves did not always have "Administrator Access" (Opp. at 22), that too is a red herring. ES Holdings needs unrestricted access to the company's electronic records because, among other reasons, in the past two days, Respondent has: (i) advanced the contention, through an unknown "corporate representative," that the L1bre

---

[6] *Cf.* Partners Agreement § 8.3 (providing that "[e]ach of the Partners may examine, at any time . . . books . . . and documents *of any kind* . . . or have them reviewed by a [designate]").

Group has "run out of funds" (Opp. at 5), which would leave millions of dollars unaccounted for; and (ii) informed ES Holdings for the first time that Alamilla—a Covarrubias crony and the former comptroller of a company at the heart of a massive public corruption scandal, *see* above at 2—was supposedly appointed Lusad's comptroller at or around the time that the L1bre Group's funds disappeared.  ES Holdings urgently needs to determine, among other things, the extent to which points (i) and (ii) are connected.  Respondent's willful and abiding refusal to provide unfettered access is blocking those efforts, *see* 3d León Decl. ¶¶ 7–9, and violates the Preliminary Injunction.

As for the undisputed fact that Petitioner's representatives were denied access to the L1bre Group offices in July (Opp. at 8), Respondent's evasions are more transparent still. Respondent asserts that L1bero Partners "did not instruct building security" to bar access, *id.*, but even if it had any valid support for that contention, it would be no excuse because ES Holdings provided Respondent's counsel with five days' advance notice of ES Holdings' intent to access the offices.  *See* Second León Decl., Ex. V.  It is also untrue that the representatives were "unidentified" or refused to explain the purpose of their visit.  *See* Zayas Decl. ¶¶ 5–7.

### B.    Respondent Has Not Rebutted ES Holdings' Showing That the Failure to Promptly Re-Seat Its Directors on Lusad's Board Violated the Injunction.

Respondent asserts that it has been "more than reasonably diligent" in restoring ES Holdings' equal control of the L1bre Group (Opp. at 21), but the facts show otherwise. *First*, Respondent persists with its claim that "the pending Mexican court order" bars the reinstatement of León and Zayas to Lusad's board (*id.*), but that is not so.  *See* Second León Decl. ¶ 16. *Second*, ES Holdings agreed to nominate replacement directors on May 29, 2019, and Respondent did not procure any resolution purporting to appoint them until August 4, 2019.  *See* Opp. at 11.  The Court can decide for itself whether Respondent's efforts in this respect were,

indeed, "sincere." *Compare id.* at 10 *with* Second León Decl. ¶¶ 15–23. Even now, L1bero Partners' efforts are still transparently bad-faith: the latest resolution: (i) does not grant ES Holdings' representatives the same powers as Mr. Covarrubias possesses; and (ii) purports to appoint Mr. Covarrubias chairman of Lusad's board, an appointment that does not comport with the Partners Agreement and is another would-be power grab. *See* 3d León Decl. ¶¶ 15–16.

C. **Respondent's Continued Prosecution of the Mexican Actions Is Undeniably a "Business Decision" on Behalf of the L1bre Group Made Without Petitioner's Consent.**

Respondent does not deny that its continued prosecution of Mexican court actions on behalf of L1bre Group companies (*see* Second León Decl. ¶¶ 26–45) is a "business decision" made without ES Holdings' consent.[7] Respondent offers a handful of reasons why this is not a clear and unambiguous violation of the Preliminary Injunction's prohibition against unilateral action with respect to "all matters affecting the control of the business of the L1bre Group," including "issuing directives or making business decisions on behalf of any [L1bre Group] company." Preliminary Injunction at 3. None are persuasive.

*First*, Respondent argues that it cannot be violating the Preliminary Injunction because this Court declined to issue "an anti-suit injunction that would enjoin [L1bero Partners] from litigating the issue of the validity of the arbitration agreement in Mexico." PI Decision at 48; Opp. at 16. But as ES Holdings already explained, the pending Mexican actions are almost entirely *not* about "the validity of the arbitration agreement." The Lusad Action and the Criminal Action (Second León Decl. ¶¶ 26, 30–37, 44–45) have nothing to do with that issue, and Respondent does not claim otherwise. As to the L1bre Holding Action (*id.* ¶¶ 38–43), the point of the action (or at least the dominant theme) is to vitiate the Partners Agreement' joint

---

[7] This is a separate failing of Respondent's Rule 65 argument (Opp. at 17): the Preliminary Injunction itself (not merely the Partners Agreement) bars Respondent from making unilateral business decisions. Preliminary Injunction at 3.

control provisions; Respondent does not explain why the Court's ruling allows *that* unilateral "decision."

