**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ESPIRITU SANTO HOLDINGS, LP,

       Petitioner,

  -against-

L1BERO PARTNERS, LP; ESPIRITU SANTO
TECHNOLOGIES, LLC

      Respondents.

No. 19-cv-3930-CM

---

**MEMORANDUM DECISION AND ORDER DENYING PETITIONER ESH'S MOTION
TO HOLD RESPONDENT L1BERO PARTNERS, LP IN CIVIL CONTEMPT**

McMahon, C.J.:

    Currently before the Court is Petitioner Espiritu Santo Holdings, LP's motion to hold Respondent L1bero Partners, LP in civil contempt of this Court's May 16, 2019 preliminary injunction order and this Court's August 13, 2019 order, made pursuant to a stipulated agreement between the parties, which addressed Petitioner's prior motion to hold Respondent in contempt for violations of the Preliminary Injunction. For the reasons set forth below, this motion is denied.

    **I.    Factual Background**

        **A.    ESH Files a Request for Arbitration and Obtains a Preliminary Injunction**

    On December 6, 2017, Espiritu Santo Holdings ("ESH") (managed by Santiago León Aveleyra and Eduardo Zayas Dueñas on behalf of a close group of investors) and L1bero Partners ("L1bero") (indirectly managed, owned, and controlled by Ricardo Salinas Pliego and Fabio Covarrubias Piffer) entered into a Partners Agreement whereby each had an equal investment in and equal control of Espiritu Santo Technologies, LLC ("ES Technologies").

Under the Partners Agreement, ESH and L1bero Partners equally and jointly control Servicios Digitales Lusad, S. de R.L. de. C.V. ("Lusad"), a subsidiary of ES Technologies that was created to operate a taximeter and ride-hailing company in Mexico City. The Partners Agreement is governed by Delaware law and mandates that all disputes arising out of the agreement be arbitrated before the International Court of Arbitration at the International Chamber of Commerce ("ICC").

From about December 2017 until mid-to-late 2018, the partnership appeared to operate smoothly. However, the joint venture went awry when Salinas and Covarrubias took several steps in derogation of the Partners Agreement. (Mem. Decision & Order, Dkt. No. 33.) On April 24, 2019, in anticipation that their actions would cause their partners to invoke the dispute resolution mechanism in the Partners Agreement, Respondents obtained an *ex parte* temporary injunction from a Mexican civil court, which enjoined Petitioner from commencing any arbitration proceeding derived from the Partners Agreement. (Dkt. No. 13, Exhibit 2).

On May 1, 2019, per the Partners Agreement, Petitioner filed a Request for Arbitration with the ICC to resolve Respondent's seizure of the joint venture and breaches of the Partners Agreement. (Emergency Injunction in Aid of Arbitration, Dkt. No. 1.) Petitioner alleged that Respondent engaged in self-dealing, misappropriation of funds, filing a criminal complaint against Zayas, barring León and Zayas from acting on behalf of Lusad, and creating new entities to "compete" with Lusad for the Mexico City and other concessions. (*Id.*)

Notably the criminal complaint against Zayas arose out of Lusad's board resolution for Deloitte to audit Lusad. (León Decl. ¶17.) A Lusad employee provided Deloitte with two laptops that contained Lusad's financial information. (*Id.*; Tr. 40:24–41:2.) Lusad, supposedly at Covarrubias's instruction, filed a criminal complaint against Deloitte in Mexico City alleging that

Deloitte stole the laptops. (León Decl. ¶¶ 18,21.) Upon Zaya's report to Mexican authorities that Lusad had authorized Deloitte's review of the laptops, Lusad added Zayas to the criminal action (the "Criminal Action") alleging that he was complicit in the "theft" of the laptops. (*Id.* ¶ 20.)