*Second*, employing a highly misleading ellipsis, Respondent claims that the Preliminary Injunction only bars it from "making business decisions on behalf of any [L1bre Group] company . . . relating to the *commencement* of litigation," and argues that its *continued prosecution* of the Mexican actions does not fall within that category, because commencement and continuation are different. Opp. at 17–18. That reasoning is all wrong. The Preliminary Injunction bars Respondent from making unilateral business decisions for L1bre Group companies in the main; "[d]ecisions relating to the commencement of litigation" are only an illustrative subset. *See* Preliminary Injunction at 3. Moreover, if the narrower prohibition were the only restraint in play, Respondent does not explain why continued prosecution is not, in fact, "related to" the commencement of litigation within the "broad common-sense meaning" of that phrase. *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985); *see also, e.g.*, *Mizrahi v. Gonzales*, 492 F.3d 156, 159 (2d Cir. 2007) (explaining the "expansive intent" connoted by the phrase "relating to").[8]

*Third*, Respondent argues that discontinuing the Mexican actions would cause some unspecified prejudice to "stakeholders" due to the "distinct likelihood of being unable to recommence proceedings . . . should the PI Order be vacated or modified." Opp. at 18–19. But as ES Holdings pointed out in its moving brief, the Preliminary Injunction has not been stayed, and Respondent's speculation that it might be disturbed on appeal provides no justification for its failure to comply with the Court's ruling now. ES Holdings Mem. at 4. The Opposition also

---

[8] Respondent's argument that the decision to maintain the Mexican actions—which, after all, involve criminal charges against ES Holdings' principals and seek to eviscerate the joint control provisions of the Partners Agreement—is part of the "day-to-day management" of the L1bre Group (Opp. at 18) is patently unsupportable.

makes a passing, unexplained reference to Respondent's need to comply with its fiduciary duties (Opp. at 18) that, in addition to the obvious irony (*see* PI Decision at 39–40), also makes no sense as a practical matter—it cannot possibly be in anyone's best interest to violate a binding, applicable federal court order and incur the resulting sanctions.

**IV.  Respondent's Attempted Smears With Respect to Ancillary Matters Are Unavailing.**

Without explaining how they are relevant to the instant application, the Opposition and the Wood Declaration mention a series of ancillary issues, including so-called "Taxinet" lawsuits, supposed delay in the ICC arbitration, and some vague, wholly unsubstantiated allegations of self-dealing by Petitioner's principals. *E.g.* Opp. at 5–6, 12–13.  Each of these contentions, filtered through a mouthpiece with no firsthand knowledge, are baseless.  *See* 3d León Decl. ¶¶ 20–31.  They are also patently immaterial to this motion.

## CONCLUSION

In a last-ditch effort, Respondent contends that even if it violated the Preliminary Injunction, it did not do so willfully or in bad faith.  Opp. at 24–25.  Respondent would have this Court believe that it was reasonable, in the face of an injunction expressly crafted to preserve ES Holdings' "right to co-manage and co-control the entire business of the partnership" (Preliminary Injunction at 1), to unilaterally limit Petitioner's access to records, obstruct the restoration of equal control, and continue to unilaterally wield company assets against its partner. ES Holdings respectfully submits that the clear and convincing evidence demonstrates otherwise, and asks the Court to rule accordingly and to levy such sanctions as it deems appropriate.

August 7, 2019
New York, New York

HOGAN LOVELLS US LLP

/s/ David Dunn   /

David Dunn
Benjamin A. Fleming
390 Madison Avenue
New York, New York 10017
Tel. (212) 918-3000
Fax (212) 918-3100
david.dunn@hoganlovells.com
benjamin.fleming@hoganlovells.com

Richard C. Lorenzo (*pro hac vice*)
Mark R. Cheskin (*pro hac vice*)
Gabriella Morello
600 Brickell Avenue, Suite 2700
Miami, FL 33131
Tel. (305) 459-6500
Fax (305) 459-6550
richard.lorenzo@hoganlovells.com
mark.cheskin@hoganlovells.com
gabriella.morello@hoganlovells.com

*Attorneys for Petitioner*
*Espiritu Santo Holdings, LP*