The morning after filing a Request for Arbitration, Petitioner came before this Court seeking a temporary restraining order and a preliminary injunction enjoining Respondent's alleged misconduct pending the ICC Arbitration. (Dkt. No. 1.) Specifically, Petitioner sought to prevent Respondent's competition with the joint venture via unaffiliated companies and misappropriation of Petitioner's equal share of ES Technologies' intellectual property and technology. (*Id.*)

On May 13, 2019, this Court held a hearing and subsequently issued the temporary restraining order and eventually granted in part and denied in part Petitioner's Motion for Preliminary Injunction. (Dkt. No. 33.) This Court found that irreparable harm derived from Respondent's (and its principals') actions to systematically cut Petitioner out of the management of ES Technologies and its subsidiaries, thereby "Depriving [Petitioner] of the ability to make its own business decisions about the operation of a joint venture in which it is supposed to have 50% control." (*Id.* at 46.)

On May 16, 2019, this Court entered a preliminary injunction that, among other things, prohibited L1bero from "issuing directives or making business decisions on behalf of any company contemplated or governed directly or indirectly by the Partners Agreement … in violation of the Partners Agreement or to the exclusion of [ESH] or its appointed directors." (Prelim. Inj. 2–4.)

### B.   ESH's Prior Contempt Application and the August Stipulated Order

On July 30, 2019, Petitioner moved to hold Respondent responsible for violations of the Court's preliminary injunction. (Dkt. No. 45.) Petitioner alleged that since this Court had issued its temporary restraining order and preliminary injunction, L1bero had continued to deny ESH

equal access to corporate, financial, and accounting information and documents. (Second León Decl., Dkt. No. 46.) Petitioner further argued that L1bero had physically restricted Petitioner's access to the L1bre Group Offices in Mexico City; obstructed the appointment of ESH representatives to the Lusad board; and continued to pursue actions in Mexican courts on behalf of the L1bre Group without the consent of ESH. (*Id.*)

On July 31, 2019, this Court issued an Order to Show Cause and scheduled a hearing for the afternoon of August 13, 2019. (Dkt. No. 49.) The parties reached a stipulated agreement on the eve of the scheduled hearing. (Dkt. No. 58.) The Court ordered the following on August 13, 2019 (August Stipulated Order, Dkt. No. 59):

> As soon as practicable but within no later than 10 days after the entry of this Stipulation and Order, L1bero Partners shall take all reasonable steps to pursue a stay of 45 days to be entered in the civil and criminal actions in the Mexican courts involving the parties or their principals, representatives, or agents that are pending and that relate to or arise out of the Partners Agreement of any of the L1bre Group entities. The pending actions include but are not limited to: … (ii) a criminal action at the "Fiscalia de Delitos Especiales" in which the attorney general's office of Mexico City was or is the prosecutor and Eduardo Zayas is the defendant; … and (iv) any other proceedings known to the parties. ES Holdings shall reasonably cooperate with L1bero Partners to effectuate the stay of these actions, which shall include prompt communication between the parties' respective Mexican counsel…. No further proceedings, filing, or other actions may occur in connection with these actions from the date of this Stipulation and Order [August 13, 2019] until at least 10 days after the conclusion of the mediation, and no party hereto will request, initiate, or advance any such proceedings during that period.

(*Id.* ¶ 3.)

However, at a September 11, 2019 hearing in the Criminal Action, the Mexican court imposed (i) precautionary measures on Zayas that preclude him from visiting Lusad's offices or any potential witnesses; (ii) a MXN $1,000,000 bond in lieu of seizure of his passport; and (iii) court-ordered monitoring. (Pet'r's OTSC Mem. 7.) Respondent has since filed a writ to stay the Criminal Action, signed by Flores on behalf of Lusad. (*Id.*) Respondent prepared a similar writ

for Zaya's signature, which Petitioner refuses to sign because its Mexican counsel has advised the writs "would be ineffective, at best, in vacating the interim measures . . . ." (*Id.* at 8.)

The August Stipulated Order also ordered L1bero Partners' compliance with the Preliminary Injunction. (Cheskin Decl., Dkt. No. 65. ¶ 15.) Additionally, the parties agreed to engage in a formal mediation in New York City within 35 days, "in an attempt to resolve all disputes between them." (August Stipulated Order, Dkt. No. 59 § 1.) After mediation sessions on August 29, 2019, and September 4, 2019, the parties exchanged settlement proposals through their mediator until September 12, 2019. (*Id.*) On September 26, 2019 the parties entered into a "standstill agreement" that extended the effective stay of proceedings to October 3, 2019. (*Id.*) Ultimately, the settlement efforts did not resolve the dispute (*Id.*)

Simultaneously with the filing of this motion, Petitioner has served L1bero with a notice terminating the Partners Agreement (and the related "unit Purchase Agreement") and cancelling L1bero's shares in ES Technologies. (Fourth Leon Decl. ¶¶ 21-23.) Petitioner has served that notice pursuant to Sections 10.1(a) and (b) of the Partners Agreement, which collectively provide that if Covarrubias or Salinas "cease[s] to have direct or indirect Control in [L1bero]" during the so-called "Lock-Up Period," ES Holdings "may terminate [the Partners] Agreement without any liability and/or [ES Technologies'] liability," and L1bero's units in ES Technologies "shall be cancelled and extinguished without . . . liability, and without any payment and/or corporate action thereof by [ES Technologies]." (*See* Partners Agreement §§10.1(a)-(b).)

### C.    Summary of Allegations

Petitioner now urges this Court to hold Respondent in civil contempt of the Preliminary Injunction and the August Stipulation and Order. Generally, Petitioner argues that any violation of

the Preliminary Injunction is also a violation of paragraph fifteen of the August Stipulated and Order. (Cheskin Decl., Dkt. No. 65. ¶ 15.)

First, Petitioner asserts that Respondent violated paragraph three of the August Stipulated Order because Respondent (i) failed to request a stay of the Criminal Action by August 23, 2019 and (ii) affirmatively urged the Mexican court to impose interim precautionary measures on Zayas at the September 11, 2019 hearing in the Criminal Action. (Pet'r's OTSC Mem. 6–7, Dkt. No. 66.) Petitioner claims this conduct also constitutes a "business decision" without Petitioner's consent, and therefore violates the Preliminary Injunction as well. (*Id.* at 13.; see also Prelim. Inj. 3.)

Second, Petitioner claims that Respondent has taken actions that diminish Petitioner's equal ownership and participation in management and control of the L1bre Group by making business decisions in violation of the Partners Agreement and to the exclusion of Petitioner and its appointed directors. Specifically, without Petitioner's consent, Respondent (i) incurred additional debt (from companies controlled by Salinas) in Lusad's name and pledged Lusad's tablets as collateral; (ii) paid entities associated with Covarrubias for redundant services; and (iii) attempted to sell Lusad's remaining tablets. (*Id.* at 8–9; 14–15.) Petitioner argues that the sale of Lusad's remaining tablets also violates the Partners Agreement, which bestows the board with "the ultimate power to make decisions for [ES Technologies] on material matters." (*Id.* at 15 (alteration in original) (quoting Partners Agreement §5.2, Ex. 10 to León Decl., Dkt. No. 63).)

Third, Petitioner argues that Respondent violated the Preliminary Injunction's order of Petitioner-appointed directors' "unrestricted and unfettered access" to financial documents. (Pet'r's OTSC Mem. 15; *see also* Prelim. Inj. 4.) Lusad allegedly prevented Petitioner-appointed directors from obtaining Lusad's financial information from Lusad's auditors (hired by

6

Respondent) and (ii) instructed one of Lusad's principal banks that Zayas was not entitled to review Lusad's bank statements and financial records. (Pet'r's OTSC Mem. 9–10, 16.)

## II.    STANDARD OF REVIEW

"Civil contempt differs from criminal contempt in that it seeks *only* to 'coerc[e] the defendant to do' what a court had previously ordered him to do." *Turner v. Rogers*, 564 U.S. 431, 441 (2011) (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 442 (1911)) (emphasis added). A court may not impose punishment "in a civil contempt proceeding when it is clearly established that the alleged contemnor is unable to comply with the terms of the order." *Hicks* v. *Feiock*, 485 U.S. 624, 638, n. 9 (1988). And once a civil contemnor complies with the underlying order, he is purged of the contempt and is free. *Id.* at 633 (noting that he "carr[ies] the keys of [his] prison in [his] own pockets" (internal quotation marks omitted)).

## III.   DISCUSSION

### A.    Failure to Stay Criminal Action Against Zayas

This Court will not hold Respondent in contempt of the so-ordered stipulation because Respondent failed to request a stay of the Mexican criminal action by August 23, 2019. At some time after September 11, 2019, the Respondent did file a writ to stay the Criminal Action – perhaps a few weeks belatedly, but Respondent complied with the underlying order. (Pet'r's OTSC Mem. 7.)

There is no reason for this Court to get involved in a purely Mexican matter that has nothing whatsoever to do with my role as the Judge who ordered a limited Injunction in Aid of Arbitration. The order allegedly violated is not the preliminary injunction I entered after the hearing. The "August Order" is a stipulation reached by the parties as an adjunct to their efforts to reach an amicable solution.

7

B.   **Respondent's alleged actions diminishing Petitioner's equal ownership and participation in management and control of the L1bre Group**

This Court cannot enter an order holding Respondent in contempt for taking actions to diminish Petitioner's interest in the business without holding an extensive hearing, taking evidence, hearing from witnesses and entertaining exhibits. This Court was prepared to hold such a hearing last summer, when the matter was first broached. However, the parties entered into a stipulation to avoid the hearing. (August Stipulated Order, Dkt. No. 59.)

Now that Petitioner appears to have taken steps to dissolve the partnership, this Court is not in a position to enter an order designed to compel Respondent not to take actions in diminution of Plaintiff's interest in the business of the partnership. A civil contempt is designed to compel compliance with the court's order – not to punish for prior violations of that order. *See Turner*, 564 U.S. at 441 ("Civil contempt . . . seeks only to "coerc[e] the defendant to do" what a court had previously ordered him to do." (internal citations omitted)).

Matters stand in a substantially different posture today than they did when the Court entered its preliminary injunction last spring. The parties are no longer partners, which necessarily impacts the continuing viability of the Court's injunction in aid of arbitration – an order that presumed a continuing partnership between Petitioner and Respondent. This Court has no power to adjudicate matters that arise or relate to the dissolution of a Delaware partnership between Mexican nationals.  This court has an exceedingly limited role to play in the resolution of this conflict. I had jurisdiction only to order an injunction in aid of arbitration. Resolution of the affairs of the former partners are beyond my ability to address.

C.   **Respondent's alleged actions preventing access to certain financial documents**

Because Petitioner has dissolved the partnership, I will not hold Respondent in contempt for disallowing access to the books and records of the corporation.

Again, a civil contempt order is supposed to obtain compliance with the Court's order. This Court was approached to enter an Injunction in Aid of Arbitration and has no jurisdiction whatsoever over the underlying dispute. (Mem. Decision & Order, Dkt. No. 33.)

Dissolution of the partnership has ended the business relationship between the parties, which impacts whether it is either necessary or appropriate to try to obtain compliance with the Court's order by issuing sanctions. Access can be gained via a wind-up proceeding brought in an appropriate court – which is not this Court.

## CONCLUSION

For the reasons set forth above the motion to is denied. The Clerk of Court is respectfully directed to close Dkt. No. 62.

This constitutes the decision and order of the Court.

Dated: September 2, 2020

_____
Chief Judge

BY ECF TO ALL PARTIES